J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
    rowe@braunhagey.com
Rebecca B. Horton, Esq. (SBN: 308052)
    horton@braunhagey.com
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Telephone:  (415) 599-0210
Facsimile:  (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MOLSON COORS BREWING COM-<br>PANY, MILLERCOORS LLC, and<br>DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No.  **'18CV0331 BEN JMA**<br><br>COMPLAINT FOR:<br><br>(1) Trademark Infringement<br>(2) False Designation of Origin<br>(3) Trademark Dilution<br>(4) Unfair Competition<br>(5) Declaratory Relief<br><br>**JURY TRIAL DEMANDED** |

1     Plaintiff Stone Brewing Co., LLC (hereinafter, "Stone," "Plaintiff," or
2  "Gargoyle") brings this Complaint against Defendants Molson Coors Brewing
3  Company and MillerCoors LLC (collectively, "MillerCoors" or "Defendants") and
4  alleges, on personal knowledge as to its own actions and on information and belief as
5  to the actions of others, as follows:

## INTRODUCTION

7     1.     Plaintiff Stone Brewing brings this trademark action to halt Defendant
8  MillerCoors's misguided campaign to steal the consumer loyalty and awesome repu-
9  tation of Stone's craft brews and iconic STONE® trademark.  MillerCoors recently
10 decided to rebrand its Colorado Rockies-themed "Keystone" beer as "STONE" – sim-
11 ultaneously abandoning Keystone's own heritage and falsely associating itself with
12 Stone's well-known craft brews.

13    2.     Since 1996, the incontestable STONE® mark has represented a promise
14 to beer lovers that each STONE® beer, brewed under the Gargoyle's watchful eye, is
15 devoted to craft and quality.  Like all Gargoyles, it is slow to anger and seeks a re-
16 spectful, live-and-let-live relationship with peers and colleagues – even those purvey-
17 ing beers akin to watered-down mineral spirits.  But Stone and the Gargoyle cannot
18 abide MillerCoors's efforts to mislead beer drinkers and sully (or steal) what STONE®
19 stands for.

20    3.     STONE® beer is beloved by millions of beer drinkers across America.
21 Resolute and fearless, the brewery has always stood for a philosophy and approach
22 that defies the watered-down orthodoxy of "Big Beer" companies and their fizzy yel-
23 low offerings.  As Big Beer has stumbled in recent years, the Gargoyle has thrived.
24 STONE® is one of the most recognizable and popular craft beer brands in the U.S.
25 and the global standard bearer for independent craft beer, with sales in all fifty U.S.
26 States and across five continents.

27    4.     Stone's rise has not gone unnoticed by the largest beer company in
28 America, MillerCoors.  MillerCoors has long coveted the STONE® mark, but has

1  been blocked from using STONE-centric branding because of Stone's incontestable
2  federal registration.  In 2007, the U.S. Patent and Trademark Office forced Mil-
3  lerCoors to admit that using the mark "STONES" to sell Keystone would infringe the
4  STONE® trademark.  Yet in 2017, MillerCoors marketing executives decided to try
5  again.  Not long after Stone cofounder Greg Koch publicly announced that the Gar-
6  goyle would never sell out, MillerCoors began plotting to rebrand "Keystone" as
7  "STONE" or "THE STONE."  MillerCoors has since followed-through on that plan
8  by recently relabeling its products and launching "STONE"-centric advertising.

9      5.      The Gargoyle does not countenance such misdirection of consumers; nor
10  does it support those who would disavow their own Colorado mountain heritage to
11  misappropriate another's ancestry.  Stone accordingly brings this action to help usher
12  Keystone back to the Rockies.  Should Keystone not willingly return, Stone intends to
13  seek expedited discovery in aid of a preliminary injunction, as well as permanent in-
14  junctive relief, declaratory relief, damages, costs and attorneys' fees, among other rem-
15  edies.

16                          **THE PARTIES**

17      6.      Plaintiff Stone Brewing Co., LLC ("Stone" or "Plaintiff") is a pioneer-
18  ing craft brewery with its principal place of business at 2120 Harmony Grove Road,
19  Escondido, California.  Stone is a duly registered limited liability company organized
20  under California law.  Prior to 2016, Stone was organized as a California corporation
21  named Koochen Vagners Brewing Co., d/b/a Stone Brewing Co.  Stone is the regis-
22  tered owner of the incontestable trademark registration for STONE®.

23      7.      Stone is informed and believes that Defendant Molson Coors Brewing
24  Company ("Molson Coors") is a multinational beer conglomerate that owns the *Key-*
25  *stone*, *Coors*, *Miller*, and *Molson* beer brands, among others.  Molson Coors is a Del-
26  aware Corporation with its principal places of business at 1801 California Street, Suite
27  4600, Denver, Colorado.

28

8.     Stone is informed and believes that Defendant MillerCoors LLC ("MillerCoors") is the United States operating arm of Molson Coors. MillerCoors is a Delaware limited liability company with its principal place of business at 250 S. Wacker Drive, Suite 800, Chicago, Illinois. Upon information and belief, MillerCoors is a wholly-owned subsidiary of Molson Coors that markets the *Keystone* and *Keystone Light* beer brands in the United States.

9.     Upon information and belief, Defendants operate under a unified management structure controlled and directed by Defendant Molson Coors Brewing Company. Each Defendant acted in concert with the other Defendants and aided, abetted, directed, approved, or ratified each act or omission alleged in this Complaint to have been performed by Defendants.

10.    The true names of the Defendants sued as Does 1 through 25, inclusive, are unknown to Stone, who therefore sues these Defendants by such fictitious names. Stone will amend this Complaint to allege the true names and capacities of these Defendants when they are ascertained. Upon information and belief, these fictitiously named Defendants were involved in the design, implementation, approval, and furtherance of the conduct complained of herein or received benefits from those transactions.

## JURISDICTION AND VENUE

11.    This action arises and is brought under the Trademark Act, known as the Lanham Act, 15 U.S.C. §§ 1050, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

12.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

13.    This Court possesses personal jurisdiction over Defendant Molson Coors because Molson Coors regularly and continuously transacts business in the State of California by advertising and selling its products within the State and this District,

including but not limited to sales of infringing Keystone products at numerous locations in the City and County of San Diego and this District.

14. This Court possesses personal jurisdiction over Defendant MillerCoors because MillerCoors regularly and continuously transacts business in the State of California by advertising and selling its products within the State and this District, including but not limited to sales of infringing Keystone products at numerous locations in the City and County of San Diego and this District.

15. Additionally, this Court possesses personal jurisdiction over Defendants Molson Coors and MillerCoors because, on information and belief, Defendants have targeted their tortious conduct at the State of California and this District by selling or distributing infringing Keystone products in this District and elsewhere. Defendants either expected or reasonably should have expected that their activities would cause harm to Stone in this District.

16. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district. The Gargoyle's primary abode is in this District, where Plaintiff Stone has its headquarters and regularly conducts business. Additionally, infringing Keystone products are offered for sale to consumers at numerous locations in the City and County of San Diego and this District.

## FACTUAL BACKGROUND

### A. Foundations of STONE®

17. Before it grew into an internationally recognized craft beer brand, Stone had its origins in the creative fermentation of California in the 1980s and '90s. Founders Steve Wagner and Greg Koch first crossed paths in the effervescent Los Angeles rock-and-roll music scene of the 1980s. Years later, they raised a glass at brewing mecca U.C. Davis in Northern California, where both had enrolled to channel their creative energies into brewing. In a series of conversations, the future founders of

STONE® discovered that they shared a love of bold, interesting beers and fiery obsession with being a part of the craft beer revolution.

18.    After a few years commiserating on the bleak state of the American beer market, the pair decided to take matters into their own hands. Greg and Steve made plans to open a brewery that would be defined by an unwavering commitment to quality and sustainability, holding true to the art of brewing bold, flavorful beers. STONE® was born.

19.    Over the course of the next four years, Stone signed a lease on a small warehouse that it turned into a brewery, went from kegging its beers to having two bottling lines, and released its most popular beer, STONE IPA®. From Stone's earliest bottles to its first website and delivery trucks, the STONE® mark has signified Stone's rebel culture of creativity, quality, and independence.



### __Stone's First Year of Production__

20.    From the start, Stone assiduously developed and maintained its trademark and brand. Every Stone beer proudly bears the registered incontestable trademark STONE®, which has been registered with the U.S. Patent and Trademark Office since June 23, 1998 under U.S. Registration No. 2168093.

### B. STONE® Rolls On

21.     Sprinting into the 2000s, Stone grew in size and reach, overflowing its first facility.  Stone entered a new phase when it planned a custom-built brewhouse tailored to fit Stone's commitment to quality, sustainability, and craft.

22.     The new brewery opened in Escondido, California in 2005, just before Stone's ten-year anniversary.  In a stroke of innovation, Stone also opened the first *Stone Brewing World Bistro & Garden™*, which shattered the "brewpub" mold with local, organic ingredients and a seasonal menu constantly inspired by fresh, worldly cuisine and the Slow Food movement.

23.     The stage was set for a craft brewing revolution.  Throughout the 2000s, Stone continued to win converts with its bold, unorthodox beers and artisan philosophy.  Other brewers joined the fray, transforming the tastes of millions of beer drinkers who had not known what they were missing.  In droves, Americans began turning away from incumbent Big Beer standards sold by the likes of MillerCoors in favor of craft beers with more compelling brands and flavors.

24.     The strength of Stone's brand kept pace with its commercial success.  On or about June 28, 2008, the USPTO accepted Stone's Combined Declaration of Use and Incontestability for STONE®, rendering the mark incontestable as a matter of law.

### C. STONE® Today

25.     Today, Stone is the ninth-largest independent craft brewer in the United States.  Presiding over a rapid expansion of the craft brewing industry from 800 breweries in 1996 to more than 5,000 today, Stone has maintained its commitment to true independent craft and sustainability.

26.     STONE® beers are sold in thousands of stores, bars, and restaurants throughout the country, including at major grocery stores and retailers.  Instantly recognized by the STONE® name, STONE® enjoys exceptional customer loyalty and

engagement, with a devoted fan base unrivalled by other brewers. A sampling of popular STONE® beers appears thus:



**Selection of Stone's Iconic Brews**

27.    Stone and its products have been widely lauded by national and international press, as well as connoisseurs and critics. In 2010, Stone Brewing was named the "**All-Time Top Brewery on Planet Earth**" by *Beer Advocate* magazine. Numerous national and international publications have recognized STONE® as an industry leader, including *The New York Times*, *The Wall Street Journal*, *The Economist*, *USA Today*, and *Time* magazine, to name a few.

28.    Even as Stone has expanded its range of offerings with bold new flavors and numerous seasonal beers, the STONE® mark has remained constant, an unchanging identifier of STONE®'s reputation for quality and commitment to its craft.

29.    By virtue of these efforts, STONE® is uniquely beloved among American and international beers, with a passionate and loyal following among consumers and critics alike. STONE® enjoys exceptional consumer engagement ratings on social media, with scores nearly double the nearest craft brewer. Loyal customers have even been known to commission tattoos of STONE® in homage – and then travel to the Escondido brewery to proudly show off their ink.

30.     STONE®'s brand and commitment to producing innovative artisan beer have helped it defy the status quo and disrupt the American beer industry.  In 2016, Stone produced more than 10.6 million gallons of beer for sale to customers in all fifty U.S. States.

31.     STONE®'s rise has placed it into direct competition with MillerCoors and its Big Beer associates in the U.S. beer market.  In 2017, STONE®'s U.S. sales exceeded $70 million, placing it among the ten best-selling craft brewers in the country – including erstwhile "craft" breweries now operating under MillerCoors and other beer conglomerates.

32.     Stone also has taken its beer brewing passion abroad.  STONE® is now the first American craft brewer to independently build, own and operate a brewery in Europe – in the heartland of Germany where serious beer has been enjoyed for over a thousand years.  Doing so has strengthened Stone's already diverse international fan base, who happily drink STONE® hops throughout the European Union and China, plus Canada, Australia, Singapore, Taiwan, Puerto Rico, Panama and Brazil, among other nations.  It is fair to say that STONE® has become an inherently distinctive and internationally recognized standard-bearer for American craft beer.

### D.     MillerCoors and Keystone's Origins

33.     Defendant Molson Coors is a multinational beer conglomerate formed after a series of mergers involving Coors, Miller, and Canadian brewing giant Molson. In the United States, Molson Coors operates through its subsidiary, Defendant MillerCoors.  (Collectively, Molson Coors and MillerCoors are referred to hereinafter as "MillerCoors").  Among dozens of brands in its portfolio, MillerCoors sells domestic lager brands Keystone and Keystone Light.

34.     Since its inception, MillerCoors and its predecessors have sold its "Keystone" sub-premium beer brand in cans with a primary KEYSTONE mark and prominent imagery of the Colorado Rocky Mountains.  The name "Keystone" is the name

of a popular ski resort town founded in the 1970s in Colorado. The mountain range depicted on the can is styled after the Wilson Peak located in the Rockies.

**Keystone's Brand**



35. In doing so, the "Keystone" name served to remind consumers of the brand's Colorado roots and ties to its parent brand, Coors.

36. Those ties apparently no longer bind so tight. After a series of corporate mergers and relocations, Keystone no longer is headquartered in its ancestral home in the Rocky Mountains. The brand is now part of a large "portfolio" of beers under the Molson-Miller-Coors conglomeration, with its U.S. base in Chicago, Illinois. This may explain the company's new insistence on dropping the "Key-" from its brand in favor of "STONE" – in an effort to chase the craft market and Stone in particular.

**E.      MillerCoors's "Big Beer" War Against Craft Beer**

37. MillerCoors' "Big Beer" brands like Keystone have suffered most from the rise of tasty brews like STONE®. As craft beer was on the rise from the late 1990s throughout the 2000s—celebrating double-digit growth each year—Big Beer increasingly lost market share. From 2011 to 2016, Keystone Light sales dropped more than 25%. *USA Today* recently dubbed Keystone one of the "**Beers Americans No Longer Drink**" in a December 2017 article.

38. To stem these losses, MillerCoors has embarked on a plan to wrestle back market share. In addition to rebranding Keystone to emulate STONE® (discussed below), MillerCoors recently acquired Stone's San Diego neighbor and former independent craft brewery, Saint Archer Brewing. MillerCoors itself has explained that

this expansion is aimed to eliminate competition from independent brewers like Stone – efforts that the conglomerate attempts to disguise by using a supposed "craft" beer holding entity, Tenth and Blake Beer Company.

39.     Nothing about such activity is benign.  Upon these acquisitions, MillerCoors drops prices to supra-competitive rates and ramps up production and distribution.  In doing so, it aims to undermine independent craft brewers' ability to compete while deceptively continuing to advertise its mass-produced brands as "craft" beers.

**F.     Keystone's Rebranding as "STONE"**

40.     MillerCoors' renaming of "Keystone" as "STONE" marks an aggressive second phase of the company's pincer move against craft beer and Stone in particular.

41.     In April, 2017, the company quietly announced that Keystone was to be rebranded as "STONE".  New cans, boxes and logos were formulated to emphasize "STONE" as a primary mark.

42.     Since the release of the new design, MillerCoors has launched a viral marketing campaign that touts Keystone's self-proclaimed new name of "STONE." In recent months, the brand's Facebook and Instagram pages have been scrubbed of the word "key" and filled with posts strategically placing Keystone beer cans so that only "STONE" is prominently displayed to viewers, with accompanying videos to match. These changes point unmistakably to a concerted effort by MillerCoors to capitalize on the goodwill and recognition associated with the STONE® mark and brand.

**1.     Removing "KEY" from Keystone's Can and Packaging**

43.     In a glaring departure from Keystone's traditional brand, MillerCoors has redesigned the label of Keystone cans and cases to emphasize its shift to "STONE."

44.     The new can abandons the high ground by dropping Keystone's signature mountain imagery. In its place, the can now lacks any imagery at all and relies entirely on a large display of the new name, "STONE." The result would be unrecognizable to Keystone drinkers of yore. In effect, MillerCoors has abandoned the KEYSTONE mark and heritage in favor of a brand centered entirely on one word: "STONE":



**Old Can**          **Re-Branded Can**

45.     Keystone's new can design overtly copies and infringes the STONE® trademark. Indeed, MillerCoors has effectively admitted that this copying is intentional. Before the cans hit shelves, MillerCoors announced in an official blog post that it was launching "**a can that plays up the "Stone" nickname.**" (http://www.millercoorsblog.com/news/keystone-light-new-look-15-pack/). A new, self-proclaimed "nickname," that is.

46.     The new Keystone can displays STONE® as its primary brand identifier, with no apparent hint of the traditional KEYSTONE brand or its signature mountain theme:



**Keystone's New Can**

1    47.    The rest of the new Keystone packaging conspicuously copies the

2  STONE® mark.  Indeed, the new Keystone 30-packs omit virtually any reference to

3  "Keystone" at all.  Instead, the packaging is designed to create a "wall of STONE"

4  when displayed in stores:

**Keystone's Confusing Case Stacks**



15    48.    Packaging and labels are critical to beer marketing, ensuring that brands

16  stand out to consumers perusing the beer aisles in stores.  The overwhelming emphasis

17  of "STONE" on the new Keystone packaging is a declaration that Keystone has aban-

18  doned its roots in an effort to simply become "STONE" to consumers.  But there is

19  already one – and only one – true STONE® in the market.

20    **2.    Keystone's Deceptive Social Media Campaigns**

21    49.    At the same time, MillerCoors has also launched an escalating advertising

22  and social media attack to establish STONE® as a new name for Keystone.

23    50.    MillerCoors has instituted a social media blitz on its publicly available

24  sites where it solely refers to Keystone as "STONE" and strategically places its product

25  so that "STONE" is the most prominent, if not the only, graphic visible to viewers.

26    51.    On Facebook, virtually every post on Keystone's page now refers to

27  Keystone as STONE®, confirming that there is nothing coincidental about the cam-

28  paign.  In the last several weeks, MillerCoors has sharply escalated its use of

STONE® on Keystone's social media accounts, with near-daily posts during the hol-
iday season. These social media posts feature cans deliberately positioned to empha-
size the terms "STONE" and "STONE LIGHT."

### Keystone's Misleading Facebook Posts



52.     On Instagram, Keystone continues its misappropriation with posts that
take every opportunity to emphasize the word "STONE," including taglines such as:
"The 'Stone that keeps on giving"; "Come bearing 'Stones"; "Season's greetings
from the 'Stone family"; and "'Stone sweet 'Stone." The emphasis on this new name,
"STONE," is accompanied by images displaying the Keystone can with "STONE" as
the most prominent graphic.

### Keystone's Deceptive Instagram Taglines



53.     The videos that accompany the majority of Keystone's recent Facebook and Instagram posts further evidence Keystone's effort to seize the STONE® mark. The videos themselves use taglines that play up the "STONE" name, continue the strategic placement of the Keystone can so the viewer only notices "STONE," and conclude with STONE-centric messages such as the following:

**Keystone's Willful Use Of STONE® Mark in Viral Media**



54.     Upon information and belief, MillerCoors has also purchased advertising on major websites, such as ESPN.com, referring to Keystone as "STONE". Such mass advertising broadcasts the infringing "STONE" name beyond Keystone's immediate social media audience to the general public at large.

**Keystone's Widespread ESPN Ad**



55.     Further, in recent months, Keystone launched and widely promoted a contest entitled "Hunt the STONE."  This contest has been publicized in physical ads and via social media, showcasing Keystone's new can design and intent to abandon the name "Keystone" for its beer in favor of "STONE."  These new ads differ drastically from previous ads advertising the contests.



56.     It is beyond doubt that any day now, Keystone intends to drop the "Key" prefix altogether.

### 3.     MillerCoors Is Brewing Confusion

57.     MillerCoors has long coveted the STONE® mark.  For years, Stone's incontestable registration has stood as an obstacle to Keystone's marketing efforts, preventing use of "STONE"-centric branding.  Now, MillerCoors is willfully infringing the STONE® mark in a calculated attempt to dilute it beyond repair.

58.     In September 2007, MillerCoors applied to register the mark "STONES" with the USPTO for use in connection with Keystone Light (U.S. Serial No. 77/284,994).  The USPTO refused to register the mark for the obvious reason that "STONES" was likely to be confused with STONE® when used on beer.  The USPTO's office action *explicitly cited* the incontestable STONE® registration as the basis for its refusal, putting MillerCoors on formal notice of Stone's rights (in the unlikely event it was not aware of them already).

59. Tellingly, MillerCoors did not dispute the USTPO's determination that its "STONES" mark would infringe STONE® when used in connection with Keystone Light. MillerCoors instead abandoned its application, admitting that confusion with STONE® beer was likely.

60. By the time MillerCoors launched its recent deceptive rebranding of Keystone, it had thus been on notice of Stone's rights in the STONE® mark for at least a decade.

61. MillerCoors and its executives were, and are, keenly aware of the STONE® brand and its rich craft heritage. In fact, MillerCoors has published articles on its own "Behind the Beer" Blog recognizing Stone as a "nationally distributed brewer[]" and one of the "biggest and most well-established craft brewers." Against this backdrop, Defendants' current infringement is plainly willful.

62. By designing their own campaign to capture the STONE® mark and associated goodwill, MillerCoors seeks to mislead consumers: about the source of MillerCoors's "Keystone," the heritage of Stone's beers, and whether STONE® is just another member of MillerCoors's craft brew holding company.

63. MillerCoors's deliberate infringement is likely to succeed in causing confusion. Not only does MillerCoors's new "STONE" branding copy the STONE® mark verbatim, but the companies' beers compete head-to-head in store aisles across the country. In the high-velocity beer market, where consumers make quick decisions between a proliferating array of brands, the effects of even initial confusion are likely to be momentous.

64. Confusion is just as likely outside of stores. The two brands use identical distribution and marketing channels, with STONE® and Keystone beers sharing the same distributors in many areas of the country. In the marketing arena, MillerCoors launched its rebranding offensive on social media – precisely the grassroots advertising medium that STONE® has used for years to cultivate support.

65.    Beyond its new "STONE" cans, MillerCoors is admittedly seeking to establish "STONE" as a trademark and source identifier for its "new Keystone" brand. If this gambit succeeds, a bar or restaurant patron asking for a tasty STONE® brew will be just as likely to receive Keystone's watered-down imitation of beer in its place. The STONE® mark has grown to its present strength because consumers trust that STONE® will never let them down in this manner.

66.    In recent weeks, Stone has received consumer inquiries showing that MillerCoors's escalating infringement is indeed brewing confusion in the marketplace. In December 2017, for example, a consumer reached out to Stone to inquire about the brewery's new "**STONE LITE**" product – a non-existent beer that appears only in MillerCoors's deceptive advertising.

67.    Even such minor instances can have significant effects undermining Stone's reputation for independence.  Stone has earned a reputation for bold, high-quality artisan beers under the STONE® brand.  Keystone has not.  By copying STONE®, MillerCoors aims now to not only diminish Stone's trademark rights but to capitalize upon STONE®'s artisanal reputation and image.

## CLAIMS FOR RELIEF

### First Claim for Relief
### FEDERAL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114
### (As to All Defendants)

68.    Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

69.    Plaintiff owns all right, title, and interest in the registered trademark STONE®, which it has continuously used in commerce since at least 1996.

70.    Through the conduct alleged above, Defendants' unauthorized use in commerce of STONE® infringes Plaintiff's rights in the mark and violates 15 U.S.C. § 1114 because it renders Defendants' products confusingly similar to the well-known STONE® mark and beers.  Defendants' unauthorized use of STONE® creates the erroneous impression in consumers' minds that Defendants' Keystone products have

been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the STONE® mark.

71. Defendants' actions are a paradigmatic case of infringement under the factors enunciated in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), for at least the following reasons:

a. Defendants' copying of the STONE® mark is intentional. Defendants have themselves admitted that "STONE"-centric branding such as "STONES" is likely to confuse consumers when used in connection with Keystone beer.

b. The STONE® mark is inherently distinctive, incontestable, famous, and commercially strong.

c. Defendants' infringing "STONE" mark is a verbatim copy of Plaintiff's genuine STONE® mark.

d. The parties already compete directly in beer aisles, coolers, bars, and restaurants across the country.

e. The extent of the parties' competition will only grow as Stone continues its national and international growth.

f. The parties share identical marketing and distribution channels.

g. The parties compete in a high-velocity market where the impact of initial consumer confusion is likely to be high.

h. Plaintiff has received consumer inquiries indicating that confusion is occurring in the marketplace.

i. Defendants' intentional copying of Plaintiff's mark is itself strong evidence that the infringing products are confusing consumers across the country.

72. Defendants' imitation and unauthorized use of STONE® is causing irreparable injury to Plaintiff by, *inter alia*, destroying consumers' unique association of the STONE® mark with Plaintiff's products.

1    73.    Plaintiff has no adequate remedy at law for Defendants' misconduct.  Un-
2    less Defendants are enjoined and restrained from continuing their infringement, con-
3    sumers will continue to be confused and Plaintiff's injuries will continue to occur.

4    74.    Plaintiff also is entitled to recover from Defendants any gains, profits, and
5    advantages as a result of Defendants' infringement, in an amount to be proven at trial.

6    75.    Defendants' intentional and willful misconduct renders this an "excep-
7    tional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15
8    U.S.C. § 1117.

9                              **Second Claim for Relief**
                **FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)**
10                              **(As to All Defendants)**

11    76.    Plaintiff incorporates by reference the facts and allegations set forth in
12    each of the preceding paragraphs as though fully set forth herein.

13    77.    Plaintiff owns all right, title, and interest in the registered trademark
14    STONE®, which it has continuously used in commerce since at least 1996.

15    78.    Through the conduct alleged above, Defendants' unauthorized use in
16    commerce of STONE® infringes Plaintiff's rights in the mark and violates 15 U.S.C.
17    § 1114 because it renders Defendants' products confusingly similar to the well-known
18    STONE® mark and beers.  Defendants' unauthorize use of STONE® creates the er-
19    roneous impression in consumers' minds that Defendants' *Keystone* products have
20    been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some
21    way affiliated with Plaintiff and the STONE® mark.  Such use constitutes a false des-
22    ignation of origin within the meaning of 15 U.S.C.§ 1125(a).

23    79.    On information and belief, Defendants chose to use the STONE® mark
24    on Keystone products with the intent to cause confusion among consumers and to de-
25    ceive them into believing that Defendants' products are made by, endorsed by, or oth-
26    erwise associated with Plaintiff or STONE® beers.

27    80.    Defendants have profited from their unfair competition, and Plaintiff has
28    suffered damages in amount to be proven at trial.

1  81.    Defendants' intentional and willful misconduct in misleading U.S. con-

2  sumers renders this an "exceptional case," entitling Plaintiff to treble damages and

3  attorney's fees pursuant to 15 U.S.C. § 1117.

4  82.    Defendants' infringement is causing irreparable harm by confusing con-

5  sumers and enabling Defendants to unlawfully profit by trading off of Plaintiff's

6  STONE® mark.  Plaintiff will continue to suffer such harm unless Defendants' in-

7  fringing conduct is enjoined by this Court.

8  **Third Claim for Relief**
**TRADEMARK DILUTION – 15 U.S.C. § 1125(c)**

9  **(As to All Defendants)**

10  83.    Plaintiff incorporates by reference the facts and allegations set forth in

11  each of the preceding paragraphs as though fully set forth herein.

12  84.    The STONE® mark is distinctive and famous in that it is widely recog-

13  nized by the general consuming public as a designation of the source of Plaintiff's

14  goods.

15  85.    On information and belief, Defendants' unauthorized use of the STONE®

16  mark began after the STONE® mark became famous.

17  86.    Defendants' continued unauthorized use of STONE® mark is likely to

18  cause injury to Plaintiff's business reputation and/or the dilution of the distinctive qual-

19  ity of Plaintiff's famous mark and brand.

20  87.    Defendants' acts have caused, and if not enjoined will continue to cause,

21  irreparable and continuing harm to Plaintiff's STONE® mark, business, reputation,

22  and goodwill.  Plaintiff has no adequate remedy at law because monetary damages are

23  inadequate to compensate Plaintiff for the injuries caused by Defendants.

24  **Fourth Claim for Relief**
**TRADEMARK DILUTION – Cal. Bus. & Prof. Code § 14247, *et seq.***

25  **(As to All Defendants)**

26  88.    Plaintiff incorporates by reference the facts and allegations set forth in

27  each of the preceding paragraphs as though fully set forth herein.

28

89.    The STONE® mark is distinctive and famous in that it is widely recognized by the general consuming public of California, including in this District and its environs, and as a designation of the source of Plaintiff's goods.

90.    On information and belief, Defendants' unauthorized use of STONE® mark began after the STONE® mark became famous.

91.    Defendants' continued unauthorized use of STONE® mark is likely to cause injury to Plaintiff's business reputation and/or the dilution of the distinctive quality of Plaintiff's famous mark and brand.

92.    Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiff's STONE® mark, business, reputation, and goodwill.  Plaintiff has no adequate remedy at law because monetary damages are inadequate to compensate Plaintiff for the injuries caused by Defendants.

### Fifth Claim for Relief
### UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, *et seq.*
### (As to All Defendants)

93.    Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

94.    Defendants' unauthorized use of the STONE® mark in a manner that is likely to confuse and deceive consumers is unlawful, unfair, and/or fraudulent and constitutes unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

95.    Defendants have profited from their unfair competition, and Plaintiff has suffered damages in an amount to be proven at trial.

96.    Defendant's infringement is causing irreparable harm by confusing consumers and enabling Defendant to unlawfully profit by trading off of Plaintiff's STONE® mark.   Plaintiff will continue to suffer harm unless Defendants' infringing conduct is enjoined by this Court.

**Sixth Claim for Relief**
**DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201-2202**
**(As to All Defendants)**

97.   Plaintiff incorporates by reference the allegations contained in the pre-ceding paragraphs as if set forth fully herein.

98.   Defendants' ongoing use of "STONE" in connection with its *Keystone* beer products infringes the registered STONE® mark.

99.   Defendants are engaged in activities directed towards further unauthor-ized use of the STONE® Mark in commerce in a manner that is likely to cause confu-sion among the relevant public that Defendants' *Keystone* beers are affiliated with, or related to, Plaintiff's STONE® beers.

100.   As such, there is a substantial, immediate and justiciable controversy be-tween the parties in that Defendants seek to use the STONE® mark in connection with beer, while Plaintiff contends that such use infringes and dilutes Plaintiff's registered marks.

101.   Plaintiff accordingly seeks in the alternative a declaratory judgment that further use by Defendants of the STONE® mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the STONE® Mark.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stone Brewing Co., LLC prays that the Court order and/or issue the following relief:

A.   Preliminarily and permanently enjoin Defendants from using the STONE® mark in connection with the sale, marketing or distribution of beer.

B.   Award Plaintiff its amount of damages and/or the amount of Defendants' profits arising from Defendant's unauthorized use of the STONE® Mark in the United States, pursuant to 15 U.S.C. § 1117 and under other applicable federal and/or state law.

1    C.    Award Plaintiff three times its actual damages according to proof, as
2  well as the costs of this action, in accordance with 15 U.S.C. § 1117 and under other
3  applicable federal and/or state law.

4    D.    Find this action to be an "exceptional case" such that Plaintiff be
5  awarded its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and
6  under other applicable federal and/or state law.

7    E.    Declare that Defendants' continued unauthorized use of the STONE®
8  Mark in connection with the sale, marketing or distribution of beer would infringe
9  Plaintiff's rights in the mark.

10    F.    Award Plaintiff such other and further relief as this Court deems
11  equitable and proper.

12
13  Dated:  February 12, 2018              Respectfully Submitted,

14                                          BRAUNHAGEY & BORDEN LLP

15
16                                          By:  s/ J. Noah Hagey
                                                 J. Noah Hagey
17
18                                          *Attorneys for Plaintiff*
                                            *Stone Brewing Co., LLC*
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all claims and causes of action triable before a jury.

Dated:  February 12, 2018

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP


By:  s/ J. Noah Hagey
J. Noah Hagey

*Attorneys for Plaintiff*
*Stone Brewing Co., LLC*