Natalie Hanlon Leh (*pro hac vice*)
  natalie.hanlonleh@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133

[Additional counsel listed on signature page]

ATTORNEYS FOR DEFENDANT

MILLERCOORS LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| STONE BREWING CO., LLC, Plaintiff, v. MOLSON COORS BREWING COMPANY, MILLERCOORS LLC, and DOES 1 through 25, inclusive, Defendants. | Case No. 18-CV-0331-BEN-JMA <br><br> District Judge: Hon. Roger T. Benitez <br><br> Magistrate Judge: Hon. Jan M. Adler <br><br> **MILLERCOORS LLC'S ANSWER TO COMPLAINT AND COUNTERCLAIMS** |
|---|---|

Defendant MillerCoors LLC ("MillerCoors") hereby submits this Answer to the Complaint filed by plaintiff Stone Brewing Co., LLC ("Stone Brewing") and Counterclaims.

## COUNTERCLAIMS

1.     MillerCoors is responsible for some of America's most popular beers, such as *Coors Light*, *Miller Lite*, *Blue Moon*, and *Keystone Light*.  Plaintiff Stone Brewing, founded in 1996 as Koochen Vagner's Brewing Company, is now one of the largest beer manufacturers in the U.S. with operations in Richmond, Virginia; Berlin, Germany; and Escondido, California.  Stone Brewing alleges the 2017 visual refresh of the cans, outer packaging, and advertising for MillerCoors' Keystone beer infringes Stone Brewing's STONE trademark and is likely to confuse customers about the source of Keystone beer.

2.     While Stone Brewing portrays this as a trademark case involving MillerCoors' "verbatim copy[ing]" of the STONE mark, what Stone Brewing actually objects to is MillerCoors' use of the KEYSTONE mark on Keystone cans and outer packaging.  Stone Brewing's arguments depend entirely on disassembling MillerCoors' KEYSTONE trademark, focusing only on the "STONE" portion of the mark while ignoring the "KEY" portion that is prominently visible on both the cans and outer packaging.

3.     Stone Brewing's claims are misleading and ultimately meritless when Stone Brewing's rhetoric is separated from the facts. Stone Brewing's Complaint makes grandiose allegations, but leaves out most of the facts relevant to this dispute, including:

- Every can and every package of Keystone beer is labeled KEYSTONE;

- Every Keystone can and every package displays the COORS BREWING COMPANY mark;



2017 *Keystone Light* Can and Outer Package

- MillerCoors began using and obtained a federal trademark registration for KEYSTONE nearly a decade before Stone Brewing registered STONE;
- Keystone and its customers have long referred to Keystone as 'STONE and cans of Keystone as 'STONES;
- MillerCoors' use of STONE and STONES in advertising predates Stone Brewing's use; and
- Stone Brewing raised these same exact issues to MillerCoors in 2010, but, in spite of MillerCoors' rejection of Stone Brewing's complaints at that time and continued use of STONE and STONES thereafter, Stone Brewing waited ***eight years*** to file this lawsuit.

4.     Stone Brewing's Complaint also relies on misleading images to support its "verbatim copy" claim and in an attempt to isolate the "STONE" from "KEYSTONE."  For example, page 11 of the Complaint includes purported images of Keystone cans labeled "Re-Branded Can" and "Keystone's New Can."  These images are supposed to demonstrate that MillerCoors has copied the "STONE" name.  But neither photo is a

true image of an actual can of Keystone beer.  MillerCoors has not "abandoned the KEYSTONE mark . . . in favor of a brand centered entirely on one word: 'STONE.'"  Instead, Stone Brewing has chosen to only include images in its Complaint that misrepresent the look of Keystone cans and outer packaging.  MillerCoors has not removed the "KEY" from its KEYSTONE trademark, and that is clear simply by observing *true images* of the actual Keystone can and outer packaging:

### *Keystone Light* Can

COUNTERCLAIMS AND ANSWER

*Keystone Light* Can Label Artwork



*Keystone Light* Outer Packaging Artwork

5.     Stone Brewing's misleading and meritless claims show this case is not actually about trademarks.  This case is not about "verbatim copy[ing]," but Stone Brewing's struggle with its new identity as a global *mega-craft* beer manufacturer.  Gone is the small Stone Brewing of old.  Today, Stone Brewing is one of the largest brewers in the United States, and its beer is sold on five continents.  In the last few years, Stone Brewing has aggressively expanded by opening breweries in Virginia and Berlin, Germany.  A private equity firm recently invested $90 million in a Stone Brewing venture.  In 2016, the famed brewmaster behind Stone Brewing's beers, Mitch Steele, quit the company, explaining that Stone Brewing had become too big: "I wasn't planning on leaving, but you know, as these breweries get bigger and bigger, you struggle with the fact that you get further removed from the brewing process.  You become a manager, you're a strategist; you're doing practically everything but brewing." (https://www. pastemaazine.com/articles/2017/12/mitch-steele-and-the-new-realm-of-ipa.html).

6.     Stone Brewing's new size presents a problem for its executives.  What does a company that was built around its opposition to "Big Beer" do when it becomes "Big Beer?"  Stone Brewing's solution appears to be to file this meritless lawsuit against MillerCoors.  Stone Brewing hopes this lawsuit will help it stand out in an increasingly crowded craft beer market.  Stone Brewing also hopes this lawsuit can perpetuate the idea of a "War" between "Big Beer" and "Craft Beer," and position itself in the eyes of its customers not as "Big Beer," but a rebel against "Big Beer."  Stone Brewing has heavily promoted this lawsuit, publishing an attack video on YouTube simultaneously with filing its Complaint, and launching an aggressive social media

campaign asking its followers to tweet #TrueStonevsKeystone.  In reality, there is no actual "War" between these beer companies except in the minds of Stone Brewing's CEO and marketing staff.  People just want to drink beer.  Some people prefer craft beer like *Stone IPA*, MillerCoors' *Belgian White Blue Moon*, or MillerCoors' San-Diego-brewed *Saint Archer IPA*.  Other people reach for an economy lager like *Keystone Light*.  But there is no confusion between these very different types of beers and the different consumers who drink them.

7.     Ultimately, Stone Brewing's actual claims in its Complaint lack substance when they are separated from the rhetoric.  Stone Brewing claims Keystone cans and outer packaging "verbatim copy" its STONE mark.  However, each and every Keystone can and package actually says KEYSTONE and includes the COORS BREWING COMPANY mark.  This Court cannot allow a plaintiff to enjoin a defendant from using its own trademark simply because the plaintiff, nearly a decade after the defendant's first use, adopted a somewhat similar trademark.

8.     Stone Brewing cannot even assert these claims today.  In April 2010, Stone Brewing's attorneys objected to MillerCoors' use of "STONE, STONES, and HOLD MY STONES," alleging they were likely to cause consumer confusion.  But after MillerCoors refuted Stone Brewing's allegations, Stone Brewing took no further action until filing this lawsuit eight years later.  Stone Brewing's claims are clearly barred by laches.  MillerCoors reasonably believed this dispute was long over, investing heavily in its Keystone marketing, including continued use and promotion of STONE and STONES, and it cannot be dragged into court eight years later when Stone Brewing finally decided to file this lawsuit.

9.      Nor would any beer drinker actually be confused between these two beers.  Keystone and Stone Brewing's beers are not targeted at the same consumers.  Keystone is an American-Style Light Lager and marketed to beer drinkers looking for a light, drinkable brew. Stone Brewing targets its ales to beer drinkers looking for a much heavier, more hoppy beverage, with a higher ABV.  Keystone is primarily sold in bright blue 15-can and 30-can cases that include a Colorado mountain image.  Stone Brewing beers are primarily sold in bottles and on draft, and its trade dress has a dark medieval theme centered around a devilish gargoyle character.  To the extent they are sold in the same outlets at all, the two beers are displayed and sold in different parts of grocery and liquor stores.  And all the purported "misleading" advertising images for Keystone products that Stone Brewing includes in its Complaint clearly identify the beer as *Keystone Light*.

10.     But if there is any confusion between these two beers, MillerCoors' rights are superior to Stone Brewing's.  MillerCoors used KEYSTONE, STONE, and STONES to sell Keystone beer prior to Stone Brewing's first use of STONE.  Since 2010, when Stone Brewing indisputably was aware of such use, MillerCoors has continued to use these terms to market its beer without any action by Stone Brewing. Therefore, MillerCoors asserts counterclaims against Stone Brewing seeking a declaration of MillerCoors' long held prior rights to use STONE and STONES in connection with its marketing and sale of *Keystone*.

## The Parties

11.     Counter-Plaintiff MillerCoors LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

12.     Counter-Defendant Stone Brewing Co., LLC is a California limited liability company with its principal place of business in Escondido, California.

## Jurisdiction and Venue

13.     This action arises and is brought under the Lanham Act, 15 U.S.C. §§ 1050, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §2201-2202.

14.     This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

15.     This Court also has supplemental jurisdiction over MillerCoors' counterclaims because it forms part of the same case or controversy as Stone Brewing's claims, and to the extent Stone Brewing's claims are brought under 28 U.S.C. §§ 1331 and 1338.

16.     This Court has personal jurisdiction over Stone Brewing because Stone Brewing has already submitted to the jurisdiction of this Court by initiating this action.

17.     Venue in the Southern District of California is appropriate under 28 U.S.C. §§ 1391(b)(1) and 1391(d) because Stone Brewing resides in the judicial district and Stone Brewing chose to initiate an action in this forum.

## Factual Background

### A.     Coors Creates Keystone in the Late 1980s

18.     Coors Brewing Company ("Coors") was founded in 1873, and not unlike Stone Brewing, by two men with a passion for beer.  When

9

Adolph Coors Sr., and Jacob Schueler opened their brewery in Golden, Colorado, the United States was experiencing its first beer boom.  In 1873, the U.S. had 4,131 breweries, a number that would not be surpassed until 2015.  Nonetheless, Coors stood out from the crowd.  Coors beer won a national brewing competition at the Chicago World's fair in 1893.  Since then, Coors beer has stood the test of time, surviving prohibition and two world wars.

19.    In the 1970s, popular demand for Coors beer reached cult levels.  The New York Times called Coors "the most chic brew in the country."  Paul Newman, Steve McQueen, and Keith Richards were Coors drinkers and posed for photos with the beer.  Bootleggers reportedly smuggled Coors beer to the East Coast, where they charged three times the Colorado retail price.  *Smokey and the Bandit*, starring Burt Reynolds and his Pontiac Trans Am, was a popular 70s film based entirely around such cross-country Coors bootlegging.  President Gerald Ford was even rumored to have stocked Air Force One with Coors beer to be flown back to the White House.

20.    In 1989, Coors launched Keystone beer, which is an American-Style Light Lager.  MillerCoors now sells three beers under the Keystone brand: *Keystone*, *Keystone Light*, and *Keystone Ice*.  From the start, the brand was about delivering the greatest value and ensuring everyone in America could afford to buy great beer.  But Coors did not skimp on taste.  Keystone beer has won numerous awards for its quality, including eight Great American Beer Festival medals in the American-Style Light Lager category from 1991 to 2012.

21.    Also in 1989, Coors applied for the trademark KEYSTONE for beer.  The United States Patent and Trademark Office approved Coors' KEYSTONE trademark on July 14, 1991, several years before

Stone Brewing decided to name themselves Stone, and nearly a decade before Stone Brewing registered the trademark STONE.  Indeed, Coors' KEYSTONE trademark reached incontestable status before Stone Brewing sold its first STONE beer.

### B.  Early Keystone Marketing Campaigns

22.    In 1989, Coors also launched a national marketing campaign to advertise Keystone beer.  Coors ran national television commercials and radio ads in 1989 promoting Keystone as having a "Bottled Beer Taste in a Can." (https:// www.youtube.com/watch? v=Y7E9dVC8vZM). Between 1995 and 2001, Coors created a national campaign emphasizing Keystone's smooth taste.  Coors launched memorable "Bitter Beer Face" television ads describing Keystone as "America's Least Bitter Beer." (https://www.youtube.com/watch?v=BOP5PBIghhc).

23.    Keystone television ads did not go unnoticed by Stone Brewing's co-founder and longtime CEO Greg Koch.  Keystone's ads may have even motivated the foundation of Stone Brewing.  Greg Koch and Stone Brewing wanted to introduce drinkers to a more bitter style of beer, and was adamant that it was shameful to prefer Keystone's smooth taste over his "sophisticated" beer.  Koch said in an interview about Keystone's 1995 "Bitter Beer Face" ads: "Basically it was a misinformation campaign.  It was designed to tell the American public 'You're not sophisticated enough.'  Let's try to tell you that you don't want better beer.  It's really a form of oppression.  There's just nothing short of it." (https://oct.co/essays/drew-careys-buzz-beer-bitter-beer-face-and-first-craft-beer-bubble).

**Coors Embraces 'STONES Nickname Starting in the 1990s**

24.    Despite Greg Koch's disdain, Keystone beer achieved a loyal following among beer drinkers.  Some Keystone beer drinkers were young legal-drinking-age adults who were just starting to drink beer.  Other Keystone beer drinkers were established adults who wanted to relax with an easy-to-drink beer after a hard day's work.  Keystone beer drinkers were savvy customers.  They preferred Keystone beer for its no-fuss smooth taste that was purchased at a fraction of the prices charged by high-end brewers like Stone Brewing.

25.    Keystone beer drinkers have such an affinity for the brand they began to nickname cans of Keystone 'STONES.  The 'STONES nickname was more than just a shortened form of "Keystone."  It captured the no-nonsense approach of Keystone customers, who looked forward to the end of the day when they could throw back some 'STONES.

26.    Stone Brewing's Greg Koch has even acknowledged on twitter that Keystone customers have long referred to Keystone as 'STONES:



27.    But Keystone's customers were not the only ones who referred to Keystone as 'STONES.  Starting in at least 1995, Coors embraced the 'STONES nickname by putting 'STONES on Keystone

COUNTERCLAIMS AND ANSWER

outer packaging.  A case of 30 Keystone beers became a case of 30 'STONES:



**1995 _Keystone Light_ Outer Packaging (folded flat)**



**1995 Date Closeup**

28.    Coors also used STONE and STONES in advertisements promoting Keystone.  Upon information and belief, Coors used the term

13

'STONE in Keystone advertisements as early as 1992–1993.  By the mid-1990s, the 'STONE nickname was clearly present in Keystone ads:



**July 1996 Newspaper Ad**

29.    Therefore, Coors' use of STONE and STONES predates Stone Brewing's use of STONE.  When co-founders Greg Koch and Steve Wagner decided to adopt the moniker Stone Brewing in 1996, Coors was already selling Keystone beer nationally in cases labeled STONES and running marketing campaigns advertising Keystone beer as STONE.  MillerCoors did not "verbatim copy" Stone Brewing's trademark.  If anything, it is much more likely that Stone Brewing copied the STONE name from Coors, since Keystone beer was already advertised as such in the market.

30.    Since at least 1995, Coors (and later MillerCoors, after Coors became part of it in 2008) has never stopped using STONE and STONES to advertise Keystone beer.  Keystone outer packaging has been refreshed from time to time, but STONES has always appeared on the box.  Advertising campaigns for Keystone have changed over the

years, but STONE and STONES have been prominently featured throughout.  Stone Brewing complains about MillerCoors' current cans, outer packaging, and advertising for Keystone.  But the current Keystone visuals are simply a refresh of Keystone's long embrace of the nicknames 'STONES and 'STONE.

## C.   Stone Brewing Objects to MillerCoors' use of "STONE, STONES, and HOLD MY STONES" in 2010

31.   In 2010, Stone Brewing knew about and objected to MillerCoors' use of STONE and STONES to sell Keystone beer.  On March 30, 2010, MillerCoors applied for the trademark HOLD MY STONES with the USPTO.

32.   On April 22, 2010, Stone Brewing's attorney Kent Walker sent a cease and desist letter to MillerCoors and objected to the registration of HOLD MY STONES and MillerCoors' use of STONE and STONES.  Mr. Walker's allegations in his letter are the same allegations Stone Brewing raises in its Complaint today.  He alleged that "it had recently come to [Stone Brewing's] attention that MillerCoors LLC is marketing its Keystone product under the brands STONE, STONES, and HOLD MY STONES."  He said MillerCoors' use of these terms was "likely to cause confusion in the trade and among the purchasing public and harm . . . Stone's proprietary brand."

**April 22, 2010 Letter from Stone Brewing's Attorney**



It has recently come to our client's attention that MillerCoors LLC is marketing its Keystone product under the brands STONE, STONES and HOLD MY STONES as indicated by the advertisement at http://www.marketwire.com/press-release/Keystone-Light-Unveils-National-Advertising-Campaign-1143442.htm, the Keith Stone character and the U.S. trademark application for HOLD MY STONES filed by MillerCoors on March 30, 2010. These references to are confusingly similar to our client's STONE beer. MillerCoors' use of STONE, STONES and HOLD MY STONES for beer is likely to cause confusion in the trade and among the purchasing public and harm the recognition and reputation of Stone's proprietary brand and goodwill.

33.     MillerCoors' lawyer responded by letter on May 10, 2010. MillerCoors disputed that there was any confusion between Keystone and Stone Brewing's beer, and informed Stone Brewing of MillerCoors' (and Coors') long history of using STONE and STONES that likely predated Stone Brewing's use. MillerCoors made clear to Stone Brewing its intention to continue using STONE and STONES in advertising campaigns for Keystone.

34.     Stone Brewing did not object to MillerCoors' registration of HOLD MY STONES within 60 days of publication at the Trademark Trial and Appeal Board ("TTAB"). Instead, on August 5, 2010, Stone

16

Brewing filed a request for a 30-day extension to oppose the registration.  On September 10, 2010 Stone Brewing sought another 60-day extension to oppose MillerCoors' registration explaining that it needed "additional time to continue discussions with applicant to attempt to resolve the issues."

35.    On November 8, 2010, Stone Brewing filed a third extension of time to oppose MillerCoors' HOLD MY STONES mark with the TTAB.  The TTAB denied Stone Brewing's third extension, and Stone Brewing's only potential remedies were to seek cancellation of MillerCoors' marks or sue for trademark infringement.  It did neither. On November 9, 2010, MillerCoors informed Stone Brewing that it was abandoning registration of the HOLD MY STONE trademark but it would not agree to modify its marketing campaigns for Keystone or otherwise stop its use of STONE, STONES, or HOLD MY STONES. Instead, MillerCoors referred Stone Brewing to its May 10, 2010 letter that explained MillerCoors had long used these terms and that its use did not infringe Stone Brewing's trademark.  Stone Brewing did not voice any further objection—until it filed this lawsuit eight years later.

### D.    From 2010 to 2017 Stone Brewing Does Not Oppose MillerCoors' Continued Use of 'STONE and 'STONES

36.    Given Stone Brewing's lack of an objection, MillerCoors reasonably believed this dispute ended in 2010 and that Stone Brewing had accepted MillerCoors' prior use and right to use STONE and STONES with Keystone.

37.    MillerCoors has since heavily invested in *multiple* marketing campaigns centered around the Keystone nicknames STONE and STONES.  MillerCoors went as far as to create an entire fictional character for Keystone beer whose name was STONE.  Keith Stone

became the beer's ambassador, and he starred in TV commercials, print advertisements, on billboards, and on the internet and social media. His smooth-talking persona matched Keystone's smooth taste, and he dished out life advice while always carrying a case of 30 'STONES.



**2011 Keith Stone point-of-sale ad**

38.   MillerCoors relied heavily on Keith Stone and the STONE and STONES nickname in 2011 and 2012 to market Keystone beer. Keith Stone wooed women with his dance moves at a roller rink in the 2011 TV commercial "Stones Must Roll." (https://www.youtube.com/watch?v=JfsnFI7vkPw).  At the 2011 WWE wrestling event Capitol Punishment, "the man, the myth, the always smooth legend, Keith Stone" made a grand entrance to a roaring crowd while carrying 30 STONES on his shoulder.  (https:// www. youtube.com/watch?v=1-zBRlYXkKc).  But many of Keith Stone's Keystone ads are so old they relied on references that now feel outdated.  Keith Stone announced a fictional presidential campaign in 2012—STONE 2012—where he famously promised, "a STONE in every hand, [and] a taco in every pot." (https://www.youtube.com/watch?v=UEq2d7y1eLI).  And when the world did not end at the close of 2012 as the Mayans predicted, Keith

Stone was quick to call the Mayan calendar "weaksauce."  (https://
www.youtube.com/watch?v=pGGinWbHY2E).

39.    But MillerCoors used STONE and STONES in many other
ways.  In 2013, MillerCoors launched the 'STONE HANDED GAMES
promotion, which encouraged Keystone customers to reimagine
Keystone packages as their favorite tailgate games, like cornhole and
frisbee golf:



40.    During the 2015 hunting season, MillerCoors launched the
HUNT FOR THE GREAT WHITE 'STONE promotion.  Keystone
customers bought specially marked cases of *Keystone Light* in hopes of
finding an elusive white can they could assemble into a beer can deer
head.  During the summer of 2016, MillerCoors launched the 'STONE
SPANGLED SUMMER promotion that asked beer drinkers to SALUTE
SUMMER WITH A 'STONE.

COUNTERCLAIMS AND ANSWER

1
2
3
4
5
6
7
8



41.    These examples are just some of the ways MillerCoors
continued to use the Keystone nickname 'STONE or 'STONES after
Stone Brewing's objection in 2010.  During this time, the word
'STONES also continued to appear on the outer packaging of Keystone
beer, letting every customer know the number of 'STONES that were
inside.  MillerCoors was continuing its long history of using STONE and
STONES to sell Keystone.  But even if MillerCoors' use of these terms
somehow conflicted with Stone Brewing's STONE trademark, Stone
Brewing never did anything about it.  Most people know that you lose
your right to enforce your trademark when you fail to protect it,
including Stone Brewing's Greg Koch, who recently tweeted as much:



COUNTERCLAIMS AND ANSWER

## MillerCoors Refreshes Keystone Visuals

42.     MillerCoors decided in the last few years it needed to refresh its economy beer portfolio to better compete with its true competitor, and largest beer company in the world, Anheuser-Busch InBev ("ABI"). MillerCoors directly competes with ABI in the economy and American-light lager beer segments.  In the case of Keystone, MillerCoors' focus was on updating the visuals so that it could better compete with its two competitor beers, ABI's *Busch Light* and *Natural Light*.

43.     Stone Brewing's beers do not compete with Keystone Light and did not factor into MillerCoors' Keystone new visual campaign. Keystone is an economy American-Style Light Lager.  In Stone Brewing's YouTube video announcing this lawsuit, Greg Koch made clear Stone Brewing would never make or sell a light beer.  ([https://www.youtube.com/watch?v=s7zW4Dnb_7g](https://www.youtube.com/watch?v=s7zW4Dnb_7g)).  Stone Brewing almost exclusively brews West Coast India Pale Ales, which are brewed to be extremely hoppy with high International Bitterness Units ("IBUs"). Keystone is brewed to be smooth with a never bitter taste and low IBUs.  Stone Brewing's beers are sold as "craft beer," which means they are sold in different parts of grocery stores and liquor stores from Keystone; Keystone is sold with other economy beer brands and typically in packages of 30 cans or, more recently, 15 cans.  Stone Brewing's beers are sold in smaller quantities, typically in a six-pack of bottles.  Stone Brewing also has a large draft business in bars, whereas Keystone does not.  Stone Brewing's beers are typically sold at twice the price of *Keystone Light* per ounce, if not more.

44.     While both beers are sold throughout the U.S., Keystone and Stone Brewing's beers are primarily sold in different geographical regions.  Stone Brewing sells most of its beers in California and on the

Pacific Coast.  Keystone customers are mostly in the interior of the country, in states like Texas.  The available customer data reveals that it is nearly impossible to find a consumer who purchased both *Keystone Light* and one of Stone Brewing's beers in the last year.

45.  *Keystone Light's* primary competitors are ABI's *Busch Light* and *Natural Light* beers.  Keystone sales have expanded in 2017 and 2018 because Keystone Light has won market share away from *Busch Light* and *Natural Light*.  Keystone's success is the result of two factors.

46.  First, in January 2017, MillerCoors began replacing *Keystone Light* 12-packs with 15-packs at nearly the same suggested retail price.  The 15-packs were extremely popular; *Keystone Light* customers were essentially getting three extra beers for free.  *Keystone Light* sales spiked upward and the 15-pack was 2017's number one selling SKU.  Customers realized the *Keystone Light* 15-pack provided greater value than other economy beer brands and this catapulted *Keystone Light* onto Nielsen's list of the Top 10 Growth Brands.

47.  Second, MillerCoors sought to distinguish *Keystone Light* from *Busch Light* and *Natural Light* visually.  The economy beer section of grocery stores had become stocked with such visually similar beer that some customers started to believe the beers were interchangeable.  ABI had even updated *Busch Light* cans and outer packaging to adopt mountain imagery that was similar to Keystone's old design.

COUNTERCLAIMS AND ANSWER

1
2
3
4
5
6
7
8
9
10
11
12
13



14    48.   MillerCoors also heavily invested in consumer research to

15  learn more about its Keystone customers.  MillerCoors discovered that

16  Keystone's most loyal customers were not the young-legal-drinking-age

17  men that Keith Stone advertising had historically represented.  Instead,

18  many Keystone drinkers were older blue-collar adults and women.

19  MillerCoors set out to refresh and modernize its cans, outer packaging,

20  and messaging so it would reach new customers without alienating its

21  most loyal fans.  The new design was bold, active, and fun, but held on

22  to Keystone's long embrace of the STONE and STONES nickname.

23
24
25
26
27
28

2017 Keystone Light Can and Package

49.    At no point was Stone Brewing or its beer a factor in MillerCoors' refresh of Keystone's visuals.  MillerCoors is not trying to co-opt Stone Brewing's image, and that would be counterintuitive to Keystone's message.  Keystone is not a "sophisticated" or "artisanal" beer and has never pretended to be.  Rather, Keystone is a great American-style light beer with a great always smooth taste at a great affordable price.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of MillerCoors' Right to use STONE and STONES to advertise Keystone Beer)

50.    MillerCoors restates and incorporates by reference its allegations in Paragraphs 1–49.

51.    An actual and justiciable case or controversy exists between MillerCoors and Stone Brewing regarding MillerCoors' right to use STONE and STONES to advertise Keystone beer.

52.    Keystone and its customers have long used the nicknames STONE or STONES to describe Keystone beer.

COUNTERCLAIMS AND ANSWER

53.   MillerCoors, itself and through its predecessor Coors, has continuously used STONE or STONES in its Keystone advertising since at least 1995.

54.   MillerCoors, itself and through its predecessor, has continuously used STONES on Keystone's outer packaging since at least 1995.

55.   MillerCoors, itself and through its predecessor, has continuously used STONE or STONES on nationally distributed promotional materials since at least 1995.

56.   Counter-Defendant's use of STONE to sell its beer did not begin until 1996.

57.   MillerCoors' continuous use of STONE and STONES predates Counter-Defendant's use.

58.   MillerCoors is the senior user of STONE in connection with beer relative to Counter-Defendant.

59.   This Court can resolve the controversy by issuing a declaration of the parties' rights, status, and legal relations with respect to MillerCoors' use of STONE and STONES to advertise Keystone beer.

60.   MillerCoors is entitled to a judicial declaration of its right to use STONE and STONES to advertise Keystone beer.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of the STONE Mark Against MillerCoors Due to Laches)

61.   MillerCoors restates and incorporates by reference its allegations in Paragraphs 1–60.

62.   An actual and justiciable case or controversy exists between MillerCoors and Stone Brewing regarding Stone Brewing's right to pursue this lawsuit after its long unreasonable delay.

COUNTERCLAIMS AND ANSWER

63.    MillerCoors has continuously used STONE or STONES in its Keystone Advertising since at least 1995.

64.    MillerCoors has continuously used STONE or STONES on each of its Keystone outer packaging since at least 1995.

65.    Counter-Defendant was aware of MillerCoors' use of "STONES" in 2010 and sent a letter to MillerCoors.

66.    Despite its knowledge of MillerCoors' use of STONES in 2010, Counter-Defendant failed to bring legal action against MillerCoors until 2018.

67.    Counter-Defendant's delay was unreasonable in light of the analogous California statute of limitations period of three years.

68.    MillerCoors has suffered prejudice due to Counter-Defendant's delay.  MillerCoors heavily invested in Keystone visuals and marketing after 2010 that used STONE and STONES.

69.    MillerCoors is thus entitled to a declaratory judgement that laches precludes Counter-Defendants from enforcing the STONE mark against MillerCoors.

## THIRD COUNTERCLAIM

### (Declaratory Judgment of MillerCoors' Non-Infringement Based on its Right to the STONE Mark)

70.    MillerCoors restates and incorporates by reference its allegations in Paragraphs 1–69.

71.    An actual and justiciable case or controversy exists between MillerCoors and Stone Brewing regarding MillerCoors' infringement of Stone Brewing's STONE mark.

72.    MillerCoors has continuously used STONE or STONES in its Keystone advertising since at least 1995.

73.     MillerCoors has continuously used STONES on Keystone's outer packaging since at least 1995.

74.     MillerCoors has continuously used STONE or STONES in Keystone advertising since at least 1995.

75.     Counter-Defendant's use of STONE to sell its beer did not begin until 1996.  Counter-Defendant did not register its STONE mark until June 23, 1998, at least three years after MillerCoors' first use.

76.     MillerCoors' continuous use of STONE predates Counter-Defendant's use.

77.     MillerCoors is the senior user of STONE in connection with beer relative to Counter-Defendant.

78.     This Court can resolve the controversy by issuing a declaration of the parties' rights, status, and legal relations with respect to MillerCoors' non-infringement of Stone Brewing's STONE mark based on its prior use.

79.     MillerCoors is entitled to a judicial declaration that its use of STONE to advertise Keystone beer does not infringe Counter-Defendant's mark.

## FOURTH COUNTERCLAIM

### (Declaratory Judgment of MillerCoors' Exclusive Right to Use the Stone Mark in the United States)

80.     MillerCoors restates and incorporates by reference its allegations in Paragraphs 1–79.

81.     An actual and justiciable case or controversy exists between MillerCoors and Stone Brewing regarding who owns the exclusive right to use the mark STONES in the United States.

82.     MillerCoors has continuously used STONE or STONES in its Keystone advertising since at least 1995.

83.     MillerCoors has continuously used STONES on Keystone's outer packaging since at least 1995.

84.     MillerCoors has continuously used STONE or STONES in nationally distributed promotional materials since at least 1995.

85.     Counter-Defendant's use of STONE to sell its beer did not begin until 1996.

86.     Since 1995, MillerCoors has sold Keystone beer throughout the United States in packages using STONE.

87.     Since at least 1996, Keystone advertisements using STONE or STONES have been used in magazines and newspapers.

88.     Since at least 1995, Keystone promotional materials using STONE or STONES have been distributed throughout the United States.

89.     MillerCoors' continuous national use of STONE in connection with Keystone beer predates Counter-Defendant's use.

90.     MillerCoors is the senior user of STONE in connection with beer relative to Counter-Defendant.

91.     MillerCoors is entitled to a judicial declaration of its exclusive common law right to use STONE in connection with the sale of beer in the United States.

## PRAYER FOR RELIEF

WHEREFORE, MillerCoors requests entry of judgment in its favor and against Stone Brewing Co. as follows:

A.     An Order declaring MillerCoors is the senior user to Counter-Defendant and has the right to use STONE or STONES in connection with marketing for beer;

COUNTERCLAIMS AND ANSWER

B.     An Order declaring that laches precludes Stone Brewing from enforcing its STONE mark against MillerCoors' use of STONE or STONES;

C.     An Order declaring that MillerCoors' use of STONE and STONES to advertise Keystone beer does not infringe Counter-Defendant's mark;

D.     An Order declaring that MillerCoors has the exclusive right to use the mark STONE and STONES in connection with beer sold in the United States.

COUNTERCLAIMS AND ANSWER

## ANSWER TO THE COMPLAINT

### Introduction[1]

1.   **PLAINTIFF**: Plaintiff Stone Brewing brings this trademark action to halt Defendant MillerCoors's misguided campaign to steal the consumer loyalty and awesome reputation of Stone's craft brews and iconic STONE® trademark.  MillerCoors recently decided to rebrand its Colorado Rockies-themed "Keystone" beer as "STONE" – simultaneously abandoning Keystone's own heritage and falsely associating itself with Stone's well-known craft brews.

**ANSWER**:  MillerCoors admits that Stone Brewing filed this action alleging trademark infringement.  MillerCoors denies the remaining allegations in paragraph 1.

2.   **PLAINTIFF**: Since 1996, the incontestable STONE® mark has represented a promise to beer lovers that each STONE® beer, brewed under the Gargoyle's watchful eye, is devoted to craft and quality.  Like all Gargoyles, it is slow to anger and seeks a respectful, live-and-let-live relationship with peers and colleagues – even those purveying beers akin to watered-down mineral spirits.  But Stone and the Gargoyle cannot abide MillerCoors's efforts to mislead beer drinkers and sully (or steal) what STONE® stands for.

**ANSWER**:  Paragraph 2 is simply a Stone Brewing sales pitch, and no response is required.  To the extent a response is required, MillerCoors denies that the "Gargoyle" is "slow to anger" or seeks a "live-and-let-live relationship with peers and colleagues."  Quite the opposite, Stone Brewing is well known in the beer industry for its

---

[1] MillerCoors incorporates Stone Brewing's headings and titles in its Answer to Complaint solely for clarity.

COUNTERCLAIMS AND ANSWER

bombastic hyperbole, pugnacious attitude, and for launching public insults at brewers small and large.  Stone Brewing even proudly markets itself as "Arrogant Bastard," and sells a whole line of beers under the "Arrogant Bastard" name.  MillerCoors admits that Stone Brewing has obtained a federal trademark registration for the STONE trademark.  MillerCoors denies that Stone Brewing's STONE trademark is incontestable as to MillerCoors.  MillerCoors states that MillerCoors has used STONE and STONES to sell Keystone beer since at least 1995, and prior to Stone Brewing's first use:



1995 *Keystone Light* Outer Packaging (folded flat)

1995 Date Closeup

MillerCoors denies that Stone Brewing takes actual issue with Keystone beer, and states Stone Brewing is using this lawsuit as a publicity stunt and a platform to market its beer.  MillerCoors denies any remaining allegations in paragraph 2.

3.    **PLAINTIFF**: STONE® beer is beloved by millions of beer drinkers across America.  Resolute and fearless, the brewery has always stood for a philosophy and approach that defies the watered-down orthodoxy of "Big Beer" companies and their fizzy yellow offerings.  As Big Beer has stumbled in recent years, the Gargoyle has thrived. STONE® is one of the most recognizable and popular craft beer brands in the U.S. and the global standard bearer for independent craft beer, with sales in all fifty U.S. States and across five continents.

**ANSWER**:  Paragraph 3 is a Stone Brewing sales pitch, and no response is required.  To the extent a response is required, MillerCoors denies Stone Brewing's attempt to anoint itself as the "global standard bearer for independent craft beer."  MillerCoors denies that there is any single definition of "craft beer" or "independent craft beer."  MillerCoors states that Stone Brewing's purported "philosophy" of opposition to "Big Beer" is simply a marketing tool it uses to sell its products, and its lawsuit is simply an extension of those marketing efforts.  MillerCoors

admits that Stone Brewing beers today are sold in all fifty U.S. States and on five continents, but denies the remaining allegations in paragraph 3.

4.     **PLAINTIFF**: Stone's rise has not gone unnoticed by the largest beer company in America, MillerCoors.  MillerCoors has long coveted the STONE® mark, but has been blocked from using STONE-centric branding because of Stone's incontestable federal registration.  In 2007, the U.S. Patent and Trademark Office forced MillerCoors to admit that using the mark "STONES" to sell Keystone would infringe the STONE® trademark.  Yet in 2017, MillerCoors marketing executives decided to try again.  Not long after Stone cofounder Greg Koch publicly announced that the Gargoyle would never sell out, MillerCoors began plotting to rebrand "Keystone" as "STONE" or "THE STONE."  MillerCoors has since followed-through on that plan by recently relabeling its products and launching "STONE"-centric advertising.

**ANSWER**:  MillerCoors denies the allegations in paragraph 4.  MillerCoors has not attempted to rebrand Keystone by relabeling its products as STONE or THE STONE.  Keystone products—including after the 2017 visual refresh—have always been labeled with the KEYSTONE trademark:

COUNTERCLAIMS AND ANSWER



2017 Keystone Light Can and Package

MillerCoors denies that it has been blocked from using STONE to sell Keystone beer, and states that MillerCoors has long used STONE and STONES to market Keystone, MillerCoors' use predates Stone Brewing's use, and Stone Brewing has not objected to MillerCoors' use over the past eight years. MillerCoors admits that in 2007, the U.S. Patent and Trademark Office ("USPTO") issued an office action related to MillerCoors' application to register the trademark STONES. MillerCoors denies that the USPTO's office action forced MillerCoors to admit that its use of STONES to sell Keystone products would infringe on Stone Brewing's mark, and MillerCoors' use does not infringe.

5. **PLAINTIFF**: The Gargoyle does not countenance such misdirection of consumers; nor does it support those who would disavow their own Colorado mountain heritage to misappropriate another's ancestry. Stone accordingly brings this action to help usher Keystone back to the Rockies. Should Keystone not willingly return, Stone intends to seek expedited discovery in aid of a preliminary injunction, as well as permanent injunctive relief, declaratory relief, damages, costs and attorneys' fees, among other remedies.

**ANSWER**: MillerCoors denies that it is misdirecting consumers. MillerCoors denies that it disavowed its Colorado mountain heritage and states that Colorado mountain imagery appears on the Keystone

34

package and Colorado is still one place Keystone is brewed.  MillerCoors denies the remaining allegations in paragraph 5.

## THE PARTIES

6.     **PLAINTIFF**: Plaintiff Stone Brewing Co., LLC ("Stone" or "Plaintiff") is a pioneering craft brewery with its principal place of business at 2120 Harmony Grove Road, Escondido, California.  Stone is a duly registered limited liability company organized under California law.  Prior to 2016, Stone was organized as a California corporation named Koochen Vagners Brewing Co., d/b/a Stone Brewing Co.  Stone is the registered owner of the incontestable trademark registration for STONE®.

**ANSWER**:  MillerCoors denies that Stone Brewing has ever represented itself as "Stone" instead of "Stone Brewing."  MillerCoors denies allegations in paragraph 6 because it lacks knowledge or information to form a belief as to the truth of the allegations.

7.     **PLAINTIFF**: Stone is informed and believes that Defendant Molson Coors Brewing Company ("Molson Coors") is a multinational beer conglomerate that owns the *Keystone, Coors, Miller,* and *Molson* beer brands, among others.  Molson Coors is a Delaware Corporation with its principal places of business at 1801 California Street, Suite 4600, Denver, Colorado.

**ANSWER**:  MillerCoors admits that Molson Coors owns the *Keystone, Coors, Miller,* and *Molson* beer brands only to the extent Molson Coors owns these brands indirectly through ownership of various subsidiaries who directly own the trademarks.  MillerCoors denies that Molson Coors is a conglomerate.  MillerCoors admits the remaining allegations in paragraph 7, except that Molson Coors'

principal places of businesses are Denver, Colorado and Montreal, Canada.

8.   **PLAINTIFF**: Stone is informed and believes that Defendant MillerCoors LLC ("MillerCoors") is the United States operating arm of Molson Coors.  MillerCoors is a Delaware limited liability company with its principal place of business at 250 S. Wacker Drive, Suite 800, Chicago, Illinois.  Upon information and belief, MillerCoors is a wholly-owned subsidiary of Molson Coors that markets the *Keystone* and *Keystone Light* beer brands in the United States.

**ANSWER**:  MillerCoors admits that MillerCoors owns and markets the *Keystone* and *Keystone Light* beer brands in the United States.  MillerCoors admits that MillerCoors is a wholly-owned subsidiary of Molson Coors.  MillerCoors admits it is a Delaware limited liability company with its principal place of business at 250 S. Wacker Drive, Suite 800, Chicago, Illinois.  MillerCoors denies the remaining allegations in paragraph 8.

9.   **PLAINTIFF**: Upon information and belief, Defendants operate under a unified management structure controlled and directed by Defendant Molson Coors Brewing Company.  Each Defendant acted in concert with the other Defendants and aided, abetted, directed, approved, or ratified each act or omission alleged in this Complaint to have been performed by Defendants.

**ANSWER**:  MillerCoors denies the allegations in paragraph 9.

10.   **PLAINTIFF**: The true names of the Defendants sued as Does 1 through 25, inclusive, are unknown to Stone, who therefore sues these Defendants by such fictitious names.  Stone will amend this Complaint to allege the true names and capacities of these Defendants when they are ascertained.  Upon information and belief, these

fictitiously named Defendants were involved in the design, implementation, approval, and furtherance of the conduct complained of herein or received benefits from those transactions.

**ANSWER**:  Paragraph 10 is Stone Brewing's characterization of its claims, and no response is required.  MillerCoors denies the allegations to the extent that a response is required.

## JURISDICTION AND VENUE

11.   **PLAINTIFF**: This action arises and is brought under the Trademark Act, known as the Lanham Act, 15 U.S.C. §§ 1050, *et seq,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

**ANSWER**:  Paragraph 11 states a legal conclusion and no response is required.  MillerCoors admits the allegations to the extent a response is required.

12.   **PLAINTIFF**: This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

**ANSWER**:  Paragraph 12 states a legal conclusion and no response is required.  MillerCoors admits the allegations to the extent a response is required.

13.   **PLAINTIFF**: This Court possesses personal jurisdiction over Defendant Molson Coors because Molson Coors regularly and continuously transacts business in the State of California by advertising and selling its products within the State and this District, including but not limited to sales of infringing Keystone products at numerous locations in the City and County of San Diego and this District.

**ANSWER**:  Paragraph 13 states a legal conclusion and no response is required.  MillerCoors denies the allegation to the extent a response is required, and states that Molson Coors does not sell

products in the United States and that the Court lacks personal jurisdiction over Molson Coors.

14.   **PLAINTIFF**: This Court possesses personal jurisdiction over Defendant MillerCoors because MillerCoors regularly and continuously transacts business in the State of California by advertising and selling its products within the State and this District, including but not limited to sales of infringing Keystone products at numerous locations in the City and County of San Diego and this District.

**ANSWER**:  Paragraph 14 states a legal conclusion and no response is required.  To the extent a response is required, MillerCoors admits that it advertises and sells its products, including Keystone products, in California and the District.  MillerCoors denies its Keystone products are infringing.

15.   **PLAINTIFF**: Additionally, this Court possesses personal jurisdiction over Defendants Molson Coors and MillerCoors because, on information and belief, Defendants have targeted their tortious conduct at the State of California and this District by selling or distributing infringing Keystone products in this District and elsewhere. Defendants either expected or reasonably should have expected that their activities would cause harm to Stone in this District.

**ANSWER**:  Paragraph 15 states a legal conclusion and no response is required.  To the extent a response is required, MillerCoors admits that it advertises and sells its products, including Keystone products, in California and the District.  MillerCoors denies that it has targeted tortious conduct and the State of California or the District. MillerCoors denies that Molson Coors has engaged in activities in California and the District, participated in the Keystone visual refresh, and denies that the Court has personal jurisdiction over Molson Coors.

16.   **PLAINTIFF**: Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.  The Gargoyle's primary abode is in this District, where Plaintiff Stone has its headquarters and regularly conducts business.  Additionally, infringing Keystone products are offered for sale to consumers at numerous locations in the City and County of San Diego and this District.

**ANSWER**:  Paragraph 16 states a legal conclusion and no response is required.  To the extent a response is required, MillerCoors admits that Keystone products are sold in San Diego and the District.  MillerCoors denies that its Keystone products are infringing.  MillerCoors denies the remaining allegations because it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

## FACTUAL BACKGROUND

### E.   Foundations of STONE®

17.   **PLAINTIFF**: Before it grew into an internationally recognized craft beer brand, Stone had its origins in the creative fermentation of California in the 1980s and '90s.  Founders Steve Wagner and Greg Koch first crossed paths in the effervescent Los Angeles rock-and-roll music scene of the 1980s.  Years later, they raised a glass at brewing mecca U.C. Davis in Northern California, where both had enrolled to channel their creative energies into brewing.  In a series of conversations, the future founders of STONE® discovered that they shared a love of bold, interesting beers and fiery obsession with being a part of the craft beer revolution.

**ANSWER**:  Paragraph 17 is a Stone Brewing sales pitch, and no response is required.  To the extent a response is required, MillerCoors denies the allegations in paragraph 17 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

18.   **PLAINTIFF**: After a few years commiserating on the bleak state of the American beer market, the pair decided to take matters into their own hands.  Greg and Steve made plans to open a brewery that would be defined by an unwavering commitment to quality and sustainability, holding true to the art of brewing bold, flavorful beers. STONE® was born.

**ANSWER**:  Paragraph 18 is a Stone Brewing sales pitch, and no response is required.  MillerCoors denies the allegations to the extent a response is required.

19.   **PLAINTIFF**: Over the course of the next four years, Stone signed a lease on a small warehouse that it turned into a brewery, went from kegging its beers to having two bottling lines, and released its most popular beer, STONE IPA®.  From Stone's earliest bottles to its first website and delivery trucks, the STONE® mark has signified Stone's rebel culture of creativity, quality, and independence.



40

**ANSWER**:  MillerCoors denies that Stone Brewing has ever represented itself as "Stone" as opposed to "Stone Brewing." MillerCoors denies the remaining allegations in paragraph 19 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.  MillerCoors states the photo speaks for itself and no response is required.  MillerCoors denies that the photo represents "Stone's First Year of Production" to the extent a response is required because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

20.    **PLAINTIFF**: From the start, Stone assiduously developed and maintained its trademark and brand.  Every Stone beer proudly bears the registered incontestable trademark STONE®, which has been registered with the U.S. Patent and Trademark Office since June 23, 1998 under U.S. Registration No. 2168093.

**ANSWER**:  MillerCoors denies that Stone Brewing has ever represented itself as "Stone" as opposed to "Stone Brewing."  Stone Brewing's website (www.StoneBrewing.com) currently states "THE STONE BREWING BRAND MARK IS A REGISTERED TRADEMARK."  MillerCoors admits that Stone Brewing registered a STONE trademark with USPTO on June 23, 1998.  MillerCoors denies that Stone Brewing's STONE trademark is incontestable as to MillerCoors because of MillerCoors' prior and continuous use of STONE and STONES to sell Keystone beer.  MillerCoors denies the remaining allegations in paragraph 20 because MillerCoors lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

### F.   STONE® Rolls On

21.   **PLAINTIFF**: Sprinting into the 2000s, Stone grew in size and reach, overflowing its first facility.  Stone entered a new phase when it planned a custom-built brewhouse tailored to fit Stone's commitment to quality, sustainability, and craft.

**ANSWER**:  MillerCoors denies the allegations in paragraph 21 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

22.   **PLAINTIFF**: The new brewery opened in Escondido, California in 2005, just before Stone's ten-year anniversary.  In a stroke of innovation, Stone also opened the first *Stone Brewing World Bistro & Garden™,* which shattered the "brewpub" mold with local, organic ingredients and a seasonal menu constantly inspired by fresh, worldly cuisine and the Slow Food movement.

**ANSWER**:  MillerCoors denies the allegations in paragraph 22 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

23.   **PLAINTIFF**: The stage was set for a craft brewing revolution.  Throughout the 2000s, Stone continued to win converts with its bold, unorthodox beers and artisan philosophy.  Other brewers joined the fray, transforming the tastes of millions of beer drinkers who had not known what they were missing.  In droves, Americans began turning away from incumbent Big Beer standards sold by the likes of MillerCoors in favor of craft beers with more compelling brands and flavors.

**ANSWER**:  MillerCoors denies the allegation to the extent Stone Brewing attempts to take sole credit for creating a "craft brewing revolution" that only "[O]ther brewers joined."  Prior to Stone Brewing's

42

founding, Coors created the iconic craft beer Blue Moon in 1995.  Blue Moon is wildly more popular than any of Stone Brewing's beers.  MillerCoors denies beer drinkers have shifted in droves from purchasing Keystone beer to Stone Brewing's beer.  MillerCoors denies the remaining allegations in paragraph 23.

24.  **PLAINTIFF**: The strength of Stone's brand kept pace with its commercial success.  On or about June 28, 2008, the USPTO accepted Stone's Combined Declaration of Use and Incontestability for STONE®, rendering the mark incontestable as a matter of law.

**ANSWER**:  Paragraph 24 states a legal conclusion and no response is required.  To the extent a response is required, MillerCoors denies that Stone Brewing's STONE trademark is incontestable as to MillerCoors because of MillerCoors' prior and continued use of STONE and STONES to sell Keystone beer.  MillerCoors denies any remaining allegations in paragraph 24.

### G.  STONE® Today

25.  **PLAINTIFF**: Today, Stone is the ninth-largest independent craft brewer in the United States.  Presiding over a rapid expansion of the craft brewing industry from 800 breweries in 1996 to more than 5,000 today, Stone has maintained its commitment to true independent craft and sustainability.

**ANSWER**:  MillerCoors denies there is any single definition of "craft brewer." MillerCoors denies that Stone Brewing "presided over" any rapid expansion and Stone Brewing's attempt to take sole credit for any expansion in the brewing industry.  MillerCoors denies the allegations in paragraph 25 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

26.   **PLAINTIFF**: STONE® beers are sold in thousands of stores, bars, and restaurants throughout the country, including at major grocery stores and retailers.  Instantly recognized by the STONE® name, STONE® enjoys exceptional customer loyalty and engagement, with a devoted fan base unrivalled by other brewers.  A sampling of popular STONE® beers appears thus:



**ANSWER**:  MillerCoors denies that Stone Brewing has a fan base "unrivalled" by other brewers.  MillerCoors denies the allegations in paragraph 26 because it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

27.   **PLAINTIFF**: Stone and its products have been widely lauded by national and international press, as well as connoisseurs and critics.  In 2010, Stone Brewing was named the "**All-Time Top Brewery on Planet Earth**" by *Beer Advocate* magazine.  Numerous national and international publications have recognized STONE® as an industry leader, including *The New York Times, The Wall Street Journal, The Economist, USA Today,* and *Time* magazine, to name a few.

**ANSWER**:  MillerCoors denies the allegations in paragraph 27 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

28.   **PLAINTIFF**: Even as Stone has expanded its range of offerings with bold new flavors and numerous seasonal beers, the STONE® mark has remained constant, an unchanging identifier of STONE®'s reputation for quality and commitment to its craft.

**ANSWER**:  MillerCoors denies the allegations in paragraph 28 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

29.   **PLAINTIFF**: By virtue of these efforts, STONE® is uniquely beloved among American and international beers, with a passionate and loyal following among consumers and critics alike. STONE® enjoys exceptional consumer engagement ratings on social media, with scores nearly double the nearest craft brewer.  Loyal customers have even been known to commission tattoos of STONE® in homage – and then travel to the Escondido brewery to proudly show off their ink.

**ANSWER**:  MillerCoors denies Stone Brewing's allegation that its beers are "uniquely beloved" above and beyond all other brewers' beers. MillerCoors denies the remaining allegations in paragraph 29 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

30.   **PLAINTIFF**: STONE®'s brand and commitment to producing innovative artisan beer have helped it defy the status quo and disrupt the American beer industry.  In 2016, Stone produced more than 10.6 million gallons of beer for sale to customers in all fifty U.S. States.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANSWER**:  MillerCoors denies that Stone Brewing has disrupted the American beer industry.  MillerCoors denies the remaining allegations in paragraph 30 because it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

31.   **PLAINTIFF**: STONE®'s rise has placed it into direct competition with MillerCoors and its Big Beer associates in the U.S. beer market.  In 2017, STONE®'s U.S. sales exceeded $70 million, placing it among the ten best-selling craft brewers in the country – including erstwhile "craft" breweries now operating under MillerCoors and other beer conglomerates.

**ANSWER**:  MillerCoors denies Stone Brewing's products directly compete in the same category with MillerCoors' Keystone brand beers. MillerCoors denies that there is a single definition of "craft breweries." MillerCoors denies that its craft breweries including Blue Moon Brewery and San Diego-based Saint Archer are "erstwhile." MillerCoors denies the remaining allegations in paragraph 31 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

32.   **PLAINTIFF**: Stone also has taken its beer brewing passion abroad.  STONE® is now the first American craft brewer to independently build, own and operate a brewery in Europe – in the heartland of Germany where serious beer has been enjoyed for over a thousand years.  Doing so has strengthened Stone's already diverse international fan base, who happily drink STONE® hops throughout the European Union and China, plus Canada, Australia, Singapore, Taiwan, Puerto Rico, Panama and Brazil, among other nations.  It is fair to say that STONE® has become an inherently distinctive and internationally recognized standard-bearer for American craft beer.

**ANSWER**:  MillerCoors denies Stone Brewing's attempt to anoint itself as the "standard-bearer for American craft beer."  MillerCoors denies that there is any single definition of "craft beer."  MillerCoors denies the allegations in paragraph 32 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

### H.   MillerCoors and Keystone's Origins

33.   **PLAINTIFF**: Defendant Molson Coors is a multinational beer conglomerate formed after a series of mergers involving Coors, Miller, and Canadian brewing giant Molson.  In the United States, Molson Coors operates through its subsidiary, Defendant MillerCoors. (Collectively, Molson Coors and MillerCoors are referred to hereinafter as "MillerCoors").  Among dozens of brands in its portfolio, MillerCoors sells domestic lager brands Keystone and Keystone Light.

**ANSWER**:  MillerCoors denies that Molson Coors "operates through" MillerCoors.  MillerCoors denies that "MillerCoors" is a proper term to refer to Molson Coors and MillerCoors collectively.  To the extent any of Plaintiff's allegations as to MillerCoors hereinafter also is an allegation as to Molson Coors, that allegation is denied.  MillerCoors denies that Molson Coors is a conglomerate or formed "after a series of mergers involving Coors, Miller, and Canadian brewing giant Molson." MillerCoors admits the remaining allegations in paragraph 33.

34.   **PLAINTIFF**: Since its inception, MillerCoors and its predecessors have sold its "Keystone" sub-premium beer brand in cans with a primary KEYSTONE mark and prominent imagery of the Colorado Rocky Mountains.  The name "Keystone" is the name of a popular ski resort town founded in the 1970s in Colorado.  The mountain range depicted on the can is styled after the Wilson Peak located in the Rockies.



**Keystone's Brand**

**ANSWER**:  MillerCoors admits the allegations in paragraph 34, but denies that Keystone is a sub-premium beer brand. MillerCoors denies that Keystone's mountain imagery was styled after Wilson Peak.  MillerCoors states that MillerCoors continues to sell Keystone beer in cans with a primary KEYSTONE mark and a package featuring Colorado mountain imagery.  MillerCoors admits the graphic is one prior representation of Keystone's brand, but denies that the allegation is complete.

35.   **PLAINTIFF**: In doing so, the "Keystone" name served to remind consumers of the brand's Colorado roots and ties to its parent brand, Coors.

**ANSWER**:  MillerCoors denies the allegation in paragraph 35, and states KEYSTONE is a distinctive mark that reminds consumers of Keystone beer.

36.   **PLAINTIFF**: Those ties apparently no longer bind so tight. After a series of corporate mergers and relocations, Keystone no longer is headquartered in its ancestral home in the Rocky Mountains.  The brand is now part of a large "portfolio" of beers under the Molson-Miller-Coors conglomeration, with its U.S. base in Chicago, Illinois. This may explain the company's new insistence on dropping the "Key-" from its brand in favor of "STONE" – in an effort to chase the craft market and Stone in particular.

**ANSWER**:  MillerCoors denies that it has dropped the "Key" from KEYSTONE.  MillerCoors denies that it is attempting to "chase the craft market" or Stone Brewing by selling Keystone beer.  MillerCoors admits that MillerCoors is headquartered in Chicago, Illinois.  MillerCoors denies that Keystone is "headquartered" anywhere, as it is not a legal entity.  MillerCoors denies that Keystone beer no longer has "ties" to the Rocky Mountains and states that Coors Brewing Company is located in Colorado and that Keystone beer is brewed in Golden, Colorado, as well as other locations.  Every can and outer package of Keystone beer includes the COORS BREWING COMPANY mark.  MillerCoors admits that Keystone is part of a portfolio of beers sold by MillerCoors.  MillerCoors denies the remaining allegations in paragraph 36.

### I.   MillerCoors's "Big Beer" War Against Craft Beer

37.   **PLAINTIFF**: MillerCoors' "Big Beer" brands like Keystone have suffered most from the rise of tasty brews like STONE®.  As craft beer was on the rise from the late 1990s throughout the 2000s—celebrating double-digit growth each year—Big Beer increasingly lost market share.  From 2011 to 2016, Keystone Light sales dropped more than 25%.  *USA Today* recently dubbed Keystone one of the "**Beers Americans No Longer Drink**" in a December 2017 article.

**ANSWER**:  MillerCoors admits Keystone Light sales dropped from 2011 to 2016, but denies that Keystone has lost sales or market share to Stone Brewing's beers.  MillerCoors denies that Americans no longer drink Keystone beer.  MillerCoors denies the remaining allegations because it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

38.   **PLAINTIFF**: To stem these losses, MillerCoors has embarked on a plan to wrestle back market share.  In addition to rebranding Keystone to emulate STONE® (discussed below), MillerCoors recently acquired Stone's San Diego neighbor and former independent craft brewery, Saint Archer Brewing.  MillerCoors itself has explained that this expansion is aimed to eliminate competition from independent brewers like Stone – efforts that the conglomerate attempts to disguise by using a supposed "craft" beer holding entity, Tenth and Blake Beer Company.

**ANSWER**:  MillerCoors denies that it has rebranded Keystone to emulate Stone Brewing's claimed trademark.  MillerCoors admits it recently acquired Saint Archer Brewing located in San Diego, as well as other breweries in the United States.  MillerCoors denies that is attempting to eliminate competition from "independent brewers like Stone" Brewing.  MillerCoors denies it is attempting to "disguise" MillerCoors craft beer sales.  MillerCoors denies the allegation and states that Tenth and Blake Beer Company breweries are craft breweries.  MillerCoors denies the remaining allegations in paragraph 38.

39.   **PLAINTIFF**: Nothing about such activity is benign.  Upon these acquisitions, MillerCoors drops prices to supra-competitive rates and ramps up production and distribution.  In doing so, it aims to undermine independent craft brewers' ability to compete while deceptively continuing to advertise its mass-produced brands as "craft" beers.

**ANSWER**:  MillerCoors denies the allegations in paragraph 39.  MillerCoors states that the small craft breweries that it has acquired continue to operate independently.  MillerCoors has invested millions

into each brewery, which has allowed the leadership at each brewery to expand their facilities and sales and create jobs in their local communities.

### J.    Keystone's Rebranding as "STONE"

40.    **PLAINTIFF**: MillerCoors' renaming of "Keystone" as "STONE" marks an aggressive second phase of the company's pincer move against craft beer and Stone in particular.

**ANSWER**:  MillerCoors denies the allegations in paragraph 40, and states that it has not renamed Keystone as "STONE."

41.    **PLAINTIFF**: In April 2017, the company quietly announced that Keystone was to be rebranded as "STONE".  New cans, boxes and logos were formulated to emphasize "STONE" as a primary mark.

**ANSWER**:  MillerCoors denies the allegations in paragraph 41. MillerCoors states that Keystone cans, outer packaging, and logos continue to use the KEYSTONE mark.

42.    **PLAINTIFF**: Since the release of the new design, MillerCoors has launched a viral marketing campaign that touts Keystone's self-proclaimed new name of "STONE."  In recent months, the brand's Facebook and Instagram pages have been scrubbed of the word "key" and filled with posts strategically placing Keystone beer cans so that only "STONE" is prominently displayed to viewers, with accompanying videos to match.  These changes point unmistakably to a concerted effort by MillerCoors to capitalize on the goodwill and recognition associated with the STONE® mark and brand.

**ANSWER**:  MillerCoors denies that it began to tout the STONE nickname with the launch of a new campaign, and states MillerCoors has used STONE and STONES in connection with Keystone prior to Stone Brewing's use.  MillerCoors admits that it promotes Keystone in

social media, including in connection with the recent Keystone visual refresh.  MillerCoors denies that "key" has been "scrubbed" from Keystone Facebook or Instagram pages.  MillerCoors denies that its posts strategically placed Keystone cans so that only STONE is displayed.  MillerCoors denies that it is attempting to capitalize on Stone Brewing's alleged recognition and goodwill.  MillerCoors denies any remaining allegations in paragraph 42.

### 1.    Removing "KEY" from Keystone's Can and Packaging

43.    **PLAINTIFF**: In a glaring departure from Keystone's traditional brand, MillerCoors has redesigned the label of Keystone cans and cases to emphasize its shift to "STONE."

**ANSWER**: MillerCoors denies the allegations in paragraph 43, and states the refreshed Keystone can label continues to prominently display the KEYSTONE and COORS BREWING COMPANY mark.

44.    **PLAINTIFF**:  The new can abandons the high ground by dropping Keystone's signature mountain imagery.  In its place, the can now lacks any imagery at all and relies entirely on a large display of the new name, "STONE."  The result would be unrecognizable to Keystone drinkers of yore.  In effect, MillerCoors has abandoned the KEYSTONE mark and heritage in favor of a brand centered entirely on one word: "STONE":



COUNTERCLAIMS AND ANSWER

**ANSWER**:  MillerCoors denies that it "has abandoned the KEYSTONE mark."  MillerCoors denies the Keystone can "relies entirely on a large display of the new name, 'STONE.'"  MillerCoors admits the refreshed visuals for Keystone cans no longer include mountain imagery, but states that Keystone outer packaging retains mountain imagery.  MillerCoors denies that Plaintiff's orange "Re-Branded Can" is a true image of an actual KEYSTONE can or represents how Keystone cans appear in the marketplace.  MillerCoors states that actual cans of Keystone brand beer prominently display the KEYSTONE and COORS BREWING COMPANY mark:



Keystone Light Can

MillerCoors denies that Plaintiff's orange "Re-Branded Can" represents how Keystone advertisements appear in the marketplace.  MillerCoors admits that Plaintiff's "Old Can" is one graphic of an older Keystone Light can, but denies that the allegation is complete.  MillerCoors denies any remaining allegations in paragraph 44.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

45.     **PLAINTIFF**: Keystone's new can design overtly copies and infringes the STONE® trademark.  Indeed, MillerCoors has effectively admitted that this copying is intentional.  Before the cans hit shelves, MillerCoors announced in an official blog post that it was launching "**a can that plays up the "Stone" nickname."** (http://www.millercoorsblog.com/news/keystone-light-new-look-15-pack/).  A new, self-proclaimed "nickname," that is.

**ANSWER**:  MillerCoors denies that Keystone's can copies or infringes Stone Brewing's mark.  MillerCoors denies that it has "effectively admitted" any copying of Stone Brewing's mark.  MillerCoors admits it published an official blog post at the identified URL.  The blog post speaks for itself and no response is required.  To the extent a response is required, MillerCoors denies that Stone Brewing's allegation is complete.  MillerCoors denies Keystone's STONE or STONES nickname is new or self-proclaimed.  MillerCoors denies any remaining allegations in paragraph 45.

46.     **PLAINTIFF**: The new Keystone can displays STONE® as its primary brand identifier, with no apparent hint of the traditional KEYSTONE brand or its signature mountain theme:



COUNTERCLAIMS AND ANSWER

**ANSWER**:  MillerCoors denies that refreshed Keystone cans display Stone Brewing's mark as is its primary brand identifier. MillerCoors admits the refreshed Keystone can no longer contains mountain imagery, but states that Keystone outer packaging retains mountain imagery.  MillerCoors denies that refreshed Keystone can visuals have "no apparent hint of the traditional KEYSTONE brand," and states that allegation is demonstrably false based on a review of the actual can label, which displays the KEYSTONE and COORS BREWING COMPANY marks:



**Keystone Light Can**

MillerCoors denies Plaintiff's "Keystone's New Can" graphic is a true image of an actual Keystone can or represents how the can appears in the marketplace.  MillerCoors states that actual cans of Keystone beer display the KEYSTONE and COORS BREWING COMPANY mark. MillerCoors states that the purported blue and red cans are images of the front of Keystone and Keystone Light outer packaging.  "KEY"

directly proceeds "STONE" on Keystone's outer packaging and the
COORS BREWING COMPANY mark is also visible, as shown below:

| *Keystone Light* Outer Packaging Front Label | *Keystone* Outer Packaging Front Label |
|---|---|
|  |  |

47.   **PLAINTIFF**: The rest of the new Keystone packaging
conspicuously copies the STONE® mark.  Indeed, the new Keystone 30-
packs omit virtually any reference to "Keystone" at all.  Instead, the
packaging is designed to create a "wall of STONE" when displayed in
stores:



**ANSWER**:  MillerCoors denies that the refreshed Keystone outer
packaging copies Stone Brewing's mark.  MillerCoors denies the "new

Keystone 30-packs omit virtually any reference to 'Keystone' at all," and states that statement is demonstrably false based on a review of the actual outer packaging which uses the KEYSTONE mark.  MillerCoors denies Plaintiff's "Keystone's Confusing Case Stacks" graphic is an accurate representation of how Keystone outer packaging appears in the marketplace.  MillerCoors states that the image is not of Keystone Light's year-round outer packaging, but an image of one panel of a special promotional package in one store that was only sold for a limited time.  MillerCoors denies that the left image is a true representation of how the case stack was to appear in stores, and upon information and belief, the image excludes references to KEYSTONE that would be displayed directly to the left and right of the border of the image.  MillerCoors denies the remaining allegations in paragraph 47.

48.  **PLAINTIFF**: Packaging and labels are critical to beer marketing, ensuring that brands stand out to consumers perusing the beer aisles in stores.  The overwhelming emphasis of "STONE" on the new Keystone packaging is a declaration that Keystone has abandoned its roots in an effort to simply become "STONE" to consumers.  But there is already one – and only one – true STONE® in the market.

**ANSWER**:  MillerCoors admits that outer packaging and labels are one component of beer marketing.  MillerCoors denies the remaining allegations in paragraph 48.

## 2.  Keystone's Deceptive Social Media Campaigns

49.  **PLAINTIFF**: At the same time, MillerCoors has also launched an escalating advertising and social media attack to establish STONE® as a new name for Keystone.

**ANSWER**:  MillerCoors admits that it uses advertising and social media to support Keystone.  MillerCoors denies that its advertising is

an "attack" or that it is an attempt to establish Stone Brewing's mark as Keystone's new name, and states that MillerCoors and Coors have long used STONE and STONES in connection with Keystone, and MillerCoors' and Coors' use predates Stone Brewing's use.  MillerCoors denies the remaining allegations in paragraph 49.

50.  **PLAINTIFF**: MillerCoors has instituted a social media blitz on its publicly available sites where it solely refers to Keystone as "STONE" and strategically places its product so that "STONE" is the most prominent, if not the only, graphic visible to viewers.

**ANSWER**:  MillerCoors denies that it "solely" refers to Keystone as STONE in social media advertising, and states that every social media image Stone Brewing included in its complaint identifies Keystone Light as the source of the image.  MillerCoors denies the remaining allegations in paragraph 50.

51.  **PLAINTIFF**: On Facebook, virtually every post on Keystone's page now refers to Keystone as STONE®, confirming that there is nothing coincidental about the campaign.  In the last several weeks, MillerCoors has sharply escalated its use of STONE® on Keystone's social media accounts, with near-daily posts during the holiday season.  These social media posts feature cans deliberately positioned to emphasize the terms "STONE" and "STONE LIGHT."


**Keystone's Misleading Facebook Posts**

COUNTERCLAIMS AND ANSWER

**ANSWER**:  MillerCoors denies the allegations in paragraph 51.
MillerCoors admits these images are screenshots of posts from Keystone
Light's Facebook page which speak for themselves and no response is
required.  To the extent a response is required, MillerCoors denies the
allegations are complete or include the entire Facebook post and video.
MillerCoors denies that Keystone's Facebook posts are misleading, and
states that these posts, as seen in the screenshots, clearly identify the
source as Keystone Light.

52.  **PLAINTIFF**: On Instagram, Keystone continues its
misappropriation with posts that take every opportunity to emphasize
the word "STONE," including taglines such as: "The 'Stone that keeps
on giving"; "Come bearing 'Stones"; "Season's greetings from the 'Stone
family"; and "'Stone sweet 'Stone."  The emphasis on this new name,
"STONE," is accompanied by images displaying the Keystone can with
"STONE" as the most prominent graphic.



**ANSWER**:  MillerCoors denies that Keystone Light Instagram
posts misappropriate Stone Brewing's mark.  MillerCoors admits the
images are screenshots of Keystone Instagram posts.  The Instagram
posts speak for themselves, and no response is required.  MillerCoors

denies that Keystone Light Instagram taglines are deceptive, and states that these posts, as the screenshots show, clearly identify the source as Keystone Light.  MillerCoors denies any remaining allegations in paragraph 52.

53.   **PLAINTIFF**: The videos that accompany the majority of Keystone's recent Facebook and Instagram posts further evidence Keystone's effort to seize the STONE® mark.  The videos themselves use taglines that play up the "STONE" name, continue the strategic placement of the Keystone can so the viewer only notices "STONE," and conclude with STONE-centric messages such as the following:



**ANSWER**:  MillerCoors denies the allegations in paragraph 53, and states that Keystone's recent Facebook and Instagram posts, as the screenshots show, clearly identify the source as Keystone Light.  MillerCoors admits the images are screenshots of Keystone Light Facebook videos.  The videos speak for themselves and no response is required.  To the extent a response is required, MillerCoors denies that the allegations are complete or that they include the entire Facebook video.  MillerCoors denies that the Facebook videos are a willful use of Stone Brewing's mark.  MillerCoors denies any remaining allegations in paragraph 53.

COUNTERCLAIMS AND ANSWER

54.   **PLAINTIFF**: Upon information and belief, MillerCoors has also purchased advertising on major websites, such as ESPN.com, referring to Keystone as "STONE".  Such mass advertising broadcasts the infringing "STONE" name beyond Keystone's immediate social media audience to the general public at large.



**ANSWER**:  MillerCoors admits that it has purchased advertising for the refreshed Keystone brand from major websites.  MillerCoors denies the graphic represents a "Widespread ESPN Ad."  MillerCoors denies that the graphic is an actual ESPN banner advertisement. MillerCoors denies the remaining allegations in paragraph 54.

55.   **PLAINTIFF**: Further, in recent months, Keystone launched and widely promoted a contest entitled "Hunt the STONE."  This contest has been publicized in physical ads and via social media, showcasing Keystone's new can design and intent to abandon the name "Keystone" for its beer in favor of "STONE."  These new ads differ drastically from previous ads advertising the contests.

|  Old Ad  |  New Ad  |

**ANSWER**:  MillerCoors admits it recently ran a "Hunt the STONE" contest publicized on social media and advertised in stores. MillerCoors denies that it produced physical print or radio ads for the campaign.  MillerCoors denies the ads showcase an intent to abandon the name Keystone, and states the ads clearly identify the source as Keystone Light.  MillerCoors admits that the graphics depict two ads for the Keystone "Can Hunt" and "Hunt the Stone" contests, but denies that the allegations are complete and states the "Hunt the Stone" image clearly identifies the source of the ad as Keystone Light. MillerCoors denies the ads differ drastically from previous advertising for the contest, such as the 2015 "HUNT FOR THE GREAT WHITE 'STONE" contest, beyond the use of the refreshed Keystone visuals. MillerCoors denies the remaining allegations in paragraph 55.

56.    **PLAINTIFF**: It is beyond doubt that any day now, Keystone intends to drop the "Key" prefix altogether.

**ANSWER**: MillerCoors denies the allegation in paragraph 56.

### 3.    MillerCoors Is Brewing Confusion

57.    **PLAINTIFF**: MillerCoors has long coveted the STONE® mark.  For years, Stone's incontestable registration has stood as an obstacle to Keystone's marketing efforts, preventing use of "STONE"-

centric branding.  Now, MillerCoors is willfully infringing the STONE® mark in a calculated attempt to dilute it beyond repair.

**ANSWER**:  MillerCoors denies the allegation in paragraph 57, and states that MillerCoors and Coors used the STONE and STONES nickname in connection with Keystone advertising prior to Stone Brewing's use of STONE and continuously since.

58.   **PLAINTIFF**: In September 2007, MillerCoors applied to register the mark "STONES" with the USPTO for use in connection with Keystone Light (U.S. Serial No. 77/284,994).  The USPTO refused to register the mark for the obvious reason that "STONES" was likely to be confused with STONE® when used on beer.  The USPTO's office action *explicitly cited* the incontestable STONE® registration as the basis for its refusal, putting MillerCoors on formal notice of Stone's rights (in the unlikely event it was not aware of them already).

**ANSWER**:  MillerCoors admits it filed an application to register the mark STONES with the USPTO in September 2007.  MillerCoors admits the USPTO issued an office action against MillerCoors' application that cited Stone Brewing's mark.  MillerCoors denies that the USPTO refused to register the mark, and states MillerCoors did not file a response to the USPTO's office action.  MillerCoors denies that this put MillerCoors on formal notice that Stone Brewing had superior rights to MillerCoors' rights for STONE or STONES based on MillerCoors' prior and continuous use. MillerCoors denies the remaining allegations in paragraph 58.

59.   **PLAINTIFF**: Tellingly, MillerCoors did not dispute the USPTO's determination that its "STONES" mark would infringe STONE® when used in connection with Keystone Light.  MillerCoors

instead abandoned its application, admitting that confusion with STONE® beer was likely.

**ANSWER**:  MillerCoors denies that MillerCoors did not dispute the USPTO's determination or that it admitted any confusion with Stone Brewing's mark was likely.  MillerCoors admits that it did not file a response to the USPTO's office action.  MillerCoors denies the remaining allegations in paragraph 59.

60.  **PLAINTIFF**: By the time MillerCoors launched its recent deceptive rebranding of Keystone, it had thus been on notice of Stone's rights in the STONE® mark for at least a decade.

**ANSWER**:  MillerCoors denies that the refreshed Keystone visuals are a "rebranding of Keystone" or deceptive.  MillerCoors admits it knew of Stone Brewing's trademark, but denies that Stone Brewing had superior rights to MillerCoors' rights for STONE or STONES based on MillerCoors' (and Coors') prior and continuous use.  MillerCoors denies the remaining allegations in paragraph 60.

61.  **PLAINTIFF**: MillerCoors and its executives were, and are, keenly aware of the STONE® brand and its rich craft heritage.  In fact, MillerCoors has published articles on its own "Behind the Beer" Blog recognizing Stone as a "nationally distributed brewer[]" and one of the "biggest and most well-established craft brewers."  Against this backdrop, Defendants' current infringement is plainly willful.

**ANSWER**:  MillerCoors denies that it has infringed Stone Brewing's mark or that any infringement was willful.  MillerCoors admits it knew of Stone Brewing.  MillerCoors' blog articles speak for themselves and no response is required to the allegations regarding the blog article.  To the extent a response is required, MillerCoors denies

the allegations are complete.  MillerCoors denies the remaining allegations in paragraph 61.

62.  **PLAINTIFF**: By designing their own campaign to capture the STONE® mark and associated goodwill, MillerCoors seeks to mislead consumers:  about the source of MillerCoors's "Keystone," the heritage of Stone's beers, and whether STONE® is just another member of MillerCoors's craft brew holding company.

**ANSWER**:  MillerCoors denies the allegations in paragraph 62.  MillerCoors' refresh of the Keystone visuals did not seek to "capture" Stone Brewing's mark.  MillerCoors did not seek to mislead consumer about the source of Keystone as COORS BREWING COMPANY is displayed on every can and outer package of Keystone.

63.  **PLAINTIFF**: MillerCoors's deliberate infringement is likely to succeed in causing confusion.  Not only does MillerCoors's new "STONE" branding copy the STONE® mark verbatim, but the companies' beers compete head-to-head in store aisles across the country.  In the high-velocity beer market, where consumers make quick decisions between a proliferating array of brands, the effects of even initial confusion are likely to be momentous.

**ANSWER**:  MillerCoors denies that the refreshed Keystone visuals are likely to cause confusion of any sort.  MillerCoors denies that it copied Stone Brewing's mark "verbatim."  MillerCoors denies that Keystone and Stone Brewing's beers "compete head-to-head in store aisles across the country."  MillerCoors denies that it has infringed Stone Brewing's mark and that any alleged infringement was deliberate.  MillerCoors denies any remaining allegations in paragraph 63 because it lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations.

64.    **PLAINTIFF**: Confusion is just as likely outside of stores. The two brands use identical distribution and marketing channels, with STONE® and Keystone beers sharing the same distributors in many areas of the country.  In the marketing arena, MillerCoors launched its rebranding offensive on social media – precisely the grassroots advertising medium that STONE® has used for years to cultivate support.

**ANSWER**:  MillerCoors denies that the refreshed Keystone visuals are likely to cause confusion.  MillerCoors admits that Keystone beer and Stone Brewing beer use the same distributors in some areas of the country. MillerCoors denies the remaining allegations in paragraph 64.

65.    **PLAINTIFF**: Beyond its new "STONE" cans, MillerCoors is admittedly seeking to establish "STONE" as a trademark and source identifier for its "new Keystone" brand.  If this gambit succeeds, a bar or restaurant patron asking for a tasty STONE® brew will be just as likely to receive Keystone's watered-down imitation of beer in its place.  The STONE® mark has grown to its present strength because consumers trust that STONE® will never let them down in this manner.

**ANSWER**:  MillerCoors denies the allegations in paragraph 65.

66.    **PLAINTIFF**: In recent weeks, Stone has received consumer inquiries showing that MillerCoors's escalating infringement is indeed brewing confusion in the marketplace.  In December 2017, for example, a consumer reached out to Stone to inquire about the brewery's new "**STONE LITE**" product – a non-existent beer that appears only in MillerCoors's deceptive advertising.

**ANSWER**:  MillerCoors denies that it has infringed Stone Brewing's mark or that there is confusion in the marketplace.

MillerCoors denies the remaining allegations in paragraph 65 because it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

67.   **PLAINTIFF**: Even such minor instances can have significant effects undermining Stone's reputation for independence. Stone has earned a reputation for bold, high-quality artisan beers under the STONE® brand.  Keystone has not.  By copying STONE®, MillerCoors aims now to not only diminish Stone's trademark rights but to capitalize upon STONE®'s artisanal reputation and image.

**ANSWER**:  MillerCoors denies that it has copied Stone Brewing's mark.  MillerCoors denies that it aims to diminish Stone Brewing's trademark rights or capitalize on Stone Brewing's image.  MillerCoors denies the remaining allegations in paragraph 67.

**CLAIMS FOR RELIEF**

**First Claim for Relief**
**FEDERAL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**
**(As to All Defendants)**

68.   **PLAINTIFF**: Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

**ANSWER**:  MillerCoors incorporates by references its answers set forth in each of the preceding paragraphs as if fully stated here.

69.   **PLAINTIFF**: Plaintiff owns all right, title, and interest in the registered trademark STONE®, which it has continuously used in commerce since at least 1996.

**ANSWER**:  MillerCoors denies the allegations in paragraph 69.

70.   **PLAINTIFF**: Through the conduct alleged above, Defendants' unauthorized use in commerce of STONE® infringes

Plaintiff's rights in the mark and violates 15 U.S.C. § 1114 because it renders Defendants' products confusingly similar to the well-known STONE® mark and beers.  Defendants' unauthorized use of STONE® creates the erroneous impression in consumers' minds that Defendants' Keystone products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the STONE® mark.

**ANSWER**:  MillerCoors denies the allegations in Paragraph 70.

71.   **PLAINTIFF**: Defendants' actions are a paradigmatic case of infringement under the factors enunciated in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), for at least the following reasons:

a.   Defendants' copying of the STONE® mark is intentional.  Defendants have themselves admitted that "STONE"-centric branding such as "STONES" is likely to confuse consumers when used in connection with Keystone beer.

b.   The STONE® mark is inherently distinctive, incontestable, famous, and commercially strong.

c.   Defendants' infringing "STONE" mark is a verbatim copy of Plaintiff's genuine STONE® mark.

d.   The parties already compete directly in beer aisles, coolers, bars, and restaurants across the country.

e.   The extent of the parties' competition will only grow as Stone continues its national and international growth.

f.   The parties share identical marketing and distribution channels.

g.   The parties compete in a high-velocity market where the impact of initial consumer confusion is likely to be high.

       h.     Plaintiff has received consumer inquiries indicating that confusion is occurring in the marketplace.

       i.     Defendants' intentional copying of Plaintiff's mark is itself strong evidence that the infringing products are confusing consumers across the country.

**ANSWER**:  MillerCoors denies the allegations in paragraph 71.

72.    **PLAINTIFF**: Defendants' imitation and unauthorized use of STONE® is causing irreparable injury to Plaintiff by, *inter alia,* destroying consumers' unique association of the STONE® mark with Plaintiff's products.

**ANSWER**:  MillerCoors denies the allegations in paragraph 72.

73.    **PLAINTIFF**: Plaintiff has no adequate remedy at law for Defendants' misconduct.  Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

**ANSWER**:  MillerCoors denies the allegations in paragraph 73.

74.    **PLAINTIFF**: Plaintiff also is entitled to recover from Defendants any gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

**ANSWER**:  MillerCoors denies the allegations in paragraph 74.

75.    **PLAINTIFF**: Defendants' intentional and willful misconduct renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

**ANSWER**:  MillerCoors denies the allegations in paragraph 75.

**Second Claim for Relief**
**FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)**
**(As to All Defendants)**

76.    **PLAINTIFF**: Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

**ANSWER**:  MillerCoors incorporates by references its answers set forth in each of the preceding paragraphs as if fully stated here.

77.    **PLAINTIFF**: Plaintiff owns all right, title, and interest in the registered trademark STONE®, which it has continuously used in commerce since at least 1996.

**ANSWER**:  MillerCoors denies the allegations in paragraph 77.

78.    **PLAINTIFF**: Through the conduct alleged above, Defendants' unauthorized use in commerce of STONE® infringes Plaintiff's rights in the mark and violates 15 U.S.C. § 1114 because it renders Defendants' products confusingly similar to the well-known STONE® mark and beers.  Defendants' unauthorize use of STONE® creates the erroneous impression in consumers' minds that Defendants' *Keystone* products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the STONE® mark.  Such use constitutes a false designation of origin within the meaning of 15 U.S.C.§ 1125(a).

**ANSWER**:  MillerCoors denies the allegations in paragraph 78.

79.    **PLAINTIFF**: On information and belief, Defendants chose to use the STONE® mark on Keystone products with the intent to cause confusion among consumers and to deceive them into believing that Defendants' products are made by, endorsed by, or otherwise associated with Plaintiff or STONE® beers.

**ANSWER**:  MillerCoors denies the allegations in paragraph 79.

80.   **PLAINTIFF**: Defendants have profited from their unfair competition, and Plaintiff has suffered damages in amount to be proven at trial.

**ANSWER**:  MillerCoors denies the allegations in paragraph 80.

81.   **PLAINTIFF**: Defendants' intentional and willful misconduct in misleading U.S. consumers renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

**ANSWER**:  MillerCoors denies the allegations in paragraph 81.

82.   **PLAINTIFF**: Defendants' infringement is causing irreparable harm by confusing consumers and enabling Defendants to unlawfully profit by trading off of Plaintiff's STONE® mark.  Plaintiff will continue to suffer such harm unless Defendants' infringing conduct is enjoined by this Court.

**ANSWER**:  MillerCoors denies the allegations in paragraph 82.

**Third Claim for Relief**
**TRADEMARK DILUTION – 15 U.S.C. § 1125(c)**
**(As to All Defendants)**

83.   **PLAINTIFF**: Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

**ANSWER**:  MillerCoors incorporates by references its answers set forth in each of the preceding paragraphs as if fully stated here.

84.   **PLAINTIFF**: The STONE® mark is distinctive and famous in that it is widely recognized by the general consuming public as a designation of the source of Plaintiff's goods.

**ANSWER**:  MillerCoors denies the allegations in paragraph 84.

85.   **PLAINTIFF**: On information and belief, Defendants'
unauthorized use of the STONE® mark began after the STONE® mark
became famous.

    **ANSWER**:  MillerCoors denies the allegations in paragraph 85.

86.   **PLAINTIFF**: Defendants' continued unauthorized use of
STONE® mark is likely to cause injury to Plaintiff's business
reputation and/or the dilution of the distinctive quality of Plaintiff's
famous mark and brand.

    **ANSWER**:  MillerCoors denies the allegations in paragraph 86.

87.   **PLAINTIFF**: Defendants' acts have caused, and if not
enjoined will continue to cause, irreparable and continuing harm to
Plaintiff's STONE® mark, business, reputation, and goodwill.  Plaintiff
has no adequate remedy at law because monetary damages are
inadequate to compensate Plaintiff for the injuries caused by
Defendants.

    **ANSWER**:  MillerCoors denies the allegations in paragraph 87.

### Fourth Claim for Relief
### TRADEMARK DILUTION – Cal. Bus. & Prof. Code § 14247, *et seq.*
### (As to All Defendants)

88.   **PLAINTIFF**: Plaintiff incorporates by reference the facts
and allegations set forth in each of the preceding paragraphs as though
fully set forth herein.

    **ANSWER**:  MillerCoors incorporates by reference its answers set
forth in each of the preceding paragraphs as if fully stated here.

89.   **PLAINTIFF**: The STONE® mark is distinctive and famous
in that it is widely recognized by the general consuming public of
California, including in this District and its environs, and as a
designation of the source of Plaintiff's goods.

**ANSWER**:  MillerCoors denies the allegations in paragraph 89.

90.   **PLAINTIFF**: On information and belief, Defendants' unauthorized use of STONE® mark began after the STONE® mark became famous.

**ANSWER**:  MillerCoors denies the allegations in paragraph 90.

91.   **PLAINTIFF**: Defendants' continued unauthorized use of STONE® mark is likely to cause injury to Plaintiff's business reputation and/or the dilution of the distinctive quality of Plaintiff's famous mark and brand.

**ANSWER**:  MillerCoors denies the allegations in paragraph 91.

92.   **PLAINTIFF**: Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiff's STONE® mark, business, reputation, and goodwill.  Plaintiff has no adequate remedy at law because monetary damages are inadequate to compensate Plaintiff for the injuries caused by Defendants.

**ANSWER**:  MillerCoors denies the allegations in paragraph 92.

**Fifth Claim for Relief**
**UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, *et seq.***
**(As to All Defendants)**

93.   **PLAINTIFF**: Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

**ANSWER**:  MillerCoors incorporates by reference its answers set forth in each of the preceding paragraphs as if fully stated here.

94.   **PLAINTIFF**: Defendants' unauthorized use of the STONE® mark in a manner that is likely to confuse and deceive consumers is

unlawful, unfair, and/or fraudulent and constitutes unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

**ANSWER**:  MillerCoors denies the allegations in paragraph 94.

95.    Defendants have profited from their unfair competition, and Plaintiff has suffered damages in an amount to be proven at trial.

**ANSWER**:  MillerCoors denies the allegations in paragraph 95.

96.    **PLAINTIFF**: Defendant's infringement is causing irreparable harm by confusing consumers and enabling Defendant to unlawfully profit by trading off of Plaintiff's STONE® mark.  Plaintiff will continue to suffer harm unless Defendants' infringing conduct is enjoined by this Court.

**ANSWER**:  MillerCoors denies the allegations in paragraph 96.

### Sixth Claim for Relief
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201-2202
### (As to All Defendants)

97.    **PLAINTIFF**: Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

**ANSWER**:  MillerCoors incorporates by reference its answers set forth in each of the preceding paragraphs as if fully stated here.

98.    **PLAINTIFF**: Defendants' ongoing use of "STONE" in connection with its *Keystone* beer products infringes the registered STONE® mark.

**ANSWER**:  MillerCoors denies the allegations in paragraph 98.

99.    **PLAINTIFF**: Defendants are engaged in activities directed towards further unauthorized use of the STONE® Mark in commerce in a manner that is likely to cause confusion among the relevant public

that Defendants' *Keystone* beers are affiliated with, or related to, Plaintiff's STONE® beers.

**ANSWER**:  MillerCoors denies the allegations in paragraph 99.

100.  **PLAINTIFF**: As such, there is a substantial, immediate and justiciable controversy between the parties in that Defendants seek to use the STONE® mark in connection with beer, while Plaintiff contends that such use infringes and dilutes Plaintiff's registered marks.

**ANSWER**:  MillerCoors denies the allegations in paragraph 100.

101.  **PLAINTIFF**: Plaintiff accordingly seeks in the alternative a declaratory judgment that further use by Defendants of the STONE® mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the STONE® Mark.

**ANSWER**:  Paragraph 101 is Stone Brewing's characterization of its claims and no response is required.  To the extent a response is required, MillerCoors denies the allegations in paragraph 101.

## PRAYER FOR RELIEF

**PLAINTIFF**: **WHEREFORE**, Plaintiff Stone Brewing Co., LLC prays that the Court order and/or issue the following relief:

A.    Preliminarily and permanently enjoin Defendants from using the STONE® mark in connection with the sale, marketing or distribution of beer.

B.    Award Plaintiff its amount of damages and/or the amount of Defendants' profits arising from Defendant's unauthorized use of the STONE® Mark in the United States, pursuant to 15 U.S.C. § 1117 and under other applicable federal and/or state law.

C.    Award Plaintiff three times its actual damages according to proof, as well as the costs of this action, in accordance with 15 U.S.C. § 1117 and under other applicable federal and/or state law.

D.    Find this action to be an "exceptional case" such that Plaintiff be awarded its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and under other applicable federal and/or state law.

E.    Declare that Defendants' continued unauthorized use of the STONE® Mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the mark.

F.    Award Plaintiff such other and further relief as this Court deems equitable and proper.

**ANSWER**:  MillerCoors denies that Stone Brewing has raised any valid claims entitling Stone Brewing to any relief, and denies that Stone Brewing is entitled to any relief.

## GENERAL ANSWER

MillerCoors denies any allegation in the Complaint not specifically admitted.

## AFFIRMATIVE DEFENSES

1.    By alleging the Affirmative Defenses set forth below, MillerCoors does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.  For its Affirmative Defenses to Plaintiff's Complaint, MillerCoors alleges as follows:

## FIRST AFFIRMATIVE DEFENSE
## (Failure to State a Claim)

2.    The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
## (Prior Use)

3.    Stone Brewing's claims made in the Complaint and the relief sought are barred on the basis of MillerCoors' (through its predecessor

Coors's) prior use of STONE and STONES in connection with the advertisement and sale of Keystone beer.

4.      MillerCoors (through its predecessor Coors) began selling Keystone beer nationally in 1989.

5.      Keystone customers have long referred to Keystone beer by the nickname STONE or STONES.

6.      Upon information and belief, MillerCoors (through its predecessor Coors) used STONE in Keystone advertising starting in at least 1992–1993.

7.      MillerCoors (through its predecessor Coors) sold cases of Keystone beer labeled STONES starting in at least 1995.

8.      Stone Brewing was founded in 1996.  Stone Brewing sold its first keg of beer on July 26, 1996 and did not begin bottling its beer until June 1997.  Stone Brewing did not begin selling six packs of bottled beer until April 7, 1999.  Stone Brewing did not begin selling cans of beer in the United States until June 2016.

9.      Upon information and belief, Stone Brewing's beer sales were limited to a small geographic area, such as the San Diego, California area, for most of Stone Brewing's early history.  Stone Brewing sold its beers for the first time on the East Coast on March 12, 2003, and only then at a limited tasting event at a bar in New York, New York.  Stone Brewing sold its beers for the first time in Chicago, Illinois on April 1, 2010.

10.     MillerCoors (through its predecessor Coors) used STONE and STONES to sell Keystone beer before Stone Brewing used STONE to sell beer.  MillerCoors not only used STONE and STONES first, MillerCoors' use was national in scope.

COUNTERCLAIMS AND ANSWER

### **THIRD AFFIRMATIVE DEFENSE**

### **(Laches)**

11.     Stone Brewing's claims made in the Complaint are barred by laches due to Plaintiff's unreasonable delay in bringing its claims despite full awareness of MillerCoors' actions for at least eight years before bringing suit.

12.     MillerCoors (through its predecessor Coors) has used STONE and STONES to sell Keystone beer prior to Stone Brewing's use.

13.     In 2010, Stone Brewing objected to MillerCoors' use of "STONE, STONES, and HOLD MY STONES" to sell Keystone beer. Stone Brewing's attorney sent a cease and desist letter to MillerCoors demanding MillerCoors stop using "STONE, STONES, and HOLD MY STONES" to sell Keystone beer, and objected to MillerCoors to registering the trademark HOLD MY STONES.

14.     MillerCoors' attorneys responded by letter, explaining MillerCoors' (and Coors') long history and use of STONE and STONES to sell Keystone beer. MillerCoors' attorneys made clear that MillerCoors did not intend to modify its marketing campaigns for Keystone or otherwise stop using STONE or STONES. Stone Brewing's attorneys did not voice any further objection to MillerCoors' use of STONE and STONES until Stone Brewing filed this Complaint.

15.     MillerCoors reasonably believed that Stone Brewing no longer objected to MillerCoors' use of STONE and STONES based on MillerCoors' long history and use of these terms. Since 2010, MillerCoors has launched multiple marketing campaigns that centered around the Keystone nicknames STONE and STONES.

16.    Stone Brewing unreasonably delayed asserting any claims it had by waiting eight more years to file a lawsuit.  MillerCoors would be heavily prejudiced by Stone Brewing's lawsuit now—eight years later—because MillerCoors reasonably relied on Stone Brewing's lack of an objection and has heavily invested in multiple marketing campaigns that center around the Keystone nicknames STONE and STONES.

## FOURTH AFFIRMATIVE DEFENSE
### (Non-Infringement)

17.    Stone Brewing's claims made in the Complaint fail because MillerCoors has not infringed any of Stone Brewing's trademarks under federal or state law.

## FIFTH AFFIRMATIVE DEFENSE
### (Trademark)

18.    Stone Brewing's claims made in the Complaint fail because Stone Brewing cannot object to MillerCoors' use of its KEYSTONE trademark.

19.    Keystone beer cans and packaging are labeled with MillerCoors' KEYSTONE trademark.

20.    MillerCoors' KEYSTONE trademark was registered in 1991 and reached incontestable status before Stone Brewing sold its first STONE beer.

21.    MillerCoors has the exclusive right to use KEYSTONE in connection with the sale of beer, and Stone Brewing cannot prevent MillerCoors from using its KEYSTONE mark by alleging it infringes Stone Brewing's STONE mark.

COUNTERCLAIMS AND ANSWER

## SIXTH AFFIRMATIVE DEFENSE

## (Waiver, Acquiescence, and Estoppel)

22.     Stone Brewing's claims made in the Complaint fail because of waiver, acquiescence, and estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

## (Statute of Limitations)

23.     Stone Brewing's claims made in the Complaint fail, in whole or in part, by the applicable statute of limitations.

## RESERVATION OF ADDITIONAL DEFENSES

24.     MillerCoors reserves the right to assert any and all additional defenses based on information learned or obtained during discovery.

COUNTERCLAIMS AND ANSWER

Respectfully submitted,

**MillerCoors LLC**

Dated: April 10, 2018

*/s/ Natalie Hanlon Leh*

Natalie Hanlon Leh (*pro hac vice*;
CO Bar# 18824)
natalie.hanlonleh@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
Telephone: (720) 274-3135
Facsimile:  (720) 274-3133

Vinita Ferrera (*pro hac vice*;
MA Bar# 631190)
vinita.ferrera@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000

Christopher T. Casamassima (SBN
#211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile:  (213) 443-5400

*Attorneys for Defendants MillerCoors
LLC*

COUNTERCLAIMS AND ANSWER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2018, I electronically transmitted the foregoing Answer and Counterclaim to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

/s/ *Natalie Hanlon Leh*
Natalie Hanlon Leh

COUNTERCLAIMS AND ANSWER