1   J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2   J. Tobias Rowe, Esq. (SBN: 305596)
       rowe@braunhagey.com
3   Rebecca B. Horton, Esq. (SBN: 308052)
       horton@braunhagey.com
4   BRAUNHAGEY & BORDEN LLP
    220 Sansome Street, 2nd Floor
5   San Francisco, CA 94104
    Telephone:  (415) 599-0210
6   Facsimile:  (415) 276-1808

7
    ATTORNEYS FOR PLAINTIFF
8   STONE BREWING CO., LLC

9

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12

13

14   STONE BREWING CO., LLC,              Case No. 18-cv-0331-BEN-JMA

15        Plaintiff / Counterclaim        **AMENDED MEMORANDUM OF**
          Defendant,                      **POINTS AND AUTHORITIES IN**
16                                        **SUPPORT OF PLAINTIFF STONE**
              v.                          **BREWING CO., LLC'S MOTION**
17                                        **TO DISMISS AND/OR STRIKE**
                                          **DEFENDANT MILLERCOORS**
18   MILLERCOORS LLC,                     **LLC'S COUNTERCLAIMS**

19        Defendant / Counterclaim        **Date:**  June 18, 2018
          Plaintiff.                      **Time**:  10:30 a.m.
20                                        **Judge:** Hon. Roger T. Benitez

21                                        **Complaint filed:** February 12, 2018

22

23

24

25

26

27

28

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

# **TABLE OF CONTENTS**

INTRODUCTION....................................................................................................1

STATEMENT OF FACTS ......................................................................................3

    A.    Stone Registers the Mark STONE® with the USPTO in 1996 ............3

    B.    Defendant's Struggle to Promote Its Fizzy Yellow Beer ....................4

    C.    Defendant's Vacillating Marketing Efforts .........................................5

    D.    MillerCoors' 2017 Campaign to Rebrand and Co-Opt the
STONE® Mark .....................................................................................6

    E.    Procedural History ...............................................................................7

ARGUMENT ...........................................................................................................7

I.    THE FIRST, SECOND AND THIRD COUNTERCLAIMS SERVE NO
USEFUL PURPOSE AND SHOULD BE DISMISSED OR STRICKEN.....8

    A.    The Court Need Not Allow Declaratory Relief Counterclaims that
Are Entirely Duplicative of Existing Claims and Defenses ................9

    B.    The First Counterclaim is Redundant of MillerCoors' Second
Affirmative Defense and of Stone's Claims .......................................10

    C.    The Second Counterclaim is Redundant of the Third Affirmative
Defense................................................................................................11

    D.    The Third Counterclaim is Entirely Redundant.................................12

II.    DEFENDANT'S FOURTH COUNTERCLAIM SHOULD BE
DISMISSED ...................................................................................................14

    A.    MillerCoors Has Not Alleged All the Elements Necessary to
Challenge an Incontestable Federal Mark..........................................14

        1.    MillerCoors Fails to Allege That It Began Using the
STONE Mark Prior to Its Registration by Stone.....................15

        2.    MillerCoors Fails to Allege Continuous Use ...........................17

        3.    MillerCoors Fails to Allege, and in Fact, Affirmatively
Denies, Likelihood of Confusion..............................................18

    B.    MillerCoors' Delay in Bringing its 21-Year-Old "Common Law"
Counterclaim is Fatal .........................................................................19

III.    LEAVE TO AMEND SHOULD BE DENIED .............................................20

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Apple, Inc. v. Samsung Elecs. Co., Inc.*,
   2011 WL 4948567 (N.D. Cal. Oct. 28, 2011) ....................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................. 7, 8

*Baby Trend, Inc. v. Playtex Prod.*, LLC,
   No. 5:13-CV-647-ODW RZX, 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013). ...... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................... 7

*Bridgestone/Firestone Research Inc. v. Automobile Club De L'Quest De La France*,
   245 F.3d 1359 (Fed. Cir. 2001) ................................................................................ 19

*Brookfield Comm'ns v. West Coast Entertainment*,
   174 F. 3d 1036 (9th Cir. 1999) ........................................................................... 18, 19

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
   493 F.2d 709 (9th Cir. 1974) .............................................................................. 15, 17

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*,
   911 F.2d 242 (9th Cir. 1990)…………......................................................................20

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
   870 F. 2d 512 (9th Cir. 1989) ................................................................................... 14

*Davis v. Powell*,
   901 F. Supp. 2d 1196 (S.D. Cal. 2012) ...................................................................... 7

*Dorpan, S.L. v. Hotel Melia, Inc.*,
   728 F.3d 55 (1st Cir. 2013)................................................................................... 18, 19

*Englewood Lending, Inc. v. G&G Coachella Investments, LLC*,
   651 F.Supp.2d 1141 (C.D. Cal. 2009) ....................................................................... 9

*Estate of P. D. Beckwith, Inc. v. Commissioner of Patents*,
   252 U.S. 538 (1920)................................................................................................... 16

*Hal Roach Studios v. Richard Feiner & Co.*,
   896 F. 2d 1542 (9th Cir. 1990) ................................................................................... 9

*Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*,
   811 F.2d 1470 (Fed. Cir. 1987) .......................................................................... 15, 16

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ...................................................................................... 9

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
   301 F.R.D. 337 (N.D. Cal. 2014) ............................................................................... 8

*Riot Games Merchandise, Inc. v. Tri-Force Sales, LLC*,
   No. 2:15-cv-05817-ODW(Ex), 2015 WL 13344626 (C.D. Cal. Dec. 1, 2015)
   ............................................................................................................................ passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Sidney–Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ................................................................. 8
*Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*,
   No. 00 CIV. 7685 (DC), 2001 WL 736794, (S.D.N.Y. June 29, 2001)..............19
*Spin Master, Ltd. v. Zobmondo Entertainment, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012) ................................................. 17
*Stickrath v. Globalstar, Inc.*,
   No. C07–1941 THE, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ................ 9, 10
*Watec Co., Ltd. v. Liu*,
   403 F.3d 645 (9th Cir. 2005) ............................................................ 15
*Whittlestone, Inc. v. Handi–Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ............................................................. 8

## STATUTES

15 U.S.C. § 1065 ..................................................................... 15, 17
15 U.S.C. § 1115(b) ...................................................................... 14
15 U.S.C. §1052(d) ........................................................................ 5
28 U.S.C. § 2201 ........................................................................ 1, 9

## RULES

Fed. R. Civ. P. 12(f)...................................................................... 8, 9

## OTHER AUTHORITIES

5 *Mc*Carthy on Trademarks & Unfair Competition § 26:27 ..................... 18
5 McCarthy on Trademarks and Unfair Competition § 19:52 ................... 15
5 McCarthy on Trademarks and Unfair Competition § 23:41 ................... 16
5 McCarthy on Trademarks and Unfair Competition § 26:53 ................... 15

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

1    Pursuant to Rule 12(b)(6) and 12(f), Plaintiff Stone Brewing Co., LLC
2  ("Plaintiff" or "Stone") respectfully moves to dismiss and/or strike Defendant
3  MillerCoors LLC's superfluous and otherwise infirm Counterclaims.

4                              **INTRODUCTION**

5    Plaintiff Stone is a San Diego-based craft brewer that has sold its artisanal
6  STONE® beers nationwide for over two decades.  Stone filed this action to protect
7  its incontestable federally-registered tradename against Defendant MillerCoors, who
8  recently rebranded its "Keystone" beer as "STONE."

9    Defendant's 82-page response to the Complaint (Dkt. 19, the "Answer/CC") is
10  a blunderbuss attempt to turn supposed affirmative defenses into mirror-image
11  counterclaims that needlessly multiply these proceedings and fail to satisfy the
12  Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA").  *See, e.g., Riot Games*
13  *Merchandise, Inc. v. Tri-Force Sales, LLC*, No. 2:15-cv-05817-ODW(Ex), 2015 WL
14  13344626, at *2 (C.D. Cal. Dec. 1, 2015) (striking DJA counterclaim where
15  "Defendant's counterclaim for a judicial declaration … simply restates its defense to
16  Plaintiff's claim in affirmative language.")

17    Defendant's first three counterclaims (Answer/CC at 24-27) should be stricken
18  and/or dismissed as infirm under the DJA because they add nothing to the case and
19  waste judicial and party resources on multiplied proceedings.  The First
20  Counterclaim seeks a declaration of Defendant's "prior use" and right to use
21  "STONE and STONES to advertise Keystone Beer".  However, this is duplicative of
22  Defendant's Second Affirmative Defense of "Prior Use", which Defendant explicates
23  in seven paragraphs in its Answer/CC.  It also is duplicative of Defendant's Fourth
24  Affirmative Defense of "Non-Infringement".  Similarly, the Second Counterclaim
25  seeks declaratory relief that Stone's trademark is "unenforceable" due to "laches."
26  The claim and allegations are redundant of the Third Affirmative Defense of
27  "Laches" and Fourth Affirmative Defense of "Non-Infringement".  And, the Third
28  Counterclaim seeks declaratory relief of "non-infringement" based on Defendant's

1   "prior use" of "STONE or STONES in its Keystone advertising."  Again, the

2   allegations and requested relief are duplicative of Defendant's Second and Fourth

3   Affirmative Defenses for "Prior Use" and "Non-Infringement", respectively.

4          Finally, Defendant's Fourth Counterclaim also should be dismissed as a matter

5   of law.  The claim seeks declaratory relief from Stone's incontestable STONE®

6   trademark based on Defendant's supposed common law "exclusive right to use the

7   Stone Mark." (Answer/CC at 7:20-21).  Not only is the claim decades stale, *i.e.*, just

8   like Defendant's marketing of "smooth" light beer, but also fails to satisfy basic

9   pleading requirements to state a cause of action.

10         As an initial matter, the claim fails because it does not plead a necessary

11   element for enjoyment of an "exclusive" trademark right.  Namely, Defendant

12   neglects to allege (or admit) that the parties' competing uses are incompatible.  This

13   is fatal because, as a matter of law, there can be no right to exclusivity unless

14   Defendant also alleges that the marks would cause consumer confusion.  Defendant

15   fails to do so and elsewhere contends that no such confusion exists.  It either must

16   dismiss the claim or make the allegation.

17         The counterclaim also must be dismissed because it woefully violates any

18   reasonable application of the statute of limitations or laches.  Stone successfully

19   applied for, and has been using, its incontestable STONE® mark on beer products

20   since 1996, which Defendant concedes.  Defendant also has long known that its use

21   of "STONES" was inferior to Stone's mark when it attempted to register the term

22   over a decade ago in 2007.  The U.S. Patent and Trademark Office ("PTO") rejected

23   Defendant's application "because the applicant's [Defendant's] mark, when used on

24   or in connection with the identified goods, so resembles the mark in U.S.

25   Registration No. 2168093 [Plaintiff's STONE® mark] as to be likely to cause

26   confusion, to cause mistake, or to deceive."  *In re Trademark Application No.*

27   *77284994 – STONES*, PTO Dkt. No. 4060KE-1027 (Dec. 3, 2007) (Declaration of J.

28   Noah Hagey In Support of Request for Judicial Notice (Hagey Decl.) at Ex. 6).

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

1    While not strictly *res judicata*, the PTO's findings put Defendant on notice,

2  particularly after the examining officer concluded that Stone had priority in the field.

3  *Id.*  Defendant later abandoned its PTO application which, in any event, also

4  admitted that Defendant's "first use" date of "STONES" was on or about 2004,

5  almost a decade after Stone's launch and federal registration.  (Hagey Decl. at Exs. 4

6  and 5).  Accordingly, the Fourth Counterclaim, which seeks wholly implausible and

7  time barred relief, should be dismissed.

8    For the foregoing reasons and those which follow, the Court should dismiss

9  and/or strike each of Defendant's infirm counterclaims.

10                    **STATEMENT OF FACTS**

11    The indisputable and/or admitted facts supporting this Motion are found in

12  Defendant's Answer and Counterclaims, together with the indisputable evidence

13  appended to Stone's Request for Judicial Notice ("RJN").

14    **A.    Stone Registers the Mark STONE® with the USPTO in 1996**

15    Stone was founded in the mid-1990s by Steve Wagner and Greg Koch amidst a

16  beer market dominated by big beer companies such as Defendant MillerCoors.

17  (Answer/CC at 2:7; 10:3, 8-9; 14:16-17).

18    As the business plans of Stone began to solidify, Stone recognized that the

19  creation of a brand required vigilance.  Accordingly, on April 4, 1996, Stone filed its

20  trademark application for "STONE" with the PTO, which was granted on June 23,

21  1998. (Hagey Decl. at Ex. 1; Answer/CC at 14:16-17; 31:4-6; 41:19-20).  On June

22  28, 2008, the PTO accepted Stone's Combined Declaration of Use and

23  Incontestability for STONE®, rendering the mark incontestable as a matter of law.

24  (Hagey Decl. at Exs. 2 and 3).

25    Today, STONE® beer is sold in thousands of stores, bars and restaurants

26  throughout the country and world.  (Answer/CC at 6:5-9; 32:28-33:2).  Stone also

27  runs three thriving *Stone Brewing World Bistro & Garden™*: one in San Diego, one

28  in Virginia, and in the international heart of beer, Berlin, Germany.  (Answer/CC

at 2:7-10; 6:5-9). And since its rebellious origins to its international popularity today, the key identifier of Plaintiff's beer has, and continues to be, the STONE® Mark. (Answer/CC at 7:4; 11:1; 41:5-6; 54:11-12; 64:12-13).

## B.   Defendant's Struggle to Promote Its Fizzy Yellow Beer

Since the release of Keystone beer in 1989, the brand was identified by two features: (i) the word "KEYSTONE" prominently displayed across the can, (ii) against a backdrop of the Colorado Rockies. (Answer/CC at 48:6; 53:25-26). Yet, as craft beer grew in popularity into the 2000s, MillerCoors saw its Keystone brand increasingly losing market share. (Answer/CC at 23:14-17; 49:22-23). Thereafter, MillerCoors instituted various short-lived advertising measures to try to help its KEYSTONE brand, none of which involved a permanent departure from the signature can design – prominent "KEYSTONE" mark with accompanying Colorado Rockies. (Answer/CC at 11:6-13; 17:5-14; 19:8-19; 20:1-8).

In and around the late 1990s, MillerCoors' packaging included the number of beers within a case of KEYSTONE as "30 'Stones.'"[1] (Answer/CC at 12:27-28:17). This packaging never isolating the word "STONES," and the cans continued to feature the two identifiers of the brand – the "KEYSTONE" mark with the Colorado Rockies image.[2] (Answer/CC at 12:27-28:17).

Keystone's historical conduct came to head when it attempted to register "STONES" as a standalone mark in 2007 (the "2007 'STONES Application"). In a lengthy opinion published in December 2007, the PTO expressly rejected the application because it would create substantial consumer confusion with Plaintiff's existing STONE® mark:

---

[1] Defendant supplies an image titled, "1995 *Keystone Light* Outer Packaging (folded flat)." (Answer/CC at 13:3-26). The "folded flat" picture is packaging artwork. The Counterclaim does not allege that such packaging was finalized, much less used in commerce.

[2] Defendant's allegation that it used the word "STONE" in isolation is alleged on information and belief, and only substantiated by a tagline on a "July 1996 Newspaper Ad" which features two cans prominently displaying the primary KEYSTONE mark and the Colorado Rockies imagery, the Ad of which post-dates Plaintiff's application for the STONE® Mark by three (3) months. (Answer/CC at 13:27-14:14).

The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d), because [MillerCoors' "STONE"] mark, when used on or in connection with the identified goods, so resembles [Stone's] mark in U.S. Registration No. 2168093 as to be likely to cause confusion, to cause mistake, or to deceive. TMEP §§1207.01 et seq. See the enclosed registration.

* * *

Since the respective marks are essentially identical, the only issue before the examining attorney is whether the applicant's goods are so related to the registrant's goods that confusion as to source of origin or sponsorship is likely to occur. The examining attorney must conclude that they are so related, for it is foreseeable that customers of the applicant might encounter the registrant's respective goods and mark in the marketplace given similar channels of trade within which the identified goods travel. Specifically, it is likely that the applicant's beer and the registrant's beers and ales will be marketed, advertised and ultimately sold or offered in the same or similar fashions.

**Confusion as to source of origin or sponsorship is** **extremely likely if [MillerCoors'] proposed mark is** **allowed to register. Registration is therefore refused by** **the examining attorney.**

(Answer/CC at 34:12-14, 63:15-18; Hagey Decl. at Ex. 6.)

Equally relevant to its current claims, Defendant admitted that its first use date of "STONES" was only around February 2004. (Hagey Decl. at Ex. 4.) Moreover, the PTO found that Defendant was unable even to provide a genuine specimen of use. (Hagey Decl. at Ex. 6.)

Although the PTO offered Defendant the opportunity to challenge these findings, and "submit[] evidence and arguments in support of registration," Defendant expressly chose not to in the six month period following. (Hagey Decl. at Exs. 4-6; Answer/CC at 63:16-18, 19-20; 64:5-6.) Defendant ultimately abandoned the application on or about June 2008. (Hagey Decl. at Ex. 5.)

## C.   Defendant's Vacillating Marketing Efforts

As the KEYSTONE brand continued to lag in sales, Defendant attempted new campaigns to attract consumer attention. (Answer/CC at 49:22-23.) One such campaign was the "Keith Stone" KEYSTONE campaign in and around 2011.

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

(Answer/CC at 17:28-18:16.)  This short-lived campaign featured a somewhat dubious 20s-something character, whose name, not surprisingly, sounded very similar to the beer it was promoting, Keystone.  (Answer/CC at 17:28-18:16.)  Throughout the (thankfully) fleeting Keith Stone "era," the can continued to feature the two identifiers of the brand – the primary singular "KEYSTONE" mark with the accompanying Colorado Rockies image.  (Answer/CC at 18:5-14.)

During this same time period, Defendant attempted to trademark a "STONE"-related name, and again, was unsuccessful.  Despite full knowledge of the STONE® Mark, Defendant filed an application for "HOLD MY STONES."  (Answer/CC at 15:9-11; 34:12-14; Hagey Decl. at Ex. 8.)  In defense of its STONE® Mark, Plaintiff promptly notified the PTO and Defendant that this registration would be opposed unless the parties reached an agreement.  (Answer/CC at 15:12-15; Hagey Decl. at Ex. 8.)  Instead, Defendant expressly abandoned the entire application six months later. (Answer/CC at 17:11-12; Hagey Decl. at Ex. 8.)

The remainder of Defendant's campaigns were even shorter lived, and **none** of which constituted a departure from the brand-identifying features of the can, the prominent singular "KEYSTONE" Mark against a backdrop of the Colorado Rockies. (Answer/CC at 19:3-26; 48:6; 53:25-26). That is, until 2017.

**D.    MillerCoors' 2017 Campaign to Rebrand and Co-Opt the STONE® Mark**

By 2017, Defendant had utilized all the tricks in its big beer book against Stone and other craft brands.  Facing knowledge that Keystone's historic customer base was decreasingly loyal, Defendant adopted a new plan:  it chose to rebrand the entire design of the Keystone can. (Answer/CC at 21:2-3, 6-7; 22:17; 23:14-19).

Defendant's new can dropped all of the key brand identifiers that had been used on its products since 1989:  the prominent singular "KEYSTONE" mark and Colorado Rockies mountain backdrop.  (Answer/CC at 4:8-24; 22:22; 53:3-5). In its

place, Defendant adopted a new brand name featuring a single word, without the Rockies: "STONE."   (Answer/CC at 59:2-4, 25-27; 60:21-22; 61:15-16; 62:7-8.)



As a result of Keystone's rebranding and co-opt of Stone's mark, Defendant reported a substantial uptick in sales that far outpaced others in the category.  (Hagey Decl. at Ex. 9.)

### E.    Procedural History

Stone filed its Complaint on February 12, 2018.  (Dkt. 1, Complaint).  On April 10, 2018, MillerCoors filed its 82-page Answer/CC, which included four counterclaims improperly seeking various forms of declaratory relief. (Dkt. 19). Stone accordingly is moving to dismiss the four counterclaims as improper, insufficiently alleged and merely constituting mirror images of Stone's complaint and duplicative of MillerCoors' affirmative defenses.

## ARGUMENT

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1208 (S.D. Cal. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "'create[] a suspicion of a legally cognizable right of action[;]'" they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

555 (citations omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "Granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 340 (N.D. Cal. 2014).  A duplicative counterclaim for declaratory judgment causes prejudice and may be stricken when "Plaintiffs would be forced to incur fees drafting duplicative pleadings, discovery, and motions regarding that counterclaim."  *Riot Games Merch., Inc. v. Tri-Force Sales*, LLC, No. 215CV05817ODWEX, 2015 WL 13344626, at *3 (C.D. Cal. Dec. 1, 2015).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* (quoting *Whittlestone, Inc. v. Handi–Craft* Co., 618 F.3d 970, 973 (9th Cir. 2010)).

I. **THE FIRST, SECOND AND THIRD COUNTERCLAIMS SERVE NO USEFUL PURPOSE AND SHOULD BE DISMISSED OR STRICKEN**

In its First, Second and Third Counterclaims, MillerCoors seek declaratory relief in the form of (1) a judicial declaration of its alleged "right to use STONE and STONES to advertise Keystone Beer" (Anser/CC at 24-25); (2) a declaratory judgment that laches precludes Stone from enforcing its STONE® mark against MillerCoors (*id.* at 25-26); and (3) a judicial declaration that MillerCoors' "use of STONE to advertise Keystone beer does not infringe" Stone's STONE® mark.  (*Id.* at 26-27).  These "counterclaims" are merely a repackaging of Stone's claims and MillerCoors' affirmative defenses which serve no useful purpose other than to lard

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

up the record and increase the burden of adjudicating these proceedings, and they should therefore be dismissed.

### A. The Court Need Not Allow Declaratory Relief Counterclaims that Are Entirely Duplicative of Existing Claims and Defenses

Although not specifically styled as such, MillerCoors' declaratory judgment claims are presumably asserted under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction, …. any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." (emphasis added).  "The Declaratory Judgment Act gives the Court the *authority* to declare the rights and legal relations of interested parties, but not a *duty* to do so." *Stickrath v. Globalstar, Inc.*, No. C07–1941 THE, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (citing *Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522, 533 (9th Cir. 2008) (emphasis in original).  Where declaratory relief would serve no useful purpose, "[n]umerous courts have used that discretion to dismiss counterclaims under Fed. Rule Civ. Pro. 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses."  *Id.* at *3.

In determining whether to hear a declaratory judgment claim, the Court should "look[] to the purpose of the Declaratory Judgment Act," which is to empower *potential* defendants threatened with suit to obtain relief as declaratory judgment plaintiffs.  *Englewood Lending, Inc. v. G&G Coachella Investments, LLC*, 651 F.Supp.2d 1141, 1145 (C.D. Cal. 2009) (quoting *Hal Roach Studios v. Richard Feiner & Co.*, 896 F. 2d 1542, 1555 (9th Cir. 1990)) ("the purpose of the Declaratory Judgment Act" is "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.")

When counterclaims for declaratory judgment "are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses," the purpose of the

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

1   Declaratory Judgment Act is not furthered by hearing the counterclaims.  District

2   courts have therefore held that dismissing or striking the counterclaims is

3   appropriate.  *Stickrath*, 2008 WL 2050990, at *3.  "[T]he court should focus on

4   whether the counterclaims 'serve any useful purpose,'" and should dismiss or strike

5   as redundant a counterclaim when "'it is clear that there is a complete identity of

6   factual and legal issues between the complaint and the counterclaim.'"  *Riot Games*

7   *Merchandise, Inc. v. Tri-Force Sales, LLC*, No. 2:15-cv-05817-ODW(Ex), 2015 WL

8   13344626, at *2 (C.D. Cal. Dec. 1, 2015) (quoting *Stickrath*, 2008 WL 2050990 at

9   *4)).

### B. The First Counterclaim is Redundant of MillerCoors' Second Affirmative Defense and of Stone's Claims

10
11   MillerCoors' First Counterclaim seeks a "judicial declaration of its right to use

12   STONE and STONES to advertise Keystone beer" on the grounds that "MillerCoors'

13   continuous use of STONE and STONES predates [Stone]'s use."  (Answer/CC at

14   25:12-13, 19-20.)  The claim is wholly duplicative of MillerCoors' Second

15   Affirmative Defense of "Prior Use", which MillerCoors explicates in considerably

16   greater detail in its subsequent Answer (at 76:25-77:27).  Both the Second

17   Affirmative Defense and First Counterclaim assert that MillerCoors and its

18   predecessors have used "STONE" or "STONES" since a time prior to Stone's

19   application to register its STONE® Mark.  They also seek the same relief – *i.e.*, a

20   determination that MillerCoors is entitled to use "STONE" or "STONES"

21   notwithstanding Stone's incontestable registration for STONE®.  The First

22   Counterclaim merely re-states MillerCoors' Second Affirmative Defense in skeletal

23   form.  It thus fails to "raise legal issues or theories apart from those already before

24   the Court," *Stickrath* at *10, weighing in favor of dismissal.

25   The First Counterclaim is doubly redundant because it is the mirror image of

26   Stone's claims for infringement and declaratory judgment.  The issue of seniority

27   will necessarily be decided in adjudicating Stone's trademark infringement claims,

28

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

including Stone's ownership of "all right, title, and interest in the registered trademark STONE®." (Complaint at 17:22-23.) If that were not enough, Stone's Complaint also expressly requests "declaratory judgment that further use by Defendants of the STONE® mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the STONE® Mark." (Complaint at 22:14-16.)

Further, the litigation of Stone's claims will necessarily determine whether MillerCoors has a "right to use STONE and STONES," by virtue of seniority or otherwise. (Answer/CC at 25:19-20.) Accordingly, the First Counterclaim serves no useful purpose and should be dismissed or stricken. *Apple, Inc. v. Samsung Elecs. Co., Inc.*, 2011 WL 4948567, at *10 (N.D. Cal. Oct. 28, 2011) (striking counterclaim where it "will necessarily be determined in the course of the litigation, and [defendant] has raised the issue sufficiently in its Affirmative Defense.")

### C. The Second Counterclaim is Redundant of the Third Affirmative Defense

In the Second Counterclaim, MillerCoors seeks a declaratory judgment that "laches precludes [Stone] from enforcing the STONE mark against MillerCoors." (Answer/CC at 26:15-17.) This Counterclaim is entirely redundant of MillerCoors' Third Affirmative Defense ("Laches"), in which MillerCoors asserts that Stone's "claims made in the Complaint are barred by laches." (Answer/CC at 78:3-6.)

Like the First Counterclaim, the Second merely re-states an affirmative defense as a declaratory judgment claim distinguished only by its paucity of factual detail. Accordingly, the Second Counterclaim serves no useful purpose and should be dismissed.

The Second Counterclaim is based on the exact same factual allegations in Defendant's Third Affirmative Defense, *i.e.*, that Stone "was aware of MillerCoors' use of 'STONES' in 2010 and sent a letter to MillerCoors" but "failed to bring legal action against MillerCoors until 2018." (Answer/CC at 26:5-9; *c.f.* 13:10-15 ("In

1   2010…Stone Brewing's attorney sent a cease and desist letter to MillerCoors

2   demanding MillerCoors stop using "STONE, STONES, and HOLD MY STONES"

3   to sell Keystone beer.") and 78:16-22 ("Stone Brewing's attorneys did not voice any

4   further objection to MillerCoors' use of STONE and STONES until Stone Brewing

5   filed this Complaint.").)

6       Likewise, both the Second Counterclaim and Third Affirmative Defense are

7   each based on the same legal theory, laches.  MillerCoors asserts that laches apply

8   because Stone's delay in filing suit "was unreasonable in light of the analogous

9   California statute of limitations period of three years" and that because it has

10  "suffered prejudice" due to this delay because it "heavily invested in Keystone

11  visuals and marketing after 2010 that used STONE and STONES."  (Answer/CC at

12  26:10-14; *c.f.* 79:1-6 (alleging that Stone "unreasonably delayed asserting any claims

13  it had by waiting eight more years to file a lawsuit" and MillerCoors would be

14  prejudiced by Stone's lawsuit because it "heavily invested in multiple marketing

15  campaigns that center around the Keystone nicknames STONE and STONES").

16      There is no material difference in the factual allegations raised or relief sought

17  by the Second Counterclaim and Third Affirmative Defense.  Because the Second

18  Counterclaim and Third Affirmative Defense are based on identical facts and legal

19  theories, the Second Counterclaim does not "serve any useful purpose" and should be

20  dismissed or stricken.  *Riot Games*, 2015 WL 13344626, at *2.

21      **D. The Third Counterclaim is Entirely Redundant**

22      The Third Counterclaim is nothing more than a denial of Stone's trademark

23  infringement claims.  MillerCoors seeks "a judicial declaration that its use of STONE

24  to advertise Keystone beer does not infringe [Stone]'s mark."  (Counterclaims at

25  27:16-18.)  It goes without saying that MillerCoors' infringing use of the STONE®

26  mark is already before the Court.  Indeed, such infringement forms the basis of

27  Stone's affirmative claims for trademark infringement, false designation of origin,

28  unfair competition, and declaratory judgment.  (Complaint, *passim.*)

The Complaint is replete with allegations concerning MillerCoors' infringement.[3]  In sum, it is impossible to litigate Stone's claims without addressing whether MillerCoors' copying of the STONE® mark in connection with its Keystone beer amounts to infringement.  By definition, the Third Counterclaim is a mirror image that adds nothing to this action.  Where a "Defendant's counterclaim for a judicial declaration…simply restates its defense to Plaintiff's claim in affirmative language," the counterclaim should be dismissed.  *Riot Games* at *2.

The Third Counterclaim is particularly duplicative because it merely re-states MillerCoors' First Counterclaim.  The First and Third Counterclaims are factually identical to one another, both alleging that MillerCoors has "continuously used STONE or STONES in its Keystone advertising" and "on Keystone's outer packaging" since at least 1995 and that its "continuous use of STONE predates" Stone's use of the mark. (*Id.* at 25:1-6; 26:26-27:2, 5-7.)  Because Stone began using the STONE mark on its beer in 1996 and "did not register its STONE mark until June 23, 1998,"[4] MillerCoors asserts that it is "the senior user of STONE in connection with beer relative to" Stone.  (*Id.* at 25:10-11; 27:5-11.)  The Third Counterclaim serves no "useful purpose" even when compared to MillerCoors' other Counterclaims, and should be dismissed or stricken as redundant for the same reasons as the First Counterclaim.

---

3 See, e.g., Complaint at 1:7-12 ("Plaintiff Stone Brewing brings this trademark action to halt Defendant MillerCoors' misguided campaign to steal the consumer loyalty and awesome reputation of Stone's craft brews and iconic STONE® trademark"); at 45:11-12 ("Keystone's new can design overtly copies and infringes the STONE® trademark"); at 14:15-18 ("MillerCoors has also purchased advertising on major websites, such as ESPN.com, referring to Keystone as "STONE". Such mass advertising broadcasts the infringing "STONE" name beyond Keystone's immediate social media audience to the general public at large"); at 15:18-19 ("Now, MillerCoors is willfully infringing the STONE® mark in a calculated attempt to dilute it beyond repair"); at 16:17-18 ("MillerCoors' deliberate infringement is likely to succeed in causing confusion"); at 17:7-8 ("In recent weeks, Stone has received consumer inquiries showing that MillerCoors' escalating infringement is indeed brewing confusion in the marketplace"); *et cetera*.

4 MillerCoors misstates the timeline.  Stone filed an application to register the STONE® Marks on April 4, 1996, which was issued on June 23, 1998. (Hagey Decl. at Ex. 2.) MillerCoors made no efforts whatsoever to challenge the STONE® Marks.

1   Finally, as a *third* independent basis for dismissal, the Third Counterclaim is

2   completely redundant of the Fourth Affirmative Defense for Non-Infringement,

3   which alleges that Stone's claims "fail because MillerCoors has not infringed any of

4   [Stone's] trademarks under federal or state law." (Answer/CC at 79:7-11.)  The

5   Third Counterclaim, which seeks a "declaration that its use of STONE to advertise

6   Keystone beer does not infringe [Stone]'s mark," merely recasts this defense as a

7   claim for relief.  The Third Counterclaim is redundant three times over and serves no

8   conceivable purpose, let alone any "useful" one.  Accordingly, the First, Second, and

9   Third Counterclaims should be stricken or dismissed as redundant.

10  ## II.   DEFENDANT'S FOURTH COUNTERCLAIM SHOULD BE DISMISSED

11
12  In its Fourth Counterclaim, MillerCoors seeks a declaratory judgment that it

13  has an "exclusive common law right to use STONE in connection with the sale of

14  beer in the United States." (Answer/CC at 28:18-20.)  This counterclaim fails as a

15  matter of law for at least two reasons.  First, MillerCoors fails to allege at least two

16  elements necessary to state a claim.  Second, MillerCoors' claim based on its

17  purported common-law rights is plainly time-barred.

18  ### A.   MillerCoors Has Not Alleged All the Elements Necessary to Challenge an Incontestable Federal Mark

19  Stone's STONE® mark became incontestable as a matter of law on or about

20  June 28, 2008, when the PTO accepted Stone's Combined Declaration of Use and

21  Incontestability.  (Hagey Decl. at Exs. 2-3.)  An incontestable registration is

22  "conclusive evidence of the validity of the registered mark and of the registration of

23  the mark, of the registrant's ownership of the mark, and of the registrant's exclusive

24  right to use the registered mark in commerce… subject to [certain] defenses or

25  defects." 15 U.S.C. § 1115(b); *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F. 2d

26  512, 514 (9th Cir. 1989) ("incontestable status provides the mark with a conclusive

27  presumption of validity…").

28

MillerCoors is effectively challenging incontestability on the basis that Stone's use of the STONE® mark "infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration." 15 U.S.C. § 1065.  But to establish that MillerCoors has a senior common-law right in a mark registered by a junior user, a party must plausibly allege "(1) that his or her 'use of the mark began before its registration and publication'; and (2) 'that there has been continuing use since that time.'"  *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 653 (9th Cir. 2005) (quoting *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974)); *see also* 5 McCarthy on Trademarks and Unfair Competition § 26:53 (5th ed.).  Further, where a party claims a date of first use which precedes the date that the party disclosed in a PTO application, evidence of such earlier date must be established by clear and convincing. *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.* 811 F.2d 1470, 1473 (Fed. Cir. 1987); *see also*, 5 McCarthy on Trademarks and Unfair Competition § 19:52 (5th ed.).  MillerCoors fails to satisfy these pleading requirements and do not meet the Rule 8 "plausibility" standard set forth in *Twombly* and *Iqbal*.

### 1. MillerCoors Fails to Allege That It Began Using the STONE Mark Prior to Its Registration by Stone

Stone applied for the registration of the STONE® Mark in April 1996.  To plausibly allege that it has a senior common-law right to the "STONE" marks, therefore, MillerCoors must demonstrate that it began using the marks prior to that date.  Though MillerCoors alleges in a conclusory way that it has "continuously used STONE or STONES" in Keystone advertising, on its outer packaging, and in promotional materials "since at least 1995" (Answer/CC at 27:27-28:4), it fails to allege facts to support these claims.

As it relates to prior use of "STONES," MillerCoors alleges that "[s]tarting in at least 1995 […] [a] case of 30 Keystone beers became a case of 30 'STONES.'" (Answer/CC at 12:25-13:2.)  In supposed support, MillerCoors submits an image of

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

1   "Keystone Light Outer Packaging" from 1995 (hereinafter, the "1995 Packaging

2   Artwork") as evidence of use of the "STONES" mark prior to Stone's April 1996

3   application date. (*Id.* at 13:3-17.)  This image is insufficient to adequately allege

4   prior use of "STONES."  MillerCoors represented to the PTO that its first use date of

5   the "STONES" Mark was February 2004, thus any claim to a preceding first use date

6   is subject to the heightened standard of clear and convincing.[5]  (Hagey Decl. at Exs.

7   4-5). Yet, aside from the bare bone conclusory allegation that it used the mark "in at

8   least 1995," MillerCoors only supplies an image of 1995 Packaging **Artwork**.  First,

9   not only does MillerCoors fail to supply an image of packaging in commerce,

10  MillerCoors fails to even allege that this packaging was used in commerce.

11  (Answer/CC at 12:25-13:17.)  Second, the 1995 Packaging Artwork only reflects the

12  phrase "30 'STONES," which is distinct from a claim of use of "STONES." [6] (*Id.*).

13  In fact, MillerCoors concedes that the alleged mark is to the entire phrase "30

14  'STONES"—"[a] case of 30 Keystone beers became a case of 30 'STONES." (*Id.* at

15  13:1-2.)  As such, MillerCoors fails to allege sufficient facts to plausibly establish

16  prior use of "STONES" Mark so as to survive dismissal.

17          Similarly, as it relates to "STONE", MillerCoors only pleads "[u]pon

18  information and belief" that it used the term "as early as 1992-1993." (Answer/CC at

19  14:1.)  Yet, in supposed support, MillerCoors can only point to a July 1996

20  newspaper advertisement which shows "STONE", and which postdates Stone's

21

22

23  [5] The preface of "[a]t least as early as" to a first use date disclosed in a trademark application "does
    not mitigate the increased burden upon the applicant if that originally asserted date is too late to

24  prevail against an opposer." *Hydro-Dynamics Inc.*, 811 F.2d at 1473.  MillerCoors' use of this
    preface in its 2007 "STONES" Application subjects its prior use argument to the heightened

25  pleading standard of clear and convincing evidence.

26  [6] MillerCoors' allegation of prior use of the "STONES" Mark by nature of "30 'STONES"
    contravenes the anti-dissection rule—"The commercial impression of a trademark is derived from it

27  as a whole, not from its elements separated and considered in detail. For this reason, it should be
    considered in its entirety." *Estate of P. D. Beckwith, Inc. v. Commissioner of Patents,* 252 U.S.

28  538, 545–46 (1920); *see also,* 5 McCarthy on Trademarks and Unfair Competition § 23:41 (5th
    ed.).

1  registration by three (3) months. (*Id.* at 14:2-14.)  As such, it is insufficient to

2  plausibly allege MillerCoors' prior use of "STONE."

### 2. MillerCoors Fails to Allege Continuous Use

4  Even if MillerCoors had plausibly alleged prior use of the "STONE" marks, it

5  fails to satisfy the continuous use requirement.  This requirement is "strict," and in

6  order to be continuous "the use must be maintained without interruption." *Spin*

7  *Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 851 (C.D. Cal.

8  2012) (internal quotation omitted).  "Even short periods of nonuse can break the

9  chain of continuous use." *Id.* (citing *Casual Corner*, 493 F.2d at 712 (senior user's

10  "failure to use the mark for the one-year period prevents it from claiming that it falls

11  within the exception of section 1065 requiring a continuing use")).

12  Though MillerCoors alleges in a conclusory manner that it has "continuously

13  used STONE or STONES" in Keystone advertising, packaging, and promotional

14  materials since "at least 1995" (Answer/CC at 27:27-28:4.), it fails to allege facts to

15  support the claim that the use was continuous.  Indeed, following the 1996

16  newspaper advertisement, MillerCoors does not specifically allege another use of

17  STONE until a 2011 advertisement using the phrase HOLD MY STONES.  (*Id.* at

18  18:15-16.)  Again, after 2013, MillerCoors does not specifically allege another use of

19  the "STONE" marks until 2015.  (Answer/CC at 19:4-7, 20-21)  Because the failure

20  to use a mark for a period as short as one year is enough to defeat a claim of

21  continuous use, (*Casual Corner*, 493 F.2d at 712), MillerCoors must do more than

22  allege that, between 1996 and 2011, it used *one mark or the other* "continuously."

23  Rather, MillerCoors must allege facts demonstrating its unbroken use of the STONE

24  mark during that time.  MillerCoors fails to do so, and the "continuous use"

25  requirement is therefore unsatisfied as well.

26

27

28

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

### 3. MillerCoors Fails to Allege, and in Fact, Affirmatively Denies, Likelihood of Confusion

Finally, even if MillerCoors had alleged prior and continuing use of the "STONE" marks, its claim to an "exclusive common law right" would still fail as a matter of law because MillerCoors does not specifically plead likelihood of confusion.  In fact, such an allegation would contradict MillerCoors' repeated allegation that there is no confusion.

The territory in which a senior user has exclusive rights to use a mark is limited to those areas in which a junior user's use of the mark is likely to cause confusion.  *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 63-64 (1st Cir. 2013) ("In this context, the geographic area in which an unregistered trademark is 'in use' is defined as the area in which the use of similar mark would create a likelihood of confusion.") (citing 5 *McCarthy on Trademarks & Unfair Competition* § 26:27 (4th ed.) ("The touchstone of the determination of a trade area is likelihood of confusion.")); see also *Brookfield Comm'ns v. West Coast Entertainment*, 174 F. 3d 1036, 1047 (9th Cir. 1999) (senior user "has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market").  In other words, the senior user's area of prior use is defined by likelihood of confusion with the junior user's mark.  By definition, a senior user cannot allege an exclusive common-law right to use a trademark without alleging that confusion is likely.

Here, not only does MillerCoors fail to allege that Stone's use of its STONE® mark would cause confusion, it affirmatively denies that consumers could be confused between Stone's STONE® and Keystone beers.  (*E.g.*, Answer/CC at 7:7-8 ("there is no confusion between these very different types of beers and the different consumers who drink them"); *id.* at 8:1-15 ("Nor would any beer drinker actually be confused between these two beers," listing reasons why there is no likelihood of confusion); *id.* at 16:19-21 (MillerCoors' lawyer "disputed that there was any confusion between Keystone and Stone Brewing's beer"); *id.* at 65:20-21 (denying that Keystone's rebrand is "likely to cause confusion of any sort").)

Because MillerCoors denies any possibility of confusion caused by Stone's use of its STONE® mark, it has failed to allege the vital element of its claim of a senior common law right to the STONE® Mark. *Dorpan*, 728 F.3d at 63-64; *Brookfield*, 174 F. 3d at 1047.  MillerCoors' counterclaim for a declaration that it has an exclusive common law right to use the STONE® mark in connection with beer therefore fails as a matter of law and must be dismissed.

**B.  MillerCoors' Delay in Bringing its 21-Year-Old "Common Law" Counterclaim is Fatal**

Even if MillerCoors had sufficiently alleged the necessary facts to plausibly establish senior common law rights to the STONE® Mark, MillerCoors' failure to allege any facts as to excuse its delay in asserting these rights is fatal to this Counterclaim.[7] MillerCoors' 20-year delay in asserting supposedly senior (but completely unknown and unrecognized) common law rights to the STONE® Mark is unreasonable and should be dismissed.  *See Bridgestone/Firestone Research Inc. v. Automobile Club De L'Quest De La France* 245 F.3d 1359, 1362 (Fed. Cir. 2001) (the "Trademark Act establishes various events in the life of a registered trademark which impact upon adverse claimant, from which events action could be taken and thus from which the period of delay may be measured," including "registration on the principal register" and "incontestability of the registrant's right to use the trademark.").  *See also Baby Trend, Inc. v. Playtex Prod.*, LLC, No. 5:13-CV-647-ODW RZX, 2013 WL 4039451, at *1 (C.D. Cal. Aug. 7, 2013) (dismissing infringement suit for failure to bring claim within statute of limitations); *Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*, No. 00 CIV. 7685 (DC), 2001 WL 736794, at *1 (S.D.N.Y. June 29, 2001), aff'd sub nom. *Solow Bldg. Co., LLC. v. Nine W. Grp., Inc.*, 48 F. App'x 15 (2d Cir. 2002) (dismissing infringement claims where plaintiff's unreasonable delay in bringing suit was apparent from the face of the complaint).

---

[7] The situation would be different had Defendant registered a federal trademark for the name, or opposed Stone's notorious and continuous use, i.e., assuming that Defendant ever even attempted to use the term as a trademark before 2017, which it did not.

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

1    MillerCoors was on constructive notice of Stone's STONE® Mark on June 23,

2  1998 (registration date). MillerCoors then was on actual notice of Stone's STONE®

3  Mark on Dec. 3, 2007, the date the PTO informed MillerCoors that its "STONES"

4  application was being rejected on the express basis that it was confusingly similar to

5  Stone's STONE® Mark. (Hagey Decl. at Ex. 6). Yet, MillerCoors made no effort to

6  assert senior common law rights.  And six (6) months later, the PTO accepted the

7  STONE® Mark incontestable.   (Hagey Decl. at Exs. 2-3). Only now, in 2018, is

8  MillerCoors claiming exclusive United States-wide rights. Yet, MillerCoors fails to

9  allege any facts as to combat the facial unreasonableness of this delay.  As such, this

10  counterclaim should be deemed stale and dismissed.

11  **III.    LEAVE TO AMEND SHOULD BE DENIED**

12    Where, as here, the claims are defective as a matter of law and cannot be

13  amended to state a claim, leave to amend is futile and should be denied.  See e.g.,

14  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.,* 911

15  F.2d 242, 247 (9th Cir. 1990) (where the defects in the complaint could not be cured

16  by allegations of other facts, dismissal without leave to amend is proper).

17  <u>**CONCLUSION**</u>

18    For the foregoing reasons, Defendant MillerCoors' Counterclaims should be

19  dismissed with prejudice.

20

21  Dated:  May 9, 2018                    Respectfully Submitted,

22                                         BRAUNHAGEY & BORDEN LLP

23
                                           By:  s/ J. Noah Hagey
24                                               J. Noah Hagey

25
                                           *Attorneys for Stone*
26                                         *Stone Brewing Co., LLC*

27

28

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of May, 2018, I electronically transmitted the foregoing AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF STONE BREWING CO., LLC'S MOTION TO DISMISS AND/OR STRIKE DEFENDANT MILLERCOORS LLC'S COUNTERCLAIMS to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.


Dated: May 9, 2018                              By:   /s/ J. Noah Hagey
                                                         J. Noah Hagey

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS