REDACTED VERSION                                                    CONFIDENTIAL

1    Natalie Hanlon Leh (*pro hac vice*)
          natalie.hanlonleh@wilmerhale.com
2    WILMER CUTLER PICKERING
     HALE & DORR LLP
3    1225 Seventeenth Street, Suite 2600
4    Denver, CO 80202
     Telephone: (720) 274-3135
5    Facsimile (720) 274-3133
6

7

8    ATTORNEYS FOR DEFENDANTS
     MILLERCOORS LLC
9                    **UNITED STATES DISTRICT COURT**

10                  **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   STONE BREWING CO., LLC,                     Case No.:  3:18-cv-00331-BEN-JMA

13                              Plaintiff,        District Judge: Hon. Roger T. Benitez
                                                  Magistrate Judge: Hon. Jan M. Adler
14   v.

15   MOLSON COORS BREWING CO.,                    **DECLARATION AND EXPERT**
     MILLERCOORS LLC, and                         **REPORT OF MICHAEL**
16   DOES 1 through 25, inclusive,                **KALLENBERGER IN SUPPORT OF**
                                                  **DEFENDANT MILLERCOORS**
17                              Defendants.        **LLC'S OPPOSITION TO**
                                                  **PLAINTIFF'S MOTION FOR**
18                                                **PRELIMINARY INJUNCTION**

19

20                                                **Date:** August 27, 2018
21                                                **Time:** 10:30 a.m.
                                                  **Place:** Courtroom 5A
22                                                **Judge:** Hon. Roger T. Benitez
23

24                                                **Complaint filed:** February 12, 2018

25

26

27

28

                                 DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
                                                                      3:18-cv-00331-BEN-JMA

CONFIDENTIAL

I, Michael Kallenberger, declare:

1.      I am the founder and president of Tropos Brand Consulting.  I provide this declaration in support of MillerCoors's Opposition to Stone Brewing Co., LLC's ("Stone Brewing") Motion for Preliminary Injunction.  I base this declaration on facts within my personal knowledge and if called upon to testify I could and would testify competently to these facts.

2.      I have been retained as a marketing expert by Defendant MillerCoors LLC ("Defendant" or "MillerCoors") to analyze and discuss issues arising from Defendant's refresh of its packaging for its Keystone family of brands (including Keystone, Keystone Light, and Keystone Ice), including the likelihood of consumer confusion related thereto. I have personal knowledge of the facts set forth in this declaration, to which I could and would testify competently if called upon to do so.

3.      My hourly rate is $300 per hour. My compensation is not dependent on the opinions I express here or the outcome of this particular matter.

## I.      Summary of Opinions

4.      There is extremely low overlap between economy brand drinkers (which includes the Keystone family of brands) and craft brand drinkers (which includes Stone Brewing brands), and these two drinker types stand in stark contrast to one another in terms of demographics as well as psychographics (beliefs, attitudes, values, and motivations). There is even less overlap – almost none – between drinkers of Keystone and Stone Brewing's brands. Only ▆▆▆ of consumers purchased both of these brands in the past year. These differences result in very low opportunity for confusion. No marketer with even a basic understanding of brand positioning strategy would attempt to create the confusion alleged by the Plaintiff's complaint, as this would have no benefits and possibly a negative impact on Keystone. Thus, I see little reason to believe Keystone's packaging refresh would cause consumer confusion and equally little reason to believe there was an attempt to do so on the part of MillerCoors.

## II.    Qualifications

5.    My CV is appended as Appendix 1.

## III.    Evidence and Material Reviewed

6.    Appended as Appendix 2 is a list of materials and evidence I considered in connection with forming my opinions as set forth in this report, in addition to the knowledge and experience from my career in the beer industry, as reflected in my CV.

## IV.    Background Facts Regarding Craft and Economy Beer

7.    Brands of beer in the United States are aggregated into different "segments," with brands in a given segment sharing many traits that differentiate them from brands in another segment. Keystone is a member of the economy segment, while Stone Brewing brands are members of the craft segment. The economy segment and the craft segment are the two polar extremes of the beer market, and there is little overlap between these two segments. The craft segment is very much the "high end" of the beer market, notable for having the highest beer prices and unique, often experimental flavors, and its brands are sold in small package sizes with limited or seasonal distribution. The economy segment is the very "low end" of the beer market, notable for having the lowest beer prices and consistent, reliable flavors, and its brands are sold in large package sizes with national distribution. Data from Nielsen, a widely respected and accepted source for data covering sales of consumer products in off-premise accounts (i.e., essentially stores such as supermarkets, convenience stores, and liquor stores) shows that in 2017 the average price paid for 12 ounces of a craft brand was ███ (and Stone Brewing brands were even higher, at ███ per 12 ounces) while the average figure for economy brands was ███ (and Keystone was even lower, at ███). [i]

8.    The dramatic differences between these segments are reflected in the brands and their respective drinkers having very different attributes from one another. Keystone, like most economy brands, has a lighter, more refreshing flavor profile; is associated with down-to-earth, easily relatable imagery; is generally sold in cans in large format packages (i.e., 15-packs and 30-packs); and has a drinker base that's older, less educated, and

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

lower income. Stone Brewing brands, like most craft brands, have more intense, challenging flavor profiles; are associated with sophisticated, aspirational imagery; is generally sold in 6-pack bottles; and has a drinker base that's younger, more educated, and higher income.

## V.     Opinions

9.     **Stone Brewing's reputation may or may not be "awesome," but it isn't relevant to economy drinkers.** The complaint falsely claims that, beyond stealing Stone Brewing's consumer loyalty, MillerCoors is attempting to steal the "awesome reputation of Stone's craft brews and iconic STONE trademark." In fact, in my opinion, the large majority of Keystone drinkers would almost definitely prefer the tangible and intangible benefits offered by Keystone to those offered by Stone Brewing, as the former do a better job of meeting economy drinkers' wants and needs. (It's equally fundamental to brand positioning strategy that a brand's message must be focused, and the same for all drinkers.) As will be discussed shortly, the tangible and intangible elements of craft branding are at minimum irrelevant to economy drinkers and may well be alienating. Likewise, the tangible and intangible elements of economy branding are equally non-motivating to craft drinkers.

10.     This is evidenced in the extremely low overlap between economy drinkers and craft drinkers. Nielsen reports that only ██ of consumers who bought beer in the past year bought both an economy brand and a craft brand in that same year, and only *one in one thousand* beer buyers bought both Keystone and a Stone Brewing brand beer in that same year.

11.     Further, Nielsen and MillerCoors routinely conduct what's known as "shifting analyses" for different brands in order to identify which brands consumers are switching between. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████████

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

12.     All of this serves to demonstrate that Keystone drinkers have very little interest in Stone Brewing, and that Stone Brewing drinkers have very little interest in Keystone. The reasons for this are in fact compelling, and rooted in the fact that the two types of drinkers are very different people, not only in terms of demographics but more importantly in terms of psychographics – the set of beliefs, attitudes, values and motivations that create positive responses in an individual to some brands and negative responses to other brands. This will be discussed in detail beginning with Paragraph 21.

13.     As demographic data from Nielsen shows, summarized in the table below,

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA



14.     In terms of tangible wants and needs, Keystone (and especially Keystone Light) provides exactly what economy drinkers want: a lighter flavor profile that's refreshing and "easy to drink." Stone Brewing (and craft more generally) offers craft drinkers what they seek: a strongly hopped flavor profile, complex and challenging to the palate. Thus, on the basis of product alone there is no rational strategic argument for seeking to confuse craft drinkers into buying Keystone.

15.     **Likelihood of confusion at the retail shelf is minimal**. The Plaintiff's complaint states that "…the companies' beers compete head-to-head in store aisles across the country." The assertion that Keystone and Stone Brewing compete "head-to-head" is not, in my opinion, an accurate reflection of the situation. Keystone is almost insignificant in Southern California, Stone Brewing's home region.

[REDACTED] A beer shopper in Southern California more than likely will visit the store without ever seeing Keystone.

[REDACTED]

16.     But just as importantly, the beer section at almost every grocery store, liquor store, and convenience store that sells beer is organized by price tier: economy beers such as Keystone will be at one end of the aisle, as befitting their lower price, and craft beers such as Stone Brewing brands will be at the opposite end of the aisle, reflecting their higher price. Consumers looking for a Stone Brewing brand are unlikely to stop in the economy section. Only [REDACTED] of consumers who bought beer in the past year bought both an economy brand and a craft brand in that same year.

17.     Keystone and Stone Brewing brands are also sold in radically different package types. As an economy brand Keystone emphasizes large packages at a good price. According to Nielsen over [REDACTED] of Keystone off-premise volume is sold in cans. [REDACTED] of total volume is sold in large packs of cans, including [REDACTED] in 30-pack cans, one of the biggest pack sizes available. In stark contrast, as a brand seeking to reinforce its artisanal image Stone Brewing emphasizes smaller package sizes, and bottles. Just over [REDACTED] of Stone Brewing volume is sold in bottles, and the most popular single package type is [REDACTED], accounting for [REDACTED] of Stone Brewing sales.  Beer drinkers associate Keystone and other economy beers with 30-pack cans, and in my opinion the

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

likelihood of any beer drinkers misidentifying a 30-pack of cans as a craft brand of any kind is extremely low.



18.     The complaint also states that "In the high-velocity beer market, where consumers make quick decisions between a proliferating array of brands, the effects of even initial confusion are likely to be momentous." Consumers do make quick decisions between brands, and precisely because of that confusion is likely to be minimal. This is because, in a retail environment, consumers don't so much read the brand name as they recognize the packaging graphics. They're prone to "scan" the appropriate section of the beer aisle looking for those graphics, and will often gloss over the brand names on the packages completely. (The different pack types and sizes mentioned in the previous paragraph also contribute to this recognition factor.) A consumer who has a Stone Brewing brand among the beers he or she is considering will react to the familiar gargoyle image, for example, rather than the word "Stone." Stone Brewing's complaint includes the following representation of their brews, which they call "iconic." If indeed these are iconic, that only increases the likelihood that consumer will be looking for the gargoyle and not the brand name. Thus, any package lacking the gargoyle would likely be overlooked by this quick scan.

**Selection of Stone's Iconic Brews**

19.    Exhibit A from Stone Brewing's complaint includes twelve posts from consumers on social media sites that purport to show the confusion created by Keystone's package refresh. Yet nine of the twelve posts indicate the purportedly confused poster quickly realized that the package in question was Keystone, not a Stone Brewing brand (for example "…then I realized it was Keystone…"). Two others report no confusion, but rather are concerned that others may be confused, a judgment which consumers are not qualified to make. The final post (below) is open to interpretation, although it seems to be sarcasm. The poster is a Keystone fan (he or she uses the hashtag #holdmystones and a visit to his or her Twitter page reveals that the background is a photo of Keith Stone[ii]) who seems amused that there are breweries named Key Brewing and Stone Brewing.



DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

REDACTED VERSION CONFIDENTIAL

1   Thus, I see virtually no evidence of significant consumer confusion at retail in these

2   twelve posts.

3      20.    **Likelihood of confusion in bars and restaurants is non-existent.** The

4   expert report of David Stewart states that "the parties' products also can be found in the

5   same line of 'taps' at bars and restaurants." This statement is an assumption, and an

6   incorrect one. As anyone familiar with the beer business knows, economy brands such as

7   Keystone have extremely low distribution in bars and restaurants. Based on MillerCoors

8   internal data, only 2.9% of on-premise accounts (i.e., bars, restaurants, and other venues

9   where beer is bought for immediate consumption on the premises) sell Keystone. I would

10   estimate the probability of finding even one establishment anywhere in America that has

11   both Keystone and a Stone Brewing brand on tap is virtually zero.

12      21.    **Stone Brewing is not a significant influence on the economy beer**

13   **segment.** Stone Brewing is also far too small to supply an adequate source of volume for

14   Keystone's growth, in absolute terms and in comparison to other brands in the economy

15   segment. The complaint states the Plaintiff's belief that MillerCoors is "attempting to

16   steal the consumer loyalty and awesome reputation of Stone's craft brews and iconic

17   STONE trademark." Stealing the "consumer loyalty" of Stone Brewing drinkers would

18   provide a miniscule opportunity for Keystone, and would only confuse and thwart

19   MillerCoors's efforts to target the real volume opportunity for Keystone, namely drinkers

20   of competing economy brands. (It's fundamental to brand positioning strategy that in

21   order to be successful a brand must focus on one target and one target only.)

22      22.    The complaint tries to make a point of the fact that "From 2011 to 2016

23   Keystone Light sales dropped more than 25%" (no source cited) and that *USA Today*

24   recently dubbed Keystone "one of the 'Beers Americans No Longer Drink,'" but these

25   assertions ignore the fact that the Keystone franchise is still almost ten times the size of

26   Stone Brewing. According to the Brewers Association, Stone Brewing's 2017 shipment

27   total was 397,000 barrels, while MillerCoors internal data indicates that the Keystone

28   franchise shipped 3.7 million barrels. More importantly, combined shipments of

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

Keystone's competitors in the economy segment were 44.3 million barrels, or *111 times* Stone's shipment volume. The opportunity for Keystone, in sales volume terms alone, is clearly to convert volume from economy brands, not from Stone Brewing.



23.     **Keystone and Stone Brewing brands are not competing for the same drinkers in terms of psychographics**. Well-positioned brands in any category stand for a certain set of attitudes, values, and motivations ("psychographics") which their drinkers hold and for which those drinkers seek reinforcement. Yet just as Stone Brewing brands do not meet economy drinkers' needs in terms of the product (and vice versa), they fail to meet economy drinkers' needs in terms of psychographics (and vice versa). Based on my decades of experience studying all types of beer drinkers, including thousands of in-person one-on-one interviews, there are three key psychographic dimensions in which economy drinkers and craft drinkers stand in stark contrast:

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

| Economy Beer Drinkers | Craft Beer Drinkers |
|---|---|
| Low openness to new experiences | High openness to new experiences |
| External locus of control (Believe outside forces have more control over their lives than they themselves do) | Internal locus of control (Believe that they have more control over their lives than outside forces do) |
| Seek to fit in to a group<br>• And so they idealize down-to-earth, unpretentious values (and see "sophistication" as pretense) | Seek to stand out from the crowd<br>• And so they idealize sophisticated, artisanal values (and see "unpretentious" as unsophisticated) |

24.     Both Keystone and Stone Brewing have clear, compelling "personalities" that embody the respective attitudes and values for which their target drinkers seek reinforcement. (Note that a brand personality is not necessarily a character per se, although both brands have made use of characters that embody their personalities. A brand personality is just as often captured in an attitude or a tonality.)

25.     An analytical tool well known in marketing is the concept of the brand personality archetype; all personalities have at their center one of twelve personality archetypes, each of which appeals to a different human motivation.[iii]

26.     In my analysis, Keystone clearly evokes a Jester archetype, which appeals to a desire for belonging and enjoyment, and that aforementioned desire to fit into a group. The brand does so through the use of humor with a consistent tonality: unpretentious, arguably "lowbrow," goofy and often slapstick. The "Bitter Beer Face" ads of the 1990s used this style of humor, as have the Keith Stone ads that followed.

27.     How this attracts the economy drinker: Keystone's style of humor falls under a type called "tension relief." Studies have found that those with an external locus of control engage more with tension relief humor,[iv] making Keystone's humor compelling to economy drinkers. In addition, the sense of belonging and enjoyment that's reinforced through the Jester archetype is a comfortable, predictable feeling that skews in its motivating power to those with lower openness to new experiences.

CONFIDENTIAL

28. Stone Brewing, on the other hand, evokes a Rebel archetype, which appeals to a desire for liberation and achievement and that desire to stand out from the crowd previously mentioned. Note that the complaint itself refers to "Stone's rebel culture." (p. 6) The Gargoyle is a key representation of this, as is the attitude embodied throughout Stone Brewing's marketing materials. The very fact that Stone Brewing is filing this lawsuit, and has produced an over four-minute YouTube video promoting the fact that they're filing this suit, appears to be a means of reinforcing the rebelliousness of the Stone Brewing brand. The video even uses such rebel-cuing lines as "At Stone we always prided ourselves on going our own way, being true to ourselves…" and "[Big brewers] found people who were willing to sell out, unlike us…"[v]

29. When Stone Brewing does use humor, it's not slapstick but rather ironic, as in the well-known label copy from Stone Brewing's best-known beer, Arrogant Bastard: "This is an aggressive ale. You probably won't like it. It is quite doubtful that you have the taste or sophistication to be able to appreciate an ale of this quality and depth. We would suggest that you stick to safer and more familiar territory – maybe something with a multimillion dollar ad campaign aimed at convincing you it's made in a little brewery, or one that implies their tasteless fizzy yellow beverage will give you more sex appeal. Perhaps you think multi-million dollar ad campaigns make things taste better. Perhaps you're mouthing your words as you read this."

30. How this attracts the craft drinker: Psychologists have found that those with an internal locus of control are more likely to enjoy humor at their own expense[vi], and so Stone Brewing's irony is more compelling to craft drinkers. The feeling of liberation and achievement that's awakened by the Rebel archetype appeals to a desire to break out of controlling, conformist elements in the drinker's daily life, which skews in its motivating power to those with higher openness to new experiences.

31. The final way in which the respective reputations of craft beer and economy beer diverge may be the most compelling of all to the two sets of drinkers, specifically the degree to which they idealize unpretentious imagery versus sophisticated imagery. As

REDACTED VERSION                                                                                              CONFIDENTIAL

mentioned earlier, what craft drinkers see as sophistication, economy drinkers see as pretense, and pretense is anathema to these drinkers who place such a high value on fitting in to a group.

32.     The pretentious aspects of craft beer are seen by many inside and outside the world of craft. A famous New Yorker cover, widely circulated and commented upon among craft beer enthusiasts, mocked the pretentiousness of craft drinkers. (See next page.) Budweiser has used Super Bowl commercials to likewise mock this perceived pretentiousness in the last two years. ("…it's not brewed to be fussed over…it's brewed for drinking, not dissecting….let them sip their pumpkin peach ales…").[vii]  And a survey conducted for one of my clients (and used with permission) found that 34% of craft drinkers *themselves* felt there was "quite a bit of snobbery to [craft beer]."





Source: Custom research by World of Beer, used by permission

33.    While these associations between craft and pretense therefore crop up among many different types of drinkers, they are most prevalent among economy drinkers, to whom pretense is anathema. And Stone Brewing's personality would likely be seen by economy drinkers as even more pretentious than the typical craft band, thanks to lines such as "It is quite doubtful that you have the taste or sophistication to be able to appreciate an ale of this quality and depth…" (from the aforementioned Arrogant Bastard label copy), especially given the economy drinker's relative lack of proclivity for ironic humor. Thus, in my opinion any association between Keystone and Stone Brewing would offer little in the way of tangible or intangible benefits to economy drinkers, and might well cause Keystone's image to suffer.

## VI.    Conclusions

34.    Based on experience and expertise and my analysis of the materials relevant to this case, I see little reason to believe Keystone's packaging refresh would cause consumer confusion and equally little reason to believe there was any intent to do so on the part of MillerCoors. I find the evidence to the contrary presented by the Plaintiff as flawed. I see virtually no likelihood off damage to Stone Brewing's reputation and goodwill, and indeed the suit itself and the video Stone Brewing has made and propagated in reference to the suit will likely reinforce Stone Brewing's valuable reputation as a "rebel" brand.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Michael Kallenberger

3:18-cv-00331-BEN-JMA

REDACTED VERSION                                                          CONFIDENTIAL

1

2

_____

3    [i] My use of Nielsen data and my opinions or conclusions based on Nielsen data are my own and have not
been reviewed, approved, or confirmed by Nielsen.  Information in this report is based in part on data

4    reported by Nielsen through its Homescan Premium Service for the Total Alcohol and Beverage (TAB)
Category for the Total U.S. xAOC market.  Copyright (c) 2018 The Nielsen Company.

5    [ii] https://twitter.com/CDoubleIPA

6    [iii] See *The Hero and the Outlaw*, Margaret Mark and Carol S. Pearson, McGraw Hill 2001
[iv] Laughter: A Scientific Investigation," Robert R. Provine, Penguin Books 2001

7    [v] https://www.youtube.com/watch?v=s7zW4Dnb_7g&t=25s

8    [vi] Lefcourt Herbert, Sordoni, Carl, and Sordini, Carol, University of Waterloo "Locus of Control and the
Expression of Humor," Ontario Mental Health Foundation, Toronto

9    [vii] https://www.youtube.com/watch?v=yyVgO_j8vxw

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

REDACTED VERSION                                                                              CONFIDENTIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

     I hereby certify that on this, the 30th day of July 2018, I electronically transmitted the foregoing Declaration to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

                         /s/ *Natalie Hanlon Leh*

                         Natalie Hanlon Leh

DECLARATION AND EXPERT REPORT OF MICHAEL KALLENBERGER
3:18-cv-00331-BEN-JMA

## Exhibit List to the Declaration and Expert report of Michael Kallenberger

Appendix 1……………………………………………………...……..… Page 18 – 22

Appendix 2……………………………………………….....................Page 23 – 24

Exhibit 1…………………………………………………...……………..… Page 25

Exhibit 2……………………………………………….......................... Page 26

Exhibit 3…………………………………………………...……………... Page 27

Exhibit 4……………………………………………….......................... Page 28

Exhibit 5…………………………………………………...……………... Page 29

Exhibit 6……………………………………………….......................... Page  30

Exhibit 7……………………………………………….......................... Page  31

Exhibit 8……………………………………………….......................... Page  32

# APPENDIX 1

Appendix 1

Michael (Mike) Kallenberger
871 Tree Ridge Ct.
Hartland, WI  53029
Cell Phone 414-331-2422
E-mail address: mike@troposbrand.com

| | |
|---|---|
| Summary | I have 39 years of experience in marketing research, consumer insights, and brand strategy development, all in the beer business. From 1979 through 2010 I worked for the Miller Brewing Company and then MillerCoors, providing support in my areas of expertise to my clients – primarily breweries, large and small. |

My experience at Miller includes work on some of the most successful brands in the recent history of the beer industry, including but not limited to the national launch of Miller Genuine Draft in 1987; the unprecedented turnaround of Miller Lite from 2003-2005; and work for Leinenkugel's, a craft brand which is owned by MillerCoors. During my tenure I worked on every brand in the portfolio, in every segment of the beer market, including economy brands, premium brands, imports, and craft brands.

Since around 2000 I have been deeply immersed in the craft beer phenomenon, both professionally and personally, Though I have a strong background in formal quantitative and qualitative research I've never believed in confining myself to the "ivory tower," and as a result I've also spent considerable time in craft-oriented bars over the last twenty years, gleaning further insights from more personal conversations with craft drinkers that take place over a beer, right at the bar. I frequently attend beer festivals and related events. Beyond the professional value, these experiences have helped make me personally knowledgeable and passionate about craft beer.

In the last decade I've provided insights into craft culture, growth dynamics, and brand marketing to the entire craft beer community through the Brewers Association, America's preeminent organization advocating for craft brewers.  I'm a six-time speaker at the Craft Brewers Conference and a frequent contributor to *The New Brewer*, the magazine of the Brewers Association. At the invitation of the BA I was the presenter for the March, 2017 edition of their "Power Hour" webinar series. I've also been quoted as an expert in several articles on the culture of craft beer.

| | |
|---|---|
| Current Role: | 2010 – present: Founder and President, Tropos Brand Consulting |

I specialize in developing marketing and positioning strategies that integrate deep understanding of brands, consumers, and the marketplace, specializing in beer and other beverages. I've completed strategic work that has driven bottom line results for clients such as MillerCoors, Pabst, Sierra Nevada, Baltimore's Heavy Seas, and Toronto's Amsterdam Brewery. My clients include large and small breweries, private equity firms, and advertising agencies, as well as consumer products companies outside the beer category. (See Appendix I for a full list.)

As a subcontractor for brewery consulting firm First Key I have developed the commercial strategies for breweries in planning in Texas, Panama, and Bhutan. The latter is now up and running and successfully marketing its brand using my strategies.

| | |
|---|---|
| Previous experience: | Miller Brewing Company / MillerCoors |

2001 - 2010:  Senior Consumer Intelligence Manager
Responsible for Miller's Consumer Intelligence Program as well as internal consulting on all company brands' strategies and marketing programs

1987 - 2001:  Various positions of increasing responsibility in consumer research/insights and
brand strategy, including traditional quantitative and qualitative methods,
segmentation, psychographic techniques, and ethnographic research

1979 - 1987:  Various positions of increasing responsibility in market analysis, including
economic analysis, statistical modeling, and quantitative analysis

Accomplishments:   I was responsible for all research and insight development, and co-authored the strategy,
behind the relaunch of the Miller Lite brand in late 2003. I drove insights into consumer
attitudes and values, emerging consumer trends, and relevant, ownable positioning territories.
As a result, the brand erased half of a 12-year sales decline in just 2 years.  This was the first
time (and to date the only time) in history that a major beer brand had reversed a long-term
sales decline without a price cut.

.

I planned, developed, and executed Miller's first Consumer Intelligence Program, designed to
understand the relationship between social, cultural, and generational trends and consumer
behavior and motivations.  As a result, all brand positioning and innovation initiatives are in a
better position to capitalize on consumer and market trends.

I introduced a program of progressive qualitative techniques, including laddering and
ethnographic research, to complement Miller's former reliance on quantitative analysis and
traditional focus groups. As a result, Miller's brand positionings are based on true insights into
consumer motivations rather than superficial observations.

I developed Miller's first Advertising Tracking Study, and managed its transition to the Internet
in 2001, enabling the company to understand the effectiveness of its ads and make
adjustments with real-world impact.

I provided all market research and consumer strategy support for the 1987 launch of the Miller
Genuine Draft brand, the beer industry's most successful new product of the 1990s.  Along with
other members of the team I won a Silver Effie award, given for advertising campaigns that can
empirically demonstrate a positive impact on sales.

Other:              Allied trades member of the Brewers Association
Member, North American Guild of Beer Writers
Six-time speaker at the Craft Brewers Conference
Speaker at other conferences on topics related to beer and/or marketing (see Appendix II)
Frequent contributor to *The New Brewer*, the magazine of the BA (see Appendix III)
Quoted as an expert in several articles on craft beer culture (see Appendix IV)

Teaching experience: 1982 - 1987:  University of Wisconsin – Milwaukee School of Business
Part-time lecturer in Statistics and Economics

2008:  University of Wisconsin (Madison) School of Business
Part-time lecturer in Consumer Behavior

2017 – present: University of Vermont Continuing and Distance Education
Co-instructor, Business of Craft Beer program (as a subcontractor to First Key)

Education:          University of Wisconsin - Milwaukee
MA, Economics, 1979 (Doctorate-level coursework in econometrics); BA, Economics, 1977

Appendix I: Tropos Clients

- Sierra Nevada
- Pabst (Not Your Father's Root Beer)
- Heavy Seas (Baltimore)
- Amsterdam Brewery (Toronto)
- MillerCoors (Pilsner Urquell)
- World of Beer
- Flying Fish (Somerdale, NJ)
- Bear Republic (Cloverdale, CA)
- Iron Springs (Fairfax, CA)
- Malteurop
- SABMiller Canada
- TSG Consumer Partners
- Leo Burnett
- Factory 360
- GMR
- BuySeasons
- JW Speaker Engineered Lighting Solutions
- Joe Wilde Company
- Stone Creek Coffee
- RapidForce
- Canella Response Television
- Generac
- Ideal Living

Appendix II: Publications

Each of the following articles was published in *The New Brewer*, the trade magazine of the Brewers Association:

- The Next Generation of Craft Beer Drinkers: Marketing to Adult Millennials / Sep-Oct 2007
- Can Your Brand be Green? / Jan-Feb 2009
- Crafting Diversity: Marketing Craft Beer to Minorities / Jan-Feb 2010
- The Future of American Attitudes toward Alcohol / [on-line edition only] Jul-Aug 2010
- Freedom of Choice in Beer: Paradise, or Paradox? / Sep-Oct 2010
- What's Fueling Craft Beer's Growth / Jan-Feb 2011
- Using Music and Humor to Make People Thirsty / Sep-Oct 2011
- Craft Beer's Economic Resilience / Mar-Apr 2012
- Craft Brands at Play / Sep-Oct 2012
- The S-Curve, Contagious Encounters, and the Future of Craft Beer / Sep-Oct 2013
- The Long and Short of Brand Personality / Sep-Oct 2014
- The Fourth Glass / Jan-Feb 2015
- Consumer Research for Craft Brewers / Sep-Oct 2016
- Local Sourcing From the Beer Lover's Perspective / Jan-Feb 2017
- Taproom Dynamics: The Powers of Observation / Sep-Oct 2017
- The Other Long Tail / Jan-Feb 2018
- Craft Brewing and the Evolution of American Culture / Mar-Apr 2018

Appendix III: Conference Presentations

Beer conferences:

- Brewers Association "Craft Brewers Conference" (2007, 2009, 2010, 2011, 2012, 2016)
- Brewbound Session (November 2017)
- Brewers Association "Power Hour" webinar series (March 2017)
- Craft Beverage Expo (2016)
- Midwest Craft Brewers Conference (2016)
- Wisconsin Brewers Guild Conference (2016)
- Ontario Craft Brewers Conference (2015)
- Great Lakes Water Conservation Workshop (2011, 2012, 2016)
- Institute for Brewing and Distilling "International Brewing Convention" (2010)


General marketing conferences:

- Institute for International Research "Future Trends" Conference (2002, 2007, and 2010)
- Marketing Science Institute "Business Insights from Consumer Culture" (2006)
- In-Store Marketing Institute "In-Store Marketing Summit"  (2006)
- Institute for International Research "Shopper Insights in Action" (2005)




Appendix IV: Articles quoting my expertise

- "Go With It: Beer, Cider, and Hard Soda Successfully Connect with Millennial Drinkers" by Ken Weaver, *Spirited* magazine, May 1, 2017
- "Don't Beat 'Em, Join 'Em: Why Brewing Together Works Better in the Craft Beer Industry" by Corie Brown, *Entrepreneur* magazine, August 26, 2015
- "How Craft Became Craft: Exploring the Word That Transformed Beer" by Stan Hieronymus, *All About Beer* Magazine, March 1, 2015

# APPENDIX 2

Appendix 2

Materials Reviewed and Considered

- Dkt 1 Stone Brewing Complaint
    Appendix 3 Exhibit A
    Appendix 3 Exhibit C
    Appendix 3 Exhibit D
- Declaration and Expert Report of David Stewart
- Dkt 19 MillerCoors Answer to Complaint
- Dkt 30 Stone Brewing Brief ISO Motion for Preliminary Injunction
- Dkt 31 Declaration of Steve Wagner


Craft_Economy Demos
Keystone_Stone Demos
Keystone & Stone Pack Mix
Keystone 2017 Barrels
Keystone etc. % of Buyers
Keystone Light Shifting
Stone Shifting
Dollar and Volume Sales

CONFIDENTIAL

# EXHIBIT 1

# LOGED UNDER SEAL

REDACTED VERSION
CONFIDENTIAL

# EXHIBIT 2

# LOGED UNDER SEAL

# EXHIBIT 3

# LOGED UNDER SEAL

# EXHIBIT 4

# LOGED UNDER SEAL

# EXHIBIT 5

# LOGED UNDER SEAL

CONFIDENTIAL

# EXHIBIT 6

# LOGED UNDER SEAL

CONFIDENTIAL

# EXHIBIT 7

# LOGED UNDER SEAL

# EXHIBIT 8

# LODGED UNDER SEAL