J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
  theodore@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone:  (415) 599-0210
Facsimile:  (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff / Counterclaim<br>    Defendant,<br><br>        v.<br><br>MILLERCOORS LLC,<br><br>    Defendant / Counterclaim<br>    Plaintiff. | Case No: 18-cv-0331-BEN-LL<br><br>**PLAINTIFF STONE BREWING CO., LLC'S MOTION TO COMPEL**<br><br>District Judge: Hon. Roger T. Benitez<br>Magistrate Judge: Hon. Linda Lopez |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

    A.    Stone RFP 61 and Interrogatory 12 ......................................................... 2

    B.    Stone RFP 62 and Interrogatory 13 ......................................................... 3

    C.    Stone RFP 63 .......................................................................................... 3

    D.    Stone RFP 64 .......................................................................................... 4

ARGUMENT................................................................................................................... 4

I.    MILLERCOORS SHOULD BE REQUIRED TO PROVIDE COMPLETE SALES DATA ........................................................................................................ 4

II.    MILLERCOORS SHOULD BE REQUIRED TO PROVIDE COMPLETE FINANCIAL INFORMATION ....................................................................... 10

III.    MILLERCOORS SHOULD BE REQUIRED TO PROVIDE SALES PROJECTIONS ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
  782 F. Supp. 457 (N.D. Cal. 1991) ............................................................. 6

*M'Otto Enterprises v. Redsand*,
  831 F. Supp. 1491 (W.D. Wash. 1993) ....................................................... 6

*Pom Wonderful v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ............................................................... 5, 6

*Porter v. Nationscredit Consumer Disc. Co.*,
  No. CIV.A. 03-3768, 2004 WL 1753255 (E.D. Pa. July 8, 2004) .................... 7

*Reno-Tahoe Specialty, Inc., v. Mungchi*,
  No. 2:12-CV-01051-GMN-VC, 2014 WL 7336082 (D. Nev. Dec. 19, 2014) ........ 6

## STATUTES

35 U.S.C. § 1117 .......................................................................................... 1

## RULES

F.R.C.P. 34 (a)(1) ....................................................................................... 10
F.R.C.P. 34(b)(2)(C) .................................................................................... 8
F.R.C.P. 34(b)(2)(E)(ii) ................................................................................ 9

## OTHER AUTHORITIES

McCarthy on Trademarks and Unfair Competition § 24:45 ......................... 5

PLAINTIFF STONE BREWING CO., LLC'S MOTION TO COMPEL

**INTRODUCTION**

Plaintiff Stone Brewing Co., LLC ("Stone") brings this motion to compel responses to core discovery regarding MillerCoors's sales and financial information. This discovery, which is central to both to infringement and to damages, seeks data that can be used in econometric analysis to ascertain the effect of the Keystone Rebrand on Stone and Keystone sales and isolate the impact of the Rebrand from broader, secular movements in the beer market.

Incredibly, MillerCoors refuses to agree to produce key portions of this information despite demanding the exact same material in its discovery to Stone. At the same time, MillerCoors's oral positions during meet-and-confer conversations and the pre-motion call with the Court have diverged sharply from the commitments it has been willing to make in its written responses, which have largely dodged Stone's requests. All of the information at issue is highly relevant – as reflected by the fact that MillerCoors asks for it in its own discovery requests – and the Court should order MillerCoors to produce the responsive information in its possession.

**BACKGROUND**

In this litigation, Stone seeks to remedy MillerCoors's deliberate infringement of the registered STONE® trademark. Two years ago, MillerCoors rebranded its Keystone beer so that the packaging and marketing materials refer to the product as "STONE," causing serious confusion with Stone's own beers. In its recent decision on Stone's Motion for a Preliminary Injunction, the Court found that Stone had a moderately strong likelihood of success on its infringement claim though it had not established the irreparable harm required for a preliminary injunction. Dkt. 85 at 14.

Upon succeeding on its infringement claim, Stone will be entitled to recover any damages it sustains – i.e., the sales and profits it has lost as a result of MillerCoors's infringement – as well as MillerCoors's profits from the use of the STONE® mark. *See* 35 U.S.C. § 1117. Accordingly, Stone served discovery into MillerCoors's sales and financial data on January 30, 2019.

PLAINTIFF STONE BREWING CO., LLC'S MOTION TO COMPEL

Stone's Requests for Production 61-64 and Interrogatories 12-13 ask MillerCoors to produce sales data for its Keystone brand beers and financial information regarding revenue, cost, and profits, and sales projections.  MillerCoors has refused to produce key pieces of this information and, as to others, has refused to take clear positions to which it can be held and on which Stone can rely.

### A.    Stone RFP 61 and Interrogatory 12

Stone RFP 61 and Interrogatory 12 seek "all sales of all Keystone Products from 2010 to present, including, for each sale: product, SKU, packaging, quantity, units, volume, price, revenue, profit, margin, cost of sales, State, region, channel, distributor, retailer, location, and all other data maintained by You."  Ex. 1; Ex. 2.

MillerCoors responded to RFP 61 on March 1 by stating that it "will produce responsive, non-privileged documents sufficient to show the sales of Keystone Products from 2014 to the present that are maintained in the ordinary course of business and are capable of being identified and located following a reasonable search of relevant custodians."  MillerCoors similarly responded to Interrogatory 12 by referring Stone to a handful of documents produced by MillerCoors, none of which include the sort of sales data these requests seek. Ex. 1 at 3; Ex. 2 at 3-6. After Stone informed MillerCoors of its intention to bring this motion, MillerCoors produced sales data partially responsive to these requests.  Ex. 3 at 7.

Despite multiple requests from Stone during the meet-and-confer process, MillerCoors still has not agreed to provide any sales data pre-dating 2014. MillerCoors represented that the current version of its sales database goes back only to 2014 but did not deny that MillerCoors is in possession of earlier sales data.  Since at least March 15, 2019, MillerCoors has promised to get back to Stone regarding the format and accessibility of this pre-2014 sales data.  But more than two weeks have passed without a substantive response from MillerCoors.  Ex. 5 at 2-11.

Likewise, MillerCoors has refused to provide sales data broken down by retailer, though it admittedly possesses this information.  In meet-and-confer

discussions and again on the parties' April 2, 2019 pre-motion conference call with Chambers, MillerCoors acknowledged that it maintains retailer information in its database.  However, MillerCoors refuses to provide this data, asserting that it is burdensome to produce.  Nor has Stone responded to Stone's offer to minimize any purported burden by having Stone's expert witnesses query the database directly. Instead, on the eve of the April 2 conference, MillerCoors supplemented its interrogatory response to include a report with some of the requested information (for post-2014 sales), but again excluding retailer-level data.  MillerCoors has also refused to confirm in writing that it has produced and will produce all data relevant to the sales at issue, leaving open the possibility that additional fields beside retailer information are being withheld.

**B.    Stone RFP 62 and Interrogatory 13**

RFP 62 and Interrogatory 13 seek "[m]onthly sales, cost, revenue, profit, and financial information for all Keystone Products and all other MillerCoors and Molson Coors economy brands from 2010 to present, nationally, by region, and by state, including revenue, product direct costs, cost of goods sold, operational expenses, administrative expenses, gross profit, contribution margin, and net profit." Ex. 1 at 3-4; Ex. 2 at 7.

In response, MillerCoors merely re-incorporated its responses to RFP 61 and Interrogatory 12.  In other words, MillerCoors agreed to provide only "monthly sales of Keystone Products from 2014 to the present," and not the accounting information sought.  Ex. 1 at 4; Ex. 2 at 7-8.  Despite extensive meet-and-confer efforts, MillerCoors has not agreed in writing to provide any of the requested information.

**C.    Stone RFP 63**

Stone's RFP 63 seeks "[a]ll sales or profitability estimates or projections for Keystone Products from 2010 to present and all documents relating to the same."  In response, MillerCoors refused to provide any estimates or projections whatsoever, but instead agreed only to "responsive, non-privileged documents sufficient to show

annual sales and profitability for Keystone products for the time period requested that are maintained in the ordinary course of business." Ex. 1 at 5.

MillerCoors's position on this issue has varied.  At first, MillerCoors asserted it would not produce sales projections.  *Id*.  Then, after Stone raised the issue on the April 2 call with the Court, MillerCoors represented for the first time on the call that it had previously produced some unidentified documents predating the Rebrand that might be considered sales projections.  Notwithstanding these vague references, MillerCoors has never agreed in writing to produce *any* sales projections, forcing Stone to bring this Motion.

### D.    Stone RFP 64

Finally, Stone's RFP 64 seeks "[d]ocuments sufficient to show all categories of costs related to Keystone Products and the basis on which they were incurred from 2010 to present."  Ex. 1 at 6.  MillerCoors responded that it will produce "responsive, non-privileged documents sufficient to show the annual G&A expenses and Costs of Goods Sold related to Keystone Products for the time period requested that are maintained in the ordinary course of business."  *Id*.  While Stone's RFP encompasses "all categories of costs" available to MillerCoors, the response is artificially narrowed in scope to just two categories – *i.e.*, "annual G&A expenses" and "Costs of Goods Sold."  MillerCoors has refused to remove this limitation.

Stone brings this Motion to compel complete and straightforward responses to each of these RFPs and Interrogatories, which seek information at the core of Stone's claims and damages.

### ARGUMENT

### I.    MILLERCOORS SHOULD BE REQUIRED TO PROVIDE COMPLETE SALES DATA

The sales data Stone seeks in RFP 61 and Interrogatory 12 is highly relevant and should be produced.  Complete and granular sales data is admittedly available to MillerCoors and is essential to assess the economic impact of the Keystone Rebrand

on sales and profits of both Stone and Keystone beers.  MillerCoors has produced some sales data in response Stone's requests, but its discovery responses and production of sales data are deficient – including by refusing to produce the very same retailer-level sales data that MillerCoors has requested from Stone. MillerCoors has also unjustifiably restricted the time period for which it will provide sales data.  At the same time it requests "complete sales data for each Stone Brewing Product from 2009 to present" from Stone, MillerCoors has failed to produce any sales data for its own products prior to 2014.  Finally, MillerCoors may not have provided full production *even* with respect to the limited subset of sales data it agreed to produce.  MillerCoors refuses to drop an improper "maintained in the ordinary course of business" qualifier on its discovery responses at the same time it will not confirm in writing that it has produced from all available fields that it maintains in its sales database, leaving Stone without any confirmation that a full production has been made.  The Court should overrule MillerCoors's objections and order it to make a full production of sales data.

1. *Retailer-level sales data*.  Sales data broken down by retailer – rather than by distributor – is critical to the economic analysis that will be at the center of the infringement and damages determinations at trial.  MillerCoors has asserted in this litigation that "Stone Brewing's beers do not compete with Keystone Light."  Dkt. 19 ¶ 43.  But retail-level sales data will confirm that Stone and Keystone are side-by-side in thousands of retail and restaurant locations nationwide.  This is highly probative evidence of infringement because, "[j]ust as visual, aural, and semantic similarities between marks increase the likelihood of confusion, so too do convergent marketing channels." *Pom Wonderful v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).  As a leading treatise explains, "If both plaintiff's and defendant's goods are sold in the same stores, especially if available nearby each other within a store, this tends to increase the likelihood that buyers will think the goods come from the same source."  McCarthy on Trademarks and Unfair Competition § 24:45 (5th ed.).

Thus, Courts routinely cite overlapping retail locations as evidence that customers are likely to be confused – often pointing to granular evidence of sales in specific stores. *See id.* (reversing trial court's denial of preliminary injunction, holding confusion was likely based, in part, on fact that "both companies sell their products in an overlapping supermarket chain (Albertson's)"); *Reno-Tahoe Specialty, Inc., v. Mungchi*, No. 2:12-CV-01051-GMN-VC, 2014 WL 7336082, at *3 (D. Nev. Dec. 19, 2014) (permanent injunction granted; plaintiff established likelihood of confusion based, in part, on fact that both parties sold products at six (6) Walgreens stores in Las Vegas); *M'Otto Enterprises v. Redsand*, 831 F. Supp. 1491, 1498 (W.D. Wash. 1993) (permanent injunction granted; plaintiff established likelihood of confusion based, in part, on fact that one Nordstrom's department store in Seattle, Washington displayed products side-by-side in December 1992); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 464 (N.D. Cal. 1991) (granting summary judgment for plaintiff; likelihood of confusion established based, in part, on the fact that plaintiff's and defendant's wines were both sold at a single wine store in Washington, DC).

Moreover, granular, retailer level sales data will allow the Parties to perform econometric analyses to isolate the effect of the Keystone Rebrand on sales of Stone and Keystone. By comparing sales – and changes in sales – between retailers in which Stone and Keystone are sold side by side and retailers in they are not, the Parties will be make a comparison of the interaction effects between the brands before and after Keystone Rebrand – evaluating the Rebrand's impact while controlling for secular changes in sales and profits based on places where the brands are not sold side by side. This is important if the Parties are to separate the impact of the Rebrand on Stone and Keystone sales and profits from the effect of other factors. Granular data is key to the necessary econometrics and regression analysis.

As MillerCoors acknowledged on the pre-motion call with Chambers, it possesses retailer level sales data because it receives that data from distributors. This

PLAINTIFF STONE BREWING CO., LLC'S MOTION TO COMPEL

data can be produced.  *Cf.* MillerCoors Request 95, Ex. 4 at 3 (requesting that Stone produce "sales data provided to Stone Brewing by third party suppliers").

MillerCoors itself plainly recognizes the relevance and importance of retailer-level sales data *because it has requested that very data from Stone*.  MillerCoors's Request for Production No. 95 seeks "complete sales data for each Stone Brewing Product from 2009 to present, including for each sale: . . . *retailer*, location."  Ex. 4 at 3 (emphasis added).  This language is consistent with Stone's Request 61, and MillerCoors should not be permitted to seek retailer-level data from Stone while refusing to produce that data itself.

While MillerCoors claims that producing retailer-level data is overly burdensome, MillerCoors has repeatedly failed to provide any details explanation on that score.  Stone observed in its March 19, 2019 email that MillerCoors has been "unable to provide any detail about . . . how the data is maintained such that the retailer-level data exists but is unreasonably difficult to access, and what is required to access it" but had "promised to get back to us on these points."  Ex. 5 at 9.  Two weeks later, MillerCoors still has failed to provide any such detail beyond the bare assertion that it "would be extremely burdensome."  *Id*. at 7.  That is not enough to justify withholding this highly relevant information.  A party resisting discovery "cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof. Simply decrying the expense to plaintiff will not satisfy this obligation." *Porter v. Nationscredit Consumer Disc. Co*., No. CIV.A. 03-3768, 2004 WL 1753255, at *1 (E.D. Pa. July 8, 2004), *aff'd*, 285 F. App'x 871 (3d Cir. 2008).  Absent any supporting detail, MillerCoors's generic and unsubstantiated claims of burdensome are not grounds to oppose a motion to compel.

Moreover, MillerCoors has not responded to Stone's alternative proposal of an inspection.  In order to avoid any burden on MillerCoors, Stone suggested that MillerCoors "allow our expert(s) to have access to its database (subject to appropriate confidentiality/protective order protections) in order to analyze the data

themselves," but MillerCoors has not fulfilled its promise to get back to Stone on that approach.  Ex. 5 at 9.  MillerCoors should either produce retailer-level sales data – which it has itself requested from Stone – or allow Stone's experts to access the data in MillerCoors's systems.  But it should not be permitted to unilaterally exempt this key information from discovery based on nothing more than rote assertions of burdensomeness.[1]

      2.   *Pre-2014 Sales Data*.  MillerCoors also should be required to produce sales data going back to 2010, as requested in Stone's discovery.  MillerCoors has agreed to produce sales data only back to 2014 while itself requesting Stone sales data going back to 2009.  *Compare* Ex. 1 at 3, *with* Ex. 4 at 3.  Pre-2014 data is highly relevant because it is important to understand the trend of Keystone sales in order to evaluate the impact of the Rebrand.

      Initially, MillerCoors asserted that its sales database goes back only to 2014.  But MillerCoors did not deny that it recorded granular sales data prior to 2014 and remains in possession of such data today.  At the same time, MillerCoors was unable to explain where the pre-2014 sales data was located or what efforts it has made to determine where it is located.  Ex. 5 at 9.  Despite promising to get back to Stone on this score, MillerCoors has stated in follow-up correspondence only that it is "investigating whether any further data is available" – a position that it continued to take on its pre-motion call with the Chambers.  Ex. 5 at 6-7.

      It has now been more than two months since Stone served its request for sales data, yet MillerCoors still does not have a clear answer on this issue.  MillerCoors's

---

[1] MillerCoors has also waived its objections to production of retailer-level sales data. MillerCoors's RFP response mentions retailer data only in the paragraph that lists objections, not in the paragraph that describes what it will and will not produce.  Ex. 1 at 3.  As a result, MillerCoors's response never states that retailer-level data is being withheld, and Stone did not realize that MillerCoors was withholding this information until the Parties' meet-and-confer call.  That is not sufficient to preserve an objection.  F.R.C.P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

discovery responses currently state that it will produce only information from 2014 onward, and MillerCoors has never agreed in writing to abandon that position. At the same time, MillerCoors has not denied the relevance of pre-2014 sales data – even requesting the same from Stone. MillerCoors should be ordered to locate and produce granularized sales data from the databases used to collect and store that information prior to 2014.

3. *Commitment to Produce All Available Fields and Data.* Finally, MillerCoors should be ordered to provide all available sales data from its sales database in response to Request 61 and Interrogatory 12. MillerCoors's discovery responses do not commit to produce data from every field maintained in its sales database, and in meet-and-confer correspondence, MillerCoors has asserted that "it is premature to debate the specific available fields." Ex. 5 at 6. In subsequent calls and in the pre-motion call with Chambers, MillerCoors counsel has suggested that it believes that it has produced all available fields but has not confirmed that in writing. Stone sought written confirmation on this point in an effort to limit the scope of the Parties' disputes, but MillerCoors has not responded. *See* Ex. 6 ("In advance of the call, can you confirm in writing, as we requested on our call this morning, that the sales data you identified in your supplemental response to rog 12 includes all available fields in the MC sales data?").

MillerCoors's failure to confirm that all fields have been produced is particularly troubling in light of its inclusion of the qualifier "maintained in the ordinary course of business" to limit the scope of the documents it would agree to produce in response to Stone's requests.[2] The "ordinary" form concept specifies the *format* in which documents are to be produced. It is not a limit of the scope of discovery. *See* F.R.C.P. 34(b)(2)(E)(ii). MillerCoors is required to produce all documents in its possession, custody, or control (consistent with the bounds of

---

[2] This concern applies to all of Requests 61-64.

proportionality).  F.R.C.P. 34 (a)(1).  It cannot unilaterally withhold certain documents because they were generated or retained by MillerCoors outside the "ordinary course of business" according to some undefined standard known only to MillerCoors and its attorneys.  MillerCoors appears to be limiting its search or withholding documents on this basis, as it has conspicuously refused to provide written assurances to the contrary.  The Court should overrule MillerCoors's sui generis "ordinary course" qualification on production and order MillerCoors to produce all sales data it is possession, including all available fields.

## II.  MILLERCOORS SHOULD BE REQUIRED TO PROVIDE COMPLETE FINANCIAL INFORMATION

There are also no grounds for MillerCoors to withhold the financial information that Stone seeks in Requests 62 and 64 and Interrogatory 13. Accounting-type information regarding the financial performance of Keystone products and comparable MillerCoors brands is highly relevant to assessing the impact of the Rebrand on sales and profits.  Moreover, it is important to understand the different costs MillerCoors incurs to sell Keystone products so that Stone can understand how costs change as sales increase or decrease and thus the impact of those increases or decreases on Keystone profits.  Some costs are fixed regardless of how much beer MillerCoors sells while others vary along with sales.  Understanding the distinction between those types of costs is essential to calculate the impact of sales increases and decreases on profitability.  MillerCoors itself seeks the very same information from Stone.  Ex. 4 at 3 (Requests 96, 97).

Unfortunately, MillerCoors's discovery responses largely do not address what Stone is seeking by way of Requests 62 and 64 and Interrogatory 13.  MillerCoors's response to Request 62 repeats its response to Request 61 almost verbatim – that it will produce certain sales data.  But Request 62, unlike Request 61, does not seek sales data; it seeks top-line financial information regarding brand-wide revenues, profits, and costs.  Similarly, MillerCoors's response to Interrogatory 13 simply

incorporates its response to Interrogatory 12.  Meanwhile, MillerCoors's response to Request 64 agrees to produce certain limited categories of cost data – annual G&A expenses and Costs of Goods Sold – but there are many other categories of costs, such as operating expenses, that MillerCoors does not address.  And MillerCoors does not commit to produce documents that show how these costs were incurred – i.e., whether they are indirect or direct, variable or fixed, and so forth.  The incidence of these costs is critical to calculating the impact of sales changes on profits.

On the Parties' calls and in the pre-motion call with Chambers, MillerCoors suggested that it is producing all available documents in response to these requests. But it has declined multiple opportunities to make that representation in writing, stating only that it is "premature to debate the specific categories of data available." Ex. 5 at 8.  And MillerCoors's incomplete written responses give no comfort as they do not agree to produce all available information.  MillerCoors should be ordered to produce the financial information – including cost data – in its possession.

Moreover, Requests 62 and 64 and Interrogatory 13 seek financial and cost information for brands other than Keystone.  This is not burdensome information to produce – such basic reporting on brand performance is compiled in regular accounting statements and reviewed by executives to monitor brand performance.  It should easily be produced from a central repository or a few key custodians. Information regarding the performance of other, similar MillerCoors brands is highly relevant to damages because it allows the Parties to compare Keystone's performance versus other similar beers before and after the Rebrand.  Use of the performance of other brands as a baseline will permit the Parties to isolate the impact of the Rebrand on sales.  If Keystone performance tracks that of brands such as Miller Lite prior to the Rebrand, but performance then diverges, that is strong evidence that the Rebrand mattered.

Stone has attempted to negotiate a proper bundle of comparison brands with MillerCoors, but has received no counterproposal.  Ex. 5.  Thus, Stone requests that

11

the Court order MillerCoors to produce the financial performance data sought by Request 62 and Interrogatory 13 for Miller Lite, Genuine Draft, and High Life, Coors, and Coors Light, and Milwaukee's Best – along with the Keystone products.

## III.   MILLERCOORS SHOULD BE REQUIRED TO PROVIDE SALES PROJECTIONS

Stone's RFP 63 seeks sales projections for Keystone Products from 2010 to present, which Stone has offered to modify to 2014 to present.  Sales projections made during the pre-Rebrand period are highly relevant to MillerCoors's motivations and thinking in deciding to undertake the Rebrand.  Moreover, both pre- and post-Rebrand sales projections are relevant to the impact of the rebrand on sales.  A comparison of pre-Rebrand projections of post-Rebrand sales against post-Rebrand sales and/or actual sales is highly probative as to the impact of the Rebrand and its effectiveness in changing the Keystone sales trajectory.

Unfortunately, MillerCoors's responses to RFP 63 fail to address what Stone is seeking.  In its written responses, MillerCoors agreed to provide only the actual sales data it will already provide in response to RFP 61.  It said nothing about the projections that are the subject of RFP 63.  Ex. 1 at 5.  In subsequent correspondence, MillerCoors unilaterally asserted that Stone "indicated that it was [only] interested in projections relating to the refreshed packaging in 2017" and stated that it had "produced documents sufficient to show financial projections for the relevant time period," presumably 2017.  Ex. 5 at 5-6.  All of these responses miss the point:  pre-rebrand projections of future sales in the post-rebrand period are invaluable as insight into MillerCoors's thinking about the Keystone brand that motivated the Rebrand and as a point of comparison for actual post-Rebrand sales in determining the impact of the Rebrand.  MillerCoors should be ordered to produce its sales projections.

Dated:  April 2, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  s/ Jeffrey M. Theodore
          Jeffrey M. Theodore

*Attorneys for Stone Brewing Co., LLC*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this April 2, 2019, I electronically transmitted the

3 foregoing to the Clerk's office using the CM/ECF system, which will send a notice

4 of filing to all counsel of record.

5

6

7 Dated: April 2, 2019                    By:   s/ Jeffrey M. Theodore
                                                  Jeffrey M. Theodore

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28