Christopher T. Casamassima (SBN #211280)
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
chris.casamassima@wilmerhale.com

Vinita Ferrera (*pro hac vice*; MA Bar #631190)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6556
vinita.ferrera@wilmerhale.com

Additional counsel listed on signature page

ATTORNEYS FOR DEFENDANT
MILLERCOORS LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>     Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MILLERCOORS LLC,<br><br>     Defendant/Counterclaim Plaintiff. | Case No.:  3:18-cv-00331-BEN-LL<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MILLERCOORS LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 16, 2019<br>Time: 10:30 a.m.<br>Location: Courtroom 5A<br>Judge: Hon. Roger T. Benitez |

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................2

    A.    1989-1996: Coors Brewing Creates Keystone and Adopts the Nickname "STONE" and "STONES" ...................................................2

    B.    1996-1998: Stone Brewing Is Formed and Selects the Name STONE 5

    C.    1996-2009: MillerCoors Continues Its Use of "STONE" and "STONES" to Sell Keystone Beer .........................................................5

    D.    Stone Brewing Objects to MillerCoors' Use of "STONE" and "STONES" in 2010 ......................................................................6

    E.    2010-2016:  MillerCoors Continues to Use "STONE" and "STONES" to Advertise Keystone Beer .......................................................7

    F.    2016-2017: MillerCoors Refreshes Keystone's Look .........................8

    G.    2018:  Stone Brewing Files This Lawsuit ..........................................12

III.    Statement of Issues ...........................................................................................12

IV.    Legal Standard ..................................................................................................12

V.    Argument ...........................................................................................................13

    A.    MillerCoors Has a Priority Right to use "STONE" and "STONES" to Sell Keystone Beer ..................................................................13

    B.    There is No Evidence to Support a Finding of Willfulness ................17

    C.    Stone Brewing's Trademark Dilution Claims Fail ............................20

    D.    Laches Bars Stone Brewing's Claims .................................................24

VII.    CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072 (N.D. Cal. 2019)...........................................18, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................12

*Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571719 (N.D. Cal. June 30, 2012) ....................................................................................................23

*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999) .............21, 22, 24

*Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.,* 493 F.2d 709 (9th Cir. 1974) ....................................................................13

*Celotex Corp, v. Catrett*, 477 U.S. 317 (1986) ......................................................12

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) .....................14, 15

*Davis v. ESS Worldwide Corp.*, 2010 U.S. Dist. LEXIS 152290 (S.D. Cal. Jan. 5, 2010) ......................................................................................17

*Dropbox, Inc. v. Thru Inc.*, 728 Fed.App'x 717 (9th Cir. 2018) ...........................25

*Evergreen Safety Council v. RSA Networks Inc.*, 697 F.3d 1221 (9th Cir. 2012) ....................................................................................................25

*Groupion, LLC v. Groupon, Inc.*, 826 F.Supp.2d 1156 (N.D. Cal. 2011) ......................................................................................................18, 19

*Hydramedia Corp. v. Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.,* 143 F. Supp. 3d 947 (N.D. Cal. 2015), *on reconsideration sub nom. Novadaq Techs., Inc. v. Karl Storz Gmbh & Co.,* 2015 WL 11110632 (N.D. Cal. Dec. 11, 2015) ....................................................18

*New West Corp. v. NYM Co. of California*, 595 F.2d 1194 (9th Cir. 1979) ......................................................................................................14, 16

*Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030 (E.D. Cal. Sept. 18, 2007) ..................................................................................................22, 23

ii

*Pinkette Clothing, Inc., v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018) ................................................................................24, 25

*Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997 (N.D. Cal. 2015) ......22, 23, 24

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322 (9th Cir. 2015) .............................................................................19

*Scat Enterprises, Inc. v. FCA US LLC*, 2017 WL 5896182 (C.D. Cal. June 8, 2017).................................................................................19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996)...................13

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001) .....................................................................................22

*Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002) ..............21, 23

*Visa Int'l Serv. Ass'n v. JSL Corp.,* 590 F. Supp. 2d 1306 (D. Nev. 2008), aff'd, 610 F.3d 1088 (9th Cir. 2010) .....................................23

*Yelp Inc. v. Catron*, 70 F.Supp.3d 1082 (N.D.Cal. 2014)........................................23

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. 1225(c)(2)(A) ............................................................................21

15 U.S.C. § 1125(c)(1) ...............................................................................21

Cal. Bus. & Prof. Code § 14247 ................................................................21

Fed. R. Civ. P. 56(a)...................................................................................12

iii

## I.     INTRODUCTION

It is time for Stone Brewing Company ("Stone Brewing") to face the reality that the claims it has asserted against MillerCoors lack any factual merit.  Stone Brewing's public relations blitz and "hand waving" play no role at the summary judgment stage. MillerCoors brings this straightforward motion because there are no genuine issues of material fact on the following issues:

1. MillerCoors was the first to use the "STONE" and "STONES" marks and did so throughout the country for years before Stone Brewing even existed. MillerCoors' nationwide first use eliminates the claim for trademark infringement.

2. Because MillerCoors was the first to use the marks, MillerCoors cannot have willfully infringed upon Stone Brewing's marks.

3. Stone Brewing's claims for dilution under federal and state law fail because its STONE trademark is not famous or, in the alternative, because MillerCoors' use started before the STONE mark became famous.

4. Stone Brewing's claims are barred by laches.

In many ways, it is sad to see Stone Brewing try to reinvent itself for purposes of this lawsuit as a "mom and pop" craft brewer. ███████████████████████████ ██████████████████████████████████ Stone Brewing is failing keep pace in an ever more crowded craft beer segment and needed to revitalize its now-outdated image as an iconoclast.  Stone Brewing's market is increasingly populated by beers that are rated in official beer tastings as simply better than Stone Brewing's "strong and unapologetically flavorful hops."  This lawsuit—████████████ ████████—was designed as a publicity stunt and ████████████████ ████████████████████ ███████████████████████████████ ██████████████████████████████████████ ███████████████████████████████ This lawsuit is the best publicity Stone Brewing has received in years. Putting publicity to the side, it is

now time for Stone Brewing to face the merits of its claims.  MillerCoors submits that summary judgment should be granted.

## II.      STATEMENT OF FACTS

### A.      1989-1996: Coors Brewing Creates Keystone and Adopts the Nickname "STONE" and "STONES"

Coors Brewing Company created Keystone beer in 1989, in Golden, Colorado.[1] Coors recognized that consumers wanted a quality product at a reasonable price, and sought to develop an unpretentious, accessible, and affordable beer.[2] An immediate success, Keystone presented a light, refreshing option for those consumers focused on value.[3] By 1991, Keystone beer was available in all fifty states, was winning medals at the Great American Beer Festival, and had truly become the "Everyman's beer."[4]

Keystone drinkers soon affectionately nicknamed the beer "the Stone," a nickname that Keystone swiftly adopted.[5]  Beginning as early as 1991 and continuing throughout the early 1990's, Keystone partnered with national brands like Planters Peanuts, Pretzel Stix, and NASCAR.[6]  For each of these campaigns, and those that followed, Keystone heavily utilized its "STONE" nickname, inviting consumers to grab some "STIX AND 'STONES," to "PARTY HERE WITH THE STONE," or to "ROLL

---

[1] Exhibit 1 to the Declaration of Christopher T. Casamassima ('Casamassima Decl.'), MILLERCOORS0153254.
[2] *Id*.
[3] Casamassima Decl. Ex. 2, MILLERCOORS0153261.
[4] Casamassima Decl. Ex. 3, MILLERCOORS0150743; Casamassima Decl. Ex. 4, MILLERCOORS0127637.
[5] Numerous witnesses, ████████████████████████████, have attested to having heard beer drinkers use the term "STONE" or "STONES" in association with Keystone.  *See, e.g.* Casamassima Decl. Ex. 5, ██████████ Casamassima Decl. Ex. 6, ████████████.  *See also* Casamassima Decl. Ex, 7, MILLERCOORS0001620 (Greg Koch Tweet regarding use of "Stones" as a nickname for Keystone); Casamassima Decl. Ex. 8, Needleman Tr. 321:2-22 (consistent use of "Stones" as a nickname for Keystone among consumers on social media).
[6] *See* Casamassima Decl. Ex. 9, MILLERCOORS0090450; Casamassima Decl. Ex. 10, MILLERCOORS0044331; Casamassima Decl. Ex. 11, MILLERCOORS0127635; Casamassima Decl. Ex. 12, MILLERCOORS0127602.

2

1   WITH THE 'STONE."[7]



**Pretzel Stix Collaboration, 1991**   **NASCAR Promotional Poster, 1992**



**Keystone Promotional Display, 1993**   **Planters Collaboration, 1994**

By 1994, Keystone had proudly dubbed itself "THE 'STONE" on official merchandise, sporting a logo of "THE 'STONE" on frisbees, coolers, hats, watches, and

---

[7] Casamassima Decl. Ex. 9, MILLERCOORS0090450; Casamassima Decl. Ex. 10, MILLERCOORS0044331, Casamassima Decl. Ex. 11, MILLERCOORS0127635; Casamassima Decl. Ex. 12, MILLERCOORS0127602.

3

a myriad other promotional items.[8]






Not only was Keystone's nickname displayed on marketing materials used nationwide beginning in at least 1991, but also it appeared prominently on every 30-pack sold starting in at least 1995 and continued to be used on those and other pack sizes through to the present day.[9]

---

[8] Casamassima Decl. Ex. 13, MILLERCOORS0127608; Casamassima Decl. Ex. 14, MILLERCOORS0127615; Casamassima Decl. Ex. 15, MILLERCOORS0127614; Casamassima Decl. Ex. 16, MILLERCOORS0127621; Casamassima Decl. Ex. 17, MILLERCOORS0127607; Casamassima Decl. Ex. 18, MILLERCOORS0127616. Further representative samples of Keystone Light marketing and advertising materials are submitted herewith as Exhibit 2 to the Declaration of Heidi Harris ("Harris Decl.").
[9] Harris Decl. ¶¶ 4-5; Casamassima Decl. Ex. 19, MILLERCOORS0127341; Casamassima Decl. Ex. 20, MILLERCOORS0000243; Casamassima Decl. Ex. 21, MILLERCOORS0127353; Casamassima Decl. Ex. 22, MILLERCOORS0127429; Casamassima Decl. Ex. 23, MILLERCOORS0000176; Casamassima Decl. Ex. 24,

4



**1995**          **1996**          **1998**

### B.     1996-1998: Stone Brewing Is Formed and Selects the Name STONE

By the time Stone Brewing was created in 1996, Keystone had been actively marketed using "STONE" and "STONES" for at least five years. Consumers across the United States had already spent two years tossing around "THE 'STONE" frisbees and donning "THE 'STONE" hats. They had spent three years "PARTY[ING] WITH THE STONE," and had spent a full year purchasing 30-packs of "'STONES" from their local liquor and grocery stores.

Stone Brewing's creation in 1996, its selection of the name STONE, and its eventual registration of that term in 1998, did not change this. As Stone Brewing itself has explained, it spent the first four years of its existence in a small warehouse, kegging its own beer. Complaint, ECF 1, ¶ 19. Even though Stone Brewing purportedly "grew in size and reach," in the early 2000's, *id*. ¶ 23, ███████████████████████████ ████████████████████████████ let alone a famous one.[10]

### C.     1996-2009: MillerCoors Continues Its Use of "STONE" and "STONES" to Sell Keystone Beer

From the time of Stone Brewing's creation in 1996 until 2009, Coors (and later

---

MILLERCOORS0000238. A complete collection of historic Keystone packages is submitted herewith as Harris Decl. Ex. 1.

[10] *See* Casamassima Decl. Ex. 25, STONE00100362 ███████████████████████████████████████████ (emphasis added); *see also* Casamassima Decl. Ex. 26, Stewart Tr. 81:20-82:18.

3:18-cv-00331-BEN-LL

1   MillerCoors)[11] sold approximately ▮▮▮▮▮▮ barrels (BBLs) of Keystone Light.[12]

2   During this period, MillerCoors consistently used "STONE" and "STONES" in its

3   marketing materials and packaging for Keystone.[13]

  

**2002**          **2005**          **2008**

### D.   Stone Brewing Objects to MillerCoors' Use of "STONE" and "STONES" in 2010

MillerCoors' first communications with Stone Brewing came in 2010, when Stone
Brewing sent MillerCoors a cease and desist letter raising nearly identical issues to those
it now raises in this litigation. In a letter dated April 22, 2010, Stone Brewing's attorney
sent a cease and desist letter to MillerCoors, stating "it has recently come to [Stone
Brewing's] attention that MillerCoors LLC is marketing its Keystone product under the
brands STONE, STONES, and HOLD MY STONES."[14] MillerCoors' attorney
responded on May 10, 2010 and informed Stone Brewing of Keystone's long history of
using "STONE" and "STONES" to sell Keystone beer. She further noted that
Keystone's advertising "has a different theme and connotation" compared to Stone
Brewing's marketing using STONE.  She unequivocally stated that "MillerCoors will

---

[11] In 2008, SABMiller and Molson Coors joined to create MillerCoors. For the purposes
of this Motion, MillerCoors shall refer to MillerCoors LLC, as well as its predecessor
Coors.
[12] Casamassima Decl. Ex. 3, MILLERCOORS0150743.
[13] Harris Decl. Exs. 1 & 2; Casamassima Decl. Ex 22, MILLERCOORS021429;
Casamassima Decl. Ex. 23 MILLERCOORS0000176; Casamassima Decl. Ex. 27,
MILLERCOORS0127632; Casamassima Decl. Ex. 28, MILLERCOORS0000151.
[14] Casamassima Decl. Ex. 29, MILLERCOORS0001729.

3:18-cv-00331-BEN-LL

not make any changes in its promotion of Keystone Light beer."[15]  The parties

exchanged additional correspondence on this issue.  On July 9, 2010, for example,

MillerCoors' counsel reiterated that "MillerCoors LLC believes that it has prior use of

'STONES'" and that "we cannot advise MillerCoors to discontinue its current use of

'STONES'."[16]  Ultimately, in November 2010, MillerCoors chose not to pursue a

trademark application for the "Hold My Stones" ad campaign it was running at the time,

but it made clear that it would continue marketing Keystone as it had been doing, using

the "STONE" and "STONES" marks.[17]  Stone Brewing took no steps to prevent

MillerCoors from using "STONE" or "STONES" in subsequent Keystone campaigns.

In fact, despite MillerCoors' continued use of "STONE" and "STONES" to sell

Keystone, MillerCoors never heard another word from Stone Brewing until Stone

Brewing filed this lawsuit – more than seven years later.

### E.    2010-2016:  MillerCoors Continues to Use "STONE" and "STONES" to Advertise Keystone Beer

In 2010, MillerCoors launched the massively popular "Keith Stone" campaign for

Keystone.[18] From 2010 through 2015, Keith Stone starred in TV commercials and on

print advertisements, billboards, and social media, flanked by his signature catchphrase

"HOLD MY STONES."[19] MillerCoors further rolled out the 'STONE HANDED

GAMES promotion in 2013, which encouraged Keystone consumers to reimagine

Keystone packages as their favorite backyard or tailgate games.[20]

---

[15] Casamassima Decl. Ex. 30, MILLERCOORS0001686, Casamassima Decl. Ex. 31, MILLERCOORS0001726.
[16] Casamassima Decl. Ex. 31, MILLERCOORS0001726.
[17] Casamassima Decl. Ex. 32, MILLERCOORS0001681; Casamassima Decl. Ex 31, MILLERCOORS0001726.
[18] Casamassima Decl. Ex. 33, MILLERCOORS0153273.
[19] Casamassima Decl. Ex. 34, MILLERCOORS0151125 (Ex. 34 is national television commercial released in connection with the Keith Stone advertising campaign. MillerCoors will deliver a hard-copy version of this file to the court.).
[20] Casamassima Decl. Ex. 35, MILLERCOORS0000193; Casamassima Decl. Ex. 36, MILLERCOORS0000221; Casamassima Decl. Ex. 37, MILLERCOORS0000231.



**Keystone Light Point-Of-Sale, 2011**   **Keystone Light Point-Of-Sale, 2013**

Later, between 2015 and 2016, MillerCoors launched its "Hunt for the Great White 'Stone" promotion, encouraging consumers to search for the elusive white Keystone can and to share their successes on social media.[21]







**Keystone Light Point-Of Sale, 2016**        **Social Media Posts, 2015[22]**

    **F.**    **2016-2017: MillerCoors Refreshes Keystone's Look**

---

[21] Casamassima Decl. Ex. 38, MILLERCOORS0111535; Casamassima Decl. Ex. 39, MILLERCOORS0151340; Casamassima Decl. Ex. 40, MILLERCOORS0151461.
[22] Casamassima Decl. Ex. 40, MILLERCOORS0151461.

8

1   ████████.[23] ██████████████████████████████████, MillerCoors

2   identified three key initiatives to refresh its Keystone brand, specifically. The _**first**_, and

3   most successful, innovation was to deliver consumers greater value by offering Keystone

4   in 15-packs, as opposed to 12-packs, thus providing consumers an extra three cans of

5   Keystone for the same price as the previous 12-pack format.[24] MillerCoors introduced

6   the 15-pack in January 2017, ████████████████████████████████

7   ██████████████████.[25]   While a number of brands have since followed suit, Keystone

8   was the first to sell to consumers in this pack size.[26]

9        _**Second**_, ████████████████████████████████

10  ████████████████████████████████████████████

11  ██████████████████████████.[27]

12       _**Third**_, MillerCoors sought to modernize the Keystone brand image. Because

13  economy beer caters to a specific type of consumer with specific preferences, economy

14  beer packaging across brands tends to share certain attributes. With its refreshed

15  packaging, MillerCoors sought to enhance the Keystone brand's long-standing assets,

16  while updating its look to better differentiate it from the "sea of sameness" pervasive in

17  the economy beer aisle.[28]

18  ████████████████████████████████████

19  ████████████████████████.[29] ██████████████████████

20

---

21  [23] Casamassima Decl. Ex. 41, MILLERCOORS0062922 ██████████████████

22  ████████████████████████████████████████████████

23  [24] Casamassima Decl. Ex. 42, Selman Tr. 256:20-258:3, 340:2-14.

    [25] *See* Casamassima Decl. Ex 43, MILLERCOORS0023076; *see also* Casamassima Decl.
24  Ex. 44, MILLERCOORS0013663.

25  [26] *See, e.g.,* Casamassima Decl. Ex. 42, Selman Tr. 353:17-354:16.
    [27]Casamassima Decl. Ex. 42, Selman Tr. 257:5-9; Casamassima Decl. Ex. 41,
26  MILLERCOORS0062922.

27  [28] Casamassima Decl. Ex. 45, MILLERCOORS0014670.
    [29]Casamassima Decl. Ex 46, MILLERCOORS0133710; Casamassima Decl. Ex 47,
28  MILLERCOORS0114164.

[30]  In addition, MillerCoors reiterated its commitment to Keystone's historic personality and brand assets: "

[35]

        In April 2017, the Keystone brand team debuted refreshed packaging that remained true to the prior Keystone packaging. The refreshed packaging retained the color scheme, the mountain imagery, and the brand assets that had been present on

---

[30] Casamassima Decl. Ex. 48, MILLERCOORS0028739.
[31] Casamassima Decl. Ex 48, MILLERCOORS0028739.
[32] Casamassima Decl. Ex 49, MILLERCOORS0050270.
[33] Casamassima Decl. Ex 49, MILLERCOORS0050270 (emphasis added).
[34] *Id.*
[35] Casamassima Decl. Ex 50, MILLERCOORS0099185; Casamassima Decl. Ex 51, MILLERCOORS0107307; Casamassima Decl. Ex 52, MILLERCOORS0115947.

earlier packaging: the "Coors Brewing Company" logo and the "STONES" nickname.[36]

 

**Keystone Light 30-Pack, 2016**       **Keystone Light 30-Pack, 2017**

The refreshed communications plan similarly retained the playful, lighthearted sense of humor of the Keystone brand through the use of humorous sayings that played off the nicknames "STONE" and "STONES," while also displaying the full brand name "Keystone Light" and other well-established brand assets, such as the mountain imagery.

████████████████████████████████████████
████████████████████████████████████████[37] Nowhere in any of the thousands of pages of documents that MillerCoors has produced relating to the Keystone refresh is there even one document indicating that MillerCoors sought to leverage Stone Brewing's STONE mark, that it viewed Stone Brewing (or any other craft brand) as a competitor for Keystone Light, or

---

[36] Indeed, the brand asset that has been consistently present on either packaging or marketing materials since 1991 is "STONE" or "STONES." "Always Smooth" only became a Keystone tagline around 2000. *See*, *e.g*, Casamassima Decl. Ex. 53, MILLERCOORS0127362. Thus, at the time of the refresh, "STONE" or "STONES" was one of Keystone's longest-running brand assets.

[37] Casamassima Decl. Ex. 42, Selman Tr. 271:23-272:2 ████████████
████████████████████████████████████████

3:18-cv-00331-BEN-LL

that it considered Stone Brewing in any fashion prior to the launch of the refreshed packaging in April 2017.[38]

### G. 2018: Stone Brewing Files This Lawsuit

Much to the surprise of MillerCoors—given its long use of "STONE" and "STONES" dating back to 1991—Stone Brewing filed this lawsuit in February 2018.

## III. Statement of Issues

MillerCoors respectfully requests that this court grant summary judgment that: (1) MillerCoors is the senior user of the "STONE" and "STONES" marks, and thus has the right to use "STONE" and "STONES" and cannot be found to infringe Stone Brewing's mark[39]; (2) MillerCoors' alleged infringement was not willful; (3) Stone Brewing's claims for dilution under federal law and California law fail because the STONE trademark is not famous or, in the alternative, because MillerCoors' use started before the STONE mark became famous; and (4) Stone Brewing's claims are barred by laches.

## IV. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp, v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As explained in *Anderson v. Liberty Lobby, Inc.*, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[38] *See, e.g.*, Casamassima Decl. Ex. 42, Selman Tr. 251:9-11 ("███████████████████ ████████████████████████.

[39] The same facts cited herein support MillerCoors' arguments for summary judgment on both its counterclaims seeking declaratory judgment of MillerCoors' right to use "STONE" and "STONES" to advertise Keystone beer (First Counterclaim), non-infringement based on that right (Third Counterclaim), and its affirmative defense of prior use (Second Affirmative Defense).

judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. 242, 247-48 (1986).

## V.     Argument

It is undisputed that, since at least 1991, MillerCoors (and its predecessor, Coors) has used "STONE" and "STONES": in connection with its marketing and sale of Keystone beer. Since at least 1995, and for every year thereafter, MillerCoors has sold 30-packs of "STONES" in every state and has advertised using "STONE" and "STONES" nationally across a variety of mediums. This long and well-documented history of prior use establishes MillerCoors as the senior user of the "STONE" and "STONES" marks to advertise and sell Keystone beer. Even apart from MillerCoors' priority of use argument, MillerCoors is entitled to summary judgment on the issue of willfulness as Plaintiff has failed to point to any evidence of willfulness. MillerCoors is further entitled to summary judgment with respect to Stone Brewing's claims of dilution under federal and state law because Stone Brewing cannot establish that its mark is famous or, alternatively, that it became famous before MillerCoors began using "STONE" and "STONES."  Finally, MillerCoors is entitled to summary judgment that Stone Brewing's claims are barred by laches.

### A.     MillerCoors Has a Priority Right to use "STONE" and "STONES" to Sell Keystone Beer

"It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Registering the mark first is not enough.  *Id.*  "[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  *Id.* As this Court has previously instructed, "to establish a senior common-law right in a mark registered by a junior user, a party must show that (1) its use of the mark began before the mark's registration and publication; and (2) there has been continuing use since that time." (Order Denying Mot. For Prelim. Injunction, ECF 85, at p. 18) (*citing Casual Corner*

13

*Assocs., Inc. v. Casual Stores of Nevada, Inc.,* 493 F.2d 709, 712 (9th Cir. 1974).

        1.      <u>There is No Genuine Dispute that MillerCoors Used "STONE"</u>
                <u>and "STONES" Prior to Stone Brewing's Registration and</u>
                <u>Publication</u>

In evaluating a claim of priority use, courts should consider the "totality of the circumstances" to determine whether a party was the first to use the mark in commerce. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1158 (9th Cir. 2001). Stone Brewing filed an application to register the mark "STONE" with the PTO in 1996; the application was published in 1997; and the mark was registered in 1998.[40] Yet, MillerCoors has provided overwhelming, incontrovertible evidence that it used "STONE" and "STONES" to advertise Keystone beer starting in at least 1991, five years before Stone Brewing filed its trademark application, and that it began placing "STONES" on the packaging for its 30-packs beginning in at least 1995, a year before Stone Brewing's trademark application was filed.[41] This documentary evidence is clear and indisputable proof that MillerCoors used the mark in commerce before Stone Brewing.

A party can establish priority of use so long as it used the mark in a "sufficiently public" manner such that consumers would associate the mark with that party's product. *See New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1200 (9th Cir. 1979). MillerCoors' use of the marks has undoubtedly been "sufficiently public" such that consumers would associate them with Keystone beer prior to Stone Brewing's adoption of the name. As this court already noted, MillerCoors has produced photographs of Keystone Light outer packaging that clearly show a copyright date of 1995. (Order, ECF 85, p. 18). This image indisputably uses the term "STONES" alongside "Keystone Light." This is true for each and every 30-pack sold since 1995.[42] Through discovery, MillerCoors has produced dozens of additional examples of packaging[43] and

---

[40] Casamassima Decl. Ex 70, MCEXPERT000442.
[41] *See, e.g.*, Casamassima Decl. Ex. 11, MILLERCOORS0127635.
[42] Casamassima Decl. Ex. 54, Harris Tr. 167:8-14.
[43] Keystone packaging is attached hereto as Harris Decl. Ex. 1.

advertising[44] using "STONE" and "STONES" predating Stone Brewing's registration.[45] Keystone's advertising materials sufficiently associate "STONE" and "STONES" with Keystone Light, as each item that uses those terms clearly also references Keystone Light. Many of these items can be dated by their stamped copyright date, while others have been dated and verified by the Coors Archivist.[46]

The Ninth Circuit has specifically instructed that use in commerce need not be extensive but need merely show a "bona fide intention to use the mark in commerce." *Pac-Tel Teletrac Inc.*, 242 F.3d at 1157. MillerCoors' use of "STONE" and "STONES" prior to 1996 undoubtedly meets, and even exceeds, this requirement. MillerCoors consistently used "STONES" on every 30-pack going back to 1995.[47] MillerCoors has produced sales data showing that Keystone Light was sold nationwide by no later than 1991.[48] Further, as is evidenced by Section II, *supra*, MillerCoors placed its "THE 'STONE' logo on hats, frisbees, coolers, and other similar promotional merchandise, which were then advertised through Coors Merchandise catalogues that were distributed nationwide.[49] Similarly, MillerCoors has produced brochures from this time period from

---

[44] Representative samples of Keystone advertisements and marketing materials are filed herewith as Harris Decl. Ex. 2.

[45] MillerCoors does not contend that the items produced thus far represent the full universe of its use of "STONE" and "STONES" to sell Keystone beer during this time period. Indeed, MillerCoors has reason to believe that a myriad other Keystone advertisements and packages may have, and likely did, use "STONE" and "STONES" during this time period. Due to the nearly 30-year gap in time, however, it is highly probable that many of the relevant materials have been lost due to the passage of time.

[46] *See* Casamassima Decl. Ex. 55, Expert Disclosure of Heidi Harris; *see also* Casamassima Decl. Ex. 54 Harris Tr. 28:1-5, 40:25-41:20.

[47] *Id.*

[48] Casamassima Decl. Ex. 3, MILLERCOORS0150743; Casamassima Decl. Ex. 56, Expert Report of Mark Hosfield, Appendix D, Schedule 1; *see also* Harris Decl. Ex. 1,

[49] Casamassima Decl. Ex. 13, MILLERCOORS0127608; Casamassima Decl. Ex. 14, MILLERCOORS0127615; Casamassima Decl. Ex. 15, MILLERCOORS0127614; Casamassima Decl. Ex. 16, MILLERCOORS0127621; Casamassima Decl. Ex. 17, MILLERCOORS0127607; Casamassima Decl. Ex. 18, MILLERCOORS0127616; *see also* Harris Decl. at ¶ 4.

which retailers could order Keystone Light point of sale displays using the nicknames "STONE" and "STONES".[50]  MillerCoors has also produced photographs of numerous other marketing pieces, including actual point-of-sale displays, that were for use in promoting Keystone Light to consumers in retail outlets throughout the country.[51] MillerCoors can thus prove that it had made extensive use in commerce of the "STONE" and "STONES" marks prior to Stone Brewing's filing of its trademark application.

Apart from the conclusory characterization of its purported expert Brendan Hernandez that ███████████████████████████████████████ ████, Stone Brewing has identified no evidence that contradicts the documentary and testimonial proof put forward by MillerCoors on this point. ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.[52]

Moreover, despite Stone Brewing's suggestions to the contrary, it is not a requirement that MillerCoors made "STONE" or "STONES" the centerpiece or focal point of all of its advertising for Keystone; rather it is enough that the mark was "use[d] in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind..." *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1200 (9th Cir. 1979).  The use of "STONE" and "STONES" consistently on packaging and marketing materials could not be more public; it is intended to bring in consumers and is focused on reaching that audience.

2.   It is Undisputed that MillerCoors has Used the "Stone" and "Stones" Marks Continuously Since at Least 1991

This very same evidence makes clear that MillerCoors has used "STONE" and

---

[50] Casamassima Decl. Ex. 57, MILLERCOORS0127439; Casamassima Decl. Ex. 58, MILLERCOORS0127598; Casamassima Decl. Ex. 59, MILLERCOORS0127438.
[51] *See, e.g.*, Casamassima Decl. Ex. 60, MILLERCOORS0127629; Casamassima Decl. Ex. 12, MILLERCOORS0127602; Casamassima Decl. Ex. 61, MILLERCOORS0065323.
[52] Casamassima Decl. Ex. 62, Hernandez Tr. 126:8-128:24.

3:18-cv-00331-BEN-LL

"STONES" continuously since at least 1991.  As detailed at length in Section II, *supra*, and in this section, MillerCoors has provided Plaintiff and this Court with indisputable evidence of such continuous use.  MillerCoors has produced Keystone marketing materials and packaging evidencing the use of "STONE" and "STONES" every year from 1991 to the present.  It has also produced sales data showing that Keystone Light was distributed and sold continuously nationwide for that entire period.[53]  Where, as here, a party's continuous use occurs through nationwide distribution, there is "sufficient market penetration" for the party to be deemed the senior user.  *Davis v. ESS Worldwide Corp.*, 2010 U.S. Dist. LEXIS 152290, at *14 (S.D. Cal. Jan. 5, 2010).

> 3.  There is No Dispute as to any Material Fact, and MillerCoors is Entitled to Summary Judgment on This Issue as a Matter of Law

The undisputed evidence submitted by MillerCoors proves that it began using "STONE" and "STONES" to advertise and sell Keystone beer prior to Stone Brewing's filing of its application to register STONE as a mark.  The undisputed evidence further proves that MillerCoors has used the "STONE" and "STONES" marks continuously and in commerce since at least 1991, five years prior even to Stone Brewing's founding.  No reasonable jury could return a verdict for Stone Brewing on this issue.  MillerCoors is therefore entitled to summary judgment that it is the senior user of "STONE" and "STONES" in connection with Keystone beer in the United States, and thus has the common law right to use those marks and cannot be deemed to infringe Stone Brewing's later-registered STONE mark.

## B.  There is No Evidence to Support a Finding of Willfulness

Even apart from its status as the senior user of the "STONE" and "STONES" marks, MillerCoors is entitled to summary judgment that its conduct was not willful.

---

[53]Casamassima Decl. Ex. 3, MILLERCOORS0150743; Casamassima Decl. Ex. 56, Expert Report of Mark Hosfield, Appendix D, Schedule 1; *see also* Casamassima Decl. Ex. 1, MILLERCOORS0153254; Casamassima Decl. Ex. 2, MILLERCOORS0153261.

Despite extensive discovery, Stone Brewing is unable to point to a shred of evidence that MillerCoors acted willfully in allegedly infringing Stone Brewing's trademark.

Courts in the Ninth Circuit routinely grant summary judgment on the issue of willfulness. *See, e.g., Hydra Media Grp. Inc.,* 392 F. App'x 522, 523 (9th Cir. 2010) (affirming district court's grant of summary judgment on willfulness where "Defendant initially adopted the contested mark [] before it knew that Plaintiff even existed" and where "there was no evidence that it sought to mislead consumers or usurp any goodwill associated with Plaintiff's mark."); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (granting summary judgment of no willfulness where plaintiff could not identify any evidence that defendant acted willfully); *Hydramedia Corp. v. Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.,* 143 F. Supp. 3d 947, 957 (N.D. Cal. 2015), *on reconsideration sub nom. Novadaq Techs., Inc. v. Karl Storz Gmbh & Co.,* 2015 WL 11110632 (N.D. Cal. Dec. 11, 2015) (granting summary judgment of no willfulness where there was no evidence that defendant deliberately intended to deceive customers, noting that, "knowledge of another's goods is not the same as an intent to mislead and to cause customer confusion."); *Groupion, LLC v. Groupon, Inc.*, 826 F.Supp.2d 1156, 1165 (N.D. Cal. 2011) (granting defendant's motion for summary judgment on plaintiff's request for defendant's profits because plaintiff could not prove willful infringement).

### 1. Plaintiff Cannot Identify Any Evidence of Bad Intent

"On an issue as to which the nonmoving party will have the burden of proof" at trial, a party seeking summary judgment "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). As this Court has already acknowledged, "Stone's only 'evidence' of bad intent boils down to two points:" (1) that MillerCoors was aware of Stone Brewing prior to 2017 and (2) that MillerCoors did not successfully register STONES and HOLD MY STONES with the PTO. (Order Denying

Pl.'s Motion for Prelim. Inj., ECF 85, pp. 12-13).  This Court has already considered each of these points and expressly found that "*neither is evidence of bad intent*." *Id.* (emphasis added).  After more than 12 months of fact and expert discovery, the production of 45,608 documents, and 13 depositions of MillerCoors' witnesses (plus 3 depositions of third-party marketing agencies), Stone Brewing has failed to identify any evidence beyond that which the Court previously considered and found not to constitute evidence of bad intent.  To the contrary, the documents confirm that the MillerCoors brand team never once mentioned Stone Brewing during their development of the Keystone refresh, and the testimony of the witnesses corroborates this.[54]

Because Plaintiff's proffered "evidence" does not support a finding of bad intent, it necessarily cannot evidence willfulness, which requires a heightened showing that the defendant deliberately intended to deceive the public.  *See San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324-24 (9th Cir. 2015) (finding that "[w]illful infringement carries a connotation of deliberate intent to deceive."); *Am. Auto. Ass'n of N. California, Nevada & Utah*, 367 F. Supp. 3d at 1102 ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard").  Courts in this Circuit have explicitly stated that "mere knowledge is insufficient to show willfulness," *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d at 1104, and have further found that a Defendant's decision to continue using a mark after the USPTO refused registration "does not evidence a willfulness to exploit Plaintiff's mark." *Scat Enterprises, Inc. v. FCA US LLC,* No. CV 14-7995-R, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017); *cf Groupion, LLC v. Groupon*, Inc., 826 F.Supp.2d 1156, 1165 (N.D. Cal. 2011)("[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith.")

---

[54] *See, e.g.*, Casamassima Decl. Ex. 42, Selman Tr. 69:11-19; Casamassima Decl. Ex. 63, Marek Tr. 392:7-10; Casamassima Decl. Ex. 64, Hemmer Tr. 211:1-5; Casamassima Decl. Ex. 8, Needleman Tr. 323:7-11.

19

Stone Brewing has not identified any evidence to create a genuine issue of material fact as to whether MillerCoors had a deliberate intent to deceive consumers into believing that Keystone Light was actually a Stone Brewing product or somehow associated with Stone Brewing.  The evidence instead demonstrates that ██████████ ████████████████████████████████████████████████████████ [55] ████████ ██████████████████████████████████████████████████████. [56] ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████. [57]  In sum, there is simply no evidence in any document or deposition testimony that MillerCoors sought to leverage Stone Brewing's STONE mark, that it viewed Stone Brewing (or any other craft brand) as a competitor for Keystone Light, or that it considered Stone Brewing in any fashion prior to the launch of the refreshed packaging in April 2017.  MillerCoors is thus entitled to summary judgment on willfulness on this basis alone.

> 2.   There is No Dispute as to any Material Fact, and MillerCoors is Entitled to Summary Judgment on This Issue.

Stone Brewing is unable to point to any evidence showing that MillerCoors deliberately intended to deceive the public into believing there was some association between Keystone beer and Stone Brewing. Because no reasonable jury could thus find that MillerCoors acted with the requisite deliberate intent to deceive, MillerCoors is entitled to summary judgment that any alleged infringement was not willful.

**C.   Stone Brewing's Trademark Dilution Claims Fail**

The Court should grant summary judgment against Stone Brewing's third claim for federal trademark dilution and fourth claim for trademark dilution under California

---

[55] Casamassima Decl. Ex. 48, MILLERCOORS0028739.
[56] *Id.*
[57] Casamassima Decl. Ex. 50, MILLERCOORS0099185; Casamassima Decl. Ex. 51, MILLERCOORS0107307; Casamassima Decl. Ex. 52, MILLERCOORS0115947.

law.  Under both claims, Stone Brewing must prove that (1) its STONE mark is famous and distinctive; (2) MillerCoors is making use of the mark in commerce; (3) MillerCoors' use began after the mark became famous; and (4) MillerCoors' use of the mark is likely to cause dilution by blurring or dilution by tarnishment.  15 U.S.C. § 1125(c)(1); Cal. Bus. & Prof. Code § 14247. Stone Brewing lacks evidence to create a genuine issue of material fact as to whether (a) its STONE trademark is famous or (b) MillerCoors' use started after the STONE mark became famous.  Therefore, the Court should grant summary judgment against Stone Brewing's trademark dilution claims.

> 1.   Stone Brewing has produced no evidence that the STONE trademark is famous.

Stone Brewing cannot prove that its trademark STONE is a "household name." *See Thane Int'l, Inc. v. Trek Bicycle Corp*., 305 F.3d 894, 911 (9th Cir. 2002). Trademark dilution, under both federal and California law, requires a plaintiff to prove its trademark is "famous."  *Id.* "Famous" trademarks are only those that are truly a "household name" that have "achieved fame throughout the population at large" and "have become a part of the collective national consciousness."  *Thane Int'l*, 305 F.3d at 911–12; s*ee also Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999) ("Dilution is a cause of action invented and reserved for a select class of marks--those marks with such powerful consumer associations that even non-competing users can impinge on their value.").

Stone Brewing has produced no evidence from which a reasonable fact-finder could find that the trademark STONE is famous throughout the population at large.  To determine whether a mark is famous, courts consider a non-exhaustive list of factors, including the duration and extent of advertising, the amount and extent of sales, and the actual recognition of the mark.  *See* 15 U.S.C. 1225(c)(2)(A).  Stone Brewing cannot carry any of these factors.

Stone Brewing has not provided any survey evidence or expert testimony that would demonstrate the actual recognition of the STONE trademark among a sufficient segment of the general public or the public of California.[58] The lack of any such survey evidence weighs heavily in favor of summary judgment. *See TCPIP Holding Co. v. Haar Commc'ns, Inc.,* 244 F.3d 88, 99 (2d Cir. 2001) (holding evidence of fame must be proven through survey evidence or national press accounts, not unsubstantiated conclusory claims to fame). The "extraordinarily high level of public awareness" required to show fame has been recommended to be at least 75%. *Pinterest, Inc. v. Pintrips, Inc*., 140 F. Supp. 3d 997, 1035 (N.D. Cal. 2015) (citing McCarthy on Trademarks §24:106). ███████████████████████████████

███████████████████████████████████████████████

████████████████████.[59] ██████████████████████████

███████████████████████████████████████████████████

██████████████████████████[60] (Emphasis added.)

Stone Brewing's lack of public recognition is not surprising. ██████████

██████████████████████████████████████████████

████████████████████████[61] *See Nike, Inc. v. Nikepal Int'l, Inc*., 2007 WL 2782030, at *3 (E.D. Cal. Sept. 18, 2007) (holding NIKE trademark was famous, in part, because Nike spent over $1.5 billion on advertising in the U.S.); *Avery*, 189 F.3d at 876–77 (finding Avery and Dennison marks not famous despite decades of use, $3 billion in annual sales, and $5 million in advertising).

---

[58] Casamassima Decl. Ex. 26, Stewart Tr. at 78-79.
[59] Casamassima Decl. Ex. 65, STONE00100364 at STONE00100370 ███████████ ████████████████████████████, STONE00100372 ███████████████████ ██████████████████████████████████
[60] Casamassima Decl. Ex. 25, STONE00100362.
[61] Casamassima Decl. Ex. 5, Engels Tr. at 203:8-16.

Further, Stone Brewing's annual sales of ███████████ barrels in 2018[62] is relatively insignificant when considered in the context of Keystone Light's 2018 annual sales, which totaled approximately ████████.[63]  Indeed, Stone Brewing's products made up only ████ of the craft beer market.[64]  Stone Brewing did not even distribute its product nationwide ██████████.[65]

Stone Brewing's other purported evidence is not sufficient to create a genuine issue of material fact that the STONE trademark is famous.  Media coverage alone is not evidence that a trademark is famous.  *See Thane Int'l*, 305 F.3d at 912.  That is especially true when Stone Brewing points only to references in specialized publications like *Beer Advocate* magazine or releases from BevMo! that are not themselves nationally recognized publications.  Stone Brewing's internet presence likewise does not warrant an inference that the STONE trademark is famous.  Instead, Stone Brewing's limited internet presence (460,787 Instagram followers; 271,000 Twitter followers; 334,000 Facebook followers) demonstrates it is severely ***below*** the threshold that most courts have deemed to constitute evidence of "fame."  *Compare Pinterest, Inc.*, 140 F. Supp. 3d at 1034 (Pinterest's 25 million monthly internet users does ***not*** demonstrate the Pinterest trademark is famous) *with Yelp Inc. v. Catron*, 70 F.Supp.3d 1082, 1096 (N.D.Cal. 2014) (Yelp's 102 million unique internet visitors, in conjunction with other facts, demonstrate the Yelp mark is famous).

Stone Brewing's STONE trademark is simply not among the "select class of marks" like Nike,[66] Apple,[67] or VISA[68] that have become "household names."  Stone

---

[62] Casamassima Decl. Ex. 66, Distler Report, Schedule 8.0.
[63] Casamassima Decl. Ex. 67, Hosfield Report, Appendix A, Schedule 2C.
[64] Casamassima Decl. Ex. 68, Hosfield Report pp. 32-33.
[65] Casamassima Decl. Ex. 69, Burboa Depo. Ex. 135 ████████████████████.
[66] *Nike, Inc. v. Nikepal Int'l, Inc.,* 2007 WL 2782030, at *3 (E.D. Cal. Sept. 18, 2007).
[67] *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571719, at *7 (N.D. Cal. June 30, 2012).
[68] *Visa Int'l Serv. Ass'n v. JSL Corp.,* 590 F. Supp. 2d 1306, 1316 (D. Nev. 2008), aff'd, 610 F.3d 1088 (9th Cir. 2010).

Brewing lacks evidence to demonstrate that either the general population or the population of California strongly associates the mark STONE with Stone Brewing's products so that any commercial use of the word STONE, even non-competing uses, dilutes the STONE mark.  Because undisputed evidence is insufficient to support a finding that the STONE mark is famous, the Court should grant summary judgment against Stone Brewing's federal and state dilution claims.

Even if Stone Brewing could show that its mark is famous, which it cannot, its dilution claims must fail because the mark was not famous at the time that MillerCoors first used "STONE" and "STONES" to sell Keystone beer. In order to support a claim for dilution, a plaintiff must prove that "the defendant's use [of the mark] began after the plaintiff's mark became famous." *Avery*, 189 F.3d at 873–74. The first use for purposes of dilution is measured by defendant's first commercial use of the mark, regardless of whether the plaintiff alleges the use was not "confusing or combined with other identifiers." *Id.* at 1007.  MillerCoors has already provided ample evidence of its use of "STONE" and "STONES" to sell Keystone since at least 1991. As MillerCoors explains, *supra*, since at least 1995, every 30 pack of Keystone Light sold has prominently featured the "STONES" reference.  Thus, in order to prevail on its dilution claim, Stone Brewing must prove that its mark was famous by the early to mid-1990s. *See Pinterest,* 140 F. Supp. 3d at 1032 (N.D. Cal. 2015) (finding that "[Defendant] first used its marks by no later than October of 2011. In order to prevail on its dilution claim, [Plaintiff] must demonstrate that its marks were famous by that date.") Stone Brewing was not even formed until 1996, and did not claim to begin using the STONE mark until 1998. Accordingly, it is impossible for Stone Brewing to make the necessary showing, entitling MillerCoors to summary judgment on this issue.

## VI.   Laches Bars Stone Brewing's Claims

Courts apply a "strong presumption" that laches bars a party's claims when they are filed after the expiration of the analogous limitations period.  *See, e.g., Pinkette*

24

*Clothing, Inc., v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018).  It is undisputed that Stone Brewing was aware of MillerCoors' use of "STONE" and "STONES" as early as April 2010.[69]  Stone Brewing then waited nearly eight years, until February 2018, to file this lawsuit against MillerCoors for use of these terms.  Stone Brewing's claims were filed four years after the analogous limitations period had expired, and there is a strong presumption they are barred by laches.  *See id.* at 1025 (analogizing California's four-year statute of limitations for trademark infringement).  Stone Brewing can provide no excuse for this delay, and MillerCoors will suffer clear prejudice from the delay.  After 2010, there is no dispute that MillerCoors continued to build a valuable Keystone brand using "STONE" and "STONES,"[70] and Stone Brewing's delay has caused evidence to fade that MillerCoors would have used to defend against these claims.[71]  *See Dropbox, Inc. v. Thru Inc.*, 728 Fed.App'x 717, 719 (9th Cir. 2018) (recognizing expectation prejudice); *Evergreen Safety Council v. RSA Networks Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (recognizing evidentiary prejudice).  The Court should grant summary judgment based on laches.

## VII.  CONCLUSION

MillerCoors respectfully requests that the Court grant its request for summary judgment that: (1) MillerCoors is the senior user of the "STONE" and "STONES" marks, and thus has the right to use "STONE" and "STONES" and cannot be found to infringe Stone Brewing's mark (MillerCoors' First and Third Counterclaims and Second Affirmative Defense); (2) MillerCoors' alleged infringement was not willful; (3) Stone Brewing's claims for dilution under federal and state law fail because the STONE trademark is not famous or, in the alternative, because MillerCoors' use started before the STONE mark became famous; and (4) Stone Brewing's claims are barred by laches.

---

[69] Casamassima Decl. Ex. 29, MILLERCOORS0001729.
[70] *See supra*, II.E–F.
[71] Casamassima Decl. Ex. 54, Harris Tr. 112:5–113:11; Casamassima Decl. Ex. 71, Wexelbaum Tr. 113:1-115:2.

Respectfully submitted,

Dated:  August 12, 2019                  MILLERCOORS LLC


By: /s/ *Christopher T. Casamassima*
Christopher T. Casamassima (SBN #211280)
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
chris.casamassima@wilmerhale.com


Vinita Ferrera (*pro hac vice*; MA Bar #631190)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6556
vinita.ferrera@wilmerhale.com

Matthew J. Worthington (*pro hac vice*; CO Bar #47987)
WILMER CUTLER PICKERING HALE & DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 598-3443
matthew.worthington@wilmerhale.com

Brittany Blueitt Amadi (*pro hac vice*; DC Bar # 1015271)
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave. NW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Washington, DC 20006
Tel: (202) 663-6000
brittany.amadi@wilmerhale.com

*Attorneys for Defendant MillerCoors LLC*