**REDACTED VERSION**

1   J. Noah Hagey, Esq. (SBN: 262331)
        hagey@braunhagey.com
2   Jeffrey M. Theodore, Esq. (324823)
        theodore@braunhagey.com
3   J. Tobias Rowe, Esq. (SBN: 305596)
        rowe@braunhagey.com
4   Bram Schumer, Esq. (SBN: 317736)
        schumer@braunhagey.com
5   BRAUNHAGEY & BORDEN LLP
    351 California Street, 10th Floor
6   San Francisco, CA 94104
    Telephone: (415) 599-0210
7   Facsimile: (415) 276-1808

8   ATTORNEYS FOR PLAINTIFF
    STONE BREWING CO., LLC

9

10

11                **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| STONE BREWING CO., LLC, | Case No: 18-cv-0331-BEN-LL |
| Plaintiff / Counterclaim Defendant, | **PLAINTIFF STONE BREWING CO., LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MILLERCOORS LLC, | **Date:** September 16, 2019 |
| Defendant / Counterclaim Plaintiff. | **Time:** 10:30 a.m. |
| | **Judge:** Hon. Roger T. Benitez |
| | **Ctrm:** 5A |
| | Complaint filed: February 12, 2018 |

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ......................................................................... 1

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................ 3

I.    STONE IS ENTITLED TO SUMMARY JUDGMENT ON ITS
TRADEMARK INFRINGEMENT CLAIMS .................................................... 3

    A.    Stone Owns the Valid and Protectable STONE® Mark ......................... 4

    B.    MillerCoors's Adoption of "STONE" as a Trademark for Keystone is Confusing 4

        1.    Strength of the STONE® Mark ................................................... 5

        2.    The Goods are Related: Beer and Beer....................................... 6

        3.    The Marks are Identical: "STONE" and "STONE" ................... 8

        4.    There is Clear Evidence of Actual Confusion .......................... 11

        5.    Stone and Keystone Share the Same Marketing Channels ....... 14

        6.    Consumers Do Not Exercise a High Degree of Care .............. 15

        7.    Intent: MillerCoors's "Civil War" to "Own the Stone"............ 16

II.    MILLERCOORS FIRST, THIRD, AND FOURTH COUNTERCLAIMS
SHOULD BE SUMMARILY DISMISSED ..................................................... 21

    A.    MillerCoors Cannot Establish Common Law Trademark Rights......................... 21

        1.    MillerCoors Has the Burden of Demonstrating Use of Words as a *Trademark*
22

**REDACTED VERSION**

2.     MillerCoors Has Never Used STONES As a Mark.................................. 22

B.     Laches Also Bars MillerCoors's Counterclaims .................................... 24

CONCLUSION........................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................ 27

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
796 F. Supp. 2d 458 (S.D.N.Y. 2011) .......................................................... 10

*AMF v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .................................................... 5, 6, 12, 14

*Anheuser-Busch, Inc. v. Customer Co.*,
947 F. Supp. 422 (N.D. Cal. 1996) ........................................................ 7, 15

*Bikila v. Vibram USA Inc.*,
218 F. Supp. 3d 1206 (W.D. Wash. 2016) ..................................................... 24

*Brookfield Commc'ns v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ............................................................... 5, 8

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
493 F.2d 709 (9th Cir. 1974) .................................................................. 21

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir.1988) ................................................................... 9

*Clicks Billiards v. Sixshooters*,
251 F.3d 1252 (9th Cir. 2001) .................................................................. 11

*Conversive v. Conversagent*,
433 F. Supp. 2d 1079 (C.D. Cal. 2006) ....................................................... 3, 4

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
930 F.2d 1056 (3d Cir. 1991) .................................................................... 9

*DC Comics v. Towle*,
989 F. Supp. 2d 948 (C.D. Cal. 2013) ........................................................... 3

*Dropbox, Inc. v. Thru Inc.*,
728 F. App'x 717 (9th Cir. 2018) ............................................................... 24

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
782 F. Supp. 457 (N.D. Cal. 1991) .............................................................. 7

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) ................................................................... 7

*Edsal Mfg. Co. v. Vault Brands, Inc.*,
No. 11 C 9287, 2012 WL 5558849 (N.D. Ill. Nov. 15, 2012) ........................... 22, 23

*E-Sys., Inc. v. Monitek, Inc.*,
720 F.2d 604 (9th Cir. 1983) .................................................................... 24

*Fitbug Ltd. v. Fitbit, Inc.*,
78 F. Supp. 3d 1180 (N.D. Cal. 2015) .......................................................... 25

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
314 F.2d 149 (9th Cir. 1963) ................................................................. 7, 15

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*,
  754 F.2d 591, 225 U.S.P.Q. 540 (5th Cir. 1985) .................................................... 19
*Glenn Miller,*
  *Prods.*, 454 F.3d 975 (9th Cir. 2006) ...................................................................... 24
*Grupo Gigante Sa De CV v. Dallo & Co. Inc.*,
  391 F.3d 1088 (9th Cir.2004) .................................................................................. 24
*Guinness United Distillers & Vintners B.V. v. Anheuser–Busch, Inc.*,
  2002 WL 1543817 (S.D.N.Y. July 12, 2002) ..................................................... 7, 15
*HM Elecs. v. R.F. Techs.*,
  No. 12-CV-2884-MMA (WMC), 2013 WL 12074966 (S.D. Cal. Oct. 3, 2013) ... 11
*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) .................................................................................. 16
*Jarrow Formulas, Inc.*,
  304 F.3d 829 (7-year delay) ..................................................................................... 24
*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ............................................................................ 5, 11
*L.C. Licensing, Inc. v. Cary Berman*,
  86 U.S.P.Q.2d 1883 (T.T.A.B. 2008) ...................................................................... 10
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................... 3
*MicroStrategy Inc. v. Motorola, Inc.*,
  245 F.3d 335, 58 U.S.P.Q.2d 1278 (4th Cir. 2001) ................................................. 22
*Nat. Ass'n of Realtors v. Champions Real Estate Servs.*,
  812 F. Supp. 2d 1251 (W.D. Wash. 2011) ................................................................. 3
*National Customer Engineering v. Lockheed Martin Corp.*,
  43 U.S.P.Q.2d 1036 (C.D. Cal. 1997) ................................................................ 17, 18
*OTR Wheel Eng'g v. W. Worldwide Servs.*,
  897 F.3d 1008 (9th Cir. 2018) ................................................................................... 3
*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) ................................................................................. 12
*Rearden LLC v. Rearden Commerce, Inc.*,
  683 F.3d 1190 (9th Cir. 2012) ............................................................................... 4, 6
*Rodeo Collection, Ltd. v. W. Seventh*,
  812 F.2d 1215 (9th Cir. 1987) ................................................................................... 6
*Saul Zaentz Co.*,
  627 F. Supp. 2d 1096 (18-year delay) ...................................................................... 25
*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
  251 F. Supp. 3d 1288 (N.D. Cal. 2017) ..................................................................... 7
*Stone Creek v. Omnia Italian Design*,
  875 F.3d 426 (9th Cir. 2017) ............................................................................ passim
*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*,
  No. C 05-0587 MHP, 2005 WL 701599 (N.D. Cal. Mar. 23, 2005) ......................... 7

*Synoptek v. Synaptek Corp.*,
  309 F. Supp. 3d 825 (C.D. Cal. 2018) ................................................................ 3, 5
*Thane*,
  305 F.3d 894 ................................................................................ 12, 13, 14
*Theodosakis v. Contract Pharmacal Corp.*,
  172 F. App'x 772 (9th Cir. 2006) ........................................................................ 24
*Watec Co., Ltd. v. Liu*,
  403 F.3d 645 (9th Cir. 2005) ................................................................................ 21
*Wine Grp., LLC v. L. & R. Wine Co.*,
  No. 2:10-CV-02204-MCE, 2012 WL 3962500 (E.D. Cal. Sept. 10, 2012) ........... 21

Statutes

15 U.S.C. § 1051 ........................................................................................................ 3
15 U.S.C.A. § 1115(b) ................................................................................................ 4

REDACTED VERSION

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

YOU ARE NOTIFIED THAT on September 16, 2019 at 10:30 a.m. in the United States District Court, Southern District of California, located at 221 West Broadway, Suite 5135, San Diego, CA 92101, Plaintiff Stone Brewing Co., LLC will and hereby does move the Court for an order granting Plaintiff's Motion for Summary Judgment.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Law in Support of the Motion, the accompanying Declarations in Support of the Motion, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated: August 12, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: <u>s/ J. Noah Hagey</u>
        J. Noah Hagey

*Attorneys for Stone Brewing Co., LLC*

Plaintiff Stone Brewing Co., LLC ("Stone") brings this motion to summarily adjudicate Defendant MillerCoors's ("MillerCoors's") knowing infringement of Stone's iconic STONE® trademark and brand.

## **INTRODUCTION**

Rarely has a case of trademark infringement been so pronounced and obvious. Evidence now indisputably shows that MillerCoors intentionally rebranded its struggling *Keystone* beer brand to adopt Stone's trademark and, thereby, "**OWN THE STONE**".  The slogan was pasted ███████████████████████████ ████████████████████████ and used as the masthead of its 2017 distributor conference summit where "Own the Stone" was presented to thousands of MillerCoors retailers in Las Vegas.  After years of declining sales, the rebranded *Keystone* beer cans surged and became one of the industry's top growth products, earning █████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ involved in MillerCoors's failed 2007 application to register "STONES" with the USPTO – which the agency found was is "likely to cause confusion, to cause mistake, or to deceive" with the STONE® mark.  *In re. Trademark App. No. 77284994 – STONES* (RJN Ex. 2).

The Ninth Circuit's "*Sleekcraft*" factors compel summary judgment on these indisputable facts:  (1) Stone's mark is conceptually and commercially strong, as the Court has already found and as MillerCoors itself has admitted in recognizing Stone as a leading brand; (2) Stone and MillerCoors are direct competitors, as the Court has

noted and as MillerCoors's own documents and deposition testimony show; (3) the marks are not only similar, but identical: "Stone" and "Stone," and even MillerCoors's own witnesses could not tell them apart; (4) there is significant evidence of actual confusion in the marketplace, and Stone's survey evidence shows that confusion is occurring at alarming rates; (5) the products' marketing channels are identical, as Stone and Keystone admittedly share hundreds of distributors and appear in the same store aisles across the country; (6) confusion is likely because both parties agree that consumers exercise a low degree of care and make quick decisions when shopping for beer; (7) MillerCoors's own documents and testimony show that it knew of Stone's trademark and made a conscious decision to infringe it anyway, as part of its admitted "civil war" against Stone; and (8) Stone already has expanded into analogous product lines involving similar styles and forms of beer.

Summary judgment also is warranted against MillerCoors's counterclaims because it has no cognizable common law trademark interest in the term "STONE". Never before 2017 had MillerCoors ever used "STONE" on its primary beer packaging (its cans or bottles) as separate from "KEY". Defendant's own internal research showed that ███████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████  These undisputed facts mean that MillerCoors's purported counterclaims for an exclusive common law right to use "STONE" fail as a matter of law.

On these grounds and those which follow, the Court should award summary judgment and set trial on MillerCoors' limited remaining affirmative defenses and to establish the amount of Stone's compensatory damages and related relief.

## **BACKGROUND**

The Court already has held that Stone sufficiently mustered evidence of a "moderately" strong case for infringement. Dkt. No. 85 at 14. For years, Stone has

1  vigilantly policed the use of its marks before the US PTO and in commerce.  Beer

2  companies, including Anheuser Busch, have withdrawn applications and changed the

3  names of entire beer companies to accommodate Stone's demands.  (Engels Decl.

4  Ex. 1.)  Same too with MillerCoors, which abandoned its application for "HOLD

5  MY STONES" after receiving a cease-and-desist letter from Stone in 2010.  (RJN

6  Ex. 5.)  With MillerCoors's recent admissions and documentary evidence around its

7  "Own the Stone" campaign, the case for infringement is now even more conclusive.

8  The facts supporting this Motion are detailed in the sections below and in the

9  declarations, discovery responses, deposition transcripts and exhibits accompanying

10  this Motion.

## ARGUMENT

## I.   STONE IS ENTITLED TO SUMMARY JUDGMENT ON ITS TRADE-MARK INFRINGEMENT CLAIMS

Stone's infringement claims arise under the Lanham Act, 15 U.S.C. § 1051 *et*

*seq*., and related California unfair competition law.[1]  "To prevail on such a claim, a

plaintiff must show that: 1) it has a valid, protectable mark, and 2) the defendant's

use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g v. W.*

*Worldwide Servs.,* 897 F.3d 1008, 1022 (9th Cir. 2018).  Courts regularly grant

summary judgment on trademark infringement and unfair competition claims where

the undisputed facts establish likelihood of confusion as a matter of law.[2]

---

[1]  Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2] *See, e.g., Stone Creek v. Omnia Italian Design,* 875 F.3d 426 (9th Cir. 2017) (both parties using "STONE CREEK" for furniture); S*ynoptek v. Synaptek Corp.*, 309 F. Supp. 3d 825 (C.D. Cal. 2018); *DC Comics v. Towle*, 989 F. Supp. 2d 948 (C.D. Cal. 2013), *aff'd*, 802 F.3d 1012 (9th Cir. 2015) (both parties using "BATMOBILE" and "BATMAN," plaintiff for comic books and defendant for custom cars); *Nat. Ass'n of Realtors v. Champions Real Estate Servs.*, 812 F. Supp. 2d 1251 (W.D. Wash. 2011) (unauthorized use of "REALTOR" for real estate brokerage services); *Conversive v. Conversagent,* 433 F. Supp. 2d 1079 (C.D. Cal. 2006) ("CONVERSIVE AGENT" and "CONVERSAGENT" for natural language processing software)

**A.    Stone Owns the Valid and Protectable STONE® Mark**

As the Court has already found, "it is indisputable that Stone holds a valid trademark in STONE® as it was registered by [the USPTO] without objection on June 23, 1998, under U.S. Reg. No. 2,168,093." Dkt. No. 85 at 5. "Ten years later, in 2008, the PTO accepted Stone's Combined Declaration of Use and Incontestability, making STONE® 'incontestable' as a matter of law." *Id*. Accordingly, "Stone has a protectable ownership interest in the STONE® mark." *Id*. Moreover, Stone's ownership of the STONE® registration is ***conclusive*** proof that Stone has the ***exclusive*** right to use "STONE" to sell beer throughout the United States.  15 U.S.C.A. § 1115(b).  Stone's ownership of a valid and protectable mark is thus conclusively established in this litigation and not subject to dispute.[3]

**B.    MillerCoors's Adoption of "STONE" as a Trademark for Keystone is Confusing**

As the PTO held in 2007, Keystone's attempted use of "STONE" on its primary packaging is "likely to cause confusion."  (RJN Ex. 2 at 1.)  That is exactly what has been happening since 2017, as MillerCoors adopted the word "STONE" on its primary packages under a campaign to ███████████████████████ ████████████████████████████████  If MillerCoors succeeds in supplanting Stone's craft beers with Keystone as "STONE" in the minds of consumers, Stone's brand and trademark will be destroyed.  The likelihood-of-confusion inquiry "generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).  Under this commonsense standard, it is beyond dispute that two beers identically named "STONE" are likely to confuse beer drinkers.

---

[3] Stone also has diligently enforced its trademark rights against over 24 would be in-fringers.  (Engels. Decl. Ex. 1.)

Courts evaluate likelihood of confusion using the canonical factors in *AMF v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).[4]  Of these, "[s]ome factors are much more important than others." *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).  "Two particularly probative factors are the similarity of the marks and the proximity of the goods." *Stone Creek,* 875 F.3d at 432.  It is not necessary to prove every factor, or even a majority of factors, to establish likelihood of confusion at the summary judgment stage.[5]

Here, the undisputed facts and MillerCoors's own admissions show that every *Sleekcraft* factor strongly favors a finding of likelihood of confusion.  There are no issues left for trial.  The Court accordingly should grant summary judgment for Stone and enjoin MillerCoors's ongoing infringement of the STONE® mark before additional harm is done.

### 1. Strength of the STONE® Mark

The Court has already found that the STONE® mark is conceptually and commercially strong.  Dkt. No. 85 at 6-7.  As to conceptual strength, STONE® is an arbitrary and fanciful mark because it does not inherently describe or even "suggest" anything at all about beer.[6]  As such, STONE® is an inherently distinctive mark

---

[4]  These are: (1) the strength of plaintiff's mark, (2) whether the parties' goods are related, (3) the degree of care exercised by likely purchasers, (4) how similar defendant's mark is to plaintiff's, (5) evidence of actual confusion, (6) the marketing channels the parties use, (7) defendant's intent in selecting its mark, and (8) the likelihood of expansion of the parties' product lines.  *Id*. at 348-49.

[5]  *See Stone Creek,* 875 F.3d at 436 (reversing trial court's denial of summary judgment, deeming confusion likely as a matter of law based on similarity of marks, proximity of goods, and strength of plaintiff's mark); *Synoptek*, 309 F. Supp. 3d at 842 (granting summary judgment based primarily on same three factors).

[6]  *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) ("Arbitrary marks have no relevance to any feature or characteristic of a product. Fanciful marks are the most distinctive marks of all; they involve a high degree of imagination"); *see also Stone Creek,* 875 F.3d at 433 ("Stone Creek" arbitrary and fanciful when used for furniture).

1  entitled to the highest degree of protection as a matter of law.[7]

2  STONE® is also "commercially strong and recognizable" and "both nationally

3  and internationally known," as the Court has recognized.  Dkt. No. 85 at 6-7.

4  STONE® is one of the ten largest craft beers in the United States, with sales at

5  thousands of stores, bars, and restaurants nationwide.  Dkt. No. 31, Wagner Decl. ¶¶

6  12-20.  Stone is widely recognized as an industry leader by national and international

7  publications including *The New York Times*, *The Wall Street Journal*, *The*

8  *Economist*, *USA Today*, and *Time* magazine.  *Id*. ¶¶ 28-31.  MillerCoors itself has

9  long recognized Stone's flagship brew, STONE® IPA, as one of the most

10  "commercially significant and/or highly regarded IPAs" in the market.  (Declaration

11  of J. Noah Hagey ("Hagey") Ex. 1 at 71.) At least 80% of craft beer drinkers

12  recognize STONE® beer, and almost half of all Americans.  (Hagey Ex. 2 at -364.)

13  Accordingly, there is no genuine dispute that the STONE® mark is conceptually and

14  commercially strong.  This factor favors Stone for the same reasons set forth in the

15  Court's prior Order.

16  **2.      The Goods are Related: Beer and Beer**

17  There is no reasonable dispute that Stone's beers and MillerCoors's beers are

18  related and directly competitive, as the Court has ruled.  Dkt. No. 85 at 7-8.  The

19  "proximity of goods" factor under *Sleekcraft* asks whether the products are "related"

20  to one another.  599 F.2d at 350.  Stone "need not establish that the parties are direct

21  competitors to satisfy the proximity or relatedness factor. Related goods (or services)

22  are those 'which would be reasonably thought by the buying public to come from the

23  same source if sold under the same mark.'"  Dkt. No. 85 at 7 (quoting *Rearden*, 683

---

24  [7] The Court's prior Order concluded that STONE® was "suggestive" because it often
25  (but not always) appears alongside a gargoyle logo.  Dkt. No. 85 at 7.  But the dis-
positive question is not whether STONE® appears alone, but instead whether the
26  word "Stone" inherently describes beer, which it does not.  *Rodeo Collection, Ltd. v.*
27  *W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) ("Whether a mark is weak and de-
scriptive or strong and distinctive can be determined only by reference to the goods
28  or services that it identifies.").

**REDACTED VERSION**

F.3d at 1212).  "The Ninth Circuit defines 'relatedness' broadly, typically requiring only that the parties participate in the same general industry."  *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, No. C 05-0587 MHP, 2005 WL 701599, at *9 (N.D. Cal. Mar. 23, 2005).

The relatedness of the goods is beyond dispute because Stone and MillerCoors both sell the same product: beer.  Dkt. No. 85 at 7.  When it comes to alcoholic beverages, courts have consistently held that wine, spirits, and beer are all related to one another, rejecting attempts to "slice and dice" the market into specialized sub-segments.  *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159–60 (9th Cir. 1963) ("beer and Scotch whisky" are related); *Anheuser-Busch, Inc. v. Customer Co.*, 947 F. Supp. 422, 425 (N.D. Cal. 1996) ("the products are identical: beer"); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 464 (N.D. Cal. 1991) (different varietals of wine "substantially similar for purposes of establishing a likelihood of confusion").[89]

---

[8] *See also Guinness United Distillers & Vintners B.V. v. Anheuser–Busch, Inc.*, 2002 WL 1543817, at *6 (S.D.N.Y. July 12, 2002) ("high end" beer and Scotch whiskey related); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288, 1306 (N.D. Cal. 2017) ("relatedness between spirits and other alcoholic beverages"); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("wine, cheese, and salami" sufficiently related).

[9] MillerCoors is likely to argue the products are somehow not related because Stone is a "craft" beer and Keystone is a so-called "economy" beer.  But as the precedent above demonstrates, the existence of "sub" markets does not undermine the "related-ness" of goods.

### 3.    The Marks are Identical: "STONE" and "STONE"

Hundreds of MillerCoors' ██████████ campaign documents establish that the marks are identical: "STONE" and "STONE."  MillerCoors's new Keystone packaging, marketing materials, and advertising are expressly aimed at establishing "STONE" as a stand-alone "nickname" for Keystone. ████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ (Hagey Ex 5 at -252; *Id.,* Ex. 6 at 56:18-57:24.)

Similarity of marks is evaluated based on "sight, sound, and meaning." *Brookfield* 174 F.3d at 1054.  "The marks must be considered in their entirety and as they appear in the marketplace, with similarities weighed more heavily than differences."  *Id.*  Because "STONE" and "STONE" are indisputably identical in sight, sound, and meaning, this factor shows confusion is likely.

#### a.    Sight: "STONE" is the Dominant Element

There is no genuine dispute that "STONE" is the dominant visual element of the new Keystone packaging and marketing materials. ████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ " (Hagey Ex. 5 at -275.)

For the first time ever, the word "STONE" appears by itself on Keystone's primary packaging, the can. (Hagey Ex. 7 at 79:16-80:17.)  MillerCoors's Brand ID Fundamentals ████████████████████████████████████████ █████████████████████████████████████. (Hagey Ex. 1 at 29.)  Because Stone and Keystone are direct competitors for many of the same consumers, their products are closely related under *Sleekcraft*. This factor indisputably favors Stone and is "particularly probative" of confusion. *Stone Creek*, 875 F.3d at 432.

1  ████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ████████████████████████  (*See, e.g.*, Dkt. No. 63-2.)  By communicating that the

4  STONE-only view is the canonical face of its primary packaging – on which the

5  word "Stone" had never before appeared at all – MillerCoors has identified "Stone"

6  as the name of the beer.[10]

7       Nor is it disputable that Stone has prominently featured the STONE®

8  trademark on primary and secondary packaging, marketing materials, and advertising

9  for more than 20 years.  "When the dominant portions of the two marks are the same,

10 confusion is likely."  *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,

11 930 F.2d 1056, 1065 (3d Cir. 1991) (citing *Century 21 Real Estate Corp. v. Sandlin*,

12 846 F.2d 1175, 1179 (9th Cir.1988)).  Whatever stylistic differences may exist

13 between Stone and Keystone's materials, they share the word "STONE" as the

14 dominant visual element.  This favors a finding of likelihood of confusion.

15       **b.   Sound: "STONE" and "STONE" Sound the Same**

16       The marks are also verbally identical, strongly favoring a finding of likelihood

17 of confusion.  As part of the rebrand, ████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████  (Hagey Decl. Ex

20 8 at -076.)  Of course, it is impossible to order a STONE® IPA without using the

21 word "STONE."  Because consumers use brand names to ask for products like beer,

22

---

23 [10] Keystone's new outer packaging similarly isolates "STONE" as the dominant vis-
24 ual element.  "KEY" is reduced to subordinate typography and literally overshad-
   owed by the three-dimensional "STONE" can.

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28       (Hagey Decl. Ex. 5 at -273.)

**REDACTED VERSION**

the identical sound of the words is more important than differences in the design of packaging or advertising.[11]  Because "STONE" and "STONE" are verbally identical, this points strongly to a finding of likelihood of confusion.

<b>c.</b>   <b>Meaning: "STONE" and "STONE" Are the Same</b>

Finally, it is self-evident that the marks' meanings are identical because they are the same English word – "STONE."

_____

[11]  *See L.C. Licensing, Inc. v. Cary Berman*, 86 U.S.P.Q.2d 1883 (T.T.A.B. 2008) ("it is well settled that if a mark comprises both a word and a design, then the word is normally accorded greater weight because it would be used by purchasers to request the goods"); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011) ("trademark law recognizes that the word portion [of a composite mark] is often more likely to be impressed upon a purchaser's memory because it is the word that purchasers use to request the goods and/or services. Therefore, the word portion is often accorded greater weight in determining the likelihood of confusion").

1 ███████████████████████████████████████ (Hagey Ex. 14 at

2 41:1-4.)

3     These admissions confirm that consumers did not use "Stone" as a nickname

4 prior to the Rebrand.  Accordingly, here is no genuine dispute that "STONE" and

5 "STONE" mean the same thing to the typical consumer.  Because Stone's "STONE"

6 and Keystone's "STONE are the same word, sound the same, and mean the same

7 thing, the "similarity of marks" factor strongly favors likelihood of confusion.

8        **4.   There is Clear Evidence of Actual Confusion**

9     Although not required, evidence of actual confusion constitutes "proof

10 positive" of the likelihood of confusion factor. *See E. & J. Gallo Winery*, 150 F.3d at

11 1047 n.7; *Clicks Billiards v. Sixshooters*, 251 F.3d 1252, 1265 (9th Cir. 2001).  "In

12 the Ninth Circuit, district courts often rely on three types of evidence to demonstrate

13 actual confusion: (1) evidence of actual instances of confusion; (2) survey evidence;

14 and (3) inferences arising from judicial comparison of the conflicting marks and the

15 context of their use in the marketplace." *HM Elecs. v. R.F. Techs.*, No. 12-CV-2884-

16 MMA (WMC), 2013 WL 12074966, at *5 (S.D. Cal. Oct. 3, 2013).  Here, there is

17 abundant evidence of confusion among consumers, distributors and in surveys.

18        **a.   Reports of Confusion**

19     Since the launch of the 2017 Keystone Rebrand, consumers have flooded

20 social media and contacted Stone to report confusion with the infringing Keystone

21 products.  Stone has identified numerous instances of individual consumers reporting

22 being confused between the Rebranded Keystone and STONE® beers in online fora

23 and social media.  (Dkt. No. 31, Wagner Decl. ¶¶ 56-65.)[12]  In December 2017, as

24 MillerCoors was ramping up its social media campaign for the Keystone Rebrand, a

25 customer contacted Stone to ask whether it was making a "Stone Lite."  (*Id.* ¶ 64.)

26 

27 [12]  Consumers stated:  "The first thing I thought when seeing them in the aisle was,
"Stone's branding has gone to shit."; and "when I saw [Defendant's] can I immedi-
28 ately thought damn I didn't think Stone made light beer."  (Wagner Decl. ¶¶ 60-63.)

1  Other examples of actual confusion include:  beer drinkers at parties believing that

2  rebranded Keystone was a "Stone Light" imprint (Deborah Jaeggi Decl. ¶¶ 1-4);

3  rebranded Keystone boxes  mistakenly stocked in area reserved for "Stone Brewing"

4  (Ryan Moore Decl. ¶¶ 1-4); and, a distributor confusing Keystone cans with new

5  Stone offerings (Vera Decl. ¶¶ 1-4; Ex. 1) (text chain to Stone employee exclaiming,

6  "Whaaattt???  You making big cans now?").

7      Such actual confusion evidence is weighted heavily because it is rare and

8  "[p]roving actual confusion is difficult."  *Sleekcraft*, 599 F.2d at 352.  For a

9  consumer products company like Stone, each consumer that reaches out to report

10  confusion represents tens thousands of consumers who were confused and did not

11  take the time to do so.  (Hagey Ex. 17 at 22:3-9.)  The numerous examples of actual

12  confusion are therefore "proof positive" that the Keystone Rebrand is confusing

13  consumers, particularly in combination with survey results confirming that fact.

14              **b.    Survey Results Show Confusion**

15      Accordingly, "[s]urveys are commonly introduced as probative evidence of

16  actual confusion."  *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d

17  1020, 1026 n. 28 (9th Cir. 2004).  Though not required to prove infringement, survey

18  evidence is weighted heavily where available and is often dispositive.  *See, e.g.,*

19  *Thane*, 305 F.3d 894 at 902 (plaintiff's survey showing 27.7% consumer confusion

20  was sufficient on its own to support finding of actual confusion).  Stone's marketing

21  expert, Professor David W. Stewart, Ph.D., conducted four consumer surveys using

22  different methods to assess consumer confusion related to the 2017 Keystone

23  Rebrand, each showing clear evidence of confusion:

24  <u>**Survey I:** *Squirt* **Survey**</u>.  Survey I was an online *Squirt* format survey in

25  which consumers were presented with images of Stone and Keystone cans as

26  depicted in marketing materials and in stores.  It shows that 25% of beer consumers,

27  on average, wrongly confuse Keystone's redesigned 2017 beer can and packaging

28  with STONE® beer.  (Stewart Decl. Ex. 1, App'x 1 at ¶¶ 4-6.)  Conversely,

1 Keystone's old, pre-2017/18 can design induced low unique confusion, with less than
2 5% of consumers reporting any association between Keystone and STONE®.  (*Id*.)

3     **Survey II: Product Recognition Survey**.  Survey II was a "product
4 recognition survey" that tested whether the 2017 Rebrand caused consumers to
5 associate the word "STONE" with the new Keystone packaging.  (Stewart Decl. Ex.
6 1 ¶ 5.)  The result was an emphatic "yes."  In response to the rebranded Keystone
7 label, 55% of respondents associated the word "Stone" with the product. (*Id*. ¶ 70.)
8 "Stone" was the word most frequently associated with the Keystone product in
9 response to the rebranded label. (*Id*.)  By contrast, when shown the older Keystone
10 label prior to rebranding, only 16% of the respondents associated the word "Stone"
11 with the product.  (*Id*.) MillerCoors thus was successful in causing consumers to
12 associate the word "STONE" with the Rebranded Keystone product. (*Id*. ¶ 72.)

13     **Survey III: Name Recognition Survey**.  Survey III sought to test confusion
14 using market scenarios in which a consumer is asked to pick up or identify a "Stone
15 beer" from numerous options including both Stone and Keystone. (Stewart Decl. Ex.
16 1 ¶¶ 77-78.)  Consumers were then presented with options that included both Stone
17 and Keystone.  (*Id*. ¶¶ 79-80.)  The results showed high levels of confusion arising
18 from MillerCoors's use of the "STONE" mark.  (*Id*. ¶¶ 85-87.)  More consumers
19 identified Keystone than Stone as the likely "Stone beer" when presented with
20 options that included the rebranded packaging.  (*Id*. ¶ 85.)  By contrast, the
21 overwhelming majority of respondents picked Stone when Keystone was depicted in
22 its old pre-Rebrand packaging.  (*Id*. ¶ 87.)  These results show that Rebranded
23 Keystone not only confuses consumers about the "STONE" brand name, and also
24 *reduces* the distinctiveness and recognizability of Stone's brand.  (*Id*. ¶ 110.)

25     This finding was further confirmed by a follow-up rebuttal "in-person" survey
26 countering MillerCoors' effort to conduct a mall intercept survey.  (Stewart Decl. Ex.
27 3 at 25-32.) As in the online version, virtually no one associated the pre-Rebrand
28 Keystone packaging with the term "STONE."  (*Id*. at 31.) However, when the

Rebranded Keystone packaging was introduced onto shelves, the share of consumers identifying it as "STONE" shot up from 9 % to 36%.  (*Id.*) Stone's recognition plummeted from 74% to 47%.  (*Id.*)  Video from the showed that many consumers instantly gravitated toward the rebranded Keystone packaging prominently displaying "STONE" without taking time to look at other options.  (*Id.* at 32.) These results are particularly concerning because consumers shop for beer by brand name. (Hernández Decl. Ex. 1 ¶ 82.)

While such survey evidence is not necessary to demonstrate likelihood of confusion, it strongly supports such a finding.  This factor strongly favors Stone.

**5.    Stone and Keystone Share the Same Marketing Channels**

STONE® and Keystone share overwhelmingly identical marketing channels, including retail, distribution, and advertising.  The "marketing channels" inquiry asks whether the "general class of [] purchasers exposed to the products overlap." *Sleekcraft*, 599 F.2d at 353.  The factors considered are whether the goods are sold "under the same roof" at retail, the sales and distribution methods, the goods' price ranges, and the parties' advertising methods.  *Id.*  The marketing channels could not be more similar here.  As the Court has already found, "[b]oth Stone and Miller sell through thousands of the same stores, restaurants, pubs and liquor stores."  Dkt. No. 85 at 10-11.

(Hernández Decl. at ¶ 41.)  Stone and Keystone share similar price points as low-cost consumer goods, and the price difference between a six-pack of Keystone and a six-pack of Stone is just a few dollars.  (Hernández Decl. Ex. 1 at 15-16.)

Finally, Stone and Keystone share similar advertising channels.  Stone makes extensive use of social media and in-store promotional displays to advertise its beers. (Wagner Decl. ¶¶ 37-40.)  Keystone has heavily advertised Keystone products on social media and through in-store displays as part of its launch of the Rebrand. (Hagey Exs. 19-22.) MillerCoors's use of alternative channels has swamped the market and deceived consumers who encounter Stone beer on the beer aisle.

This holistic overlap in marketing channels greatly increases the risk, and reality, of consumer confusion, which the PTO recognized in 2008 in denying MillerCoors's "STONES" application.  *In re. Trademark App. No. 77284994 – STONES* ("it is foreseeable that customers of the applicant [Defendant] might encounter the registrant's [Stone] respective goods and mark in the marketplace given similar channels of trade within which the identified goods travel").  *See also Anheuser-Busch*, 947 F. Supp. at 425 (convergent channels favored injunction where beer was "distributed through a broad range of supermarkets, liquor stores and convenience stores.").  Accordingly, this factor shows that conclusion is likely.

### 6. Consumers Do Not Exercise a High Degree of Care

Confusion is also likely because consumers do not exercise a high degree of care when buying beer. When it comes to beer and other alcoholic beverages, courts consistently have held that the degree of consumer care is low. *Fleischmann Distilling Corp.* 314 F.2d at 159–60 (the average consumer purchasing beer "would probably not concern himself about any such detail" such as who was "actually brewing and bottling" or "whether it was being produced under their supervision or pursuant to some other arrangement."); *Anheuser-Busch,* 947 F. Supp. at 425 ("because beer is a relatively inexpensive product, consumers are not likely to use great care in selecting beer"); *Guinness*, 2002 WL 1543817, at *6 ("high end" beer and Scotch whiskey constitute "relatively low cost products, and the average consumer is not likely to seek to identify the true manufacturer of these products.").

Confirming these judicial assessments, both sides agree that consumers exercise a low degree of care when purchasing beer.  MillerCoors's proffered beer marketing expert Michael Kallenberger wrote in his report and testified that consumers buying beer "make quick decisions between brands" as they browse the beer aisle.  (Hagey Ex. 23 at 186:23-187:2.)  Stone's marketing expert Brandon Hernández confirms that the "tendency for the public to generalize beer, coupled with the beverage's relative low cost, renders it a consumable for which shoppers exercise less care when purchasing."  (Hernández Ex. 1 at 15-16.)  Accordingly, there is no dispute that the degree of consumer care is low, favoring Stone.

### 7. Intent: MillerCoors's "Civil War" to "Own the Stone"

The undisputed facts also show that MillerCoors launched its ███████████"
campaign with full knowledge that the use of "STONE" or "STONES" would infringe Stone's rights in the STONE® mark. ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████  (Hagey Ex. 6 at 56:18-57:24 & Ex. 3 at -803.)  "[C]hoosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive" as a matter of law.  *Stone Creek,* 875 F.3d at 434 (citing *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013)).  These undisputed facts provide extraordinary evidence of intentional infringement, further favoring a finding of likelihood of confusion.

#### a. MillerCoors Received Cease-and-Desist Letters and USPTO Rejections Based on STONE®

MillerCoors's had long been aware of the STONE® mark.  In 2007, MillerCoors attempted to register STONES with the USPTO as a trademark for Keystone.  (RJN Ex. 1.)  The PTO rejected the application in an Office Action dated

**REDACTED VERSION**

1   December 3, 2007.  (RJN Ex. 2.)  Citing the STONE® registration, the examining

2   attorney concluded that "confusion [was] extremely likely" if MillerCoors was

3   permitted to register and use STONES as a trademark.  (*Id*. at 3.)  After receiving the

4   office action, MillerCoors submitted a "Notice of Abandonment" withdrawing the

5   application.  (RJN Ex. 3.)  Using an infringing mark following rejection by the

6   USPTO on likelihood-of-confusion grounds is sufficient to establish intent factor

7   under *Sleekcraft*.  *See National Customer Engineering v. Lockheed Martin Corp.*, 43

8   U.S.P.Q.2d 1036 (C.D. Cal. 1997).

9        MillerCoors was again placed on notice of Stone's rights in 2010, when

10  MillerCoors sought to register "HOLD MY STONES" with the USPTO.  (RJN ex.

11  4.)  On April 22, 2010, Stone's counsel sent a cease-and-desist letter stating that

12  "MillerCoors' use of STONE, STONES, and HOLD MY STONES for beer is likely

13  to causing confusion in the trade and among the purchasing public."  (Hagey Ex. 24.)

14  After additional letters were exchanged, MillerCoors abandoned its application with

15  prejudice.  (RJN Ex. 5.)

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ███████████████████████████████████████████

19  ██████████████████████████████████████████

20  ████████████████████████████████████████████

21  ██████████████████████████████████████████

22  ████████████

23        **b.    MillerCoors's Personnel Were Aware of Stone**

24  ████████████████████████████████████████████

25  ████████████████████████████████████████████

26  █████████████████████████████████████████████

27  ██████████████████████████████████████████

28  ██████████████████████████████████████████

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT



### c.   Before 2017, "Stone" Was Not a Brand Asset

MillerCoors may argue that it only sought to "reinforce" its alleged nickname during the Keystone Rebrand, (Hagey Decl. Ex. 23 at 130:24-131:1) and that it did not specifically intend to pass off its beer as genuine Stone beer by misleading consumers regarding the maker of Keystone beer.  That argument is irrelevant, and not dispositive of either the infringement or likelihood of confusion analyses.  If consumers are likely to be confused, then *no amount* of good intentions of the

---

[13]

(Hagey Ex. 6 at 9:5-20; 88:20-89:16; *id.* Ex. 7 at 79:16-80:17; 102:11-19; 133:3-17; *id.* Ex. 14 at 69:12-17; 70:7-10; 140:13-141:8; *id.* Ex. 15 at 8:8-10; 28:10-12; 29:12; 183:15-24; *id.* Ex. 16 at 22:10-15; 132:14-20; *id.* Ex. 13 at 8:8-10; 26:13-18; 11:13-18.)

1  infringer will change the result.[14]

2         Moreover, "STONE" was never considered part of the Keystone brand prior to

3  the Rebrand. 

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

[14] *See Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591,

28  596, 225 U.S.P.Q. 540 (5th Cir. 1985).



7               (*id.* at 48:2-24; *see also* 3 McCarthy on Trademarks and

8 Unfair Competition § 17:17 (5th ed.) ("failure to enforce against third parties may

9 have some weakening effect on the mark")).

### d. MillerCoors Continues to Infringe

11        Finally, MillerCoors's witnesses repeatedly have admitted that the company

12 has done nothing since the lawsuit to lessen or mitigate Keystone's use of "STONE"

13 or the impact on Stone in the market (Hagey Ex. 16 at 196:21-197:24; 205:5-19;

14 214:10-15; *id.* Ex. 13 at 119:14-120:3). The lack of remorse underscores the

15 company's willful decision to continue using Stone's mark – mainly because of its

16 value to Keystone's sales turnaround.

20        Accordingly, a stronger case for summary judgment in a trademark matter

21 could scarcely exist.[15]  MillerCoors's effort to

22                is a declaration of war and a

23 campaign to take property rights registered with its beer industry competitor.   The

24 Court should grant summary judgment as to infringement in favor of Stone.

---

[15] The final Sleekcraft factor, expansion of product lines, is not relevant because the products already directly compete. Dkt. No. 85 at 13.

## II.   MILLERCOORS FIRST, THIRD, AND FOURTH COUNTERCLAIMS SHOULD BE SUMMARILY DISMISSED

In its First, Third, and Fourth Counterclaims, MillerCoors seeks declaratory judgments that it has a right to use STONE and STONES to advertise Keystone Beer, that it has not infringed based on its right to the STONE mark, and that it has an "exclusive common law right to use STONE in connection with the sale of beer in the United States", respectively.  (Answer/CC at 24:17-25:20, 26:18-28:20).  Accordingly, there is no genuine dispute of fact regarding MillerCoors's establishment or maintenance of common law trademark rights in STONE.[16]

### A.   MillerCoors Cannot Establish Common Law Trademark Rights

MillerCoors's First, Third, and Fourth Counterclaims all rely on the presumption that the company has a common law trademark to use STONE and STONES to sell beer.  It does not.  To establish common law trademark rights against a junior registered user, a party must show (1) that its use of the mark began before the junior user's registration and publication; and (2) that there has been continuing use since that time and legally sufficient market penetration.[17]

MillerCoors did not seek to use "Stone" or "Stones" *as a trademark* until the "Own the Stone" Rebrand, thus its use of the word did not predate Stone's use.  In addition, MillerCoors's has provided no evidence that it achieved sufficient market penetration throughout all fifty states – which is required to support MillerCoors's truly radical claim that *it* is entitled to the *exclusive* nationwide use of STONE in connection with the sale of beer.  MillerCoors has not provided sales data for

---

[16] MillerCoors's First Counterclaim is not even justiciable, as they have not defined the nature or scope of the "use" of STONE and STONES sought to advertise Key-stone Beer.

[17] *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 653 (9th Cir. 2005) (quoting *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974)); *Wine Grp., LLC v. L. & R. Wine Co.*, No. 2:10-CV-02204-MCE, 2012 WL 3962500, at *16 (E.D. Cal. Sept. 10, 2012); *see also* 5 McCarthy on Trademarks § 26:53 (5th ed.).

**REDACTED VERSION**

Keystone beer prior to 2012, despite Stone's request to do so, making it impossible to prove sufficient sales penetration anywhere in the country.

### 1. MillerCoors Has the Burden of Demonstrating Use of Words as a _**Trademark**_

"Not every single word, phrase, design or picture that appears on a label, webpage or in an advertisement qualifies as a protectable mark or trade dress.  To create trademark or trade dress rights, a designation must perform the job of identification: to identify one source and distinguish it from other sources.  If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right." 1 McCarthy on Trademarks § 3:4 ("The critical enquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public.").  For a designation to achieve the status of a trademark, it must be used in such a manner that its nature and function as a trademark are readily apparent and recognizable without extended analysis or research and certainly _without_ legal opinion.  1 McCarthy on Trademarks § 3:4. A word can only become a trademark when it identifies the source of its products, and creates an awareness of the uniqueness of the source and its products.  _Edsal Mfg. Co. v. Vault Brands, Inc._, No. 11 C 9287, 2012 WL 5558849, at *5 (N.D. Ill. Nov. 15, 2012) (holding that "vault" used to describe a type of metal storage cabinet was not a trademark, for it had not been used to designate the source of the product).[18]

### 2. MillerCoors Has Never Used STONES As a Mark

Here, MillerCoors admittedly has never viewed "STONES" as a protectable trademark until filing its counterclaim in this litigation.  MillerCoors has admitted

██████████████████████████████████████████████████████████

---

[18]  Trademarks also should be _obvious_ at first glance. _See_ 1 McCarthy on Trademarks § 3:4 (5th ed.); _see also MicroStrategy Inc. v. Motorola, Inc._, 245 F.3d 335, 341, 58 U.S.P.Q.2d 1278 (4th Cir. 2001) (consumers not required to "scan and entire page in order to decide that a particular word, separated from its context, may or may not be intended, or may or may not serve to identify the product").

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**REDACTED VERSION**

1  ████████████████████████████. (Hagey Ex. 29 at 46-47; 48:2-24.)

2       Nor is MillerCoors's past sporadic use of "STONES" on boxes and

3  promotional materials sufficient to rise to the level of use of the word as a trademark.

4  The words were simply one word printed among many on Keystone beer packs and

5  merchandise over the years.  MillerCoors never affixed the common law trademark

6  symbol, "TM", to the words "Stone" or "Stones" on any merchandise or materials

7  (*see Edsal* 2012 WL 5558849 at *7 (lack of use of "TM" suggested that word on

8  packaging was not used as a trademark)), and never put the word "Stone" or

9  "Stones" on Keystone's *primary* packaging (*e.g.*, the actual cans themselves).

10 ████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 ████████████████████████████████

22 ████████████████████████████████

23 ████████████████████████████████████ Hagey Exs. 10-

24 12, 30.)

25      It is beyond any dispute that neither MillerCoors nor its customers considered

26 "Stone" to be a trademark of Keystone beer.  Only now, 20 years later, does

27 MillerCoors seek to assert trademark rights over this one word.  Picking out the

28 trademarks on a product's packaging should be easy – the legal gymnastics required

1   to shoehorn trademark status upon the word "Stone" betrays the fact that

2   MillerCoors's past use was not *as a trademark*.  Their common law claim must fail.

3       **B.**    **Laches Also Bars MillerCoors's Counterclaims**

4          As set forth above, MillerCoors has never sought to enforce or assert any

5   common law trademark rights to "STONES" or "STONE" against anyone, much less

6   against Stone.  Stone accordingly is entitled to judgment as a matter of law that

7   laches bars MillerCoors from now enforcing some kind of common law right against

8   Stone.  Laches requires: (1) an unreasonable delay by plaintiff in bringing suit, and

9   (2) prejudice to himself.  *Glenn Miller Prods.*, 454 F.3d 975, 997 (9th Cir. 2006).

10  And, the Ninth Circuit applies a six "*E-Systems* factors" test referenced below. *E-*

11  *Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).

12         **First**, MillerCoors indisputably has known about Stone's trademark interests

13  in STONE® since at least registration in 1998.  This constructive knowledge

14  imposed upon MillerCoors the duty to *police its rights*.  *See Saul Zaentz Co.*, 627 F.

15  Supp. At 1110 (emphasis added) (citing *Grupo Gigante Sa De CV v. Dallo & Co.*

16  *Inc.*, 391 F.3d 1088, 1102 (9th Cir.2004) ("[c]ompanies expecting judicial

17  enforcement of their marks must conduct an effective policing effort")).  Here, the

18  Court *already* has found that "the *issuance* of the [Stone] Registration placed Miller

19  on constructive notice of the mark." Dkt. 85 at 20-21.  Accordingly, this factor

20  favors Stone.

21         **Second**, unlike Stone which has vigilantly enforced its trademark rights

22  against almost twenty would-be infringers, MillerCoors admits it has *never* sought to

23  enforce its purported rights.  Far shorter delays in bringing suit have been classified

24  as unreasonable by many courts.[19]  MillerCoors's 20+ year delay in this case

25  _____

26  [19] *See e.g.*, *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir. 2018) (6-year delay); *Theodosakis v. Contract Pharmacal Corp.*, 172 F. App'x 772, 773 (9th Cir.

27  2006) (5-year delay);  *Jarrow Formulas, Inc.* 304 F.3d 829 (7-year delay); *Bikila v.*

28  *Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1213 (W.D. Wash. 2016) (5-year delay);

**REDACTED VERSION**

1  undermines any reasonableness argument and bars its claim.

2  **Third**, all of the *E-Systems* factors weigh in Stone's favor. *Factor one*,

3  plaintiff has never used the mark and until the 2017 Rebrand, "Stone" and "Stones"

4  played no role in signifying the origin of Keystone beer. *Factor two*, MillerCoors

5  admitted that it never took any action to claim ownership of the words "Stone" or

6  "Stones" nor enforced any rights in the words against any other entity. *Factor three*,

7  MillerCoors has proffered *no* facts regarding what, if any, harm it would suffer.

8  Until 2017, it had never attempted to use STONES on any of its primary can or bottle

9  packaging. *Factor four*, Stone registered its mark and has enforced its rights in the

10 market. Not only did MillerCoors remain silent despite Stone's open and notorious

11 use of the term, MillerCoors's use *never* amounted to use as a trademark. *See supra*.

12 *Factor five*, MillerCoors contends, under oath, that its common law rights based on

13 pre-2017 use of the term STONES, does not cause confusion. (Hagey Ex. 31, Resp.

14 to RFA 1-10.) *Factor six*, Stone would suffer incredible harm given MillerCoors's

15 monumental delay. Stone has provided substantial evidence detailing its efforts

16 since the mid-1990s to build its business and has achieved rare and dramatic success

17 in helping to shape the entire American craft beer industry.

18      Here, the prejudice that would befall Stone should it be forced to relinquish its

19 rights to its valuable, famous name would be devastating. "Laches is a product of

20 delay times prejudice." *Id.* MillerCoors's claim for the exclusive use of "Stone" or

21 "Stones" after all this time, while wreaking havoc on Stone's famous brand and

22 business, would effect the utmost insult to equity. MillerCoors's Firth, Third, and

23 Fourth Counterclaims should be summarily dismissed.

## CONCLUSION

25      The Court should grant summary judgment on Stone's claim for trademark

26 infringement and dismiss MillerCoors's First, Third, and Fourth Counterclaims.

27 ─────────────────

28 *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015) (4.5-year delay);
   *Saul Zaentz Co.*, 627 F. Supp. 2d 1096 (18-year delay).

**REDACTED VERSION**

1

2    Dated:  August 12, 2019                    Respectfully Submitted,

3                                               BRAUNHAGEY & BORDEN LLP

4                                               By:  s/ J. Noah Hagey
                                                     J. Noah Hagey
5

6                                               *Attorneys for Stone Brewing Co., LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**REDACTED VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of August, 2019, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

<u>s/ J. Noah Hagey</u>
J. Noah Hagey