**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (324823)
theodore@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Bram Schumer, Esq. (SBN: 317736)
schumer@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>        Plaintiff / Counterclaim Defendant,<br><br>        v.<br><br>MILLERCOORS LLC,<br><br>        Defendant / Counterclaim Plaintiff. | Case No: 18-cv-0331-BEN-LL<br><br>**PLAINTIFF STONE BREWING CO., LLC'S REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JULY 2, 2019 ORDER [DKT. 137]**<br><br>District Judge: Hon. Roger T. Benitez<br>Magistrate Judge: Hon. Linda Lopez |

Ms. Needleman's declaration does not establish that Mekanism employees were the functional equivalent of MillerCoors's employees or come close to meeting the standard outlined in *U.S. v. Graf*, 610 F.3d 1148 (9th Cir. 2010), and *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994).  Ms. Needleman's declaration contains nothing analogous to the facts of those cases and no comparison between the roles and activities of Mekanism personnel and actual MillerCoors employees from which one might conclude that they were functional equivalents.  The declaration does not establish that Mekanism spoke on behalf of MillerCoors, managed or controlled MillerCoors employees, or served as MillerCoors's agent, all key factors in the functional equivalence test.  Moreover, the Needleman declaration does not establish that MillerCoors attorneys *needed* to speak to Mekanism personnel in order to provide legal advice because Mekanism "possesse[d] information that is possessed by no other."  *Bieter*, 16 F.3d at 938.  Absent that, there can be no privilege.

Mekanism is just one of countless outside agencies that MillerCoors does business with.  Tellingly, MillerCoors objects to the notion that the statements and knowledge of Mekanism personnel can be imputed to MillerCoors as if they were employees.  But the Needleman declaration provides absolutely no support for the notion that MillerCoors can have it both ways – that Mekanism personnel are employees for purposes of privilege but not for principles of *respondeat superior*.  Allowing communications with Mekanism to remain privileged would imply that communications with virtually *any* third-party contractor are protected from discovery.  This would transform attorney-client privilege beyond all recognition.

## **ARGUMENT**

**I.     The Needleman Declaration Lacks Facts Establishing that the Role Mekanism Personnel Was Similar to MillerCoors Employees or to the Personnel in *Graf* or *Bieter***

Ms. Needleman's declaration contains generalized, high-level comments regarding the important role played by Mekanism on the Keystone rebrand – not uncommon for outside agencies – but no facts that would establish that Mekanism

1  personnel played similar roles as MillerCoors employees or the functional employees

2  in *Graf* or *Bieter*.

3       At the threshold, Ms. Needleman fails to establish that Mekanism personnel

4  were functional equivalents of MillerCoors employees because her declaration

5  contains no comparison of how *actual* MillerCoors employees operate with how

6  Mekanism employees operate.  There is no evidence that Mekanism employees

7  conducted their work in the same way and/or under the same conditions or

8  requirements that MillerCoors's employees conduct their work.  Instead, Ms.

9  Needleman's declaration shows just the opposite – that Mekanism played a design

10  and role that MillerCoors had consciously decided to outsource.  Needleman Decl.

11  ¶ 5.  Mekanism "functioned as the design arm" because MillerCoors had chosen "*not*

12  [to] have an in-house design group responsible for designing content."  *Id*.  Rather

13  than establishing that Mekanism was the functional equivalent of MillerCoors

14  employees, her declaration shows just the opposite.

15       Ms. Needleman's declaration also contains no averments that Mekanism

16  personnel spoke on behalf of MillerCoors, managed MillerCoors employees, or

17  served as MillerCoors's primary agents in communications with corporate counsel –

18  hallmarks of the functional equivalence test as set out in *Graf*, 610 F.3d at 1159.

19  Here, again Ms. Needleman's declaration actually undermines the case for functional

20  equivalence by acknowledging that "Mekanism's work on the Keystone refresh was

21  directed and supervised by the Keystone brand team."  Needleman Decl. ¶ 8.  That is

22  the classic outside contractor arrangement – outside vendors supervised by

23  employees – and the opposite of what was found to support functional equivalence in

24  Graf, where the court emphasized that the contractor "managed company

25  employees."  *Graf*, 610 F.3d at 1159.  There is no evidence in the Needleman

26  Declaration to contradict Mr. Thornhill's testimony that Mekanism personnel were

27  never authorized to speak on behalf of MillerCoors and never managed MillerCoors

28  employees.  Dkt. 145-1 at 13:14-21.

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

1   The classic outside contracting role described by Ms. Needleman, where a
2   company uses outside marketing agencies to develop creative and marketing
3   direction for a brand, is strikingly different from the circumstances of *Graf* and
4   *Bieter*.  There, the employees were completely enmeshed in their host companies.
5   They spoke on the companies' behalf and quarterbacked entire operational
6   workstreams.  *Graf*, 610 F.3d at 1157.  The only reason that Graf was not a genuine
7   employee was because of the outstanding California cease-and-desist orders
8   preventing him from lawfully being employed by an insurance company in the State
9   of California.  *Id.* at 1159.  He *would* have been hired if he *could* have been hired.
10  *Id.*  The court *specifically* held that "[b]ecause the record establishes that Graf was a
11  functional employee, *not an independent outside consultant to Employers Mutual*,"
12  the attorney-client privilege applied to his communications with counsel.  *Id.*

13  Unlike in *Graf* and *Bieter*, Mekanism personnel did not run the show.  They
14  did not attend meetings on behalf of MillerCoors without MillerCoors personnel, did
15  not speak on MillerCoors's behalf, did not manage MillerCoors's employees, and did
16  not lead entire divisions of the business without supervision.  They were "directed
17  and supervised by the Keystone brand team."  Needleman Decl. ¶ 8.  Mekanism
18  employees always maintained their own physical offices and email addresses and
19  were not solely devoted to Keystone.

20  In short, *Graf* and *Bieter* set a high bar for the functional equivalence test.
21  That is very different from a standard marketing agency contractual relationship
22  described by Ms. Needleman where Mekanism was hired to do a specific job for
23  MillerCoors related to the creation of Keystone strategy and creative.  Run-of-the-
24  mill outside agencies described by Ms. Needleman do not qualify.

25  **II.    Ms. Needleman's Declaration Does Not Establish that *Mekanism* Was
        Necessary for Communications with MillerCoors's In-House Counsel**
26
27  In addition, Ms. Needleman's declaration does not establish that Mekanism
    personnel were "the company's voice in its communications with counsel," *Graf*,
28

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

1   610 F.3d at 1157, or "possesses information that is possessed by no other" and that is

2   required for counsel to render legal advice.  *Bieter*, 16 F.3d at 938.

3       In *Graf* and *Bieter*, the personnel at issue uniquely possessed information that

4   made them necessary for the rendering of legal advice.  In *Bieter*, the court explained

5   that, sometimes, functional equivalents of employees may be the sole repository of

6   information that is "needed by corporate counsel if he is adequately to advise the

7   client with respect to actual or potential difficulties."  16 F.3d at 937-38 (quotations

8   omitted).  In that case, the privilege can be expanded to employees who possess

9   information that cannot be obtained from any other source.

REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION

1 ████████████████████████████████████████████████

2 ████████████████████████

3       Notably, MillerCoors does not submit the declaration of any member of its

4 legal department, of Mekanism, or of a senior member of its brand team on this

5 point. Ms. Needleman was an associate marketing manager, the newest, most junior

6 member of the Keystone brand team, who joined MillerCoors out of business school

7 in the midst of the rebrand *after* Mekanism had already been retained. If

8 MillerCoors's legal department, if Mekanism, or if senior MillerCoors brand

9 personnel thought that it was necessary for Mekanism to know MillerCoors's legal

10 reasoning, they could have said so.

11       Adopting MillerCoors's view of the functional equivalence doctrine risks

12 exploding the scope of attorney-client privilege in a dangerous manner. Companies

13 of all sizes hire countless vendors, contractors, outside agencies, custodial staff, etc.

14 as part of their regular operations. Not all of these outside entities are the functional

15 equivalent of employees. That designation should be used sparingly to protect liberal

16 discovery and prevent over-expansion of the attorney-client privilege.

## III. The Declaration Does not Explain Why Mekanism Should be Treated as Employees for Purposes of Privilege but not *Respondeat Superior*

18       Finally, nothing in Ms. Needleman's declaration supports MillerCoors's desire

19 to have it both ways. MillerCoors cannot claim that Mekanism personnel should be

20 employees for the purpose of evading discovery but not when it comes to attributing

21 their statements to MillerCoors. The functional equivalent of an employee is

22 necessarily an agent of the employer. *See Graf*, 610 F.3d at 1157-58. And the legal

23 consequences of an agent's actions are attributable to the principal when the agent

24 acts within its authority. *See* Restatement (Third) of Agency § 2 intro. note (2006).[1]

25

26

27 ─────────────────

[1] The rules governing vicarious trademark liability, Opp. at 9, control whether one entity is liable for another's infringement; they do not repeal principles of agency and

28 *respondeat superior*.

Dated:  August 30, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  s/ Jeffrey M. Theodore
          Jeffrey M. Theodore

*Attorneys for Stone Brewing Co., LLC*

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2019, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

s/ Jeffrey M. Theodore

Jeffrey M. Theodore
