REDACTED VERSION

Christopher T. Casamassima (SBN #211280)
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
chris.casamassima@wilmerhale.com

Vinita Ferrera (*pro hac vice*; MA Bar #631190)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6556
vinita.ferrera@wilmerhale.com

Additional counsel listed on signature page

ATTORNEYS FOR DEFENDANT
MILLERCOORS LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stone Brewing CO., LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MILLERCOORS LLC,<br><br>    Defendant/Counterclaim Plaintiff. | Case No.:  3:18-cv-00331-BEN-LL<br><br>**DEFENDANT MILLERCOORS LLC'S OPPOSITION TO PLAINTIFF STONE BREWING CO., LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 16, 2019<br>Time: 10:30 a.m.<br>Location: Courtroom 5A<br>Judge: Hon. Roger T. Benitez |

1

## TABLE OF CONTENTS

2
Page

3 I.   INTRODUCTION ................................................................................................1

4 II.  ARGUMENT ......................................................................................................4

5       A.   Summary Judgment is Not Appropriate for Stone Brewing's Trademark
            Infringement Claims ...............................................................................4

6            1.   Stone Brewing's Trademark is Weak .............................................6

7            2.   MillerCoors' Actual Mark – KEYSTONE – is Dissimilar from Stone
                 Brewing's STONE Mark ...............................................................7

8            3.   There Is No Evidence of Actual Consumer Confusion ..................10

9            4.   MillerCoors Can Show the Goods Are Not in Close Proximity ......13

10           5.   There is Minimal Overlap in the Marketing Channels for Keystone Light
                 and Stone Brewing Products ........................................................15

11           6.   Beer Drinkers Exercise Care in Purchasing Beer ........................16

12           7.   MillerCoors Had No Intent to Copy or Leverage Stone Brewing's
                 Trademark ..................................................................................17

13           8.   There is No Evidence that Stone Brewing's Beers and Keystone Are
14                Likely to Compete in the Future .................................................20

15 III. MILLERCOORS' COUNTERCLAIMS SHOULD NOT BE DISMISSED ...................20

16      A.   Evidence Clearly Shows That MillerCoors Can Establish Common Law
            Trademark Rights as the Prior User of STONE and STONES ..........................20

17           1.   Evidence Clearly Shows that MillerCoors is the Prior User ..................20

             2.   MillerCoors' Use of the Mark Was Legally Sufficient ............................21

18 IV. LACHES DOES NOT BAR MILLERCOORS' COUNTERCLAIMS.............................23

19      A.   Laches Does Not Apply Because MillerCoors is Not Seeking to Enforce Rights
20           Against Stone Brewing ............................................................................23

        B.   Plaintiff Has Not Met Either Requirement for a Showing of Laches ..................24

21           1.   Plaintiff Has Failed to Show Unreasonable Delay ....................................24

22           2.   Plaintiff Has Not Alleged Prejudice ...........................................................25

23 V.  CONCLUSION...................................................................................................25

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2
Page(s)

3
**CASES**

4
*Active Network, Inc. v. Elec. Arts Inc.*,
  2010 WL 3463378 (S.D. Cal. Aug. 31, 2010) ........................................................5

5
*AirWair Int'l Ltd. v. Schultz*,
6
  84 F. Supp. 3d 943 (N.D. Cal. 2015) ................................................23, 24, 25

7
*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ................................................................................5
8

9
*Bauer Bros., LLC v. Nike, Inc.*,
  159 F. Supp. 3d 1202 (S.D. Cal. 2016) ................................................................5

10
*Bosley Med. Inst., Inc. v. Kremer*,
11
  403 F.3d 672 (9th Cir. 2005) ................................................................................7

12
*Brockmeyer v. Hearst Corp.*,
  248 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................................13
13

14
*Chance v. Pac-Tel Teletrac Inc.*,
  242 F.3d 1151 (9th Cir. 2001) ............................................................................22

15
*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
16
  269 F.3d 270 (3d Cir. 2001) ...............................................................................15

17
*Chisolm v. 7-Eleven, Inc.*,
  383 F. Supp. 3d 1032 (S.D. Cal. 2019) ..............................................................10
18

19
*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
  930 F.2d 1056 (3d Cir. 1991) ...............................................................................8

20
*DC Comics v. Towle*,
21
  989 F. Supp. 2d 948 (C.D. Cal. 2013) .................................................................6

22
*Derek & Constance Lee Corp. v. Kim Seng Co.*,
  391 F. App'x 627 (9th Cir. 2010) .......................................................................25
23

24
*Edsal Mfg. Co. v. Vault Brands, Inc.*,
  No. 11 C 9287, 2012 WL 5558849 (N.D. Ill. Nov. 15, 2012).............................21

25
*Entrepreneur Media, Inc. v. Smith*,
26
  279 F.3d 1135 (9th Cir. 2002) ........................................................................5, 18

27
*Estate of P.D. Beckwith, Inc. v. Comm. of Patents*,
  252 U.S. 538 (1920)...............................................................................................8
28

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ...................................................................4, 5

*Gibson v. Cty. of Riverside*,
    181 F. Supp. 2d 1057 (C.D. Cal. 2002) .......................................................11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ..................................................................23, 24

*Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*,
    No. 06 CIV 550 JFK, 2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ...............11

*Nat. Ass'n of Realtors v. Champions Real Estate Services Inc.*,
    812 F. Supp. 2d 1251 (W.D. Wash. 2011).....................................................5

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*,
    331 F. Supp. 3d 1131 (D. Idaho 2018) ..........................................................7

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ......................................................................6

*New West Corp. v. NYM Co. of California*,
    595 F.2d 1194 (9th Cir. 1979) ....................................................................22

*Playmakers, LLC v. ESPN, Inc.*,
    297 F. Supp. 2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894
    (9th Cir. 2004)........................................................................................1, 8

*Premier Elecs. Lab., Inc. v. Aston*,
    914 F.2d 1496 (9th Cir. 1990) ......................................................................8

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ....................................................................22

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    59 F.3d 902 (9th Cir. 1995) ........................................................................23

*Sleeper Lounge Co. v. Bell Mfg. Co.*,
    253 F.2d 720 (9th Cir. 1958) ........................................................................9

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017) ..................................................................5, 18

*Sunenblick v. Harrell*,
    895 F. Supp. 616 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996)...........14

*Survivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ......................................................................20

REDACTED VERSION

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
 305 F.3d 894 (9th Cir. 2002) ........................................................................5

*Wuv's Int'l, Inc. v. Love's Enterprises, Inc.*,
 No. 78-F-107, 1980 WL 30296 (D. Colo. Nov. 4, 1980) ..................................11

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Civ. P. 37(c) ....................................................................................10

**OTHER AUTHORITIES**

1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.) ............................................22

6 McCarthy on Trademarks and Unfair Competition § 32:189 (5th ed.) ....................................12

iv

## I.   INTRODUCTION

It is time to bring some perspective to this case and to apply the law to Stone Brewing's claims and the actual facts as reflected in the documents and deposition testimony developed in discovery.  When common sense and the elements for trademark infringement are applied to the record in this case, Stone Brewing's summary judgment motion must be denied.  It is MillerCoors that is entitled to summary judgment (as explained in its Motion for Summary Judgment).  ECF No. 170-01.

Keystone was launched in 1989, seven years before Stone Brewing sold any beer. Packages and cans of Keystone beer have long prominently displayed the KEYSTONE® mark, along with the Coors Brewing Company name, mountain imagery, and other MillerCoors' signature assets for the Keystone brand, including its nickname "STONES." These nationwide sales and marketing efforts were the state of the market *before* Stone Brewing ever sold a single beer.  As a senior user of "Stone(s)," MillerCoors has every right to continue its longstanding use of "Stone(s)" in the marketplace.

Moreover, Keystone and Stone Brewing have co-existed in the beer market for nearly two decades without incident.  That has not changed with the Keystone refresh in 2017.  A simple side-by-side comparison of the products – which Stone Brewing has *never* once in this case provided the Court – shows why:

| <u>**Keystone Light 15-Pack & Can**</u> | <u>**Stone IPA 12-Pack & Can**</u> |
|:---:|:---:|

  

In order to stay alive in this case, Stone Brewing has been forced to deconstruct and dissect the overall presentation of the marks to the consumer in a manner that is legally impermissible.  As this Court knows, the law requires that the marks be looked at as a whole.  *See Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash.

REDACTED VERSION

2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004). When the proper analysis is applied, it is clear that the Keystone and Stone Brewing external packaging and cans bear no resemblance.

Indeed, discovery has now confirmed that this lawsuit was nothing more than a marketing ploy orchestrated to bolster Stone Brewing's aging brand. Stone Brewing's motion seeking summary judgment of infringement is no different. Unsurprisingly, more than eighteen months into this dispute and despite now seeking summary judgment on MillerCoors' purportedly "pronounced and obvious" alleged infringement (Mot. 1), Stone Brewing still has not identified exactly what it alleges infringes its trademark—is it the Keystone packaging which prominently displays KEYSTONE®, the cans which do the same, some unidentified advertising, or something else entirely? MillerCoors—and this Court—are left to speculate.

The truth is that *every* can and package of Keystone bears the registered KEYSTONE® trademark *multiple times* and prominently displays the Coors Brewing Company name and logo. Moreover, Keystone Light packages prominently feature Keystone's historic blue, white, and silver color scheme and Keystone's signature mountain imagery, which reflects the Keystone ski resort from which Keystone draws its name. In contrast, Stone Brewing's can and packaging say "Stone IPA" (multiple times); use dark gothic black and green colors; and depict Stone Brewing's signature gargoyle mascot and a background motif of hops plants. It is thus hardly surprising that in the three consumer confusion surveys that show consumers *accurate* images of the parties' products—including one that Stone Brewing and its expert intentionally withheld during expert discovery—the results clearly indicated that there is no likelihood of confusion. It is no surprise that in the more than two years that the refreshed Keystone packaging has been in the market, Stone Brewing has been unable to muster up a single example of a customer who purchased Keystone Light thinking that it was a Stone Brewing product. Indeed, ███████████████████████████████████████████████████

With a sleight of hand, Stone Brewing has pivoted away from addressing the products

---

[1] CTC Decl. Ex. 1, (Distler Tr. at 208:5-10).

**REDACTED VERSION**

as presented in the marketplace to focus on an ***internal*** "Own the Stone" slogan that in no way referenced Stone Brewing, or even craft beer, and in any event was never used publicly.[2]   MillerCoors' real world advertisements clearly include the KEYSTONE® trademark along with numerous references to Keystone's other brand equities, such as the phrase "Always Smooth" (a characteristic that no one would ever associate with Stone Brewing's unabashedly bitter beers), and Keystone's familiar blue, white, and silver color scheme.



No amount of rhetoric can distract from the litany of undisputed facts that easily ***dispose*** of Stone Brewing's infringement claims, including:

- Every can and package of Keystone beer displays MillerCoors' KEYSTONE® mark multiple times, along with the Coors Brewing company name and logo;[3]
- No Keystone can or package displays the word "STONE" in isolation;
- The words "STONE" and "STONES" were used on Keystone packaging and advertising years before Stone Brewing existed, as even Stone Brewing's own corporate witness admitted;[4]
- Although Keystone Light and Stone Brewing products are both beer, it is beyond doubt that they exist at opposite ends of the beer market ("economy" vs. "craft") and are targeted to very different consumers (older, largely rural, value-oriented beer drinkers looking for a light, low alcohol content, smooth-tasting beer vs. younger, largely urban, less price sensitive beer drinkers looking for an aggressive, bitter,

---

[2] CTC Decl. Ex. 2 (Selman Tr. 124:16-18).
[3] CTC Decl. Ex. 3 and Ex. 4.
[4] CTC Decl. Ex. 5 ¶¶ 4-5, Ex. 6 (Engels Tr. 187:20–188:9). █████████████

3:18-cv-00331-BEN-LL

higher alcohol content beer);[5]

- Given the undeniable differences in the target markets and target audiences for the parties' products, Stone Brewing unsurprisingly cannot point to a single instance of actual customer confusion despite Keystone's refreshed packaging having been on the market for over two years;[6]

- ██████████████████████████████████████████████████████

- MillerCoors' witnesses have uniformly testified that MillerCoors had no intent to copy Stone Brewing's trademark, and that Stone Brewing was never a consideration during the Keystone refresh;[8] and,

- ██████████████████████████████████████████████████████

Given these facts, Stone Brewing cannot come close to satisfying its burden to demonstrate that summary judgment is appropriate because it lacks any legitimate evidence to support its claims. In fact, on this record, summary judgment in favor of MillerCoors is appropriate. However, *at a minimum*, there are "genuine issues of material fact . . . that could affect the outcome of the case," rendering summary judgment for Stone inappropriate. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). Stone Brewing's motion should therefore be denied.

## II.   ARGUMENT

### A.   Summary Judgment is Not Appropriate for Stone Brewing's Trademark Infringement Claims

---

[5] Kallenberger Decl. Ex. 1 (Kallenberger Report), pp. 7-13.
[6] CTC Decl. Ex. 6 (Engels Tr. 16:17–17:25 ██████████████████ ██████████████ Ex. 7 (Hernandez Tr. 322:2–324:2), and Ex. 8 (Stewart Tr. 253:24–255:13).
[7] CTC Decl. Ex. 8 (Stewart Tr. 122:23-124:13; 130:20-131:1).
[8] CTC Decl. Ex. 2 (Selman Tr. 247:15-248:23–; 352:20–354:16), Ex. 9 (Marek Tr. 348:8–19; 381:3–383:4; 392:8–10), Ex. 10 (Needleman Tr. 91:8–15; 323:7–21), and Ex. 11 (Reischauer Tr. 187:7–195:1; 197:9–24).
[9] CTC Decl. Ex. 1 (Distler Tr. at 208:5-10).

4

1    "Summary judgment is improper if there are any genuine issues of material fact—

2  facts which, under the governing substantive law, could affect the outcome of the case."

3  *Id.* at 1031.   Contrary to Stone Brewing's contentions, courts do not "regularly grant

4  summary judgment on trademark infringement." (Mot. 3).  Rather, trademark infringement

5  requires a fact-intensive inquiry into whether the evidence shows "a likelihood of

6  confusion" between the two marks, including an analysis of the "*Sleekcraft* factors." *Active

7  Network, Inc. v. Elec. Arts Inc.*, 2010 WL 3463378, at *2 (S.D. Cal. Aug. 31, 2010) (citing

8  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979)).

9    It is for that reason that "summary judgment is generally ***disfavored*** in the trademark

10  arena" given the "intensely factual nature of trademark disputes."  *Fortune Dynamic*, 618

11  F.3d at 1031 (emphasis added) (*quoting Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135,

12  1140 (9th Cir. 2002)); *see also Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901

13  (9th Cir. 2002) ("Likelihood of confusion is a factual determination.").   In fact, courts

14  "sparingly" grant summary judgment motions concerning trademark infringement.  *Bauer

15  Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1211 (S.D. Cal. 2016).   Stone Brewing's

16  motion fails to show an absence of a genuine issue of fact ***as to any*** of the *Sleekcraft* factors.

17  Instead, Stone Brewing simply points to alleged "facts" it intends to present at trial—many

18  of which are not actual facts at all—while ignoring the actual evidence that undermine its

19  claims and (at a minimum) creates a genuine issue of material fact.  Stone Brewing cannot

20  demonstrate why ***any*** of the *Sleekcraft* factors favor Stone Brewing as a matter of law, let

21  alone in their entirety.

22    Moreover, while Stone Brewing points to a few rare cases where summary judgment

23  was granted for trademark infringement claims (Mot. 3), those cases primarily involved

24  defendants who ***admitted*** to continuing use of their former business partners' trademarks

25  without consent.  *See, e.g., Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426,

26  430–431 (9th Cir. 2017) (defendant admitted to selling furniture under identical mark of

27  former business partner); *Nat'l Ass'n of Realtors v. Champions Real Estate Services Inc.*,

28  812 F. Supp. 2d 1251, 1256-1257 (W.D. Wash. 2011) (realtors admitted to using

3:18-cv-00331-BEN-LL

"REALTOR" mark after termination of agreement with national trade association); *DC Comics v. Towle*, 989 F.Supp.2d 948, 957 (C.D. Cal. 2013) (defendant admitted to using plaintiff's identical mark).  None of them bear any factual or legal similarities to this case.

Moreover, none of those cases presented the type of evidence of no likelihood of confusion that MillerCoors has developed here and which remains largely ignored in Stone Brewing's motion.  As discussed in detail below, Keystone and Stone Brewing's products use different marks, look different in virtually every respect, exist in different segments of the beer industry, target different types of beer drinkers, and, in fair and unbiased consumer surveys, generate results indicating no likelihood of confusion.  Stone Brewing cannot point to a single case in which a court in the Ninth Circuit has granted summary judgment of trademark infringement in the face of such facts.

1.    Stone Brewing's Trademark is Weak

Commercial strength of a mark is based on "actual marketplace recognition" of that mark.  *Network Automation, Inc. v. Advanced Sys. Concepts*, *Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).  But Stone Brewing's own internal research suggests that its mark is not commercially strong. ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████  This lack of recognition is unsurprising given that Stone Brewing is only "one brand among over 10,500 other craft beer brands in the United States."[11]  Moreover, even setting aside Stone Brewing's lack of recognition, the Stone mark is conceptually weak—at least ***ten other craft breweries*** actively use the word "Stone" in their name.[12]  That too is unsurprising given that "Stone Brewing" is descriptive of a method of brewing beer used by breweries around the world.[13]  Thus, at a minimum, there is a factual dispute as to the strength of the Stone mark that would preclude summary

---

[10] CTC Decl. Ex. 12.
[11] Kallenberger Decl. Ex. 1 at 3.
[12] *Id*. at 24.
[13] *Id*. at 24.

judgment here.

        2.    <u>MillerCoors' Actual Mark – KEYSTONE – is Dissimilar from Stone Brewing's STONE Mark</u>

Pointing to what it terms MillerCoors' "'Own the Stone' campaign documents," Stone Brewing boldly asserts that the marks used by the parties are "identical." (Mot. 8). As an initial matter, those documents make clear that KEYSTONE is "our wordmark," and "[i]f the viewer doesn't already know we're Keystone, now they know."[14] Even apart from that fact, the law is clear that "use" as required for a finding of trademark infringement must be ***in commerce***. *See Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co*., LLC, 331 F. Supp. 3d 1131, 1139 (D. Idaho 2018) (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("Commercial use of the mark is a jurisdictional predicate" for a finding of trademark infringement.)). "If a defendant does not use the mark in commerce, a plaintiff's claim for trademark infringement fails as a matter of law." *Id.* MillerCoors' witnesses confirmed that "Own the Stone" was not used in commerce and was "***not consumer-facing communication***."[15] Therefore, to the extent Stone Brewing's claims turn on MillerCoors' internal use of "Own the 'Stone," they fail as a matter of law.

Notably, not once does Stone Brewing show how MillerCoors' products and advertisements ***actually*** appear in commerce. Instead, Stone Brewing summarily claims that the marks at issue are "STONE" and "STONES," sidestepping one key fact: Keystone packaging and cans all clearly bear multiple references to MillerCoors' ***own trademark*** KEYSTONE®, which was registered long before Stone Brewing's:[16]

 

---

[14] CTC Decl. Ex. 19.
[15] CTC Decl. Ex. 9 (Marek Tr. 390-391), Ex. 2 (Selman Tr. 124:16-18).
[16] CTC Decl. Ex. 21(U.S. Reg No. 1,651,618 for KEYSTONE®).

Similarly, in advertising, Keystone's "STONE" nickname is paired with the full KEYSTONE® trademark.  Indeed, throughout this litigation, Stone Brewing sought to mislead the Court and survey respondents by showing cropped images that intentionally omit the full KEYSTONE brand name, which undisputedly is present on all Keystone cans, packaging and advertising.[17]

While Plaintiff acknowledges that marks "must be considered in their entirety and as they appear in the marketplace" (Mot. 8), it bases its argument on five letters dissected from the KEYSTONE® mark and divorced from the commercial context in which the mark appears by ignoring font, color, and other design elements.  But "what is critical is the *overall* appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004).  Thus, Stone Brewing's selective dissection of the KEYSTONE mark surely does not satisfy the requirement to compare Plaintiff's mark with MillerCoors' mark "as it appears in the marketplace." *See Premier Elecs. Lab., Inc. v. Aston*, 914 F.2d 1496 (9th Cir. 1990); *see also Estate of P.D. Beckwith, Inc. v. Comm. of Patents*, 252 U.S. 538, 545–546 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail.").[18]

Stone Brewing's presentation of its own mark is similarly flawed. The Ninth Circuit has unequivocally instructed that "[courts] are required to consider the composite trade-

---

[17] *See* Complaint, p. 11 (falsely alleging that cropped image of the latter half of "KEYSTONE" is "Keystone's new can."); *see also* CTC Decl. Ex. 22, at pp137-140 (cropped image of latter half of "KEYSTONE" presented to respondents as Keystone's new packaging).

[18] Stone Brewing's attempt to label "STONE" as the "dominant visual element" is neither factually correct nor legally relevant. The mark KEYSTONE® appears in full on both the packaging and the can, and all letters are the same font, color, and size. CTC Decl. Ex. 3 and Ex. 4.  Further, the out-of-circuit case on which Plaintiff relies specifically instructed that "disclaimed matter such as "floor" and "tile" is not usually regarded as the dominant part of a mark." *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991). There is no suggestion here that MillerCoors has disclaimed any portion of its KEYSTONE® mark.

8

mark in its entirety." *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 722 (9th Cir. 1958). The court thus does not merely look to the registered mark alone, but also considers any other words or images "actually used" with the mark, even if not a part of the registered mark itself. For example, the Ninth Circuit declined to consider the plaintiff's registered mark, Wonder Chair, in isolation because "[i]t most frequently, though not always, used the words 'Bell's Wonder Chair', or, 'Bell Wonder Chair— (not a bed)', or, 'The Bell Wonder Chair-Bed', or, 'Wonder Love Seat', or, 'Wonder Cushioned Divan.'" *Id.* Similarly, Stone Brewing's beers are generally labeled with the term "Stone" along with the type or name of the specific beer—indeed, not a single year-round beer shown on Stone Brewing's website is labeled "Stone" alone, and each label is dominated by the name of the beer, not the word "Stone."[19]

Thus, when the parties' actual marks are compared as they appear in the marketplace, they could not be more dissimilar. For example, "Keystone Light" does not look, sound, or mean the same thing as "Stone Tangerine Express IPA" or "Stone IPA." When the marks are considered in context, they are even further removed from one another. MillerCoors' KEYSTONE mark appears on bright blue packages that also include the Coors Brewing Company name logo and Keystone's signature mountains. Stone's STONE mark, in contrast appears alongside Stone Brewing's signature Gargoyle, with the word "Stone" in smaller font than the descriptors "IPA," "Tangerine Express IPA," etc.

Finally, to the extent Stone Brewing now contends that consumers' use of Keystone's "STONE" or "STONES" nickname in conversation could lead to confusion, it is far too late for Stone Brewing to complain about such use. As set forth in MillerCoors' Motion for Summary Judgment, MillerCoors and Keystone drinkers have been referring to Keystone as "STONE" or "STONES" for decades, and certainly long before this lawsuit

---

[19] As of this filing, Stone Brewing lists the following beers on its website: "Stone IPA;" Stone Tropic of Thunder Lager;" "Stone Tangerine Express IPA;" "Stone Delicious IPA;" "Stone Scorpion Bowl IPA;" "Stone Fear Movie Lions Double IPA;" "Stone Ripper San Diego Pale Ale;" "Stone Ruination Double IPA 2.0 Sans Filtre;" and "Stone Go To IPA." https://www.stonebrewing.com/.

was filed. ████████████████████████████████████ Even if it were true

that there were some potential for confusion if a consumer were to ask for a "STONE" (and

there is no evidence of this actually ever having happened), that has been true for years,

and there is no evidence that more consumers use "STONE" to now ask for a Keystone

beer than prior to 2017.    For all of these reasons, viewing the evidence in the light most

favorable to MillerCoors, there is a genuine issue of material fact as to this factor.

3.    <u>There Is No Evidence of Actual Consumer Confusion</u>

a)    *Plaintiff has cited no evidence of actual consumer confusion.*

In a desperate attempt to conjure up **some** evidence of actual confusion, Stone

Brewing submits—with its summary judgment papers—declarations from three of its

employees who were **never disclosed** during discovery, thereby depriving MillerCoors of

the opportunity to take discovery as to this purported "actual confusion" evidence on which

Stone Brewing now relies.[21]   That evidence should be rejected outright as improper and

untimely.  *See* Fed. R. Civ. P. 37(c); *see also Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d

1032, 1045 (S.D. Cal. 2019) (excluding declaration submitted at summary judgment where

"Plaintiff never disclosed [the declarant] as a witness during discovery").

But even were this Court to consider Stone Brewing's belated and improper evidence

of purported "confusion," it proves little.   The text message referred to in Mr. Vera's

declaration—which came from ████████████████████ appears to have

clearly been a joke, as evidenced by the response—████████  The image attached to Mr.

Moore's declaration is admittedly ████████████████████—out of the

presence of consumers.[23]   And Ms. Jaeggi describes an incident where ██████████

---

[20] CTC Decl. Ex. 6 (Engels Tr. 187:20–188:9).
[21] In fact, the photographs that these employees describe in their declarations were not
disclosed in Stone Brewing's response to MillerCoors' interrogatory seeking information
regarding any instance of actual confusion and were produced only on the last day of fact
discovery, such that MillerCoors had no opportunity to seek additional discovery
regarding those documents.
[22] ECF No. 175-4, Ex. 1.
[23] ECF No. 175-5 ¶ 3.

REDACTED VERSION

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 █████████████████████████████

    Thus, after 18 months of litigation and more than two years after the launch of the refreshed Keystone packaging, Stone Brewing still has no credible evidence of any customer purchasing Keystone thinking it was a Stone Brewing product.

    *b)*    *Stone Brewing's Purported Survey Evidence Is Fatally Flawed*

    Stone Brewing's reliance on the surveys performed by its expert Dr. Stewart is severely misplaced because, as set forth in MillerCoors' motion to exclude Dr. Stewart, each of those surveys suffers from fatal flaws that render them wholly unreliable and invalid. *See generally* ECF No. 164-1; *see also Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*, No. 06 CIV 550 JFK, 2007 WL 2258688, at **10-12 (S.D.N.Y. Aug. 6, 2007) (excluding survey relying on "improper and unrepresentative stimuli"); *Gibson v. Cty. of Riverside*, 181 F. Supp. 2d 1057, 1067 (C.D. Cal. 2002) ("substantial deficiencies in the design or execution of a survey of individuals [provide] grounds for its complete exclusion."); *Wuv's Int'l, Inc. v. Love's Enter., Inc.*, No. 78-F-107, 1980 WL 30296, at *25 (D. Colo. Nov. 4, 1980) ("The Court finds that the reported result of the survey is not trustworthy, and therefore not probative on the likelihood of confusion issue.").

    Unmentioned in Plaintiff's motion is that ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

This evidence, which Plaintiff's counsel and expert withheld in clear violation of the

---

[24] ECF No. 175-6 ¶ 3.

[25] CTC Decl. Ex. 23 █████████████████████████████████████████████

██████████████████████████████████████████████████████████

  CTC Decl. Ex. 8 (emphasis added) (Stewart Tr. 124:14-17).

[27] *Id.* at 126:22-127:1 (emphasis added).

**REDACTED VERSION**

1    Federal Rules, is alone sufficient to create a disputed issue of fact as to whether there is a
2    likelihood of confusion. 6 McCarthy on Trademarks and Unfair Competition § 32:189 (5th
3    ed.) ("When the percentage results of a confusion survey dip below 10%, they can become
4    evidence which will indicate that confusion is not likely.").

c)    *The Only Valid Survey Evidence In This Case Points To No
            Likelihood of Confusion*

6            In contrast to the disqualifying flaws shot through the entirety of the survey evidence
7    on which Plaintiff relies, the surveys performed by MillerCoors' survey experts, Jeffery
8    Stec and Hal Poret, who Stone Brewing has not challenged in any substantive way,
9    demonstrate that confusion is unlikely.
10           In connection with MillerCoors' opposition to Stone Brewing's motion for a
11   preliminary injunction, Mr. Poret oversaw an online survey of 600 respondents using
12   accurate images of the Keystone can and packaging—and calculated a net confusion rate
13   of ██ [8] During the expert discovery phase in this matter, Dr. Stec designed an in-person
14   survey of 426 respondents in which respondents at shopping malls were shown the actual
15   Keystone can and package—Dr. Stec's survey yielded a likelihood of confusion rate of
16   ███ Stone Brewing's Dr. Stewart agrees that rates of ██ and ██ net confusion are
17   "not considered sufficient evidence of likelihood of confusion."[30]
18           In denying Plaintiff's motion for a preliminary injunction, this Court previously
19   considered Dr. Stewart's use of improper test stimuli—as compared against the
20   scientifically valid survey conducted by Mr. Poret—and decided that the survey results in
21   this case "are either neutral or slightly favor Miller."[31] The record in this case now includes
22   an additional in-person survey showing no likelihood of confusion—plus evidence of a
23   previously undisclosed fifth survey by Dr. Stewart that yielded net confusion of only ██
24   ████████ Where, as here, the overwhelming weight of scientifically valid survey

---

[28] Poret Decl. Ex. 1, (Poret Report) at 35.
[29] Stec Decl. Ex. 1, (Stec Report) at 4, 21-22.
[30] CTC Decl. Ex. 8 (Stewart Tr. 126:22-127:1).
[31] ECF No. 85 (Order of March 26, 2019) at 9-10.
[32] CTC Decl. Ex. 8 (Stewart Tr. 124:14-16).

12

REDACTED VERSION

evidence favors Defendant, summary judgment for the Plaintiff is inappropriate. *See, e.g.*, *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 298, 301 (S.D.N.Y. 2003) (granting *defendant's* summary judgment motion, dismissing plaintiff's trademark infringement claims, and finding that a 3% net confusion rate was "not sufficient to demonstrate a likelihood of confusion").

### 4.   MillerCoors Can Show the Goods Are Not in Close Proximity

As an initial matter, Stone Brewing overstates the Court's conclusion regarding the proximity of the goods.  The Court found that it was "reasonable," based on a limited record at the preliminary injunction stage, to consider MillerCoors a direct competitor to Stone Brewing based on the national distribution of beers by both brewers and the likelihood that a consumer would encounter both products.  But the evidence developed in subsequent fact and expert discovery compels a different conclusion.

Indeed, substantial evidence demonstrates that Stone Brewing's beers and Keystone are not true competitors, limiting the opportunity for any confusion.   Beer brands are differentiated into established market segments recognized in the industry by brewers, distributors, retailers, and consumers.[33]  Stone Brewing's products are "craft" beers, while Keystone is an "economy" beer.  Craft beer and economy beer are the "polar extremes" of the beer market.[34]

Craft beer, like Stone Brewing's products, is the "high end" of the beer market notable for having some of the highest prices, typically smaller package sizes (such as 6-packs of bottles or cans), higher alcohol content, and unique, intense flavors.[35]  Economy beer, like Keystone beer, is the "value end" of the beer market with the lowest prices, largest package sizes (typically 15-packs or more), lower alcohol content, and more consistent, light, refreshing flavor.[36]  The average Stone Brewing beer is sold at a price

---

[33] Kallenberger Decl. Ex 1 at 4.
[34] *Id*. at 7.
[35] Kallenberger Decl. Ex. 1 at 7-8.
[36] *Id*.

REDACTED VERSION

over three times the average price of Keystone beer per ounce.[37]

Stone Brewing's documents and deposition testimony illustrate that Stone Brewing never considered Keystone to be a competitor.[38] Similarly, nowhere in MillerCoors' documents discussing the planned refresh is there any indication that MillerCoors considered craft beers generally, or Stone Brewing in particular, to be a segment of the market from which Keystone Light could take market share.[39] ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

As the evidence also shows, MillerCoors and Stone Brewing do not compete for the same consumers.[41] Demographic data shows that craft beer and economy beer are largely purchased by different populations. ████████████████████████

████████████████████████████████████████████████████

███████ This difference in consumer profiles is backed up by sales data showing that ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

Because there is at best a scant chance that a Keystone consumer would be in the market for a Stone Brewing offering, there is no more than a scant chance of confusion. *See Sunenblick v. Harrell*, 895 F. Supp. 616, 629 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d

---

[37] *Id.* at 9.
[38] CTC Decl. Ex. 13 (Armstrong Tr. 81:1–16) and Ex. 14 (Karnig Tr. 102:8–13).
[39] CTC Decl. Ex. 15.
[40] *Id.; see also* CTC Decl. Ex. 16 ████████████████████████
████████ and Ex. 15.
[41] *See* Kallenberger Decl. Ex. 1 at 7-13.
[42] *Id.* at 10–11.
[43] Kallenberger Decl. Ex. 2 (Kallenberger Rebuttal Report) at 6.
[44] CTC Decl. Ex. 13 (Armstrong Tr. 33:11—41:3) and Ex. 17.

14

REDACTED VERSION

Cir. 1996) ("absent any evidence that consumers of one will be potential consumers of the other, it is most likely that the consumer entering a record store with the intention of purchasing one of [Plaintiff's] products would not even see defendants' products, much less the trademarks appearing thereon."); *see also Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 304 (3d Cir. 2001) (no likelihood of confusion where, among other factors, the decision makers who purchased the products "were not likely to be the target audience of [party's] advertising or marketing").

Finally, Stone Brewing points to three cases where courts held that alcoholic beverages are similar products for trademark purposes. (Mot. 7). But these cases are from 1963, 1991, and 1996, and predate the existence of many craft breweries like Stone Brewing. These cases do not reflect the alcohol or beer market as it exists today, which even Stone Brewing alleges has changed drastically since the early 1990s.[45]

In sum, it is only by ignoring the significant evidence showing a lack of overlap between the craft and economy beer segments that Stone Brewing is able to assert with a straight face that there is no disputed issue of material fact with respect to this factor. When considering the actual evidence in the light most favorable to MillerCoors, the proximity factor does not support Stone Brewing's motion for summary judgment.

     5.    <u>There is Minimal Overlap in the Marketing Channels for Keystone Light and Stone Brewing Products</u>

Not only is there little to no overlap between Keystone and Stone Brewing drinkers, Keystone and Stone Brewing are overwhelmingly not sold in the same outlets. As an initial matter, ███████████████ of Stone Brewing sales are on premise, meaning in a restaurant or bar. By contrast, only ████ of on-premise accounts sell Keystone.[46]

Even at the retail level, Keystone and Stone Brewing are generally not found in the same stores. Stone Brewing argues that Stone Brewing and Keystone share "overwhelmingly identical marketing channels", including retail, distribution, and advertising, claiming that ████████████████████████████████████████████

---

[45] *See* CTC Decl. Ex. 18 at 3.
[46] CTC Decl. Ex. 24.

REDACTED VERSION

1       ███████ (Mot. 14).  However, this statistic is highly misleading as it does not actually

2 show that Keystone and Stone Brewing offerings are found at the same stores.  Indeed, as

3 MillerCoors' expert Mark Hosfield determined, Keystone and Stone Brewing offerings

4 were sold at the same national retail chain in the same zip code within the same month █

5 ██████████████████

6       Further, Stone Brewing products and Keystone are largely offered in different

7 geographic markets, making it even less likely that consumers would encounter both brands

8 in the same store.[48]  Whereas █████ of Stone Brewing's sales occur in California, only

9 █████ of Keystone sales occur there; conversely, Keystone's top sales regions are the

10 ████████████████████████

11       Even to the extent Stone Brewing's products and Keystone may be found in some

12 of the same stores, beer is typically organized on the retail shelf by segment and price tier,

13 meaning Keystone and Stone Brewing beers are likely to be at opposite ends of the shelf,

14 as far away from one another as they possibly can be.[50]

15       Given the data put forward by MillerCoors showing that, in fact, there is little

16 overlap in the outlets in which the parties' products can be found, there is also a genuine

17 dispute as to this factor precluding summary judgment of infringement.

18             6.   <u>Beer Drinkers Exercise Care in Purchasing Beer</u>

19       There is considerable evidence that both Stone Brewing's customers as well as

20 Keystone consumers exercise care in their beer purchases, albeit for different reasons.

21 Stone Brewing aggressively holds itself out as a brand with a reputation for "independence

22 and pugnaciously hoppy beer,"[51] standing "resolute and fearless…for a philosophy and

23 approach that defies the watered-down orthodoxy of 'Big Beer' companies and their fizzy

24 yellow offerings."[52] ████████████████

25

26 [47] *See* Hosfield Decl. Ex. 2 at 26.

   [48] Kallenberger Decl. Ex. 1  at 13.

27 [49] *Id.*

   [50] CTC Decl. Ex. 25.

28 [51] ECF No. 30 at 4.

   [52] ECF No. 1 at 1.

**REDACTED VERSION**

1

2

3

4

5

6

7

8

9

10

11

12 ███████████████████████ Stone Brewing attempts to dismiss this

13 difference as "just a few dollars." (Mot. 14). But a price difference of "just a few dollars"

14 for a six-pack is considerable for price-conscious consumers. In *Star Industries, Inc. v.*

15 *Bacardi & Co., Ltd.,* the Second Circuit agreed that consumers were unlikely to confuse

16 two competing bottles of hard liquor because of a $12 price differential. 412 F.3d 373, 390

17 (2d Cir. 2005). So too here, where beer drinkers focused on value and accustomed to

18 Keystone Light pricing would certainly stop and take notice if suddenly paying more than

19 three times as much.[57]

20      Based on this evidence, a reasonable factfinder could find that the degree of

21 consumer care exercised when purchasing either party's products is high.

22      7.   <u>MillerCoors Had No Intent to Copy or Leverage Stone Brewing's</u>

23 <u>Trademark</u>

24

25

---

[53] *See* CTC Decl. Ex. 26, pp. 4, 26; *see also* Kallenberger Decl. Ex. 2 at 23-24.

26 [54] Kallenberger Decl. Ex. 2 at 24.

[55] *Id.*; *see also* CTC Decl. Ex. 27 █████████████████████████████

27 ██████████████ and Ex. 2 (Selman Tr. 272:5-12) ████████████████████████████

28 [56] CTC Decl. Ex. 28 and Ex. 16.

[57] Kallenberger Decl. Ex. 1 at 15.

1      Stone Brewing's argument regarding intent has already been considered and rejected

2 by this Court. As in its Motion for Preliminary Injunction, Stone Brewing points to two

3 factors in support of its claim that MillerCoors intended to infringe its mark: first, that

4 MillerCoors was aware of Stone Brewing prior to the refresh, and, second, that MillerCoors

5 attempted to register "Stones" with the USPTO. (Mot. 16-17). Now, after 18 months of

6 litigation and extensive fact and expert discovery, Stone's only "evidence" of bad intent

7 boils down to the same two points, both of which are of questionable significance when

8 considered in view of the extensive evidence that MillerCoors is the senior user of the

9 STONE and STONES marks. As this Court has already noted: "Both points are true, and

10 neither is evidence of bad intent." ECF 85, 12-13. As the court explained, "that Miller was

11 'aware' of Stone's STONE®, without more, 'provides no direct evidence of [Miller's]

12 judgment concerning likely confusion." *Id.* (citing *Entrepreneur Media, Inc. v. Smith*, 279

13 F.3d 1135, 1148 (9th Cir. 2002) ("inference from knowledge and similarity, however, does

14 not add much in answering the ultimate question here, likelihood of confusion."")).[58]

15      The remaining "facts" presented by Stone Brewing are either entirely irrelevant or

16 are easily disproved.  First, Stone Brewing argues that ██████████████████████████

17 ████████████████████████████ somehow evidences intent to deceive, but ██████████

18 ████████████████████████████████ Indeed, counsel for MillerCoors

19 responded by unequivocally stating ████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

_____

[58] *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426 (9th Cir. 2017), which
appears to be Plaintiff's only purported support for its intent argument, does not hold
otherwise. There, the court makes clear the required showing is an actual "intent to
deceive customers." *Id.* at 434-435.  In that case, the defendant had manufactured goods
for the plaintiff, and later took the plaintiff's mark "directly from [plaintiff's] materials"
and affixed it to identical competing products that it manufactured for other entities.  *Id.*
at 430. The court found that the defendant's "replication of the mark from [plaintiff's]
materials and unauthorized use on identical furniture contribute to an intentional
appropriation." *Id.* at 435. Such facts are surely not at play here.

3:18-cv-00331-BEN-LL

REDACTED VERSION

1   ██████████████████████████████████████

2      Second, Stone Brewing's claim that MillerCoors specifically considered Stone

3   Brewing during the refresh is patently false.  Not only did MillerCoors employees

4   uniformly testify otherwise in deposition, but Stone Brewing was not mentioned anywhere

5   in the thousands of emails, planning documents, or consumer research documents leading

6   up to the Keystone refresh.[60] ███████████████████████

7   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ████████████████████████████████████████

10  ████████████████████████████████

11     Finally, Plaintiff's assertion that MillerCoors declared "civil war" against Stone

12  Brewing with the Keystone refresh completely misconstrues the evidence. ████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████████████

22     In sum, there is not an ounce of evidence that MillerCoors intended to copy Stone

23  Brewing's mark or desired to benefit from any association with that mark.

24

25  [59] CTC Decl. Ex. 29.

26  [60] CTC Decl. Ex. 2 (Selman Tr. 247:15-248:23–; 352:20–354:16), Ex. 9 (Marek Tr.
    348:8–19; 381:3–383:4; 392:8–10), Ex. 10 (Needleman Tr. 91:8–15; 323:7–21), Ex. 11

27  (Reischauer Tr. 187:7–195:1; 197:9–24), Ex. 30 (Robberson Tr. 276:6–279:5).
    [61] CTC Decl. Ex. 31.

28  [62] CTC Decl. Ex. 32.
    [63] *Id.*

**REDACTED VERSION**

8.  <u>There is No Evidence that Stone Brewing's Beers and Keystone Are Likely to Compete in the Future</u>

Stone Brewing fails to even address the eighth *Sleekcraft* factor—"likelihood of expansion."  That is unsurprising given that the undisputed evidence is that Stone Brewing has no intent or desire to "expand" into the economy segment or to produce a light beer.  As Stone Brewing's damages expert Carrie Distler explained, ███████

███████████████████████████████████████████████████

███████████████████████████████ Indeed, Stone Brewing's cofounder Steve Wagner explained in a declaration executed under oath that Stone Brewing "***hate[s] light beer***."[65] ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███  Thus, Stone Brewing's "complete inability to adduce any concrete evidence of expansion plans tilts this factor in favor of [MillerCoors]."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005).

## III.  MILLERCOORS' COUNTERCLAIMS SHOULD NOT BE DISMISSED

MillerCoors' First, Third, and Fourth counterclaims are rooted in its well-documented and longstanding prior use of STONE and STONES to sell Keystone beer.  Plaintiff's motion for summary adjudication of these counterclaims is not supported by facts or law and should be denied.

### A.  Evidence Clearly Shows That MillerCoors Can Establish Common Law Trademark Rights as the Prior User of STONE and STONES

MillerCoors has provided ample evidence to support its prior use, such that a reasonable jury could (indeed should) find in its favor on the issue. *See* ECF 170 at 12-17.

1.  <u>Evidence Clearly Shows that MillerCoors is the Prior User</u>

There can be no dispute that MillerCoors has met the requirements for showing prior

---

[64] CTC Decl. Ex. 33 at ¶ 105 (Distler Rep.).
[65] ECF No. 31 ¶¶ 83-84 (emphasis added).
[66] CTC Decl. Ex. 23 (emphasis added).

20

REDACTED VERSION

use.  MillerCoors has provided concrete evidence of its use of STONE and STONES as early as 1991, five years before Stone Brewing even existed and seven years before Stone Brewing registered its mark.[67]  Further, MillerCoors has provided evidence that each and every 30-pack of Keystone Light sold since 1995 has said "STONES."[68]   Finally, MillerCoors has produced point of sale items and national TV and radio advertisements, packaging, and packaging artwork evidencing continuous, nationwide use of STONE and STONES for each year from 1991 until 2017.[69]

Despite this overwhelming evidence, Plaintiff dedicates only one sentence of its argument to MillerCoors' prior use, summarily dismissing the use as "sporadic." Pl. Mot. at 23. Plaintiff's failure to engage with this evidence is unsurprising—it provides clear and indisputable proof that MillerCoors used the mark before Stone Brewing's application in 1996 and registration in 1998, and that it has continued to do so since 1991.

Stone Brewing further dedicates only two sentences to its assertion that MillerCoors has not provided evidence of market penetration.  Plaintiff alleges that "MillerCoors has not provided sales data for Keystone beer prior to 2012…making it impossible to prove sufficient sales penetration anywhere in the country." ECF 175 at 22. This statement is patently false. In fact, MillerCoors has provided sales data broken down by state for 1989 through 2018.[70]  Thus, Plaintiff's argument is wholly without merit.

2.   MillerCoors' Use of the Mark Was Legally Sufficient

The remainder of Plaintiff's argument on this issue is dedicated to the bizarre assertion that MillerCoors did not use STONE and STONES "as a trademark." As an initial matter, Plaintiff has not cited to a single case suggesting that this is a requirement to prove priority of use in the Ninth Circuit.  The only case cited by Plaintiff in support of this alleged requirement is an unpublished decision from the Northern District of Illinois, and that is factually inapposite. *See Edsal Mfg. Co. v. Vault Brands, Inc.*, No. 11 C 9287, 2012

---

[67] CTC Decl. Ex. 34.
[68] CTC Decl. Ex. 35.
[69] CTC Decl. Ex. 35.
[70] CTC Decl. Ex. 36.

3:18-cv-00331-BEN-LL

REDACTED VERSION

WL 5558849, at *6 (N.D. Ill. Nov. 15, 2012) (plaintiff did not establish rights in the term "vault" to describe its "Vault Cabinets" because the term referred to a generic feature").

Instead, the Ninth Circuit merely requires that the prior user have used the mark in a "sufficiently public" manner such that consumers would associate the mark with that party's product. *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1200 (9th Cir. 1979); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012); When considering priority of use, courts should consider the "totality of the circumstances." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001). MillerCoors' use of STONE and STONES has undoubtedly been "sufficiently public" such that consumers would associate the terms with Keystone beer. The examples that MillerCoors has produced include point of sale advertising materials to be displayed in stores and promotional items for Keystone to be distributed to consumers, packages of Keystone Light distributed nationally beginning in 1995, and dozens of additional examples of advertising, all of which clearly were intended to be distributed to consumers and all of which associate the terms STONE and/or STONES with Keystone beer.[71]

Even if there were a requirement to show that STONE or STONES had been used "as a mark," that requirement easily would be met here. If a designation has been used in such a manner that the viewer would see it as an indication of origin, that constitutes use as a trademark. *New West Corp.*, 595 F.2d at 1200. Some of the common markers of whether a word is being used as a trademark are "larger-sized print, all capital letters or initial capitals, distinctive or different print style, color, and prominent position on label or in advertising." 1 McCarthy on Trademarks, § 3:4 (5th ed.). Numerous of these markers exist here. As the examples below clearly show, STONES and STONE appeared prominently in larger print than other text, in all capital letters, and in different color print.[72]

---

[71] CTC Decl. Ex. 35.
[72] CTC Decl. Ex. 37; CTC Decl. Ex. 34; CTC Decl. Ex. 38.

REDACTED VERSION

 

In contrast, ███████████████████████████████████ there is no requirement to use a "TM" symbol in order to evidence use as a trademark.

Further, Plaintiff's assertion that MillerCoors cannot prove prior use as a trademark because consumers purportedly did not use or associate STONE or STONES with Keystone is both legally and factually incorrect. Proof of secondary meaning is only required for descriptive marks. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995). Stone Brewing itself has asserted that STONE is not descriptive with respect to beer, and in fact that it is inherently distinctive. (Mot. 5-6). In any event, there is ample evidence that, prior to 2017, consumers routinely used "STONE" and "STONES" to refer to Keystone.[73]

## IV.   LACHES DOES NOT BAR MILLERCOORS' COUNTERCLAIMS

Laches does not apply to MillerCoors' counterclaims, and even if it were applicable, Plaintiff cannot meet either requirement of the defense.

### A.   Laches Does Not Apply Because MillerCoors is Not Seeking to Enforce Rights Against Stone Brewing

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 955 (N.D. Cal. 2015). Thus, the defense of laches only applies when a party is seeking to enforce its rights against another party. The element of enforcement is absent from each of MillerCoors' Counterclaims. In its First Counterclaim, MillerCoors merely asks this Court to recognize that it has a right to use STONE and

---

[73] CTC Decl. Ex. 39.

STONES to advertise Keystone beer—it does not seek to enforce any right against Stone Brewing.[74] MillerCoors' Third Counterclaim similarly does not take aim at Stone Brewing, but instead asks this Court to find that its use does not amount to infringement because it has a right to use STONE and STONES to advertise Keystone.[75] MillerCoors' Fourth Counterclaim only implicates the rights of Stone Brewing if the court determines that there is a likelihood of confusion between the two products, which MillerCoors has consistently maintained is not the case.[76] Because MillerCoors has not brought suit against Stone Brewing nor is it otherwise seeking to enforce any trademark rights against Stone Brewing, laches does not apply to MillerCoors' Counterclaims.

### B.   Plaintiff Has Not Met Either Requirement for a Showing of Laches

"To prevail on a laches defense, a defendant must show two elements: (1) the claimant unreasonably delayed in filing suit based on when the claimant knew or should have known of the allegedly infringing conduct; and (2) as a result of the delay, the defendant suffered prejudice." *AirWair Int'l*, 84 F. Supp. 3d at 955. Plaintiff has not offered evidence to support either element.

#### 1.   Plaintiff Has Failed to Show Unreasonable Delay

The Ninth Circuit has instructed that the limitations period for laches "runs from the time the plaintiff knew or should have known about his § 43(a) cause of action." *Jarrow Formulas*, 304 F.3d at 838. Plaintiff focuses on MillerCoors' alleged knowledge of Stone Brewing itself instead of on any alleged knowledge of a potential cause of action. Whether MillerCoors was aware of Stone Brewing's existence is immaterial. Stone Brewing must show that MillerCoors knew or should have known that it had a cause of action against Stone Brewing. Stone Brewing offers no such evidence.  This alone is reason to reject its laches claim.  *See AirWair Int'l*, 84 F. Supp. 3d at 956 n.6 ("The Court also notes that [the party's argument] for laches fails for the additional reason that [it] does not allege that

---

[74] ECF No. 19.
[75] *Id.*
[76] *Id.*

REDACTED VERSION

AirWair 'knew or should have known' of the allegedly infringing conduct.").

Regardless, the evidence clearly suggests that MillerCoors had no reason to believe that a dispute existed until Stone Brewing filed this lawsuit. Indeed, ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ ████████████████ makes clear that MillerCoors was not aware nor should it have been aware of a potential cause of action against Stone Brewing. Indeed, MillerCoors continued to use STONE and STONES to advertise Keystone beer over the next seven years, without any objection from Stone Brewing.[78] Thus, the first element of a defense of laches has not been met.

### 2.   Plaintiff Has Not Alleged Prejudice

Stone Brewing's laches argument also fails because it has not alleged that it is prejudiced by MillerCoors' supposed delay.  To prove such prejudice, Stone Brewing must show that it "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *AirWair Int'l*, 84 F. Supp. 3d at 955. Stone Brewing offers no examples of actions taken or consequences suffered, stating only that "Stone would suffer incredible harm," and that "the prejudice that would befall Stone…would be devastating." (Mot. 25). Such bare recitations of legal conclusions cannot support a finding of prejudice. *Derek & Constance Lee Corp. v. Kim Seng Co.*, 391 F. App'x 627, 628 (9th Cir. 2010) (rejecting allegation of prejudice that was not supported by evidence).Thus, Plaintiff's laches claim fails for a number of reasons, each of which alone is fatal to the claim.

## V.   CONCLUSION

For all the reasons set forth above, MillerCoors respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment.

---

[77] CTC Decl. Ex. 29.
[78] *See, e.g.,* CTC Decl. Ex. 40, Ex. 41, Ex. 42, Ex. 43.

3:18-cv-00331-BEN-LL

**REDACTED VERSION**

1

2   Dated:  August 30, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

MILLERCOORS LLC


By: /s/*Christopher T. Casamassima*
Christopher T. Casamassima (SBN #211280)
WILMER CUTLER PICKERING HALE & DORR
LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
chris.casamassima@wilmerhale.com

Vinita Ferrera (*pro hac vice*; MA Bar
#631190)
Allyson Slater (SBN #287291)
WILMER CUTLER PICKERING HALE & DORR
LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6556
vinita.ferrera@wilmerhale.com

Matthew J. Worthington (*pro hac vice*; CO
Bar #47987)
WILMER CUTLER PICKERING HALE & DORR
LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 598-3443
matthew.worthington@wilmerhale.com

Brittany Blueitt Amadi (*pro hac vice*; DC Bar
# 1015271)
WILMER CUTLER PICKERING HALE & DORR
LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
brittany.amadi@wilmerhale.com

*Attorneys for Defendant MillerCoors LLC*

26