1 | J. Noah Hagey, Esq. (SBN: 262331)
  | hagey@braunhagey.com
2 | Jeffrey M. Theodore, Esq. (324823)
  | theodore@braunhagey.com
3 | J. Tobias Rowe, Esq. (SBN: 305596)
  | rowe@braunhagey.com
4 | Bram Schumer, Esq. (SBN: 317736)
  | schumer@braunhagey.com
5 | BRAUNHAGEY & BORDEN LLP
  | 351 California Street, 10th Floor
6 | San Francisco, CA 94104
  | Telephone: (415) 599-0210
7 | Facsimile: (415) 276-1808

8 | ATTORNEYS FOR PLAINTIFF
  | STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>    v.<br><br>MILLERCOORS LLC,<br><br>    Defendant / Counterclaim Plaintiff. | Case No: 18-cv-0331-BEN-LL<br><br>**PLAINTIFF STONE BREWING CO., LLC'S MOTION TO COMPEL AND FOR SANCTIONS FOR DISCOVERY VIOLATIONS**<br><br>**Judge:**   Hon. Linda Lopez<br><br>Complaint filed: February 12, 2018 |

1

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................8

I.     MILLERCOORS HAS WITHHELD CRITICAL EVIDENCE IN
VIOLATION OF ITS DISCOVERY AGREEMENTS ................................8

II.    AT A MINIMUM, THE COURT SHOULD COMPEL FULL
PRODUCTION AND AN INSPECTION OF THE COORS
ARCHIVE FOLLOWED BY AN ADDITIONAL DEPOSITION
OF MS. HARRIS................................................................................10

III.   SANCTIONS ARE APPROPRIATE GIVEN MILLERCOORS'S
CONDUCT .......................................................................................12

CONCLUSION.................................................................................................15

CERTIFICATE OF SERVICE ..........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Fresno Cty., Human Servs. Sys.*,
   No. 1:05-CV-1325-LJO, 2007 WL 1865657 (E.D. Cal. June 28, 2007) .......... 13, 14

*In re Ng*,
   No. 06-30904 TEC, 2009 WL 2905849 (Bankr. N.D. Cal. Sept. 3, 2009) ............. 13

*MicroStrategy Inc. v. Motorola, Inc.*,
   245 F.3d 335 (4th Cir. 2001) ................................................................................ 8

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile,*
   *Prods.*, 134 F.3d 749 (6th Cir. 1998) .................................................................... 9

*United States v. Lee*,
   No. 14CV347-LAB-BGS, 2016 WL 11281164 (S.D. Cal. Dec. 6, 2016) .. 10, 13, 15

## OTHER AUTHORITIES

1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.) .......................... 8

Case No. 18-cv-0331-BEN-LL
PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

# INTRODUCTION

Plaintiff Stone Brewing Co., LLC ("Stone") brings this motion to remedy Defendant MillerCoors's ("MillerCoors's") selective production of historical Keystone materials that go to the heart of its defense in this case.  Despite agreeing to Stone's discovery requests that it produce examples of all different versions of its historical marketing materials, MillerCoors selectively produced those historical materials that use the terms "Stone" and "Stones."  The Court should order a complete production and sanction MillerCoors for this serious discovery misconduct.

MillerCoors's gambit appears designed to prevent Stone from establishing that MillerCoors did not use "Stone" or "Stones" consistently and broadly as a designation of origin across its various Keystone marketing materials, something that would undermine its priority of use defense.  There is no legitimate dispute that Stone is entitled to take discovery on the full breadth of MillerCoors's historical Keystone marketing so that it can understand the role and significance of those pieces of marketing that do refer to "Stone" and "Stones."

Apparently, MillerCoors does not dispute Stone's entitlement to this material, because it agreed to produce "representative samples of *each and every* form or type" of historical Keystone marketing, including "documents sufficient to show *every manner of presentation* of Your Keystone Products in *each type* of advertisement or promotional material from 1989 to Present" as well as "representative samples of *each type* of design for the can and outer packaging of [] Keystone Products from 1989 to Present."

But MillerCoors did not honor its agreement to produce a full representation of its historical marketing.  MillerCoors's archivist, 30(b)(6) witness, and putative expert on historical Keystone materials admitted at her deposition that MillerCoors supplied "only the items that have the word 'Stone' or 'Stones.'"

Since then, MillerCoors has attempted to evade accountability for this brazen discovery misconduct.  MillerCoors ignored Stone's meet-and-confer emails on this

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

1   score for more than three weeks, before agreeing to supplement its production just

2   before Stone's deadline to raise the issue with the Court.  MillerCoors did not dispute

3   Stone's understanding – memorialized in an email to counsel – that it would

4   "produce examples of each piece of marketing since 1989" and "each can and

5   packaging design of Keystone beer since 1989."

6       Yet, MillerCoors did not comply with that agreement either, instead using

7   Stone's demand as an excuse to make a late production of higher-resolution images

8   of marketing materials that it had already produced and apparently plans to use at

9   trial.  MillerCoors's archivist confirmed at her subsequent expert deposition that the

10  bulk of non-Stone/Stones historical Keystone materials were still outstanding.  At the

11  same time, MillerCoors reneged on its promise to allow Stone to inspect the archive

12  that forms the basis for its expert's opinions regarding historical Keystone materials.

13  MillerCoors simply ignored Stone's emails and follow-up emails on this issue until

14  Stone filed its motion and the Court ordered the Parties to further meet-and-confer.

15      This is extremely serious discovery misconduct that bears every indication of

16  intentional bad faith.  MillerCoors has failed to produce core discovery that has the

17  potential to undermine its central defense in this case after repeatedly agreeing to do

18  so.  Rather than rectify the misconduct, it has strung Stone along while acting to

19  delay or avoid Stone's obtaining recourse with the Court.  MillerCoors cannot be

20  permitted to advance a priority use defense while making a selective production of its

21  historical documents – in direct contravention of its representations in discovery and

22  discovery responses – that ensures a completely one-sided presentation of evidence

23  on this topic.  At a minimum, the Court should order a complete production of

24  historical Keystone materials, an inspection of the Coors archive, and a redeposition

25  of the knowledgeable witness.  In addition, the Court should sanction MillerCoors

26  for its gamesmanship by excluding all evidence of historical Keystone materials.

27

28

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

# BACKGROUND

Throughout this litigation, MillerCoors has made its supposed historical use of "Stone" and "Stones" for Keystone the centerpiece of its defense.  Accordingly, on September 28, 2018, Stone served Requests for Production 41 and 42.  RFP 41 sought:

> Representative samples of *each and every form or type* of collateral marketing material including but not limited to, print, radio, television, brochures, catalogues, flyers, press releases, website pages, website banners, social media posts, in-store displays, point-of-sale promotional items, that has displayed or that will display the Keystone Products, including *documents sufficient to show every manner of presentation of Your Keystone Products in each type of advertisement or promotional material from 1989 to Present*.

RFP 42 sought:

> Representative samples of *each type of design* for the can and outer packaging of Your Keystone Products from 1989 to Present.

Ex. 1 at 8 (Stone RFPs Set 2) (emphasis added).

In other words, Stone sought examples of each version or form of Keystone historical marketing materials that MillerCoors has used.  Stone did not limit its request to marketing materials bearing the terms Stone, Stones, 'Stone, or 'Stones.  In response to each request, MillerCoors agreed to produce "responsive, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents."  Ex. 2 at 20-21 (MC Response to RFPs Set 2).

Unfortunately, MillerCoors did not produce samples of each historical Keystone marketing material in accordance with Stone's requests or MillerCoors's responses.  Instead, as became clear at the deposition of Heidi Harris, MillerCoors made a selective production of only those historical Keystone materials that referred to Stone, Stones, 'Stone, or 'Stones.  Ms. Harris, MillerCoors's archivist and

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

1   30(b)(6) witness on historical Keystone materials, testified that MillerCoors "focused

2   our search [for historical Keystone materials] on anything that had the word 'Stone'

3   or 'Stones'" and that she did not "supply all of the historical packaging, packaging

4   artwork, advertisements, or videos for Keystone that are in the Coors archives," but

5   "only the items that have the word 'Stone' or 'Stones.'"  Ex. 3, Harris 30b6 Tr. at

6   12:16-20, 13:18-14:5.  Ms. Harris subsequently confirmed that "only packaging with

7   the word 'Stone' or 'Stones' was selected for production."  *Id.,* Harris 30b6 Tr. at

8   81:9-82:1.

9           Apparently, this selective production was a strategic decision by counsel.

10  When counsel for Stone requested a full production of historical materials, counsel

11  for MillerCoors responded on the record that "your document requests are what they

12  are.  We have produced documents fully responsive to your document requests.  It's

13  too late to make additional requests now."  *Id*. at 14:13-16.  Of course, no additional

14  request was required: RFP 41 sought "documents sufficient to show *every manner of*

15  *presentation* of Your Keystone Products in each type of advertisement or

16  promotional material from 1989 to Present," while RFP 42 sought "*each type of*

17  *design* for the can and outer packaging."  *See* Ex. 1 at 8.

18          Stone received the final transcript of the Harris deposition on June 3.  The next

19  day, Stone wrote to MillerCoors to ask for a complete production of historical

20  Keystone materials in accordance with the plain language of RFPs 41 and 42, rather

21  than the selective production of materials bearing the words Stone, Stones, 'Stone, or

22  'Stones. *See* Ex. 4 at 3.  After counsel for MillerCoors did not respond for more than

23  a week, on June 13 counsel for Stone wrote to follow up.  *Id*. at 2-3.  Again, counsel

24  for MillerCoors did not respond, leading counsel for Stone to write on June 25 that

25  "it has now been three weeks with no response.  Please confirm that you will produce

26  the full set of materials."  *Id*. at 2.

27          Finally, on June 26, MillerCoors responded by agreeing to produce "additional

28  representative marketing, advertising, and promotional" materials.  *Id*. at 1-2.  Stone

1  wrote back to confirm that MillerCoors would "produce examples of each piece of

2  marketing since 1989" and "each can and packaging design of Keystone beer since

3  1989." *Id*. at 1.  MillerCoors did not respond or otherwise dispute Stone's

4  understanding that the forthcoming production would include samples of the entire

5  Keystone collection.  Relying on MillerCoors's representations and seeking to

6  minimize the number of discovery disputes it needed to bring to the attention of the

7  Court, Stone did not raise this issue with Magistrate Judge Lopez during the Parties'

8  June 28th discovery call.

9       However, MillerCoors still did not produce the complete set of historical

10  materials.  On July 3, MillerCoors produced eighty documents.  But more than half

11  of those consisted of higher resolution images of historical Stone/Stones Keystone

12  materials that MillerCoors had previously produced and that it presumably intends to

13  use at trial.  It appeared from reviewing the production that MillerCoors still had not

14  made a full production of its historical materials, instead withholding those that do

15  not refer to Stone or Stones.  This was subsequently confirmed at Ms. Harris's expert

16  deposition and in conversations between counsel.  *See* Ex. 5, Harris Expert Tr. at

17  70:5-21.

18       On July 5, MillerCoors disclosed Ms. Harris as a putative expert archivist to

19  provide supposed expert testimony regarding those historical Keystone materials it

20  had chosen to produce based on her knowledge of the archive and the manner in

21  which those materials were maintained.

22       In light of MillerCoors's continuing failure to make a full production and its

23  designation of Ms. Harris, Stone requested to inspect the historical materials on site

24  at the Coors archive, as counsel for MillerCoors had previously offered.  On July 17,

25  counsel for Stone wrote to counsel for MillerCoors: "In advance of Ms. Harris's

26  expert deposition, we would like to conduct an inspection of the Coors archive, as

27  offered at Ms. Harris's 30b6 capacity deposition."  Ex. 6 at 1; *see also* Ex. 3, Harris

28  30(b)(6) Tr. at 54:17-20 ("Jeff, [] all of these items are available in the archives, and

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

1  we've offered to make them available for inspection.").  After MillerCoors did not

2  respond for five days, on July 22, Stone followed up regarding "an inspection of the

3  archive" and asked MillerCoors to "please apprise re status of that" in advance of the

4  Harris expert deposition.  Ex. 7 at 7.

5         MillerCoors finally wrote back three days before Ms. Harris's expert

6  deposition to inform Stone that it would not permit a full inspection of the archive or

7  of the full range of historical Keystone materials.  MillerCoors instead offered an

8  inspection of only those articles that it had already selected to produce to be

9  conducted at the Denver offices of WilmerHale.  Ex. 7 at 6.  MillerCoors's proposal

10  would not permit Stone to review the Keystone historical materials that MillerCoors

11  had chosen to withhold and would not permit Stone to assess the archive itself, the

12  relationship between the materials, and any contextual evidence bearing on dates or

13  use in commerce.  Accordingly, Stone responded that it was entitled to "inspect all

14  historical Stone materials, . . . including all material described in Stone RFPs 41 and

15  42. This should not be limited to the articles that MillerCoors has produced in this

16  action, which was MillerCoors's selection of historical materials."  Ex. 7 at 5-6.

17  Unfortunately, MillerCoors continued to refuse to produce images of the full range of

18  historical marketing materials, claiming that it had already satisfied its obligations

19  under RFPs 41 and 42 by producing its cherrypicked selection of Keystone materials.

20  Ex. 7 at 2-5.

21         At her expert deposition, Ms. Harris confirmed that there are at minimum one

22  hundred outstanding Keystone materials in the Coors archive that do not use "Stone"

23  or "Stones" and that still have not been produced.  After counsel for MillerCoors

24  initially attempted to instruct her not to answer, Ms. Harris confirmed that she had

25  not collected "all of the Keystone material that [she] came across in the archives that

26  did not use the word 'Stone' or 'Stones'" and that she "couldn't give [] an exact

27  number" but that it was on the order of "a few – a hundred or so."  Ex. 5, Harris

28  Expert Tr. at 67:3-70-21; *see also id*. at 104:21-105:15 ("Okay. So they didn't -- the

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

1  neon signs don't refer to 'stone' or 'stones,' which is why you didn't provide them to

2  counsel. Is that what you're saying? A. Yes.").

3        Incredibly, Ms. Harris's testimony established that MillerCoors chose not to

4  produce even those few non-Stone/Stones historical Keystone materials that Ms.

5  Harris did provide to MillerCoors's counsel.  Ms. Harris testified that she provided

6  "Keystone items that did not have the word 'Stone' or 'Stones' on them" to counsel,

7  including a "NASCAR pit stop point-of-sale item," in the middle of June and then

8  again in the few days before her deposition, but "without looking at the material and

9  doing an exact count, I can't give you an exact number." *Id*. at 69:20-70:9, 92:10-

10  95:15, 99:17-100:16.  Yet, MillerCoors did not produce those items prior to Ms.

11  Harris's July 25 deposition.  After Ms. Harris's deposition, MillerCoors produced

12  images of two withheld items that Ms. Harris referred to by name at her deposition –

13  but continues to withhold the rest.

14        Stone promptly followed up with MillerCoors asking it to "reconsider [its]

15  position and allow an on-site inspection of the archive and all historical Keystone

16  materials." Ex. 7 at 1.  After MillerCoors did not respond, counsel for Stone wrote

17  again on August 15 to follow up. *Id.* at 1.  MillerCoors still made no response,

18  forcing Stone to seek relief from the Court.  Dkt. No. 179.

19        Pursuant to the Court's August 26, 2019 Order, Stone met and conferred with

20  MillerCoors, including three telephonic conversations.  MillerCoors agreed to

21  produce "additional materials that it is reasonably able to identify . . . (whether or not

22  such materials say 'STONE' or 'STONES')" on the condition that Stone would not

23  seek a further deposition of Ms. Harris, an inspection of the archive, or any further

24  remedies.  Stone responded that it needs an inspection of the archive, which is the

25  basis for Ms. Harris's expert testimony, and the ability to ask Ms. Harris about the

26  historical materials, whose dates are unlikely to be clear on their face.

27

28

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

# ARGUMENT

## I.   MILLERCOORS HAS WITHHELD CRITICAL EVIDENCE IN VIOLATION OF ITS DISCOVERY AGREEMENTS

MillerCoors has made its historical Keystone advertising and marketing materials the centerpiece of its defense in this case but has selectively produced only those materials that are favorable to its litigation position.  That strategy flies in the face of Stone's discovery requests and MillerCoors's own representations in its discovery responses and in meet-and-confer correspondence between the Parties.

As reflected in MillerCoors's Answer, Counterclaims, Preliminary Injunction Opposition, and now its Summary Judgment Motion, the primary defense in this case is MillerCoors's claim to be the senior user of the Stone® mark.  In support of that defense, MillerCoors produced every scrap of Keystone historical material that it could find in which it used the terms Stone, Stones, 'Stone, or 'Stones – often producing the exact same image multiple times in order to inflate the apparent volume.  *See* Ex. 5, Harris Expert Tr. at 116:8-117:5, 123:15-124:17.  But as MillerCoors's archivist, 30(b)(6) witness and putative expert on historical usage, and key summary judgment declarant admitted, MillerCoors has withheld the remainder of "the historical packaging, packaging artwork, advertisements, or videos for Keystone" while producing "only the items that have the word 'Stone' or 'Stones.'" Ex. 3, Harris 30b6 Tr. at 12:16-20, 13:18-14:5; *see also id*. at 81:9-82:1 ("only packaging with the word 'Stone' or 'Stones' was selected for production.").

The missing material is critically relevant to MillerCoors's claim to be the senior user of the Stone® mark.  Prior use will suffice only if it serves as a designation of origin, and a "designation is not likely to be perceived as a mark of origin unless it is repetitively used, as opposed to only infrequent or sporadic appearance."  1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.). "A record of limited, sporadic, and inconsistent use of the phrase" at issue is inadequate to establish priority.  *MicroStrategy Inc. v. Motorola, Inc*., 245 F.3d 335,

1  343 (4th Cir. 2001).  Thus, it becomes critical to assess whether a litigant "has used"

2  the trademark "with any consistency" across its "various goods" and marketing

3  materials.  *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods*., 134 F.3d

4  749, 755 (6th Cir. 1998).

5          For this reason, Stone served requests for examples of all Keystone historical

6  marketing materials.  Stone sought "representative samples of *each and every* form

7  or type" or marketing materials, "including documents sufficient to show *every*

8  *manner of presentation* of Your Keystone Products in each type of advertisement or

9  promotional material from 1989 to Present."  Ex. 1, RFP 41.  And Stone sought

10  "Representative samples of *each type of design* for the can and outer packaging of

11  Your Keystone Products from 1989 to Present."  *Id.,* RFP 42.  These requests clearly

12  sought one example of each different version of Keystone marketing material,

13  advertising, and packaging released by MillerCoors so that Stone could assess the

14  consistency and breadth of MillerCoors's purported usage of Stone and Stones.

15          Instead, MillerCoors's self-serving, cherry-picked selection of historical

16  Keystone materials is designed to make it *look* as if "Stone(s)" was a common, even

17  ubiquitous aspect of Keystone's historical advertising rather than just a drop in the

18  bucket.  By choosing to produce only those materials that bear the words "Stone" or

19  "Stones," MillerCoors has made it impossible to determine how often it used Stone

20  or Stones in the context of Keystone relative to non-Stone advertising and marketing

21  materials.

22          This failure to produce violates not only the plain language of Stone's

23  discovery requests but MillerCoors's own discovery agreements.  MillerCoors

24  agreed to produce all responsive materials in its response to Stone's RFPs 41 and 42.

25  Ex. 2 at 20-21. But it did not do so.  Once Ms. Harris acknowledged the incomplete

26  production at her 30b6 deposition and Stone threatened to address the issue with the

27  Court, MillerCoors agreed to supplement its production – and did not contradict

28  Stone's understanding that it would "produce examples of each piece of marketing

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

1     since 1989" and "each can and packaging design of Keystone beer since 1989." *See*

2     Ex. 4.  But, as confirmed at Ms. Harris's expert deposition, MillerCoors still has not

3     made a complete production of historical Keystone material.  Ex. 5, Harris Expert Tr.

4     at 70:5-21.  And MillerCoors backtracked from its promise to allow Stone to inspect

5     the Coors archive – telling Stone three days before Ms. Harris's deposition that it

6     would permit only a partial inspection of those items that it had already produced in a

7     WilmerHale conference room, rather than in their as-preserved context at the archive.

8           The end result is that MillerCoors has created a highly selective and

9     tendentious picture of its historical Keystone advertising and marketing – an issue

10    that goes to the heart of its defense in this case.  This is seriously prejudicial to Stone.

11 **II.      AT A MINIMUM, THE COURT SHOULD COMPEL FULL**
**        PRODUCTION AND AN INSPECTION OF THE COORS ARCHIVE**
12 **        FOLLOWED BY AN ADDITIONAL DEPOSITION OF MS. HARRIS**

13           The Court should order a full production of historical Keystone materials

14    encompassing the full universe of marketing, packaging, and advertising, not just

15    those that refer to Stone or Stones.  "The discovery process is meant to uncover the

16    truth – not the truth as the [] Defendants prefer it to be told.  Plaintiff is entitled to *all*

17    relevant documents, not those which the [] Defendants decided to disclose." *United*

18    *States v. Lee*, No. 14CV347-LAB-BGS, 2016 WL 11281164, at *4 (S.D. Cal. Dec. 6,

19    2016), *report and recommendation adopted sub nom. Sec. & Exch. Comm'n v. Lee*,

20    No. 14CV347-LAB (BGS), 2017 WL 127977 (S.D. Cal. Jan. 12, 2017) (emphasis in

21    original).

22           Not only are the full set of materials highly relevant as described above, but

23    MillerCoors has made use of even the non-produced materials to develop the

24    opinions of Ms. Harris, on whom its prior use defense primarily relies.  Ms. Harris

25    testified that her "opinions . . . are formed based on [her] review of all of th[e]

26    Keystone materials that [she] looked at."  Ex. 5, Harris Expert Tr. at 74:16-19; *see*

27    *also id*. at 77:17-78:1 ("I have formed my opinions based on . . . other materials that

28    are related to Keystone, with or without "stone" or "stones," throughout its entire

1  history 1989 to present."). Ms. Harris added that she "based [her] opinion on
2  everything that is within the Keystone family of brands" and "and everything else
3  that we have that is in the archive that is related to the Keystone family of brands."
4  *Id*. at 101:9-17. It is fundamentally unfair to permit Ms. Harris to testify on that
5  basis while depriving Stone of access to the full scope of material she has used to
6  form her opinions.

7        Moreover, the Court should order an on-site inspection of the historical items
8  in their locations in the Coors archive as MillerCoors appeared to have agreed, until
9  changing its tune three days before the Harris expert deposition. MillerCoors had
10 agreed to an on-site inspection "*in* the archives." Ex. 3, Harris 30(b)(6) Tr. at 54:17-
11 20 (emphasis added); *see also* Ex. 8 at 14 (agreeing to an "inspection in *Golden,*
12 *Colorado*" – the location of the archives (emphasis added)). But when Stone sought
13 to schedule that inspection in advance of the Harris expert deposition, MillerCoors
14 unilaterally changed its tune and offered a partial inspection of only the already-
15 produced material in a conference room at WilmerHale's Denver office – something
16 that is essentially useless.

17       MillerCoors's designation of Ms. Harris as an expert witness made an
18 inspection even more critical. As Ms. Harris acknowledged, the physical
19 arrangement of the materials in the archive was important to her opinions about the
20 dates of the historical items at issue. Ms. Harris answered "correct," when asked "So
21 you're drawing conclusions from the physical arrangement of the material in the
22 archive; is that right?" Ex. 5, Harris Expert Tr. at 132:21-24; *see also id*. at 153:8-18
23 ("[H]ow you arrange a collection is very important," which is why "you try to keep
24 that collection true to its original arrangement. So, yes, it is important on how a
25 collection is arranged."). She explained that "it's hard to not have any sort of
26 opinion on what I have learned based on my working in the archive and set it to the
27 side. It benefits me as an archivist and as the Coors archivist for the brand
28 Keystone." *Id*. at 77:12-16.

1    Moreover, Stone is entitled to depose Ms. Harris *after* all historical materials

2 have been produced. As reflected in MillerCoors's own use of Ms. Harris, key facts

3 about historical Keystone materials are not obvious on their face, and Stone must be

4 able to ask questions about the dates, content, and history of this new material.

5 MillerCoors has had that opportunity with respect to the historical documents on

6 which it seeks to rely.  Had MillerCoors made a full production by the close of

7 discovery as it promised, Stone would have been able to obtain deposition testimony

8 on those documents. Stone should not be prejudiced by being forced to make sense

9 of Keystone's historical documents without being able to ask MillerCoors's

10 historical archivist about them solely as a result of MillerCoors's improper failure to

11 produce.

12    Basic fairness requires that Stone have access to the archive itself and the

13 physical arrangement that Ms. Harris relied on and made use of to form her opinions

14 along with a deposition of Ms. Harris after full production.  Stone should have access

15 to the same information as MillerCoors's putative expert witness and the opportunity

16 to depose and examine her on the basis of that information.  The Court should order

17 full production of historical materials, an inspection of the archive itself, followed by

18 a deposition of Ms. Harris at which Stone can ask her questions based on having seen

19 the materials as she saw them, *in situ*.

20 **III.   SANCTIONS ARE APPROPRIATE GIVEN MILLERCOORS'S
        CONDUCT**

21    Alternatively, the Court should sanction MillerCoors by barring it from putting

22 into evidence its supposed historical use of Stone or Stones in Keystone advertising

23 and marketing materials.  Stone's request for representative samples of *each and*

24 *every* iteration of historical Keystone materials has been outstanding for almost a

25 year and MillerCoors's failure to produce them is laced with evidence of bad faith.

26 At this point, with summary judgment motions on file and discovery supposed to

27

28

1 have been completed, it is appropriate to bar MillerCoors from presenting evidence

2 on the subject matter of its discovery malfeasance.

3        Preclusion sanctions are appropriate where a party has willfully withheld

4 production of relevant and responsive materials.  *See In re Ng*, No. 06-30904 TEC,

5 2009 WL 2905849, at *3 (Bankr. N.D. Cal. Sept. 3, 2009), *aff'd sub nom. Hewlett v.*

6 *Elder*, No. C 09-4670 CRB, 2010 WL 702299 (N.D. Cal. Feb. 25, 2010), *aff'd sub*

7 *nom. In re Ng*, 419 F. App'x 720 (9th Cir. 2011) (precluding claimant from

8 introducing evidence due to her failure to produce responsive documents).

9        MillerCoors's cherry-picked production of only the responsive documents that

10 are helpful to its case is an equally serious discovery violation, enough to warrant

11 even terminating sanctions.  *See Lee*, 2016 WL 11281164, at *4, (imposing

12 terminating sanctions due to, *inter alia,* defendant's "cherry-picking the documents

13 available to Plaintiff and the Court").

14        Because preclusion sanctions are serious, an important (though not essential)

15 question is whether the party's noncompliance was due to willfulness, fault, or bad

16 faith.  *See Anderson v. Fresno Cty., Human Servs. Sys.*, No. 1:05-CV-1325-LJO,

17 2007 WL 1865657, at *6 (E.D. Cal. June 28, 2007).  "Disobedient conduct not

18 shown to be outside the control of the litigant is all that is required to demonstrate

19 willfulness, bad faith, or fault."  *Id.*

20        Here, MillerCoors's behavior goes well beyond the "disobedient conduct" that

21 has been found to establish bad faith.  First, MillerCoors agreed to produce in

22 response to Stone's RFPs 41 and 42 and then intentionally failed to do so.  The

23 testimony of its 30b6 witness and the on-the-record comments of its counsel

24 establish that MillerCoors made a tactical decision to produce only those historical

25 materials favorable to its priority defense with full knowledge of Stone's discovery

26 responses.  *See* Ex. 3 at 13:18-14:16.

27        MillerCoors's effort to run the clock out through strategic delay confirms its

28 bad faith.  When counsel for Stone raised the issue following Ms. Harris's first

1  deposition, MillerCoors ignored follow-up emails and ultimately waited more than

2  three weeks to respond.  At that point, it sought to evade a motion on this issue by

3  promising to rectify its production.  MillerCoors did not respond to Stone's

4  clarificatory response, thereby leaving Stone with the impression that it would

5  "produce examples of each piece of marketing since 1989" and "each can and

6  packaging design of Keystone beer since 1989."  Ex. 4 at 1.

7       That impression was false.  Rather than make a complete production of

8  historical materials, MillerCoors used its faux agreement as an excuse to make a

9  post-fact discovery, July 3 production that consisted primarily of higher resolution

10  versions of its already-produced Stone/Stones advertisements, presumably so that it

11  could use the higher-resolution images at trial.  MillerCoors then reneged on its offer

12  to allow Stone to inspect the archive itself three days in advance of Ms. Harris's

13  expert deposition.  And in the wake of Ms. Harris's deposition, it has simply refused

14  to respond to Stone's emails and follow-up.

15       Finally, MillerCoors's bad faith is confirmed by its failure to engage with the

16  actual language of the RFPs at issue.  In the more than a dozen emails that the Parties

17  have exchanged on this issue, MillerCoors has repeatedly insisted that the

18  "representative samples" language allows it to pick and choose what historical

19  materials to produce.  *See* Exs. 4, 7.  Of course, producing only materials referring to

20  "Stone" or "Stones" is not a "representative sample."  And not once has MillerCoors

21  acknowledged the language requiring "representative samples of ***each and every***

22  ***form*** or type" of historical material or the express proviso that MillerCoors's

23  production "include[e] documents sufficient to show ***every manner of presentation***

24  of Your Keystone Products in each type of advertisement or promotional material

25  from 1989 to Present."  *See* Exs. 4, 7.  Even after Stone pointed to this language

26  repeatedly, MillerCoors did not address it in its response.  *Id*.  MillerCoors's refusal

27  even to engage with the actual language of the discovery requests shows that it does

28  not have a good faith basis for its failure to produce.

1    In sum, MillerCoors has shown willfulness and bad faith at every turn.  It

2 made a conscious decision to make a selective production in violation of its express

3 discovery responses and agreements, has ignored multiple meet-and-confer emails in

4 an apparent effort to run out the clock, has misled Stone about what it would

5 produce, and has been unable to offer any explanation for the plain language of the

6 document requests at issue.  This is a very serious violation that justifies sanctions,

7 which can range from terminating sanctions, to an adverse inference, to preclusion of

8 evidence.  *See* Rule 37.

9    At a minimum, MillerCoors should be required to pay for the cost of this

10 motion, the Parties' meet-and-confer efforts, and the re-deposition of Ms. Harris.

11 *See Anderson*, 2016 WL 11281164 at *8-9 (declining to issue drastic terminating

12 sanctions, but issuing monetary sanctions, and compelling plaintiff to produce

13 responsive discovery instead).  Even if MillerCoors's tactical maneuvering does not

14 result in an evidentiary bar, Stone should not bear the financial cost.

15    This is now the fifth motion that Stone has had to file as a result of

16 MillerCoors's refusal to produce basic discovery in this case.  The Court's orders,

17 substantially granting Stone the relief it has sought, demonstrate the impropriety of

18 MillerCoors's refusals to produce.  And Stone has been forced to expend additional

19 time and effort on extensive meet-and-confers negotiating with MillerCoors on a host

20 of issues that should never have been contested but that ultimately did not reach the

21 motion to compel stage.

22                    **CONCLUSION**

23    MillerCoors should be ordered to produce all historical Keystone materials,

24 and Stone should be granted a full inspection of the Coors archive along with a

25 renewed deposition of Ms. Harris.  MillerCoors should also be sanctioned by being

26 precluded from presenting evidence and argument on its purported historical use of

27 "Stone" and "Stones" at trial and ordered to pay Stone's costs and fees as a result of

28 the conduct at issue.

Dated:  September 5, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  s/ Jeffrey M. Theodore
　　　Jeffrey M. Theodore

*Attorneys for Stone Brewing Co., LLC*

16                                                   Case No. 18-cv-0331-BEN-LL

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on this September 5, 2019, I electronically transmitted the

3  foregoing to the Clerk's office using the CM/ECF system, which will send a notice

4  of filing to all counsel of record.

5

Dated: September 5, 2019                          By:   s/ Jeffrey M. Theodore
6                                                        Jeffrey M. Theodore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS