Christopher T. Casamassima (SBN #211280)
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
chris.casamassima@wilmerhale.com

Vinita Ferrera (pro hac vice; MA Bar #631190)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6556
vinita.ferrera@wilmerhale.com

Additional counsel listed on signature page

ATTORNEYS FOR DEFENDANT
MILLERCOORS LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br>        Plaintiff/Counterclaim Defendant,<br>v.<br>MILLERCOORS LLC,<br>        Defendant/Counterclaim Plaintiff. | Case No.: 3:18-cv-00331-BEN-JMA<br><br>**DEFENDANT MILLERCOORS, LLC'S OPPOSITION TO PLAINTIFF STONE BREWING COMPANY, LLC'S MOTION TO COMPEL AND FOR SANCTIONS FOR DISCOVERY VIOLATIONS** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND................................................................................ 2

   A.   Stone Brewing's Document Requests and MillerCoors' Responses ..................... 2

   B.   MillerCoors' Document Production ................................................................ 4

   C.   The Parties' Communications Regarding the Production of Historical Keystone Materials ........................................................................................ 5

   D.   Stone Brewing's Request to Inspect the Coors' Archives................................ 6

   E.   Heidi Harris's July 25, 2019 Deposition Testimony...................................... 7

III.   ARGUMENT.................................................................................................... 8

   A.   Stone Brewing's Motion is Untimely ............................................................ 8

   B.   MillerCoors Has Complied with Stone Brewing's Discovery Requests ............... 9

      1.   Stone Brewing Never Requested "All" Historical Keystone Marketing Materials................................................................................................. 9

      2.   MillerCoors Never Agreed to Produce "All" Historical Keystone Marketing Materials ............................................................................ 12

   C.   Stone Brewing Is Not Entitled To Inspect The Coors Archives ........................... 13

   D.   There Is No Basis To Impose Sanctions On MillerCoors........................................ 14

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Fresno Cty. Human Servs. Sys.*, 2007 WL 1865657 (E.D. Cal. June 28, 2007).................................................................................15

*Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709 (9th Cir. 1974) ..........................................................................12

*GroundMetrics, Inc. v. Wells Fargo & Co.*, No. 3:16-CV-01083-H-MDD, 2017 WL 4512141 (S.D. Cal. Aug. 14, 2017)......................................12

*In re Ng*, 2009 WL 2905849 (Bankr. N.D. Cal. Sept. 3, 2009).................................15

*Nw. Home Designing, Inc. v. Golden Key Const., Inc.,* No. 11-CV-05289 RBL, 2012 WL 470260 (W.D. Wash. Feb. 10, 2012).........................11

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013).........................10

*United States v. Lee*, 2016 WL 11281164 (S.D. Cal. Dec. 6, 2016) ..........................15

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................7, 12

Fed. R. Civ. P. 26(a)(2)(C) ........................................................................7, 12

Fed. R. Civ. P. 34(a)(2) .................................................................................7

1

## I.    INTRODUCTION

2         Stone Brewing's motion to compel mischaracterizes the facts to avoid dealing with

3    the merits of MillerCoors' priority defense.   Contrary to Stone Brewing's assertions,

4    MillerCoors responded fully to the discovery requests that Stone Brewing *actually* served,

5    as opposed to the requests that Stone Brewing now wishes it had served.   Stone Brewing

6    never served a request seeking "all different versions of [Keystone] historical marketing

7    materials" as it now claims.   (Mot. 1).   And MillerCoors never agreed to produce such

8    documents.   Stone Brewing never requested an inspection of the entire Coors Archives

9    (in which historical materials for *every single Coors product* are stored) during fact

10   discovery.   And MillerCoors never offered to make the *Coors archives* available for an

11   inspection.   Stone Brewing's motion to compel is simply a belated effort to obtain

12   additional fact discovery that it never previously requested (either in the form of

13   production of additional historical Keystone marketing materials or an inspection of the

14   Coors Archives), and it should therefore be rejected as untimely.

15        Perhaps recognizing the inadequacy of its discovery requests and having failed to

16   timely pursue the issue in a timely fashion during fact discovery, Stone Brewing has now

17   come up with a different theory as to why it is entitled to an inspection of the entire Coors

18   Archives, based upon the supposed deposition testimony of MillerCoors' non-retained,

19   lay expert witness, Heidi Harris.     But Stone Brewing's carefully excerpted

20   characterization of Ms. Harris's testimony completely misconstrues what she actually

21   said.   And, in any event, Stone Brewing has identified no legal basis for its assertion that

22   a lay expert witness, such as Ms. Harris, is obligated to produce all documents and

23   information that form the basis for the knowledge she has accumulated over her years of

24   working as the MillerCoors Archivist and that underlies the opinions that she expects to

25   provide in this case.

26        Given that Stone Brewing did not request, and MillerCoors was under no obligation

27   to produce, "all evidence of historical Keystone materials" (Mot. 2), Stone Brewing's

28

request for sanctions for MillerCoors' supposed failure to produce all such evidence is similarly baseless and should be denied.

## II.     FACTUAL BACKGROUND

### A.     Stone Brewing's Document Requests and MillerCoors' Responses

As Stone Brewing acknowledges, it has been on notice of MillerCoors' prior use defense since April 10, 2018, when MillerCoors filed its Answer and Counterclaims asserting that it began using "STONE" and "STONES" even before Stone Brewing was formed.   Nonetheless, having served seventy-six document requests over the course of ten months of fact discovery, Stone Brewing has been unable to point to a single one in which it requested *all* historical Keystone marketing, advertising, and/or packaging dating back to 1989, when Keystone first was sold.  Instead, it points to two requests, RFP Nos. 41 and 42, neither of which seek "all" Keystone marketing, advertising, or packaging.  In fact, they seek just the opposite.   As set forth in Stone Brewing's Motion, RFP No. 41 seeks only "*[r]epresentative samples*" of Keystone marketing materials, and RFP No. 42 seeks only "*[r]epresentative samples*" of Keystone can and outer packaging designs. (Mot. 3).

These requests stand in stark contrast to other requests that Stone Brewing served relating to MillerCoors' priority defense, which clearly sought "All Documents" relating to MillerCoors' historical use of STONE and STONES.  Indeed, Stone Brewing served no less than *ten* separate requests relating to MillerCoors' historical use of STONE and STONES, each of which broadly requested "All Documents"—not "[r]epresentative samples"—relating to such use.  For example:

- Request No. 14: "*All Documents and Communications* regarding Your allegation that 'Coors used the term 'STONE in Keystone advertisements as early as 1992-1993 ….'"

- Request No. 15:  "*All Documents and Communications* regarding Your allegation that 'MillerCoors has used STONE and STONES to sell Keystone beer since at least 1995 ….'";

- Request No. 16: "***All Documents and Communications*** regarding Your allegation that '[s]tarting in at least 1995, Coors embraced the 'STONES nickname by putting 'STONES on Keystone outer packaging ….'"

- Request No. 69:   "***All documents*** concerning MillerCoors's belief and/or contention that it has an exclusive common law right to use the term 'STONE' in connection with the sale of beer in the United States.

Ferrera Decl., Ex. 1 at 8-10 (RFP Nos. 14-18, 22-25) (emphases added), Ex. 2 at 7 (RFP No. 69).

Even with the limitation "[r]epresentative samples," Stone Brewing's RFP Nos. 41 and 42 were vague and overbroad, and MillerCoors objected to them on October 29, 2018. ECF No. 218-2 at 19-20.  In its response to RFP No. 41, MillerCoors "object[ed] to the phrase[] 'representative samples of each and every form or type of collateral marketing material'"—the language on which Stone Brewing's motion now turns—as "vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of documents relevant to either party's claims or defenses, and not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues."  (*Id.*)  MillerCoors served a similar objection to RFP No. 42.  (*Id.* at 20-21.)  With these objections, MillerCoors directed Stone Brewing to "MillerCoors' Answer and Counterclaims, and to the Declaration of Ashley Selman, and the exhibits referenced therein," and stated that it would produce "additional responsive, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents."  (*Id.*)  Notably, MillerCoors did not agree to produce "all" marketing materials and packaging for Keystone dating back to 1989, only documents responsive to Stone Brewing's requests, which sought "[r]epresentative samples."

3

**B.    MillerCoors' Document Production**

In response to Stone Brewing's RFP Nos. 41 and 42, MillerCoors produced hundreds of examples of advertisements and packaging, including images of Keystone cans and external packaging for ***each year*** available since Keystone's inception and documents from its internal marketing database for Keystone (which contains advertising materials going back to 2010).  These materials include numerous examples of Keystone advertising that both do and do not refer to STONE or STONES.[1]  Moreover, MillerCoors searched for and produced historical Keystone items (which included samples of cans and packaging for ***every year available***) from the Coors Archives, a physical repository for historical materials relating to all of the legacy Coors brands located in Golden, Colorado.

While Stone Brewing claims that MillerCoors only produced items from the Coors Archives that use the word STONE or STONES, a cursory review of the documents produced proves that assertion to be false, as MillerCoors produced many historical Keystone materials that did not use STONE or STONES.[2]  MillerCoors thus fully complied with its agreement to produce "additional" "***[r]epresentative samples***" of Keystone marketing/advertising materials and packaging dating back to 1989 (including numerous samples that did not refer to STONE or STONES).

In addition, in order to satisfy Stone Brewing's requests for "All Documents" concerning MillerCoors' historical use of STONE, MillerCoors endeavored to collect ***all*** historical materials using STONE and/or STONES from the Coors Archives.   Because many of the historical materials were physical items (such as actual packaging, displays

[1] *See, e.g.*, Ferrera Decl., Ex. 5 (MILLERCOORS0109418) (packaging), Ex. 6 (MILLERCOORS0109393) (packaging), Ex. 7 (MILLERCOORS0000652) (can); Ex. 8 (MILLERCOORS0000671) (can), Ex. 9 (MILLERCOORS0151111) (billboard), Ex. 10 (MILLERCOORS0127641) (billboard), Ex. 11 (MILLERCOORS0025697) (TV ad), Ex. 12 (MILLERCOORS0025698) (TV ad).

[2] *See e.g.* Ferrera Decl., Ex. 15 (MILLERCOORS0127601) (Keystone NASCAR Racing brochure), Ex. 16 (MILLERCOORS0127609) (Keystone Light Speakers), Ex. 17 (MILLERCOORS0014753) (Keystone "Always Smooth" ad), Ex. 18 (MILLERCOORS0069769) (Keystone Light Neon).

4

or promotional items), MillerCoors produced photographs of the items, identified the photographs by bates numbers in its response to Stone Brewing's Interrogatory Nos. 14 and 22, and stated that it would make those "physical articles *responsive to this request* available for inspection." Ferrera Decl., Ex. 13 at 14 (MillerCoors Suppl. Response to Interrogatory No. 14), Ex. 14 at 5-6 (MillerCoors Suppl. Response to Interrogatory No. 22). Stone Brewing did not raise any question about the adequacy of these responses or the scope of the proffered inspection. Nor did it seek to avail itself of the inspection offer during fact discovery.

## C. The Parties' Communications Regarding the Production of Historical Keystone Materials

On June 4th, four days *after the close of fact discovery*, Stone Brewing sent an e-mail asserting (incorrectly) that "MillerCoors agreed to produce all historical marketing, advertising and promotional materials from 1989 to present" in response to RFP No. 41. (ECF No. 284-4 at 63). MillerCoors responded to this e-mail, disputing Stone Brewing's characterization of its RFP No. 41 as well as MillerCoors' response thereto. (*Id.* at 61-62). However, in order to avoid another discovery dispute, MillerCoors stated that it would produce "additional *representative* marketing, advertising, and promotional materials for the Keystone brand," (*Id.* at 62 (emphasis added)), as called for in RFP No. 41. Nowhere in its response did MillerCoors say it would produce *all* remaining pre-2017 marketing materials for Keystone, because that was not what Stone Brewing's RFP No. 41 sought and it would have been unduly burdensome to do so.

Stone Brewing sent a further e-mail on June 27th again attempting to re-interpret RFP 41 to justify its belated request for all historical Keystone marketing materials and demanding that MillerCoors "produce examples of each piece of marketing since 1989" as well as "each can and packaging design of Keystone beer since 1989." (*Id.* at 61). MillerCoors did not agree to this demand. Instead, on July 3rd (more than two months ago), it produced what it said it was going to produce—"additional representative

marketing, advertising, and promotional materials."  As most of the pre-1996 historical advertising documents are images collected from physical photo negatives, MillerCoors scanned, uploaded, and produced any remaining images of which it was aware that had not previously been produced.  This production included both materials that used STONE and STONES as well as advertisements that did not.[3]

## D.     Stone Brewing's Request to Inspect the Coors' Archives

On July 17, 2019, a month and a half after the close of fact discovery, Stone Brewing wrote to MillerCoors and *for the first time* stated it "would like to conduct an inspection of the Coors Archives, as offered at Ms. Harris's 30b6 capacity deposition." The problem with this request was multi-fold.  *First,* MillerCoors had not offered an inspection of the Coors Archives at Ms. Harris's May 29 deposition (or at any other time). Instead, in the context of questioning about particular physical items produced from the Coors Archives, MillerCoors stated "we've offered to make *them* [referring to the items that were the subject of the questioning] available for inspection."  Of course, the only "offer[ ]" that MillerCoors had made at that point was the offer to "make *physical articles* responsive to [Interrogatory Nos. 7, 14, and 22] available for inspection"—*i.e.*, *the articles that use STONE and STONES*.

On July 22, MillerCoors responded:  "As set forth in our responses to Stone Brewing's Interrogatory Nos. 7, 14, and 22, MillerCoors will make available for inspection the physical articles collected from the MillerCoors archives in response to Stone Brewing's discovery requests.  These items can be made available on July 24 at

---

[3] Contrary to Stone Brewing's assertions, MillerCoors did not simply re-produce higher resolution images of previously produced materials.  To the extent there was any duplication, it is simply because there were multiple copies of certain images or multiple similar images among the negatives from which these images were scanned.  Further, Stone Brewing's claim that the later-produced images were "higher resolution" versions of previously-produced advertisements is baseless.  All of the images were scanned from 30-year old negatives, and the quality of the image is dictated by the quality of corresponding negative.

noon MT in WilmerHale's Denver office."  ECF No. 218-7 at 74.

In subsequent e-mails, Stone Brewing continued to insist that it was entitled to conduct a full inspection of the Coors Archives, even though it had never served any request pursuant to Fed. R. Civ. P. 34(a)(2) to inspect either the archives or any physical items in the archives during fact discovery.  In response, MillerCoors reiterated that it would not permit an inspection of the full Coors Archive, but would, consistent with its previous discovery responses, make the physical items for which it had previously produced images available for inspection.

On July 24th, as promised, MillerCoors made the items available for inspection at WilmerHale's Denver office.  Stone Brewing did not appear for the inspection and instead took Ms. Harris' deposition the following day by video.[4]

### E.    Heidi Harris's July 25, 2019 Deposition Testimony

On July 5, 2019, MillerCoors served its opening expert reports pursuant to the Court's scheduling order.  In addition to its reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), MillerCoors also served an expert disclosure for Heidi Harris, a non-retained expert, pursuant to Fed. R. Civ. P. 26(a)(2)(C).  The general subject matter of Ms. Harris's expert testimony was to address the Keystone brand's consistent use of STONE and STONES since the early 1990s.

On July 25, 2019, Stone Brewing deposed Ms. Harris for a second time.  Despite Stone Brewing's insistence (and contrary to the assertions in its motion), Ms. Harris testified that she provided Keystone historical materials from the archives for production both **with and without** STONE or STONES.  For example, Stone Brewing's counsel asked: "The historical Keystone materials that you came across in the archives that did not use the word 'stone' or 'stones,' did you provide those to counsel?"  Ms. Harris responded in the affirmative: "At some point, I was asked to provide some other Keystone

---

[4] *See* Declaration of Mairead Dolan ("Dolan Decl.") & Exhibit.

material per Stone Brewing lawyers' request, and I have been able to provide some of those materials."[5]  And while Stone Brewing claims that Ms. Harris testified that "there are at minimum one hundred outstanding Keystone materials in the Coors archive that do not use 'Stone' or 'Stones and that still have not been produced" (Mot. 6), that assertion is demonstrably false.  The exchange in question (for which Stone Brewing does not provide a specific citation) was initiated by Stone Brewing's question: "What was the volume of Keystone material *that you came across* in the archives that did not use 'stone' or 'stones'?" (Emphases added.)  Ms. Harris replied:  "I couldn't give you an exact number…a hundred or so."[6] Nothing in the exchange suggests that Ms. Harris was opining on what documents had been *actually produced*.

Further, in an effort to support its demand for an inspection of the full Coors Archives, Stone Brewing claims that Ms. Harris based her expert testimony on the physical arrangement of material in the archive.  (Mot. 11.)  As Ms. Harris testified repeatedly, her knowledge and expertise was informed by her years of working in the Coors Archives during which time she became familiar not only with the organization of the archives and the materials present in the archives but the numerous Coors brands, including Keystone, for which historical materials exist in the archives.[7] But what Stone Brewing omits is that Ms. Harris' testimony on physical arrangement was extremely limited, addressing only a subset of historical materials in the form of sales catalogs accompanied by photographic negatives housed alongside them.[8]

## III.   ARGUMENT

### A.   Stone Brewing's Motion is Untimely

As an initial matter, Stone Brewing's motion is untimely under Civil Chambers

---

[5] Ferrera Decl., Ex. 19 at 69:20-4 (Jul. 25, 2019 Harris Tr.).
[6] Ferrera Decl., Ex. 19 at 70:10-20 (Jul. 25, 2019 Harris Tr.) (emphasis added)
[7] *See, e.g.*, Ferrera Decl., Ex. 19 at 46:1-7; 61:8-24 (Jul. 25, 2019 Harris Tr.).
[8] Ferrera Decl., Ex. 19 at 130:18-132:24 (Jul. 25, 2019 Harris Tr.).

Rule V.C.   Stone Brewing first complained about the adequacy of MillerCoors' production in response to RFP Nos. 41 and 42 on June 4, 2019, after fact discovery had already closed.   The parties exchanged e-mails about the issue over the next several weeks, and MillerCoors advised it would produce additional representative documents on June 26.  It produced those documents on July 3.

The Court's 30-day rule required Stone Brewing to bring its motion to compel further responses to RFP Nos. 41 and 42 no later than August 2—thirty days after MillerCoors' production of additional documents responsive to those requests.   Stone Brewing's Motion to Compel was filed on August 23, three weeks after that deadline had expired.  To the extent that Stone Brewing suggests that MillerCoors somehow misled it into believing that the production was adequate, Stone Brewing's own recitation of the facts belies that assertion.  Stone Brewing's June 27th e-mail demanded confirmation from MillerCoors that it would produce all historical Keystone marketing materials. MillerCoors did not provide any such confirmation.   Moreover, Stone Brewing acknowledges in its Motion that it believed the production still to be incomplete when it received it in July.  (Mot. 5).  Although it made subsequent requests for an inspection of the Coors Archives (a wholly separate request from the request to produce documents in response to RFP Nos. 41 and 42), Stone Brewing made no further request for production of additional documents until it filed its Motion to Compel on August 23.

### B.   MillerCoors Has Complied with Stone Brewing's Discovery Requests

#### 1.   Stone Brewing Never Requested "All" Historical Keystone Marketing Materials

Even if the Court were to consider the motion on its merits, the motion fails because, contrary to Stone Brewing's assertions, it never requested (and MillerCoors never agreed to produce) all historical marketing materials for Keystone dating back to

1989.[9]  Stone Brewing's attempt to obtain such discovery now—almost three months after the close of fact discovery—is far too late.

Indeed, nowhere in its motion does Stone Brewing identify **any** discovery request that it served seeking all advertising and marketing materials for Keystone products dating back to 1989, because it never served such a request.  It certainly knew how to request such materials as it served exactly such a request for advertising materials relating to MillerCoors' historical use of STONE and STONES.  *See supra* pp. 2-3.  Yet, there is no corresponding request for such documents and information for **all** historical Keystone materials (including those without STONE or STONES).

Recognizing this omission in its discovery requests, Stone Brewing is instead forced to rely on two requests that **on their face** call only for "[r]epresentative samples" of Keystone cans, packaging, and advertising and promotional material.  (RFP Nos. 41 and 42).  Stone Brewing's assertion that these requests call for production of **all** historical marketing materials for Keystone flies in the face of any reasonable interpretation of "representative samples."  It now suggests that the phrases "each and every form or type," "every manner of presentation," or "each type of design" should have been interpreted to mean every non-duplicative advertisement, marketing piece, can, or packaging.  But that argument turns the phrase "representative samples" on its head.[10]  A more reasonable

---

[9] Rule 26(A)(1)(a)(ii) only requires voluntary production of documents and things that a party "may use to support its claims or defenses."  *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 619–20 (C.D. Cal. 2013) ("'[A] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.' Accordingly, even if a party possesses evidence relevant to its claims or defenses, the party is not required to disclose it under Rule 26 if the party does not intend to use the evidence to support its claims or defenses." (quoting Fed. R. Civ. P. 26(a)(1), Advisory Comm. Notes, 2000 Amendment)).  MillerCoors complied with this obligation by producing the historical materials that use STONE and STONES on which it intends to rely to support its priority of use defense.

[10] This argument also ignores the fact that the parties separately agreed to de-duplicate documents prior to production.  (ECF No. 73-1 ¶ 26).  The "representative samples" language therefore must mean something different, otherwise it serves no purpose.

interpretation of that language is that it seeks examples of each different "form or type" of marketing, such as "print, radio, television, brochures, catalogues, flyers, press releases, website pages, website banners, social media posts, in-store displays, point-of-sale promotional items" as RFP No. 41 indicates.[11]   At a minimum, the language on which Stone Brewing now relies renders the requests vague and ambiguous (as MillerCoors in fact noted in its objections to these requests served on October 29, 2018).  ECF No. 218-2 at 19-20.[12]   In the face of such vague and ambiguous language, and in view of Stone Brewing's other document requests that were explicit in seeking "*all*" advertising and/or packaging for Keystone (related to MillerCoors' use of STONE and STONES), it was perfectly reasonable for MillerCoors to interpret RFP Nos. 41 and 42 as seeking examples of the various different forms of marketing or packaging—rather than each and every non-duplicative advertisement, marketing piece, can, or packaging for Keystone for the past thirty years as Stone Brewing now contends.[13]

Finally, to the extent Stone Brewing now argues that Ms. Harris's deposition testimony during expert discovery somehow entitles it to production of additional historical documents, that argument relies on a selective reading of Ms. Harris's

---

[11] Despite Stone Brewing's suggestions to the contrary, MillerCoors produced samples of cans and packaging for ***every year available*** from the Coors Archives in response to Stone Brewing's requests.

[12] Case law supports MillerCoors' objection.  In *Nw. Home Designing, Inc. v. Golden Key Const., Inc.,* No. 11-CV-05289 RBL, 2012 WL 470260, at *3 (W.D. Wash. Feb. 10, 2012), the court rejected Plaintiff's motion to compel a "representative sample" of home designs because it found that such language was vague, explaining that "requesting a 'representative sample' is sufficiently unclear that it allows the defendant to interpret in a way that may not be consistent with plaintiff's request."

[13] Contrary to Stone Brewing's assertions, Ninth Circuit precedent does not require any showing of consistency of use in order to establish prior use.  Instead, the Ninth Circuit requires only that the senior user publicly used the mark prior to the junior user's registration and publication and continuously used it since that time.  *See Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir. 1974).  Thus, the fact that MillerCoors may have used other marks or designations on some of its advertising or packaging for Keystone would not in any way undermine its claim to be the senior user of STONE and STONES.

testimony.  Ms. Harris testified—four times in response to the same question from Stone Brewing's counsel—that she formed her expert opinions based on "the material that bears 'stone' or 'stones' throughout the brand's history."[14]   Thus, she made clear that her opinions regarding MillerCoors' uses of STONE and STONES and the dates of those uses were not based on the entire universe of Keystone material contained in the archive, but instead on her review of those items that actually used STONE and STONES, which MillerCoors produced.  Further, even to the extent Ms. Harris's opinions as a non-retained expert are influenced by her general knowledge of the Keystone materials contained in the archives, Stone Brewing cites no authority that entitles it to discovery of all information in the archives that inform her knowledge.  That is because, in contrast to Rule 26(a)(2)(B), which imposes on retained experts an obligation to disclose "the facts or data considered by the witness in forming" their opinions, Rule 26(a)(2)(C) imposes no such obligation on non-retained experts, such as Ms. Harris.  *See, e.g.*, *GroundMetrics, Inc. v. Wells Fargo & Co.*, No. 3:16-CV-01083-H-MDD, 2017 WL 4512141, at *1 (S.D. Cal. Aug. 14, 2017) (holding defendants "made the required disclosure" of non-retained expert's testimony).

### 2. *MillerCoors Never Agreed to Produce "All" Historical Keystone Marketing Materials*

Moreover, MillerCoors did not agree to produce **all** marketing materials and packaging for Keystone dating back to 1989.  It agreed to produce "***responsive***, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents." (ECF No. 218-2 at 20-21).  By stating that it would produce "responsive" documents, MillerCoors clearly agreed to produce no more than what was called for by the requests. And, in fact, MillerCoors produced representative samples of the many different types of marketing materials, advertising, and packaging that it has used for Keystone over the

---

[14] Ferrera Decl., Ex. 19 at 74:20-78:1 (Jul. 25, 2019 Harris Tr.).

years, including samples that do not use STONE or STONES, belying Stone Brewing's repeated assertion that MillerCoors made a "selective" production in response to RFP Nos. 41 and 42.

Further, nothing in the parties' correspondence after the May 29, 2019 deposition of Ms. Harris changes these basic facts.  Contrary to Stone Brewing's assertions, MillerCoors did not agree to produce *all* remaining historical Keystone materials in the Coors Archives.  Instead, it offered to produce "additional *representative* marketing, advertising, and promotional materials," which it did on July 3.  The fact that MillerCoors did not expressly respond to Stone Brewing's follow-up demand cannot be interpreted as any sort of acquiescence by MillerCoors.  If Stone Brewing had wanted to obtain production of all historical Keystone materials, and not merely "representative" materials as MillerCoors had offered, it could have filed a motion to compel at that time.  Indeed, Stone Brewing concedes that it was aware shortly after it received MillerCoors' July 3 production that it did not contain all historical Keystone materials (Mot. 5), but took no action (and, in fact, failed to even inform MillerCoors that it still considered the production to be inadequate).

## C.   Stone Brewing Is Not Entitled To Inspect The Coors Archives

Stone Brewing's demand for a full inspection of the Coors Archive (and a third deposition of Ms. Harris) is even more far-fetched, given that Stone Brewing at no time in this litigation served a request to inspect either the archives themselves or any of the items in the archives.  As support for its demand for an inspection, Stone Brewing makes two arguments:  (1) that MillerCoors agreed to an inspection of the archives; and (2) that Ms. Harris purportedly formed her opinions based on the "physical arrangement of the materials in the archive."  Each should be rejected.

*First,* contrary to Stone Brewing's assertions, MillerCoors never agreed to "an on-site inspection of the historical items in their locations in the Coors archive."  (Mot. 10). Stone Brewing cites no discovery response or correspondence where MillerCoors agreed

to such an inspection, because there is none.  What MillerCoors actually stated, in interrogatory responses identifying documents that it intended to rely upon to support its prior use defense, was that it would "make physical articles *responsive to this request* available for inspection in Golden, Colorado."  It said nothing about the archives themselves.  Recognizing this, Stone Brewing relies on a snippet of attorney colloquy from Ms. Harris's May 29th deposition that refers to the archives.  However, Stone Brewing completely misconstrues the reference to "in the archives."  (Mot. 10).  In response to questioning about specific pictures of certain physical items, MillerCoors' counsel stated: "all of *these items* are available in the archives, and we've offered to make *them* available for inspection."  ECF No. 218-3 at 54 (emphases added).  Thus, when read in context, it is clear that MillerCoors was referring to an inspection of the physical items themselves, consistent with the "offer" that MillerCoors had previously made in its interrogatory responses.

*Second*, Stone Brewing likewise mischaracterizes Ms. Harris's deposition testimony regarding her reliance on "the physical arrangement of the materials in the archive" in forming her opinions about the dates of certain historical items.  (Mot. 10). The testimony on which Stone Brewing relies related to specific images taken from photo negatives stored in the archives, and Ms. Harris explained that the negatives for a particular catalog were all located in a single folder, which enabled her to date the images in that folder based on her knowledge of the approximate date of the catalog itself. (Ferrera Ex. 19 at 128:22-132:24 (Jul. 25, 2019 Harris Tr.).  She did not testify that the physical arrangement of the archives or even of all of the Keystone material in the Coors Archives were the basis for her opinions.

### D.    There Is No Basis To Impose Sanctions On MillerCoors

As an initial matter, Stone Brewing's request for sanctions is improper because Rule 37 sanctions are available only where a party has failed to comply with a prior court

order.  Rule 37(b)(2)(A) allows for the imposition of sanctions, including preclusion, "[i]f a party … ***fails to obey an order*** to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A) (emphasis added).  Neither Rule 37, nor any of the cases cited by Stone Brewing, authorizes preclusion as a sanction absent violation of a court order regarding the discovery in question.  Indeed, in every single one of the cases that Stone Brewing cites in support of its preclusion request, the moving party had **already** obtained a court order compelling the disclosure of documents or information, which the sanctioned party had then failed to satisfy.  *See United States v. Lee*, 2016 WL 11281164, at *4 (S.D. Cal. Dec. 6, 2016) (sanctioned party failed to produce documents that it was ordered to produce in response to a motion to compel and failed to attend a court-ordered settlement conference); *In re Ng*, 2009 WL 2905849, at *3 (Bankr. N.D. Cal. Sept. 3, 2009) (sanctioned party violated court order compelling production of documents); *Anderson v. Fresno Cty. Human Servs. Sys.*, 2007 WL 1865657, at *6 (E.D. Cal. June 28, 2007) (sanctioned party failed to provide adequate responses to 7 of 16 interrogatories to which it was ordered by court to respond).  MillerCoors has not violated any court order with respect to the production of additional historical Keystone documents.  Therefore, Stone Brewing's request for sanctions is improper and should be denied.

Even apart from this defect, Stone Brewing's request for sanctions is premised on its erroneous assertion that MillerCoors had an obligation to produce all historical Keystone materials in the Coors Archives.  As explained in detail above, there was no such obligation because Stone Brewing's discovery requests did not seek production of "all" such materials.  Accordingly, MillerCoors' production of representative samples (which included materials that used STONE and STONES as well as those that did not) was proper.

Respectfully submitted,

1    Dated: September 6, 2019

2                                                    By: /s/ Vinita Ferrera
3                                                    Christopher T. Casamassima
                                                     (SBN #211280)
4                                                    chris.casamassima@wilmerhale.com
5                                                    WILMER CUTLER PICKERING
                                                     HALE & DORR LLP
6                                                    350 South Grand Avenue, Suite 2100
7                                                    Los Angeles, CA 90071
                                                     Telephone: (213) 443-5300
8                                                    Facsimile: (213) 443-5400
9
10                                                   Vinita Ferrera (pro hac vice; MA Bar
                                                     #631190)
11                                                   WILMER CUTLER PICKERING
12                                                   HALE & DORR LLP
                                                     60 State Street
13                                                   Boston, MA 02109
14                                                   Tel: (617) 526-6556
                                                     vinita.ferrera@wilmerhale.com
15
16                                                   Matthew J. Worthington (pro hac vice;
                                                     CO Bar #47987)
17                                                   WILMER CUTLER PICKERING
18                                                   HALE & DORR LLP
                                                     1225 17th Street, Suite 2600
19                                                   Denver, CO 80202
20                                                   Tel: (720) 598-3443
                                                     matthew.worthington@wilmerhale.com
21
22                                                   Brittany Blueitt Amadi (pro hac vice;
                                                     DC Bar #1015271)
23                                                   WILMER CUTLER PICKERING
24                                                   HALE & DORR LLP
                                                     1875 Pennsylvania Ave. NW
25                                                   Washington, DC 20006
26                                                   Tel: (202) 663-6000
                                                     brittany.amadi@wilmerhale.com
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 6th day of September 2019, I electronically transmitted the foregoing Declaration to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

*/s/ Vinita Ferrera*