J. Noah Hagey, Esq. (SBN: 262331)
　hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (324823)
　theodore@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
　rowe@braunhagey.com
Bram Schumer, Esq. (SBN: 317736)
　schumer@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>　　Plaintiff / Counterclaim Defendant,<br><br>　　v.<br><br>MILLERCOORS LLC,<br><br>　　Defendant / Counterclaim Plaintiff. | Case No: 18-cv-0331-BEN-LL<br><br>**PLAINTIFF STONE BREWING CO., LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL AND FOR SANCTIONS FOR DISCOVERY VIOLATIONS**<br><br>**Judge:**　Hon. Linda Lopez<br><br>Complaint filed: February 12, 2018 |

## INTRODUCTION

The Court no doubt tires of discovery disputes in this case. So does Stone, which has labored through well over a dozen of motions to compel MillerCoors' compliance with garden variety Rule 26 obligations. Here, Stone's Motion to Compel demonstrated that MillerCoors admittedly withheld hundreds (if not thousands) of relevant, non-privileged documents responsive to numerous of Stone's document requests solely because they are unhelpful to MillerCoors's central defense in this case. In Opposition, MillerCoors ***does not dispute*** that it selectively produced packaging and marketing materials supporting its claims of alleged historical use of "STONE" or "STONES", ***while omitting at least [redacted] examples of packaging and marketing materials that did not use those terms***.

MillerCoors now attempts to excuse its faulty production – which only recently was revealed to Stone – by misrepresenting Stone's document requests, MillerCoors's responses, and the parties' meet-and-confer efforts. As set forth below, MillerCoors's assertions are wrong and, in any event, do not excuse its intentional violation of the Federal Rules and withholding of admittedly relevant, responsive documents that it agreed to produce under penalty of perjury and Rule 11.

The Court should order MillerCoors to produce its historical materials and permit an inspection of the archives, compel a further deposition of Ms. Harris, and sanction MillerCoors for its willful discovery abuse.

## ARGUMENT

Stone's Requests for Production Nos. 41 and 42 sought fundamentally relevant evidence regarding MillerCoors' alleged historical use of "STONE" and "STONES".[1] Stone also independently requested such material in connection with

---

[1] MillerCoors has built its entire defense of this action upon the assertion that it has continuously used the words "STONE" and "STONES" on its packaging and promotional materials for Keystone since the early 1990s. *See* Dkt. No. 170 at 2-7 (MillerCoors's Motion for Summary Judgment relying on examples of this alleged use).

1  MillerCoors' supposed archive expert, Heidi Harris.

2         MillerCoors agreed to produce these responsive documents and represented
3  that it had done so. But as detailed in Stone's Motion, those representations were
4  false. In particular, Heidi Harris, MillerCoors's corporate archivist, Rule 30(b)(6)
5  witness, and purported expert on historical Keystone materials, testified *under oath*
6  that ███████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████████████
8  ██████████████████████████████ Mot. at 3-4. However, at her "expert" deposition on
9  July 25, Ms. Harris ██████████████████████████████████████
10 ███████████████████████████████████████████████████████████████
11 █████████████████████████████████████ Mot. at 6-7. MillerCoors's
12 withholding of these critical documents, which will likely show that ███████████
13 ███████████████████████████████████████████████████████ is seriously
14 prejudicial and impairs the truth-finding function of discovery. MillerCoors's
15 arguments in opposition are insufficient to excuse this conduct.

16         **A.    MillerCoors Ignores the Text of Stone's Discovery Requests**

17         MillerCoors's arguments in its Opposition fail because they ignore what RFPs
18 41 and 42 *actually* say. MillerCoors's primary argument is that it was justified in
19 limiting its search and production to materials that included the words "Stone" or
20 "Stones" because Stone's RFP only asked for "representative samples" of
21 Keystone's marketing materials. Opp. at 10-12. This argument completely ignores
22 the actual language of RFPs 41 and 42. As the Court can clearly see, RFP 41 sought
23 examples of "***each and every***" version or form of Keystone marketing materials,
24 including "***every*** manner of presentation of [the] Keystone Products[.]" Mot. at 3.
25 Meanwhile, RFP. No. 42 sought examples of "***each type of design*** for the can and
26 outer packaging of [the] Keystone Products from 1989 to Present." *Id*. The RFPs
27 clearly were not limited to non-representative "samples" of whatever MillerCoors
28 wanted to produce.

1    MillerCoors attempts to justify its contorted after-the-fact interpretation of
2 RFPs 41 and 42 by contrasting them with *different* Requests that sought "all
3 Documents and Communications" regarding MillerCoors's "allegations" and
4 "contentions" about prior use of "Stone" or "Stones." Opp. at 2-3. This argument
5 makes no sense. RFPs 14-16 and 69 were not focused on marketing materials or
6 packaging, but sought all documents related to MillerCoors purported use of "Stone"
7 or "Stones," encompassing email correspondence, brand strategy analyses, and other
8 internal documents. *Id.* . By contrast, RFPs 41 and 42 specifically sought
9 representative samples of "each and every" version or form of marketing and
10 packaging whether or not they used "Stone" or "Stones." While other RFPs called
11 for MillerCoors's internal documents regarding Keystone, RFPs 41 and 42 sought
12 simply to provide an accurate historical record of how Keystone was actually
13 marketed and packaged. Instead, MillerCoors has attempted to create an *inaccurate*
14 historical record by cherry-picking materials that include "Stone" or "Stones."

15    Moreover, MillerCoors's selective search and production was improper *even*
16 under its own tendentiously narrow reading of RFPs 41 and 42. In its Opposition,
17 MillerCoors construes the RFPs to seek "representative samples of [] different types
18 of marketing materials." Opp. at 12. Of course, that is not what the RFPs say. But
19 even so, Ms. Harris admitted under oath at her deposition that ▇▇▇▇▇▇▇▇▇▇▇▇▇
20 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mot. at 4. She also
21 confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
25 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ MillerCoors's interpretation of the RFPs is not only
26 incorrect, but MillerCoors failed to live up to its own interpretation.

27    **B.    MillerCoors Ignores its Agreement to Produce Documents**
28    MillerCoors also attempts to invoke its boilerplate objections to RFPs 41 and

42 as purportedly limiting the scope of documents it was obligated to produce, but this is another argument that makes no sense.  In its responses to RFPs 41 and 42, MillerCoors agreed to produce all "responsive, non-privileged documents […] capable of being identified and located following a reasonable search[.]"  Mot. at 3.  It did not state that it was withholding *any* documents on the basis of its objections.  Mot. Ex. 2 at 20-21.  This is fatal to MillerCoors's argument that its rote objections for vagueness and burden somehow excuse its non-compliance.  Under Fed. R. Civ. P. 34(b)(2)(C), "an objection must state whether any responsive materials are being withheld on the basis of that objection."  MillerCoors did not state that it was withholding documents, but instead agreed to produce responsive documents that could be located following a reasonable search.  And MillerCoors admittedly located at least one hundred, and potentially "a few" hundred examples of Keystone materials without "Stone" or "Stones" that it systematically withheld.

        C.      **MillerCoors's Failed Promise to Supplement Production**

MillerCoors's remaining arguments are similarly without merit.  Stone's Motion showed that MillerCoors expressly agreed to supplement its production during the meet-and-confer process, then secretly reneged on that agreement by producing only cherry-picked non-representative samples.  Mot. at 3-7.  MillerCoors argues that when it promised in writing to produce "additional representative materials," it *really* meant it would produce only materials supporting its claims about prior use of "Stone" or "Stones."  Opp. at 5-6.  This argument is flatly contradicted by the written record.  Stone expressly demanded that MillerCoors supplement its production to comply with the language of RFP 41.  Mot. at 4-5..  MillerCoors agreed to do so.  Then, for the avoidance of doubt, Stone sent an email confirming the parties' understanding that MillerCoors would "produce examples of each piece of marketing since 1989" and "each can and packaging design of Keystone beer since 1989." *Id*.  MillerCoors did not dispute this understanding.  Similarly MillerCoors expressly agreed to permit an inspection of the Coors archive

in Golden, Colorado, only to renege on that agreement as well.

### D. The Motion Is Timely

Finally, MillerCoors belatedly asserts that Stone's motion is somehow untimely (an issue never raised in the parties' meet-and-confer discussions), but this too is without merit. MillerCoors's withholding of responsive documents was only revealed at the expert deposition of Ms. Harris. Stone received the final transcript for that deposition on August 6, and timely sought relief from the Court less than 30 days thereafter. Any "delay" was due to MillerCoors's concealment of the documents it was withholding and its brazen refusal to meet and confer with Stone's counsel for weeks on end.

On this record, the only possible conclusion is that MillerCoors – again – deliberately withheld responsive documents on the assumption that it would not be caught, then sought to run out the clock on Stone's time to compel discovery. The Court should not tolerate such willful gamesmanship of the Rules and should impose the modest sanctions sought in Stone's Motion.

### CONCLUSION

For the foregoing reasons, the Court should grant Stone's Motion and sanction MillerCoors.

Dated: September 9, 2019                    Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  s/ J. Noah Hagey
            J. Noah Hagey

*Attorneys for Stone Brewing Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this September 9, 2019, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

Dated: September 9, 2019			By:   s/ J. Noah Hagey
					         J. Noah Hagey