UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MILLERCOORS LLC ,<br><br>　　Defendant/Counterclaim Plaintiff. | Case No.: 18cv331-BEN(LL)<br><br>**ORDER RE: STONE BREWING COMPANY LLC'S MOTION TO COMPEL AND FOR SANCTIONS FOR DISCOVERY VIOLATIONS**<br><br>**[ECF No. 218]** |

Currently before the Court is Plaintiff Stone Brewing Co., LLC ("Stone" or "Plaintiff") September 5, 2019 "Motion to Compel and for Sanctions for Discovery Violations" [ECF No. 218 ("Motion")], Defendant's September 7, 2019 opposition to the motion [ECF No. 221 ("Oppo.")], and Plaintiff's September 9, 2019 Reply [ECF No. 224 ("Reply")].

For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.　　RELEVANT DISCOVERY BACKGROUND

On September 28, 2018, Plaintiff served Requests for Production of Documents ("RFP") Set Two, Nos. 41 and 42, on Defendant seeking:

**RFP No. 41:** Representative samples of each and every form or type of collateral marketing material including but not limited to, print, radio,

1

television, brochures, catalogues, flyers, press releases, website pages, website banners, social media posts, in-store displays, point-of-sale promotional items, that has displayed or that will display the Keystone Products, including documents sufficient to show every manner of presentation of Your Keystone Products in each type of advertisement or promotional material from 1989 to Present.

**RFP No. 42:** Representative samples of each type of design for the can and outer packaging of Your Keystone Products from 1989 to Present.

Motion at 6; see also Exhibit 1 attached to the Motion at 8. Defendant responded to RFP No. 41 as follows:

**Response to RFP No. 41**: MillerCoors incorporates by reference the General Responses and Objections as if fully set forth herein. In addition to the foregoing General Responses and Objections, MillerCoors objects to the phrases "[r]epresentative samples of each and every form or type of collateral marketing material," "that has displayed or that will display the Keystone Products," and "documents sufficient to show every manner of representation of Your Keystone Products in each type of advertisement or promotional material" as vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of documents relevant to either party's claims or defenses, and not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). MillerCoors also objects that the Request seeks documents going back twenty-nine years. MillerCoors further objects that the Request seeks the production of documents in the possession of, or which is the property of, a third party. MillerCoors further objects to this Request to the extent it seeks information or documents that are publicly available.

Subject to and without waiver of these Specific Objections and its General Objections, MillerCoors directs Plaintiff to MillerCoors' Answer and Counterclaims, and to the Declaration of Ashley Selman, and the exhibits referenced therein. MillerCoors will produce additional responsive, non-privileged documents, if any, capable of being identified and located

following a reasonable search of relevant custodians and sources likely to contain such documents.

Motion at 6; see also Exhibit 2 attached to the Motion at 34-36. Defendant responded to RFP No. 42 as follows:

**Response to RFP No. 42**: MillerCoors incorporates by reference the General Responses and Objections as if fully set forth herein. In addition to the foregoing General Responses and Objections, MillerCoors objects to the phrase, "[r]epresentative samples of each type of design for the can and outer packaging of Your Keystone Products" as vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of documents relevant to either party's claims or defenses, and not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). MillerCoors also objects that the Request seeks documents going back twenty-nine years. MillerCoors further objects that the Request seeks the production of documents in the possession of, or which is the property of, a third party. MillerCoors further objects to this Request to the extent it seeks information or documents that are publicly available.

Subject to and without waiver of these Specific Objections and its General Objections, MillerCoors directs Plaintiff to MillerCoors' Answer and Counterclaims, and to the Declaration of Ashley Selman, and the exhibits referenced therein. MillerCoors will produce additional responsive, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents.

## II. PARTIES' POSITIONS

### A. Plaintiff's Position

Plaintiff argues that "MillerCoors has withheld critical evidence in violation of its discovery agreements." Mot. at 11. Specifically, Plaintiff argues that MillerCoors's "primary defense in this case is MillerCoors's claim to be the senior user of the Stone®

3

18cv331-BEN(LL)

mark." Id. Plaintiff states that "[i]n support of that defense, MillerCoors produced every scrap of Keystone historical material that it could find in which it used the terms Stone [or] Stones. . . ." Id. (internal citations omitted). However, Plaintiff argues that "as MillerCoors's archivist, 30(b)(6) witness and putative expert on historical usage, and key summary judgment declarant [Ms. Heidi Harris] admitted, MillerCoors has withheld the remainder of 'the historical packaging, packaging artwork, advertisements, or videos for Keystone' while producing 'only the items that have the word 'Stone' or 'Stones.'" Id. (citing Exhibit 3 attached to the Motion, Harris 30(b)(6) Tr. at 12:16-20; 13:18-14:5; see also id. at 81:0-82:1). Plaintiff summarizes the history of its attempts to meet and confer with Defendant including Plaintiff's request for "a complete production of historical Keystone materials in accordance with the plain language of RFPs 41 and 42, rather than the selective production of materials bearing the words Stone [or] Stones." Id. at 7 (internal citation omitted). Plaintiff acknowledges that on July 3, 2019, MillerCoors produced eighty documents, but states that "MillerCoors still had not made a full production of its historical materials, instead withholding those that do not refer to Stone or Stones." Mot. at 8.

Plaintiff states that the deficiencies in Defendant's production were confirmed at Ms. Harris's expert deposition and in conversations between counsel. Id. (citing Ex. 5, Harris Expert Tr. at 70:5-21). Specifically, Plaintiff states that during her deposition on July 25, 2019, Ms. Harris "confirmed that she had not collected 'all of the Keystone material that [she] came across in the archives that did not use the word 'Stone' or 'Stones'' and that she 'couldn't give [] an exact number' but that it was on the order of 'a few-a hundred or so.'" Mot. at 9 (citing Ex. 5, Harris Expert Tr. at 67:3-70:21; see also id. at 104:21-105:15). Plaintiff states that after Ms. Harris's deposition, MillerCoors produced "images of two withheld items that Ms. Harris referred to by name at her deposition – but continues to withhold the rest." Mot. at 10.

In sum, Plaintiff states that to date, Defendant has "continued to refuse to produce images of the full range of historical marketing materials, claiming that it had already satisfied its obligations under RFPs 41 and 42 by producing cherrypicked selection of

Keystone materials." Id. at 9 (citing Ex. 7 attached to the Motion at 2-5). Plaintiff argues that the "missing material [including an on-site inspection of the MillerCoors's archive] is critically relevant to MillerCoors's claim to be the senior user of the Stone® mark." Id. at 11. Plaintiff further argues that the requests at issue "clearly sought one example of each different version of Keystone marketing material, advertising, and packaging released by MillerCoors so that Stone could assess the consistency and breadth of MillerCoors's purported usage of Stone and Stones." Id. at 12.

Plaintiff seeks that the Court order the following: (1) "a full production of historical Keystone materials encompassing the full universe of marketing, packaging, and advertising, not just those that refer to Stone or Stones;" (2) "an on-site inspection of the historical items in their locations in the Coors archive as MillerCoors appeared to have agreed . . . .;" and (3) an additional deposition "of Ms. Harris after all historical materials have been produced" so that "Stone [is able] to ask questions about the dates, content, and history of this new material." Mot. at 13-15. Plaintiff seeks "alternatively" for the Court to sanction MillerCoors by barring it from putting into evidence its supposed historical use of Stone or Stones in Keystone advertising and marketing materials." Id. at 15. Finally, Plaintiff seeks that "[a]t a minimum, MillerCoors should be required to pay for the cost of this motion, the Parties' meet-and-confer efforts, and the re-deposition of Ms. Harris." Id. at 18.

B. **Defendant's Position**

Defendant argues that "MillerCoors responded fully to the discovery requests that Stone Brewing *actually* served, as opposed to the requests that Stone Brewing now wishes it had served." Oppo. at 4 (emphasis in original). Defendant further argues that Stone Brewing never requested and is not entitled to an inspection of the entire Coors Archive. Id. Specifically, Defendant argues that the term "representative samples" as used in the Plaintiff's RFP Nos. 41 and 42 is "vague and overbroad." Id. at 6. Defendant states that it objected to these requests in the responses served, and only agreed to produce "'additional

responsive, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents.'" Id. Defendant further argues that in response to RFP Nos. 41 and 42, it has "produced hundreds of examples of advertisements and packaging for each year available since Keystone's inception and documents from its internal marketing database for Keystone (which contains advertising materials going back to 2010)." Id. at 7. Defendant represents that contrary to Plaintiff's arguments, that "[t]hese materials include numerous examples of Keystone advertising that both do and do not refer to STONE or STONES." Id. Defendant further argues that "MillerCoors searched for and produced historical Keystone items [] from the Coors Archives, a physical repository for historical materials relating to all of the legacy Coors brands located in Golden, Colorado." Id. In sum, Defendant argues that "MillerCoors [has] produced many historical Keystone materials that did not use STONE or STONES," and accordingly, that "MillerCoors thus fully complied with its agreement to produce 'additional' *'[r]epresentative samples'* of Keystone marketing/advertising materials and packaging dating back to 1989 (including numerous samples that did not refer to STONE or STONES)." Id. (emphasis in original).

Defendant also summarizes the history of its attempts to meet and confer with Plaintiff including that in response to Plaintiff's June 4, 2019 email, Defendant agreed to produce "'additional representative marketing, advertising, and promotional materials for the Keystone brand'" . . . "as called for in RFP No. 41." Id. at 8. However, Defendant states that it never agreed to produce all historical Keystone marketing materials. Id. In connection with Plaintiff's request to inspect the Coors' archive, Defendant argues that it never offered an inspection of the archives, but rather offered "'to make *them*[1] [referring to the items that were the subject of the questioning] available for inspection.'" Id. at 9 (emphasis in original). Finally, in connection with Ms. Harris' deposition testimony,

---

[1] Specifically, MillerCoors states that the offer was to "'make *physical articles* responsive to [Interrogatory Nos. 7, 14, and 22] available for inspection'—i.e., *the articles that use STONE and STONES*." Oppo. at 9 (emphasis in original).

Defendant argues that Stone mischaracterizes the testimony and that it is Defendant's position that "Ms. Harris testified that she provided Keystone historical materials from the archives for production both with and without STONE or STONES." Id. at 10.

Defendant argues that Plaintiff's Motion should be denied for the following reasons: (1) it is untimely; (2) Defendant has complied with Plaintiff's discovery requests as they never requested "all historical marketing materials for Keystone dating back to 1989;" (3) Plaintiff is not entitled to an inspection of the Coors Archive (nor a third deposition of Ms. Harris) because Plaintiff never served a request to inspect either the archives or any of the items in the archives; and (4) there is no basis to impose sanctions on MillerCoors because there has no violation of a court order regarding the discovery in question. Id. at 11-18.

### III. LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside

the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." Id. at 34(b)(2)(B). Additionally, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Id. at 34(b)(2)(C). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

If a motion to compel discovery is granted, or if the disclosure or requested discovery is provided after the motion was filed, Rule 37(a)(5)(A) requires a court to order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the movant failed to meet and confer, the objection was substantially justified, or other circumstances militate against awarding expenses. If the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

If a party fails to obey a court order requiring discovery responses, the court may issue "further just orders" including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i-vii). "Instead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Furthermore, the court may order sanctions if a party "fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vii) and "instead of or in addition to these sanctions, the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

## IV. DISCUSSION

### A. Defendant's Timeliness Objection

As an initial matter, Defendant's objections on the basis of timeliness are overruled. As Plaintiff contends in the Reply, "the withholding of responsive documents was only revealed at the expert deposition of Ms. Harris." Reply at 6. Plaintiff states that they "received the final transcript for that deposition on August 6, 2019, and timely sought relief from the Court less than thirty (30) days thereafter." Id. The Court agrees. The parties called Judge Lopez's Chambers on September 4, 2019 to discuss the discovery dispute, and the Court issued an expedited briefing schedule for the issue raised by Plaintiff. See ECF No. 215.

## B. Plaintiff's Request for a "Full Production of Historical Keystone Materials"

The Court finds Defendant's arguments in connection with Plaintiff's Motion to Compel further responses to RFP Nos. 41 and 42 to be without merit. First, the Court does not find the objected terms to be vague and ambiguous or overbroad and burdensome. RFP No. 41 clearly seeks examples of "each and every" version or form of Keystone marketing materials, including 'every manner of presentation of [the] Keystone products.'" Exhibit 1 attached to the Motion at 8. Similarly, RFP No. 42 clearly seeks examples of "each type of design for the can and outer packaging of [the] Keystone Products from 1989 to Present." Id. Second, notwithstanding Defendant's objections, Defendant did note state that any responsive materials are being withheld on the basis of the stated objection. See Fed. R. Civ. P. at 34(b)(2)(C). Indeed, Defendant stated that it would produce "additional, responsive, non-privileged documents, if any, capable of being identified and located following a reasonable search of relevant custodians and sources likely to contain such documents." Id.

Defendant's claim that it has "fully complied with its agreement to produce 'additional' 'representative samples' of Keystone marketing/advertising materials and packaging dating back to 1989 (including numerous samples that did not refer to STONE or STONES)" is without merit. Id. at 7. First, Defendant's interpretation of the text of RFP Nos. 41 and 42 is incorrect for the reasons set forth in the preceding paragraph. Also, even if Defendant's interpretation of the text of the requests was correct, it is not clear to the Court how Defendant selected which "representative samples" to produce. Defendant cannot cherry pick which documents to produce, without any rhyme or reason about how it selected the claimed "representative samples." Additionally, the deposition testimony of Ms. Harris' deposition establishes that there are approximately one hundred (100) outstanding Keystone documents in the Coors archive that do not use the terms "Stone" or "Stones" that have not been produced. See Exhibit 5 attached to the Motion, Harris Expert Tr. at 67:3-70:21 (Ms. Harris confirmed that she had not collected "all of the Keystone material that [she] came across in the archives that did not use the word 'Stone' or 'Stones'

and that she "couldn't give [] an exact number' but that it was estimated at "a few – a hundred or so").

Accordingly, the Court **GRANTS** Plaintiff's Motion to Compel a full production of historical Keystone materials in response to RFP Nos. 41 and 42. Defendant is **ORDERED** to produce those documents on or before **September 20, 2019**.

### C. Plaintiff's Request for an "On-Site Inspection of the Historical Items in their Locations in the Coors Archive"

The Court finds that Plaintiff's request for "an on-site inspection of the historical items in their locations in the Coors archive as MillerCoors appeared to have agreed . . . ." is unfounded. Mot. at 14. Plaintiff argues that "MillerCoors had agreed to an on-site inspection 'in the archives[,]'" but then "MillerCoors unilaterally changed its tune and offered a partial inspection of only the already-produced material in a conference room at WilmerHale's Denver office – something that is essentially useless." Id. Plaintiff argues that Ms. Harris's designation as an expert witness makes an inspection even more critical because "the physical arrangement of the materials in the archive was important to her opinions about the dates of the historical items at issue." Id. Defendant opposes Plaintiff's request noting that "MillerCoors had not offered an inspection of the Coors Archives at Ms. Harris's May 29 deposition (or at any other time)." Oppo. at 9. Instead, Defendant states that MillerCoors offered to "'make physical articles responsive to [Interrogatory Nos. 7, 14, and 22] available for inspection'" – *i.e*, **the articles that use STONE and STONES**." Id. (emphasis in original).

It appears that Plaintiff misunderstood MillerCoors's offer to make physical articles responsive to Interrogatory Nos. 7, 14, and 22 available for inspection as an offer for an on-site inspection of the historical items in their locations in the Coors archive. In fact, Plaintiff concedes in its Motion that MillerCoors only "*appeared* to have agreed" to an on-site inspection of the historical items in their locations in the Coors archive. Mot. at 14 (emphasis added). Plaintiff's argument that it is entitled to "access to the archive itself and

the physical arrangement that Ms. Harris relied on" is notably void of any supporting authority. Accordingly, the Court **DENIES** Plaintiff's request for an on-site inspection of the historical items in their locations in the Coors archive.

### D. Plaintiff's Request for an Additional Deposition of Ms. Heidi Harris

The Court also finds that an additional deposition of Mr. Harris is appropriate in light of Defendant's failure to provide timely and complete discovery responses to RFP Nos. 41 and 42. In light of the Court's Order requiring Defendant to make a full production of historical Keystone materials in response to RFP Nos. 41 and 42, the Court **GRANTS** Plaintiff's request for an additional deposition of Ms. Harris. Plaintiff may depose Ms. Harris via videoconference for no more than **two** hours and must limit the questions to the newly produced documents.

### E. Plaintiff's Request for Sanctions

The Court **DENIES** Plaintiff's request to impose sanctions on Defendant. It is not clear from Plaintiff's briefing whether Plaintiff's request for evidentiary preclusion sanctions is an alternative to the discovery sought. For example, Plaintiff states: "*Alternatively*, the Court should sanction MillerCoors by barring it from putting into evidence its supposed historical use of Stone or Stones in Keystone advertising and marketing materials." Mot. at 15 (emphasis added). Notwithstanding this ambiguity in Plaintiff's briefing, in light of the Court's order herein, requiring Defendant to supplement its responses to RFP Nos. 41 and 42, the Court does not find evidentiary sanctions are appropriate. The Court also notes that this is the first time the instant discovery issue has been raised with the Court, and Defendant's conduct does not appear to be so egregious as to warrant the imposition of preclusionary evidence sanctions, at this time.

The Court similarly finds that the monetary sanctions sought by Plaintiff, including the cost of preparing Plaintiff's motion, the parties' meet and confer efforts, and the re-deposition of Ms. Harris are not warranted here. Mot. at 18. Because the Court has granted in part Plaintiff's request, the Court declines to impose monetary sanctions on Defendant at this time.

12

18cv331-BEN(LL)

# CONCLUSION

Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's Motion to Compel a full production of the historical Keystone materials in response to RFP Nos. 41 and 42 is **GRANTED**. Defendant is **ORDERED** to supplement its production in response to these requests on or before **September 20, 2019.**

2. Plaintiff's Motion to Compel an inspection of the Coors archive is **DENIED.**

3. Plaintiff's Motion to Compel Ms. Heidi Harris for an additional deposition is **GRANTED**. Ms. Harris is **ORDERED** to appear for a follow-up video deposition upon completion of Defendant's supplemental production of documents and discovery in response to RFP Nos. 41 and 42. Ms. Harris's video deposition shall be limited to two (2) hours in duration and completed on or before **September 27, 2019** at a mutually agreeable time as agreed to by the parties. The scope of the deposition shall be limited to the newly produced documents.

4. Plaintiff's request for evidentiary and/or monetary sanctions is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 17, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge