Kent B. Goss (SBN 131499)
  KGoss@crowell.com
Valerie M. Goo (SBN 187334)
  VGoo@crowell.com
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile:  213.622.2690

Molly A. Jones (SBN 301419)
  MoJones@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:   415.986.2827

Attorneys for Defendant
MILLERCOORS LLC

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>        Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MILLERCOORS LLC,<br><br>        Defendant/Counterclaim Plaintiff. | Case No.:  3:18-cv-00331-BEN-LL<br><br>**DEFENDANT MILLERCOORS LLC'S AMENDED PROPOSED JURY INSTRUCTIONS**<br><br>Judge:        Hon. Roger T. Benitez<br>Trial:         November 8, 2021<br>Courtroom:  5A |

Pursuant to Local Rules 16.1(f)(6)(c) and 51.1, the Court's Scheduling Order (Dkt. No. 72) and Order at the July 7, 2021 Status Conference (*see* Dkt. No. 472), and Federal Rule of Civil Procedure 51, Defendant and Cross-Complainant MillerCoors LLC ("Defendant") respectfully requests jury instructions in this matter as listed and described below. Standard jury instructions from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit are tailored to the issues and parties of this case; special instructions are set forth in full text below.

These proposed instructions may be subject to modification, amendment, withdrawal, or supplementation in response to, among other things, further evidentiary rulings by the Court and to the evidence that may be adduced at trial. Defendant reserves the right to revise, amend, withdraw, or supplement these proposed instructions: (1) in response to any instruction submitted by Plaintiff Stone Brewing Co., LLC ("Plaintiff"); (2) in response to any future evidentiary rulings by the Court; (3) in order to conform such instructions to the evidence presented at trial; and (4) for any other reason that the Court may deem proper and sufficient. Defendant also reserves the right to object to any instructions to the jury as finally formulated to the Court, and to request any issues on which a jury instruction has been submitted be withdrawn from the jury where appropriate as decided by the Court.

### INDEX OF DEFENDANT'S PROPOSED JURY INSTRUCTIONS

| No. | Jury Instruction | Page |
|-----|------------------|------|
| 1 | Claims and Defenses | 4 |
| 2 | Preliminary Instruction – Trademark | 7 |
| 3 | Trademark Liability—Theories and Policies | 13 |
| 4 | Infringement—Elements and Burden of Proof | 17 |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

| 5 | Presumed Validity and Ownership—Registered Trademark | 19 |
|---|---|---|
| 6 | Common Law Rights in Unregistered Marks | 24 |
| 7 | Priority of Use Through Tacking On | 27 |
| 8 | Trademark Ownership—Generally | 28 |
| 9 | Likelihood of Confusion—*Sleekcraft* Test | 31 |
| 10 | Length of Co-existence | 39 |
| 11 | Use of House Marks | 40 |
| 12 | Willfulness – Trademark Infringement | 42 |
| 13 | Willfulness – Conduct Not Sufficient | 44 |
| 14 | Trademark Dilution—Elements | 46 |
| 15 | Trademark Dilution – Definition of a Famous Trademark | 49 |
| 16 | Trademark Dilution – Definition of "Blurring" and "Tarnishment" | 52 |
| 17 | Trademark Dilution – Willful Dilution Required for Damages | 54 |
| 18 | Waiver | 55 |
| 19 | Estoppel – Elements | 57 |
| 20 | Acquiescence | 59 |
| 21 | Statute of Limitations | 61 |
| 22 | Actual or Statutory Notice | 63 |
| 23 | Plaintiff's Actual Damages | 64 |
| 24 | Corrective Advertising Damages | 69 |
| 25 | Lost Profit Damages | 72 |
| 26 | Reasonable Royalty Damages | 75 |
| 27 | Reasonable Royalty Damages – Presence or Absence of Intent to License | 81 |
| 28 | Defendant's Profits | 83 |
| 29 | No Double Recovery of Damages | 86 |

1    Dated:   July 14, 2021              Crowell & Moring LLP

2
                                        By: /s/ *Valerie M. Goo*
3                                           Kent B. Goss
                                            Valerie M. Goo
4                                           Molly A. Jones
                                            Attorneys for Defendant
5                                           MILLERCOORS LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1

**Defendant's Proposed Instruction No. 1**

2

**Claims and Defenses**

3

4        To help you follow the evidence, I will give you a brief summary of the

5 positions of the parties:

6 ~~The plaintiff asserts that [*plaintiff's claims*]. The plaintiff has the burden of proving~~

7 ~~these claims.~~

8        The Plaintiff in this case is Stone Brewing Company, LLC, who I will refer

9 to as "Plaintiff."

10       The Defendant in this case is MillerCoors LLC, who I will refer to as

11 "Defendant."

12       Plaintiff asserts that it owns trademark rights to the name STONE in

13 connection with its beer products. Plaintiff alleges that Defendant violated

14 Plaintiff's trademark rights by using the words STONE, STONES, 'STONE,

15 'STONES, or related slogans in connection with its beer products and that

16 Defendant has thereby committed trademark infringement, [and] trademark

17 dilution[, false designation of origin][, and unfair competition]. Plaintiff has the

18 burden of proving these claims.

19       Defendant denies those claims because Defendant asserts that it uses its own

20 registered Keystone trademark. Defendant also alleges that Plaintiff cannot meet its

21 burden of proof to show that Plaintiff was the first to use the trademark at issue,

22 that Defendant's use of the trademark at issue created a likelihood of confusion

23 between Plaintiff's and Defendant's products, or that Plaintiff's trademark is

24 famous. Defendant also claims that Plaintiff's claims against Defendant fail because

25 Plaintiff waived its right to enforce its trademark against Defendant and did so

26 freely and knowingly. Defendant also claims that Plaintiff's delay in filing this

27 lawsuit is barred in part by the statute of limitations, and therefore, any alleged

28 damages occurring before the limitations period are not recoverable.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

~~The defendant denies those claims [and also contends that [~~*~~defendant's~~*

*~~counterclaims and/or affirmative defenses~~*~~]]. [The defendant~~Defendant has the

burden of proof on ~~these [~~*~~counterclaims and/or~~*~~each of its~~ affirmative defenses.~~]]~~

~~[The plaintiff denies [~~*~~defendant's counterclaims and/or affirmative defenses~~*~~].]~~

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 1.5

(modified) and comments thereto; Dkt. Nos. 1, 19; *Secular Orgs. for Sobriety, Inc.*

*v. Ullrich*, 213 F.3d 1125, 1130 (9th Cir. 2000) ("to prevail on its trademark claim,

[plaintiff] must demonstrate that it was the first user of the disputed marks").

*Defendant's Comment:*  The bracketed text is offered in the alternative if the Court

chooses to include these claims in the instruction.  However, the reference to

Plaintiff's claim for unfair competition is improper, unnecessary, and confusing, as

Plaintiff's unfair competition claim brought pursuant to California Business &

Professions Code Section 17200 is an equitable claim that is to be decided by the

Court and not the jury. *Hodge v. Superior Court*, 145 Cal.App.4th 278, 284 (2006);

*People v. First Federal Credit*, 104 Cal.App.4th 721, 732-33 (2002). Similarly,

reference to Plaintiff's claim for false designation of origin is improper,

unnecessary, redundant and confusing because the elements are the same as

trademark infringement. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d

1194, 1201 (9th Cir. 1997) ("[T]he ultimate test is whether the public is likely to be

deceived or confused by the similarity of the marks. . . . Whether we call the

violation infringement, unfair competition or false designation of origin, the test is

identical–is there a 'likelihood of confusion?'"). Accordingly, Defendant has

bracketed ("[]") for removal reference to Plaintiff's unfair competition and false

designation of origin claims throughout these proposed instructions. Defendant

expressly reserves the right to include reference to its equitable affirmative defenses

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    and counterclaims (e.g. acquiescence and estoppel) to the extent the Court

2    determines to seek an advisory opinion as to one or more of these issues.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 2**

**Preliminary Instruction – Trademark**

~~The plaintiff, [*name of plaintiff*],~~Plaintiff seeks damages against the ~~defendant, [*name of defendant*], for~~ [Defendant for trademark infringement]~~[~~ [and] trademark dilution[, false designation of origin][, and unfair competition]. ~~The defendant~~Defendant denies ~~[~~infringing or diluting the trademark~~]~~ [, and unfairly competing] ~~[and] [contends the trademark is invalid]~~.  Defendant contends that, as between the parties, it has prior trademark rights, and therefore, Plaintiff cannot enforce the STONE trademark against Defendant. Defendant also contends that Plaintiff cannot enforce the STONE trademark against Defendant because it unreasonably delayed in bringing this action which caused prejudice to Defendant. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

### DEFINITION AND FUNCTION OF A TRADEMARK

A trademark (also called a "mark") is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The ~~[owner]~~ ~~[assignee] [licensee]~~ of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

### ~~[~~HOW A TRADEMARK IS OBTAINED~~]~~

~~[~~A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.~~]~~ Use of a mark occurs when it is used or displayed in the sale or advertising of products and the products are supplied in commerce.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1                 [TRADEMARK INTERESTS]

2 [The owner of a trademark may transfer, give, or sell to another person the owner's

3 interest in the trademark. This type of [agreement] [gift] is called an assignment,

4 and the person who receives the owner's interest is called an assignee and becomes

5 the owner of the mark. An assignee has the right to exclude others from using the

6 trademark or a similar mark that is likely to cause confusion in the marketplace. To

7 be enforceable, the assignment must be in writing and signed. It must also include

8 the goodwill of the business connected with the trademark.]

9 [The owner of a trademark may [also] enter into an agreement that permits another

10 person to use the trademark. This type of agreement is called a license, and the

11 person permitted to use the trademark is called a licensee.]

12 A trademark [owner] [assignee] [licensee] may enforce the right to exclude others

13 in an action for [infringement] [or] [*insert applicable form of unfair competition*

14 *from 15 U.S.C. § 1125(a)*].

15                 [TRADEMARK REGISTRATION]

16         [After theThe owner of a trademark has obtained the right to exclude others

17 from using the trademark, the owner may obtain a certificate of registration issued

18 by the United States Patent and Trademark Office. Thereafter, when the owner

19 brings an action for infringement, the owner may rely solely on the registration

20 certificate to prove that the owner has the right to exclude others from using the

21 trademark or a similar mark that is likely to cause confusion in the marketplace in

22 connection with the type of goods specified in the certificate.][ These presumptions

23 in favor of the owner created by the certificate of registration can be overcome or

24 rebutted only by certain types of evidence that I will describe to you later as

25 appropriate.]if Defendant proves that it used and registered its own KEYSTONE

26 trademark before Plaintiff registered the STONE mark, or that Defendant used

27 STONE, STONES, 'STONE, 'STONES, or related slogans before Plaintiff

28 obtained its trademark registration. The owner of a trademark is not required to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

obtain a certificate of registration issued by the United States Patent and Trademark Office in order to be entitled to trademark rights.

**[TRADEMARK RIGHTS AND LIKELIHOOD OF CONFUSION]**

[To prove infringement, ~~the plaintiff~~ Plaintiff must prove, by a preponderance of the evidence, that: 1) the ~~defendant~~STONE trademark is a valid, protectable trademark; 2) Plaintiff was the first to use the trademark; and 3) Defendant, without the ~~plaintiff's~~Plaintiff's consent, used in commerce a ~~reproduction, copy, counterfeit or colorable imitation of plaintiff's~~ mark in connection with the distribution or advertisement of goods, such that ~~the defendant's~~Defendant's use of the ~~mark~~trademark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by ~~the defendant~~Defendant be an exact copy of ~~the plaintiff's mark~~Plaintiff's trademark. Rather, ~~the plaintiff~~Plaintiff must demonstrate that, viewed in its entirety, the mark used by ~~the defendant~~Defendant is likely to cause confusion in the minds of reasonably prudent ~~purchasers~~consumers or users as to the source of the ~~product~~products in question.] I will instruct you further on the meaning of "likelihood of confusion."

**TRADEMARK DILUTION**

Plaintiff also brings claims for trademark dilution. I will separately instruct you on the elements of Plaintiff's trademark dilution claims.

~~THE PLAINTIFF'S~~ BURDEN OF PROOF

In this case, ~~the plaintiff, [*name of plaintiff*],~~Plaintiff contends that ~~the defendant, [*name of defendant*],~~Defendant has infringed ~~the plaintiff's trademark. The plaintiff~~Plaintiff's trademark, [and] has diluted its trademark[, and has falsely designated the origin of its goods][, and has engaged in unfair competition]. Plaintiff has the burden of proving by a preponderance of the evidence ~~that the plaintiff is the owner of a valid trademark and that the defendant infringed that trademark. Preponderance of the evidence means that you must be persuaded by the~~

evidence that it is more probably true than not true that the defendant infringed the plaintiff's trademark. the elements of these claims. Defendant contends that Plaintiff cannot recover for its claims because Plaintiff waived its right to enforce its trademark against Defendant and did so freely and knowingly; or because Plaintiff believed Defendant was potentially infringing the STONE trademark, and Plaintiff's actions or failure to act led Defendant to reasonably believe that Plaintiff did not intend to enforce its trademark rights against Defendant (this is known as "estoppel"). Defendant has the burden of proving by a preponderance of the evidence the elements of these affirmative defenses. [THE DEFENDANT'S BURDEN OF PROOF] [The defendant contends that [the [registered] trademark is invalid] [,] [the trademark has been abandoned] [or] [*insert other affirmative defense*]. The defendant has the burden of proving by a preponderance of the evidence that [the [registered] trademark] is invalid] [,] [the trademark has been abandoned] [or] [*insert other affirmative defense*].] [Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the [[registered] trademark is invalid] [or] [*insert other affirmative defense*].].

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instructions 15.1 and 15.2 (modified) and comments thereto. "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark . . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996); *see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1051 (9th Cir. 1999) ("a fundamental tenet of trademark law is that ownership of an inherently distinctive mark . . . is governed by priority of use. . . . The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion"; trademarks identify the source of goods); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 946-47 (N.D. Cal. 2005) ("To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove the existence of a trademark and the *subsequent* use of that mark by another in a manner likely to create consumer confusion.") (emphasis added); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) ("It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority."); *Dep't of Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1125 (9th Cir. 2006) ("[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."); *JL Beverage Co., LLC v. Beam, Inc.*, 899 F. Supp. 2d 991, 1010 (D. Nev. 2012) ("The Ninth Circuit has consistently held that state common law claims of unfair competition are substantially congruent to claims made under the Lanham Act.");

Unfair Competition: 15 U.S.C. § 1125(a); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988) ("The 'ultimate test' for unfair competition is exactly the same as for trademark infringement."); *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979) (citations omitted). A plaintiff is not entitled to rely on the presumption of validity afforded to registered trademarks. *Converse, Inc. v. Int'l Trade Commission Sketchers U.S.A., Inc.*, 909 F.3d 1110, 1117 (Fed. Cir. 2018) ("[U]nder the statute, the registration and its accompanying presumption of secondary meaning operate only prospectively from the date of registration, i.e., the date on which the Patent and Trademark Office ('PTO') determined that secondary meaning had been acquired.").

*Defendant's Comment:*  Defendant requests that this Instruction No. 2 be read to the jury before trial with the other preliminary instructions and at the end of trial. The bracketed text is offered in the alternative if the Court chooses to include these

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1   claims in the instruction.  However, the reference to Plaintiff's claim for unfair

2   competition is improper, unnecessary, and confusing, as Plaintiff's unfair

3   competition claim brought pursuant to California Business & Professions Code

4   Section 17200 is an equitable claim that is to be decided by the Court and not the

5   jury. *Hodge v. Superior Court*, 145 Cal.App.4th 278, 284 (2006); *People v. First*

6   *Federal Credit*, 104 Cal.App.4th 721, 732-33 (2002). Similarly, reference to

7   Plaintiff's claim for false designation of origin is improper, unnecessary, redundant

8   and confusing because the elements are the same as trademark infringement. *New*

9   *West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997)

10  ("[T]he ultimate test is whether the public is likely to be deceived or confused by

11  the similarity of the marks. . . . Whether we call the violation infringement, unfair

12  competition or false designation of origin, the test is identical–is there a 'likelihood

13  of confusion?'"). Accordingly, Defendant has bracketed ("[]") for removal

14  reference to Plaintiff's unfair competition and false designation of origin claims

15  throughout these proposed instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendant's Proposed Instruction No. 3**

**Trademark Liability—Theories and Policies**

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if ~~the defendant~~Defendant is liable to ~~the plaintiff~~Plaintiff for violating the trademark law. These facts are relevant to whether ~~the defendant~~Defendant is liable for:

[1.    infringing ~~plaintiff's registered~~Plaintiff's alleged trademark rights, by using a trademark in a manner likely to cause confusion among consumers]~~[;]~~ ~~[2. unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

2.    diluting Plaintiff's alleged trademark rights by improperly creating an association arising from the similarity between Defendant's product and a famous mark in a way that impairs the distinctiveness of the famous mark or that harms the reputation of the famous mark.

[3.    [unfairly competing, by using ~~trade dress~~a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods.]~~[;]~~ Trademark law does not protect against confusion generally, but rather, against the likelihood of confusion among an appreciable number of reasonably prudent

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    <u>purchasers or users. Trademark infringement also requires proof that confusion is</u>

2    <u>probable and not merely possible.</u>

3    ~~[4.    infringing plaintiff's trade name, by using similar corporate, business~~

4    ~~or professional names in a manner likely to cause confusion about the source of~~

5    ~~products in the minds of consumers] [;] [and]~~

6    ~~[5.    false advertising, by making a false statement that was material and~~

7    ~~that tended to deceive consumers, injuring the plaintiff in the market].~~

8

9    *Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.5

10   (modified) and comments thereto; *Mattel, Inc. v. Walking Mountain Prods.*, 353

11   F.3d 792, 806-07 (9th Cir. 2003) ("Generally, to assess whether a defendant has

12   infringed on a plaintiff's trademark, we apply a 'likelihood of confusion' test that

13   asks whether use of the plaintiff's trademark by the defendant is 'likely to cause

14   confusion or to cause mistake, or to deceive as to the affiliation, connection, or

15   association' of the two products.") (citations omitted); "The limited purpose of

16   trademark protections set forth in the Lanham Trade-Mark Act, is to 'avoid

17   confusion in the marketplace' by allowing a trademark owner to 'prevent[ ] others

18   from duping consumers into buying a product they mistakenly believe is sponsored

19   by the trademark owner.'" *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d

20   792, 806-07 (9th Cir. 2003) ("Generally, to assess whether a defendant has

21   infringed on a plaintiff's trademark, we apply a 'likelihood of confusion' test that

22   asks whether use of the plaintiff's trademark by the defendant is 'likely to cause

23   confusion or to cause mistake, or to deceive as to the affiliation, connection, or

24   association' of the two products.") (citations omitted). Federal trademark law

25   addresses "the dual purposes of infringement law: ensuring that owners of

26   trademarks can benefit from the goodwill associated with their marks and that

27   consumers can distinguish among competing producers." *Thane Int'l v. Trek*

28   *Bicycle Corp.*, 305 F.3d 894, 900-01 (9th Cir. 2002); *New West Corp. v. NYM Co.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

*of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997) ("[T]he ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical–is there a 'likelihood of confusion?'").

Defendant proposes adding the final paragraph to explain to the jury the function of trademark laws and the distinction between "confusion" in general as opposed to actionable trademark confusion. This is an important distinction. The proposed language comes directly from the Ninth Circuit's decision in *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted); *M2 Software, Inc. v. Madacy Entm't.*, 421 F.3d 1073, 1080, 1083-85 (9th Cir. 2005) (confusion must be "probable, not merely possible" among "an appreciable number" of "prudent" purchasers).

*Defendant's Comment:*  The bracketed text is offered in the alternative if the Court chooses to include these claims in the instruction.  However, the reference to Plaintiff's claim for unfair competition is improper, unnecessary, and confusing, as Plaintiff's unfair competition claim brought pursuant to California Business & Professions Code Section 17200 is an equitable claim that is to be decided by the Court and not the jury. *Hodge v. Superior Court*, 145 Cal.App.4th 278, 284 (2006); *People v. First Federal Credit*, 104 Cal.App.4th 721, 732-33 (2002). Similarly, reference to Plaintiff's claim for false designation of origin is improper, unnecessary, redundant and confusing because the elements are the same as trademark infringement. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997) ("[T]he ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical–is there a 'likelihood of confusion?'"). Accordingly, Defendant has

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1  bracketed ("[]") for removal reference to Plaintiff's unfair competition and false

2  designation of origin claims throughout these proposed instructions.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 4**

**Infringement—Elements and Burden of Proof**


On ~~the plaintiff's~~Plaintiff's claim for trademark infringement, ~~the plaintiff~~Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. [*describe the plaintiff's symbol or term*] ~~is a valid,~~         The STONE trademark is valid and protectable ~~trademark;~~

~~2. the plaintiff owns [*describe the plaintiff's symbol or term*] as a trademark; and~~

2.      Plaintiff was the first to actually use the STONE trademark in the sale of goods or services; and

3.      ~~the defendant used [*describe symbol or term used by the defendant*] [a mark~~  Defendant used a trademark similar ~~to [*describe the plaintiff's symbol or term*]~~or identical to Plaintiff's trademark without the consent of ~~the plaintiff~~Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. If you find that each of ~~the~~these three elements on which ~~the plaintiff~~Plaintiff has the burden of proof has been ~~proved~~proven, and you find that Defendant has not proven any of its affirmative defenses by a preponderance of the evidence, your verdict on trademark infringement should be for ~~the plaintiff~~Plaintiff. If, on the other hand, ~~the plaintiff~~Plaintiff has failed to prove any of these elements, your verdict should be for ~~the defendant~~Defendant.


*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.6 (modified) and comments thereto; ABA Model Jury Instructions Business Torts Litigation 4.2.4 (Jury's Reliance on Improper Fact) (modified); 15 U.S.C. §§ 1114, 1125; *Gracie v. Gracie*, 217 F.3d 1060, 1066-67 (9th Cir. 2000) (noting that, when instructing jury to consider if defendant "used" plaintiff's mark, trial court should

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

make it clear jury can consider whether the marks were similar); *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (to prove trademark infringement, a trademark holder must show that a defendant's use of its trademark is likely to cause confusion, to cause mistake or to deceive); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("Overall, the plaintiff retains the ultimate burden of persuasion in a trademark infringement action, namely proof of infringement. A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1
2

**Defendant's Proposed Instruction No. 5**

**Presumed Validity and Ownership—Registered Trademark**

3

4      I gave you instruction number [*insert number of instruction regarding*
5  *Trademark Elements and Burden of Proof, e.g.,* 15.6] that requires ~~the~~
6  ~~plaintiff~~Plaintiff to prove by a preponderance of the evidence [that the trademark is
7  valid and protectable]{ and}{ that the ~~plaintiff~~Plaintiff owns the trademark]. [A
8  valid trademark is a word, name, symbol, device, or any combination of these, that
9  indicates the source of goods and distinguishes those goods from the goods of
10  others. A trademark becomes protectable after it is used in commerce.]

11      One way for ~~the plaintiff~~Plaintiff to prove trademark validity is to show that
12  the trademark is registered. An owner of a trademark may obtain a certificate of
13  registration issued by the United States Patent and Trademark Office and may
14  submit that certificate as evidence [of the validity and protectability of the
15  trademark]{ and}{ of the certificate holder's ownership of the trademark] covered
16  by that certificate.

17      Exhibit [___] is a certificate of registration from the United States Patent and
18  Trademark Office _for STONE_. [It was submitted by ~~the plaintiff~~Plaintiff as proof of
19  the validity of the trademark [and]{ that ~~the plaintiff~~Plaintiff owns the trademark].]

20      The facts recited in this certificate are: [*summarize certificate entries as to*
21  *validity and ownership of trademark, as well as limitations on the registration*].
22  ~~However, the defendant submitted evidence to dispute these recitals. The defendant~~
23  ~~alleges that the certificate cannot be considered proof of [[validity] [and]~~
24  ~~[ownership]]of the trademark because [*insert § 1115(b) defense[s] raised by*~~
25  ~~*defendant, e.g., the trademark had been abandoned, the defendant's fair use of the*~~
26  ~~*trademark, etc.*].Plaintiff applied for a certificate of registration from the United
27  States Patent and Trademark Office for STONE for beers and ales on April 4, 1996.
28  The United States Patent and Trademark Office issued a certificate of registration

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

for U.S. Registration No. 2168093 on June 23, 1998.

Defendant alleges that the certificate cannot be considered proof of the validity and ownership of the trademark because Defendant used and registered its KEYSTONE mark before Plaintiff registered the STONE mark, and because Defendant used STONE, STONES, 'STONE, 'STONES, or related slogans before Plaintiff obtained its trademark registration and therefore has priority of use over Plaintiff. Exhibit [___] is a certificate of registration from the United States Patent and Trademark Office for KEYSTONE. It was submitted by Defendant as proof of the validity of the KEYSTONE trademark and that Defendant owns the KEYSTONE trademark.

The test of ownership in trademark law is priority of use.  To acquire ownership of a trademark, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.

[Unless ~~the defendant~~Defendant proves by a preponderance of the evidence that *~~[insert § 1115(b) defense[s] raised by defendant, e.g., that the trademark was abandoned]~~*Defendant used and registered its own KEYSTONE trademark before Plaintiff registered the STONE mark, or that Defendant used STONE, STONES, 'STONE, 'STONES, or related slogans before Plaintiff obtained its trademark registration, you must consider the trademark to be conclusively proved as [[valid][ and][ owned by ~~the plaintiff]]~~Plaintiff. However, if ~~the defendant shows that [~~*insert § 1115(b) defense[s] raised, e.g., the trademark was abandoned]*Defendant proves by a preponderance of the evidence that it used its own registered Keystone trademark or STONE, STONES, 'STONE, 'STONES, or related slogans before Plaintiff obtained its trademark registration and therefore has priority of use over Plaintiff, then the facts stated in the certificate [*~~summarize certificate entries disputed by defendant's proof~~*] are no longer conclusively presumed to be correct~~.~~ ~~[You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence~~

1   that the trademark is [[valid] [and] [owned by the plaintiff]], as I explain in

2   Instruction [*insert number of instruction regarding Trademark Elements and*

3   *Burden of Proof, e.g., 15.6*].~~.~~, and your verdict must be for Defendant.

4

5   *Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.8

6   (modified) and comments thereto; *see also id.*, No. 15.6; 15 U.S.C. § 1065; 15

7   U.S.C. § 1115(b); *Brookfield Communications Inc. v. West Coast Entertainment*

8   *Corp.*, 174 F.3d 1036, 1046-47 n.10 (9th Cir. 1999); *Sengoku Work Ltd. v. RMC*

9   *Intern., Ltd.,* 96 F.3d 1217, 1219-20 (9th Cir. 1996) (noting that registrant is

10  granted a presumption of ownership under the Lanham Act and "challenger must

11  overcome this presumption by a preponderance of the evidence."*); Vuitton et Fils*

12  *S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775-76 (9th Cir. 1981) (noting that

13  presumption of validity of a registered mark must be overcome by a preponderance

14  of the evidence); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir.

15  2002) ("Validity . . . is a threshold issue. On this point, the plaintiff in an

16  infringement action with a registered mark is given the prima facie or presumptive

17  advantage on the issue of validity, thus shifting the burden of production to the

18  defendant to prove otherwise'"); 15 U.S.C. § 1056; *Quantum Fitness Corp. v.*

19  *Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 824 (S.D. Tex. Aug. 12, 1999);

20  "It is axiomatic in trademark law that the standard test of ownership is priority of

21  use. To acquire ownership of a trademark . . . the party claiming ownership must

22  have been the first to actually use the mark in the sale of goods or services."

23  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), *as*

24  *modified*, 97 F.3d 1460 (9th Cir. 1996); *see also Brookfield Commc'ns, Inc. v. W.*

25  *Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("a fundamental tenet of

26  trademark law is that ownership of an inherently distinctive mark . . . is governed

27  by priority of use. . . . The first to use a mark is deemed the 'senior' user and has

28  the right to enjoin 'junior' users from using confusingly similar marks in the same

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-21-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

industry and market or within the senior user's natural zone of expansion."); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 946-47 (N.D. Cal. 2005) ("To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove the existence of a trademark and the *subsequent* use of that mark by another in a manner likely to create consumer confusion.") (emphasis added); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) ("It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority."); *Dep't of Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1125 (9th Cir. 2006) ("[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). While Plaintiff may be entitled to a presumption, once Defendant presents evidence of its prior use, Plaintiff bears the burden of proving that it was the first to use the STONE mark as between the parties. *See Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) ("The presumption of validity that federal registration confers (*see* 15 U.S.C. § 1115(a)) evaporates as soon as evidence of invalidity is presented. *Liquid Controls Corp. v. Liquid Control Corp.*, [802 F.2d 934, 938 (7th Cir. 1984)]. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case."); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1022 (C.D. Cal. 2011) ("Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption evaporates as soon as evidence of invalidity is presented."). A plaintiff is not entitled to rely on the presumption of validity afforded to registered trademarks. *Converse, Inc. v. Int'l Trade Commission Sketchers U.S.A., Inc.*, 909 F.3d 1110, 1117 (Fed. Cir. 2018) ("[U]nder the statute, the registration and its accompanying presumption of secondary meaning operate only prospectively from the date of registration, i.e., the date on which the Patent and Trademark Office ('PTO') determine that secondary meaning had been acquired."); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199 n.6

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1  (1985) (If one of the exceptions to incontestable registration is proven, the

2  registration is no longer conclusive but merely prima facie evidence of the

3  registrant's right to ownership and the mark's validity (i.e., it becomes simply a

4  contestable registration)).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-23-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1
2

**Defendant's Proposed Instruction No. 6**
**Common Law Rights in Unregistered Marks**

3

4       A person may acquire trademark rights regardless of whether it registered the

5    trademark.  This type of trademark rights is called "common law" rights.

6       Defendant contends that, as between the parties, it has prior rights to the

7    STONE mark, and therefore, Plaintiff cannot enforce the STONE trademark against

8    Defendant.

9       To determine whether Defendant has acquired common law rights to the

10   STONE trademark, you must consider whether the evidence shows that Defendant

11   used STONE, STONES, 'STONE, 'STONES, or related slogans as a trademark for

12   its beer products. Rights in a trademark are obtained only through commercial use

13   of the mark. A trademark is "used" for purposes of this instruction when it is

14   transported or sold in commerce and the trademark is attached to the product, or

15   placed on its label or container.

16      Defendant's use of the STONE trademark must not have constituted merely a

17   token use of the STONE trademark. Token use is that which is sporadic, casual, or

18   transitory and which is not part of an ongoing program to exploit the trademark in a

19   commercial sense.

20

21   *Source and Authorities:* ABA Model Jury Instructions Business Torts Litigation,

22   4.4.2 (Priority of Use: Inherently Distinctive Marks) (modified); 5 McCarthy on

23   Trademarks and Unfair Competition § 26:40 (5th ed.) ("Neither application for nor

24   registration of a mark at the federal level wipes out the prior non-registered,

25   common law rights of others. The non-registered rights of a senior user continue

26   and are not trumped by the later federal registration of a junior user.).  "It is

27   axiomatic in trademark law that the standard test of ownership is priority of use. To

28   acquire ownership of a trademark . . . the party claiming ownership must have been

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-24-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996); *see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("a fundamental tenet of trademark law is that ownership of an inherently distinctive mark . . . is governed by priority of use. . . . The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 946-47 (N.D. Cal. 2005) ("To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove the existence of a trademark and the *subsequent* use of that mark by another in a manner likely to create consumer confusion.") (emphasis added); 15 U.S.C. § 1127 ("The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—[¶] (1) on goods when—[¶] (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and [¶] (B) the goods are sold or transported in commerce."); *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) ("It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority."); *Dep't of Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1125 (9th Cir. 2006) ("[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). The "first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market *or* within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (emphasis added). These

1   instructions make clear that advertising coupled with offering the advertised goods

2   establishes trademark use, and rights can begin to accrue when the advertising takes

3   place, even if the goods are actually offered later. The totality of the circumstances

4   test established by *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir.

5   2001) controls the question of what activities are sufficient to establish common

6   law use of a mark for purposes of establishing priority. "The cases are legion to the

7   effect that for inherently distinctive marks, ownership is governed by priority of

8   use. For such marks, the first to use a designation of a mark in the sale of goods or

9   services is the 'owner' and 'senior user.' These marks are given legal protection

10  against infringement immediately upon adoption and use in trade." 2 McCarthy on

11  Trademarks and Unfair Competition § 16:4 (5th ed.). Defendant's proposed

12  instructions properly encapsulate that test. Under 15 U.S.C. § 1065, an otherwise

13  incontestable registration is ineffective as against a party whose nationwide use of

14  the mark began before the registration date and has continued to the present day.

15  *Watec Co. v. Liu*, 403 F.3d 645, 652-55 (9th Cir. 2005); *Cuban Cigar Brands N.V.*

16  *v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1100 (S.D.N.Y. 1978), *aff'd*, 607 F.2d

17  995 (2d Cir. 1979) (same). Defendant would propose that this instruction be placed

18  before any instruction relating to ownership of trademark registration; *see also*

19  Ninth Circuit Model Civil Jury Instruction 15.9 and comments thereto.

20

21

22

23

24

25

26

27

28

**Defendant's Proposed Instruction No. 7**

**Priority of Use Through Tacking On**

A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where consumers would consider the previously used mark and the latter mark as the same mark. This is called "tacking" or "tacking on." The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked. Small and insignificant changes in the format or appearance of the mark are not material differences that prevent a finding of prior use through tacking.

*Source and Authorities:  See Hana Financial, Inc. v. Hana Bank*, 735 F.3d 1158, 1166-67 (9th Cir. 2013), aff'd, 135 S. Ct. 907 (2015) (The target customers were Korean expatriates and Korean Americans with a preexisting awareness of the HANA Bank because of its presence in Korea. "[V]iewing the marks in context and in their entirety, the ordinary purchasers could perceive them as conveying the same idea or meaning or evoking the same mental reaction. Consequently, there was sufficient evidence to support the jury's verdict on trademark priority."); *see Solar Sun Rings, Inc. v. Secard Pools*, 2016 WL 6833425 (C.D. Cal. 2016) (applying tacking to common law trademark).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-27-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 8**

**Trademark Ownership—Generally**

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer. [A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of [relevant] consumers, an association between the person and the mark prior to the alleged infringer's use.]Use of a trademark occurs when it is used or displayed in the sale or advertising of goods and the goods are supplied in commerce.

[If you find the plaintiff's [*describe*Plaintiff's STONE trademark] to be valid [that is, [inherently distinctive]], you must consider whether the plaintiff used the [*describe trademark*] as a trademark for plaintiff's [*identify the plaintiff's product*] before the defendant began to use the [*describe trademark*] to market its [*identify the defendant's product*] in the area where the plaintiff sells its [*identify the plaintiff's product*].]Plaintiff began using STONE as a trademark before or after Defendant began using STONE, STONES, 'STONE, 'STONES, or related slogans to market its products.

[A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container [or if that is not practical, placed on documents associated with the goods or their sale].].

[If the plaintiffPlaintiff has not shown by a preponderance of the evidence that the plaintiff used [*describe trademark*] before the defendant's use of [*describe trademark*], then you cannotPlaintiff used STONE before Defendant used STONE, STONES, 'STONE, 'STONES, or related slogans, then you must conclude that the plaintiff isPlaintiff is not the owner of the trademark [for purposes of Instruction

1   [~~insert number of instruction regarding Infringement—Elements—Presumed~~
2   ~~Validity and Ownership—Registered Marks, e.g., 15.8~~].]and cannot enforce the
3   STONE trademark against Defendant.

4

5   *Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.13
6   (modified) and comments thereto. "It is axiomatic in trademark law that the
7   standard test of ownership is priority of use. To acquire ownership of a trademark . .
8   . the party claiming ownership must have been the first to actually use the mark in
9   the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d
10  1217, 1219 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996); *see also*
11  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir.
12  1999) ("a fundamental tenet of trademark law is that ownership of an inherently
13  distinctive mark . . . is governed by priority of use. . . . The first to use a mark is
14  deemed the 'senior' user and has the right to enjoin 'junior' users from using
15  confusingly similar marks in the same industry and market or within the senior
16  user's natural zone of expansion."); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 946-47
17  (N.D. Cal. 2005) ("To prevail on a trademark infringement claim under the Lanham
18  Act, a plaintiff must prove the existence of a trademark and the *subsequent* use of
19  that mark by another in a manner likely to create consumer confusion.") (emphasis
20  added); 15 U.S.C. § 1127 ("The term 'use in commerce' means the bona fide use of
21  a mark in the ordinary course of trade, and not made merely to reserve a right in a
22  mark. For purposes of this chapter, a mark shall be deemed to be in use in
23  commerce—[¶] (1) on goods when—[¶] (A) it is placed in any manner on the goods
24  or their containers or the displays associated therewith or on the tags or labels
25  affixed thereto, or if the nature of the goods makes such placement impracticable,
26  then on documents associated with the goods or their sale, and [¶] (B) the goods are
27  sold or transported in commerce."); The "first to use a mark is deemed the 'senior'
28  user and has the right to enjoin 'junior' users from using confusingly similar marks

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-29-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

in the same industry and market *or* within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (emphasis added). These instructions make clear that advertising coupled with offering the advertised goods establishes trademark use, and rights can begin to accrue when the advertising takes place, even if the goods are actually offered later. The totality of the circumstances test established by *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) controls the question of what activities are sufficient to establish common law use of a mark for purposes of establishing priority. "The cases are legion to the effect that for inherently distinctive marks, ownership is governed by priority of use. For such marks, the first to use a designation of a mark in the sale of goods or services is the 'owner' and 'senior user.' These marks are given legal protection against infringement immediately upon adoption and use in trade." 2 McCarthy on Trademarks and Unfair Competition § 16:4 (5th ed.). Defendant's proposed instructions properly encapsulate that test. Under 15 U.S.C. § 1065, an otherwise incontestable registration is ineffective as against a party whose nationwide use of the mark began before the registration date and has continued to the present day. *Watec Co. v. Liu*, 403 F.3d 645, 652-55 (9th Cir. 2005); *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1100 (S.D.N.Y. 1978), *aff'd*, 607 F.2d 995 (2d Cir. 1979) (same). Defendant would propose that this instruction be placed before any instruction relating to ownership of trademark registration.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-30-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 9**

**Likelihood of Confusion—*Sleekcraft* Test**

You must consider whether ~~the defendant's~~Defendant's use of the trademark is likely to cause confusion about the source of ~~the plaintiff's or the defendant's goods~~Plaintiff's or Defendant's products.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)     Strength or Weakness of ~~the~~ Plaintiff's Mark. The more the consuming public recognizes ~~the plaintiff's~~Plaintiff's trademark as an indication of origin of ~~the plaintiff's~~Plaintiff's goods, the more likely it is that consumers would be confused about the source of ~~the defendant's~~Defendant's goods if ~~the defendant~~Defendant uses a similar mark.

(2)     Defendant's Use of the Mark. If ~~the defendant and plaintiff~~Defendant and Plaintiff use their trademarks on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)     Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by ~~the plaintiff's~~Plaintiff's trademark in the marketplace is similar to that created by ~~the defendant's~~Defendant's trademark in [appearance]~~[,~~ sound]~~[, or]~~[ meaning], there is a greater chance [that consumers are likely to be confused by ~~defendant's use of a mark]~~ [of likelihood of confusion]. ~~[Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.]~~use of the trademark.

CROWELL & MORING LLP
ATTORNEYS AT LAW

(4)     Actual Confusion. If use by ~~the defendant of the plaintiff's~~Defendant of Plaintiff's trademark has led to instances of actual confusion, such as where a customer bought the wrong product thinking it was made by a different company, this strongly suggests a likelihood of confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, ~~the defendant's~~Defendant's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by ~~the defendant~~Defendant creates for consumers a likelihood of confusion with ~~the plaintiff's~~Plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion, you may find that there has not been substantial actual confusion. Trademark law does not protect against confusion generally, but rather, against the likelihood of confusion among consumers in the context of a purchasing decision. Confusion must be probable and not merely possible.

(5)     Defendant's Intent. Knowing use by ~~defendant of the plaintiff's~~Defendant of Plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of ~~the plaintiff's~~Plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that ~~the defendant~~Defendant acted knowingly, the use of ~~plaintiff's~~Plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6)     Marketing/Advertising Channels. If ~~the plaintiff's and defendant's~~ [Plaintiff's and Defendant's goods~~] [services]~~ are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

(7)     Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in ~~the plaintiff's and defendant's~~ Plaintiff's and Defendant's trademarks.

(8)     Product Line Expansion. When the parties' products differ, you may consider how likely ~~the plaintiff~~ Plaintiff is to begin selling the products for which ~~the defendant~~ Defendant is using ~~the plaintiff's~~ Plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

(9)     Length of Co-Existence of the Products without Evidence of Actual Confusion. A long period of co-existence without evidence of actual confusion will tend to weigh against a finding of likelihood of actual confusion because some evidence of actual confusion should have become available if Plaintiff and Defendant's simultaneous use of the STONE trademark created a genuine likelihood of confusion.

(10)     Presence or Absence of House Marks. The presence of prominent house marks and logos on the product packaging can negate the likelihood of confusion, even if the marks are identical. A "house mark" is the name of the company manufacturing or producing the products at issue. The relevant inquiry in evaluating this factor is whether or not two identical marks are readily distinguishable in the context in which they are encountered in the marketplace.

(11)     Survey evidence.  You may also consider the survey evidence presented by the parties in this case.  It is up to you to decide how much weight to give such evidence.

[(9~~12~~)     Other Factors. *Insert* You may consider any other factors that bear on the likelihood of confusion.]

CROWELL
& MORING LLP
ATTORNEYS AT LAW
-33-
DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    This list of factors is not a score card or a checklist, so whether a party can

2  show a majority of these factors is not strictly the point of this test. You must

3  decide, in light of all of the evidence and the facts specific to this case, how much

4  importance to place on each individual factor.

5    Plaintiff bears the burden of proving by a preponderance of the evidence that

6  a likelihood of confusion among reasonably prudent consumers is probable and not

7  merely possible.

8

9  *Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.18

10  (modified) and comments thereto; *Murray v. Cable Nat'l Broadcasting Co.*, 86

11  F.3d 858, 861 (9th Cir. 1996) (confusion must be "probable, not simply a

12  possibility") (quoting *Rodeo Collection, Ltd. v. Western Seventh*, 812 F.2d 1215,

13  1217 (9th Cir. 1987)); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

14  1979); *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 792 F.3d 1070, 1074 (9th

15  Cir. 2015), opinion withdrawn, *see* 801 F.3d 930, 935 n.1 (9th Cir. 2015), cert.

16  denied, 136 S. Ct. 1231 (2016) (applying "eight non-exhaustive factors, known as

17  the *Sleekcraft* factors, to determine whether a trademark use gives rise to a

18  likelihood of confusion"); *Dr. Seuss Enters., L.P. v. Penguin Books*, 109 F.3d 1394,

19  1404 n.13 (9th Cir. 1997) (noting that Ninth Circuit uses eight-factor *Sleekcraft* test

20  "simply to be over-inclusive"); *Metro Pub., Ltd. v. San Jose Mercury News*, 987

21  F.2d 637, 640 (9th Cir. 1993) ("Because each factor [of eight-factor Sleekcraft test]

22  is not necessarily relevant to every case, this list functions as a guide and is 'neither

23  exhaustive nor exclusive.'") (citations omitted). *See generally Thane Intern., Inc. v.

24  Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) ("Unless properly used, this

25  long list of [likelihood of confusion] factors has the potential to befuddle the

26  inquiry. The list of factors is not a score-card–whether a party 'wins' a majority of

27  the factors is not the point. Nor should '[t]he factors ... be rigidly weighed; we do

28  not count beans.' *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-34-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

(9th Cir. 1998). 'Some factors are much more helpful than others, and the relative importance of each individual factor will be case specific.... [I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.' *Brookfield Communications [v. West Coast Entertainment]*, 174 F.3d [1036] at 1054 [(9th Cir. 1999)]."). A jury should be warned not to focus on any one factor and to consider all relevant evidence in assessing likelihood of confusion, by use of the second paragraph in this instruction. *See Kendall-Jackson Winery Ltd. v. E.& J. Gallo Winery*, 150 F.3d 1042, 1052, n.13 (9th Cir. 1998).

*De minimis evidence of confusion*: *See Japan Telecom, Inc. v. Japan Telecom Amer., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (confusion of those who personally knew plaintiff, including former customer, not indicative of confusion among buying public); *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) ("Art Attacks attempts to show secondary meaning by demonstrating actual consumer confusion between MGA's Bratz dolls and Art Attacks's Spoiled Brats designs. To support this claim, Art Attacks refers to testimony from three witnesses . . . . All three of these witnesses were Art Attacks employees or personal friends of Art Attacks founder [], or both. In *Japan Telecom*, we rejected evidence of actual confusion from witnesses who had personal relationships with the plaintiff company's president."); *Planet Coffee Roasters, Inc. v. Hung Dam*, No. SACV 09-00571-MLG, 2010 WL 625343, at *5 (C.D. Cal. Feb. 18, 2010) (From a review of the declarations in support of Plaintiff's motion, it would seem that Plaintiff has offered some evidence of actual confusion, although the declarations appear to be from Plaintiff's customers and others already familiar with Plaintiff's business. This is insufficient to establish evidence of actual confusion for purposes of a preliminary injunction."); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1054 (C.D. Cal. 2013) ("Several of the examples Plaintiff provided do not provide evidence that the individual is confused as to the source of the product, as

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-35-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

opposed to merely consumer error not related to name confusion," and "Stonefire Grill employees reported the few examples of actual confusion experienced by their family and friends. Numerous courts have disregarded similar examples."); *see Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1148 (C.D. Cal. 1998) (misdirected emails that are ambiguous as to whether the authors actually believed plaintiff was associated with defendant do not prove actual confusion); *ComponentOne v. ComponentArt*, 2008 U.S. Dist. LEXIS 87066 at *65-66 (W.D. Penn. 2008) *(de minimus* evidence of confusion failed to create a genuine issue as to likelihood of confusion because "glaring absence of explanations" regarding reasons for misdirected emails because Plaintiff failed to submit affidavits or testimony from the email authors); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (affirming summary judgment for defendant because confusion of one customer and one retailer too "scant" to support a likelihood of confusion); *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606-07 (9th Cir. 1987) (several misdirected checks and letters too "insignificant" to support a likelihood of confusion); *see also Alchemy II v. Yes! Entm't Corp.*, 844 F. Supp. 560, 570 n.12 (C.D. Cal. 1994) (summary judgment for defendant; even if admissible, fifteen misdirected phone inquiries was *de minimus*).

*House marks: See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) ("The *Sleekcraft* factors are not a scorecard a bean-counter, or a checklist.") (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002)); *Lindy Pen Co. v. Bik Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) (two identical marks were "readily distinguishable in the context in which they were encountered" because "the dominance of the company marks and logos on the pens themselves and on all packaging and promotional material, and the dissimilar and distinctive packaging and advertisement designs overc[a]me the similarity of the marks considered in

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-36-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

isolation"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (no confusion where parties used identical slogans, but each also displayed distinctive house marks that "present[ed] the dominant commercial identity"); *Edge Wireless, LLC v. U.S. Cellular Corp.*, 2004 WL 1661992, at *12 (D. Or. July 23, 2004) (no likelihood of confusion where defendant's use of EDGE mark was always featured alongside its commercially prominent U.S. CELLULAR mark); *Marix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003) (confusion unlikely as a matter of law where defendant always used TOYOTA brand name with MATRIC mark and plaintiff used MATRIC mark only with its design mark, making the parties' marks as encountered "considerably different").

*Long co-existence: See Cohn*, 281 F.3d at 842-43 (affirming grant of summary judgment for defendant despite identical marks and similar goods because "evidence of actual confusion should have become available if [the] coexisting use had created a genuine likelihood of confusion"); *Falcon Stainless, Inc. v. Rino Cos.*, 572 F. App'x 483, 485-86 (9th Cir. 2014) (affirming JMOL that "SWF" did not infringe "SWC" based in part on no actual confusion; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979) (absence of actual confusion may be "weighed heavily" when "such evidence should have been available"); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999) (lack of evidence about actual confusion after ample opportunity for confusion "can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion"); 5 McCarthy on Trademarks and Unfair Competition, § 23:18.

*Surveys:* Surveys in trademark cases are admitted as long as they are "conducted according to accepted principles." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (citing *Prudential Ins. Co. v. Gibralter Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982). While admissibility is a threshold question to be

Crowell
& Moring LLP
Attorneys At Law

-37-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

resolved by a judge, issues of methodology and qualifications of the expert go to the weight to be afforded to the evidence. *Id.* (citing *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1261, 1263 (9th Cir. 2001) ("Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-38-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 10**

**Length of Co-existence**

A long period of co-existence without evidence of actual confusion will tend to weigh against a finding of likelihood of actual confusion because some evidence of actual confusion should have become available if Plaintiff and Defendant's simultaneous use of the STONE trademark created a genuine likelihood of confusion. In other words, the longer the period of co-existence between the two products bearing the same or similar trademark, the more evidence of actual consumer confusion that would have accrued over time. If after reviewing the evidence you find a lack of instances of actual confusion of real consumers, you may determine that fact to strongly indicate that Defendant's use of the STONE trademark does not cause a meaningful likelihood of confusion.

*Source and Authorities: See Cohn*, 281 F.3d at 842-43 (affirming grant of summary judgment for defendant despite identical marks and similar goods because "evidence of actual confusion should have become available if [the] coexisting use had created a genuine likelihood of confusion"); *Falcon Stainless, Inc. v. Rino Cos.*, 572 F. App'x 483, 485-86 (9th Cir. 2014) (affirming JMOL that "SWF" did not infringe "SWC" based in part on no actual confusion; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979) (absence of actual confusion may be "weighed heavily" when "such evidence should have been available"); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999) (lack of evidence about actual confusion after ample opportunity for confusion "can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion"); 5 McCarthy on Trademarks and Unfair Competition, § 23:18.

**Defendant's Proposed Instruction No. 11**

**Use of House Marks**

The presence of prominent house marks and/or logos on the product packaging can negate the likelihood of confusion, even if the trademarks at issue in the case are identical. A "house mark" is the name of the company manufacturing or producing the products at issue. In this case, for example, Coors Brewing Company is the house mark of the Keystone branded beers. The relevant inquiry in evaluating this factor is whether or not two identical marks are readily distinguishable in the context in which they are encountered in the marketplace. If you find that the Plaintiff and/or Defendant's products display the name of the company and/or logo on the product packaging and promotional material, then that fact may overcome the similarity of the use of the trademark at issue when viewed in isolation.

*Source and Authorities: See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) ("The *Sleekcraft* factors are not a scorecard a bean-counter, or a checklist.") (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002)); *Lindy Pen Co. v. Bik Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) (two identical marks were "readily distinguishable in the context in which they were encountered" because "the dominance of the company marks and logos on the pens themselves and on all packaging and promotional material, and the dissimilar and distinctive packaging and advertisement designs overc[a]me the similarity of the marks considered in isolation"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (no confusion where parties used identical slogans, but each also displayed distinctive house marks that "present[ed] the dominant commercial identity"); *Edge Wireless, LLC v. U.S. Cellular Corp.*, 2004 WL 1661992, at *12 (D. Or. July 23, 2004) (no

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-40-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1  likelihood of confusion where defendant's use of EDGE mark was always featured

2  alongside its commercially prominent U.S. CELLULAR mark); *Marix Motor Co. v.*

3  *Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003)

4  (confusion unlikely as a matter of law where defendant always used TOYOTA

5  brand name with MATRIC mark and plaintiff used MATRIC mark only with its

6  design mark, making the parties' marks as encountered "considerably different").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-41-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 12**

**Willfulness – Trademark Infringement**

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.  Willfulness does not mean that Defendant merely took voluntarily and intentional actions to market its products in a certain way. Rather, willfulness requires that Defendant acted to purposefully cause confusion or deception in the marketplace by deliberately infringing Plaintiff's protected mark.  The defendant must have had a deliberate intent to deceive.  Mere knowledge is insufficient to show willfulness.

Plaintiff bears the burden of proving willfulness by a preponderance of the evidence.

*Source and Authorities:*  Eleventh Circuit Pattern Jury Instruction No. 15.13 ("A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff."); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds* ("Willful infringement carries a connotation of deliberate intent to deceive.  . . . [the infringement must be] "willfully calculated to exploit the advantage of an established mark." (citations omitted)); *Coach, Inc. v. Celco Customs Servs. Co.* 2014 WL 12573411, at *20 (C.D. Cal. June 5, 2014) ("the burden of proof with respect to willfulness under the Lanham Act is preponderance of the evidence") (rejecting *CollegeNET* as "without analysis" and relying on "repudiated" authority); *Versace v. Awada*, 2009 WL 10673371, at *3-4 (C.D. Cal. Sept. 4, 2009) ("Plaintiff has the burden of proving willfulness by a preponderance of the evidence"). *Willfulness Standard: Versace v. Awada*, 2009 WL 10673371, at *3-4 (C.D. Cal. Sept. 4, 2009) (supporting similar instruction);

*Hydra Media Grp. Inc.*, 392 F. App'x 522, 523 (9th Cir. 2010) (affirming finding of no willfulness where "Defendant initially adopted the contested mark [] before it knew that Plaintiff even existed" and where "there was no evidence that it sought to mislead consumers or usurp any goodwill associated with Plaintiff's mark."); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (finding no willfulness where plaintiff could not identify any evidence that defendant acted willfully, reasoning "mere knowledge is insufficient to show willfulness"); *id.* ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324 (9th Cir. 2015) ("[w]illful infringement carries a connotation of deliberate intent to deceive"); *Scat Enterprises, Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017) (decision to continue using mark after USPTO refused registration does not evidence a willfulness to exploit Plaintiff's mark."); *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1165 (N.D. Cal. 2011) ("[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith."); *Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark."); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1494 (2020) ("[w]ithout question, a defendant's state of mind may have a bearing on what relieve a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one."); *id.* at 1497 (Alito, J., concurring) ("The relevant authorities . . . show that willfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition.").

1

**Defendant's Proposed Instruction No. 13**

2

**Willfulness – Conduct Not Sufficient**

3

4        Plaintiff's proof of willfulness must also consist of more than evidence that

5 Defendant failed to stop using the trademark after receiving a cease and desist letter

6 from Plaintiff. The mere fact that Plaintiff sent a cease and desist letter shows only

7 that Plaintiff believed it had the right to prevent Defendant's use of the trademark

8 but is not evidence of Defendant's intent or whether it was acting in good or bad

9 faith. Similarly, Defendant's decision to continue using the trademark after the

10 United States Patent & Trademark Office refused Defendant's own registration for

11 the same or similar trademark is not sufficient to show that Defendant acted

12 intentionally to infringe Plaintiff's trademark. Evidence that Defendant's trademark

13 registration was denied on the basis of Plaintiff's pre-existing registration shows

14 that Defendant knew about Plaintiff's trademark but does not prove that Defendant

15 acted in bad faith when it continued to use the trademark.

16

17 *Source and Authorities: Coach, Inc. v. Celco Customs Servs. Co.* 2014 WL

18 12573411, at *20 (C.D. Cal. June 5, 2014) ("the burden of proof with respect to

19 willfulness under the Lanham Act is preponderance of the evidence") (rejecting

20 *CollegeNET* as "without analysis" and relying on "repudiated" authority); *Versace*

21 *v. Awada*, 2009 WL 10673371, at *3-4 (C.D. Cal. Sept. 4, 2009) ("Plaintiff has the

22 burden of proving willfulness by a preponderance of the evidence"). *Willfulness*

23 *Standard: Versace v. Awada*, 2009 WL 10673371, at *3-4 (C.D. Cal. Sept. 4, 2009)

24 (supporting similar instruction); *Hydra Media Grp. Inc.*, 392 F. App'x 522, 523

25 (9th Cir. 2010) (affirming finding of no willfulness where "Defendant initially

26 adopted the contested mark [] before it knew that Plaintiff even existed" and where

27 "there was no evidence that it sought to mislead consumers or usurp any goodwill

28 associated with Plaintiff's mark."); *Am. Auto. Ass'n of N. California, Nevada, &*

*Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (finding no willfulness where plaintiff could not identify any evidence that defendant acted willfully, reasoning "mere knowledge is insufficient to show willfulness"); *id.* ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324 (9th Cir. 2015) ("[w]illful infringement carries a connotation of deliberate intent to deceive"); *Scat Enterprises, Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017) (decision to continue using mark after USPTO refused registration does not evidence a willfulness to exploit Plaintiff's mark."); *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1165 (N.D. Cal. 2011) ("[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith.").

**Defendant's Proposed Instruction No. 14**

**Trademark Dilution—Elements**

In this case, Plaintiff also contends that Defendant has diluted Plaintiff's trademark. "Dilution" can be by "blurring" or "tarnishment." Blurring is an association arising from the similarity between a mark and a famous mark that impairs the distinctiveness of a famous mark. Tarnishment is an association arising from the similarity between a mark and a famous mark that harms the reputation of the famous mark. The purpose of the anti-dilution laws is to protect against erosion of a famous trademark's value. Dilution is reserved for a limited set of trademarks that are famous, those marks with such powerful consumer associations that even non-competing users can impinge on their value. In other words, famous marks are so widely known that they are like a household name among members of the general public. It will be for you to decide whether Plaintiff's trademark is sufficiently famous to be entitled to protection under dilution law and, if so, whether the trademark has been diluted. I will separately instruct you as to what to consider to determine whether Plaintiff's trademark is famous.

To prove a claim for trademark dilution, Plaintiff has the burden of proving by a preponderance of the evidence each of the following elements:

1.      That Plaintiff is the owner of a valid and enforceable trademark that is famous. I will instruct you on the definition of a "famous" trademark under the law;

2.      That the famous trademark is distinctive, either inherently or through acquired distinctiveness;

3.      That Defendant is making or has made use in commerce of an identical or nearly identical trademark;

4.      That Defendant's use began after Plaintiff's trademark became famous; and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

5.    That use of Defendant's alleged trademark is likely to cause dilution of the distinctive quality of the trademark by blurring or tarnishment of Plaintiff's trademark. I will instruct you later about what "blurring" and "tarnishment" mean under the law.

*Source and Authorities: See* Comments to Ninth Circuit Model Civil Jury Instruction 15.30; 15 U.S.C. § 1125(c)(2) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"); Cal. Bus. & Prof. Code § 14247; *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002) ("Dilution, by contrast, does not require a showing of consumer confusion[.]"); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007) (citing elements of trademark dilution and noting the analysis under federal and California state law trademark dilution claims is the same); *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark."). In 2006, Congress revised the statute to specifically exclude dilution protection for trademarks whose fame extends only to niche markets. The revisions restricted trademark dilution claims to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like."

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-47-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1   *Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*,

2   550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). It is axiomatic that in order to prevail

3   on a claim for trademark dilution, the plaintiff must show that the mark at issue is a

4   "household name." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002,

5   1011 (9th Cir. 2004). This is a "rigorous standard" for plaintiffs. *ArcSoft, Inc. v.*

6   *Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. Dec. 28, 2015); *see also*

7   15 U.S.C. § 1125(c)(1); *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1179-

8   1180 (9th Cir. 2007) ("Dilution is a cause of action invented and reserved for a

9   select class of marks—those marks with such powerful consumer associations that

10  even non-competing uses can impinge their value."); *Thane Intern., Inc. v. Trek*

11  *Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a

12  mark usually will achieve broad-based fame only if a large portion of the general

13  consuming public recognizes that mark. Put another way . . . the mark must be a

14  household name.").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-48-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 15**

**Trademark Dilution – Definition of a Famous Trademark**

Plaintiff bears the burden of proving that its trademark is famous. A trademark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods of the trademark's owner. To be "famous," Plaintiff's mark must have been truly prominent and renowned at the time of Defendant's first commercial use of the trademark. "Famous" marks are those that have become household names. In determining whether Plaintiff's trademark is famous, you may consider several factors I will describe for you in a moment. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether a mark is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether a mark is famous. You should consider all the relevant evidence in making your determination. These factors should not be counted up to see which party has more, but should be carefully weighed given the facts and circumstances of this case. The factors you should consider are:

1.      The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by the owner or third parties, where such media coverage specifically describes the popularity of the brand;

2.      The amount, volume, and geographic extent of sales of goods offered under the mark;

3.      The extent of actual recognition of the trademark; and

4.      Whether the mark was federally registered.

To prevail on a claim of trademark dilution, Plaintiff must prove by a preponderance of the evidence that its trademarks were famous at the time of Defendant's first use of Plaintiff's alleged trademark.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-49-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

*Source and Authorities: See* 15 U.S.C. § 1125(c)(2)(A); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007). In 2006, Congress revised the statute to specifically exclude dilution protection for trademarks whose fame extends only to niche markets. The revisions restricted trademark dilution claims to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). It is axiomatic that in order to prevail on a claim for trademark dilution, the plaintiff must show that the mark at issue is a "household name." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004). This is a "rigorous standard" for plaintiffs. *ArcSoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. Dec. 28, 2015); *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark."); *see also* 15 U.S.C. § 1125(c)(1); *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1179-1180 (9th Cir. 2007) ("Dilution is a cause of action invented and reserved for a select class of marks— those marks with such powerful consumer associations that even non-competing uses can impinge their value."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way . . . the mark must be a household name."); *id.* at 912 (A mark is not famous simply because it is mentioned in media accounts, and press accounts are evidence of fame only when they describe "the popularity of the brand."); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034 (N.D. Cal. 2015) (media coverage in *The New York Times*, *The Wall Street Journal*, *The Los Angeles Times*, and *Fortune* did not demonstrate that the Pinterest mark was

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-50-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    famous). Courts regularly hold that well-known marks such as Pinterest, Maker's

2    Mark, and COACH are not "famous" for the purposes of proving trademark

3    dilution. *Pinterest*, 140 F. Supp. 3d at 1035; *Maker's Mark Distillery, Inc. v.*

4    *Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 699 (W.D. Ky. 2010), aff'd, 679 F.3d

5    410 (6th Cir. 2012) (Maker's Mark trade dress not famous); *Coach Servs., Inc. v.*

6    *Triumph Learning LLC*, 668 F.3d 1356, 1374 (Fed. Cir. 2012) (COACH handbags

7    mark not famous).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-51-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 16**

**Trademark Dilution – Definition of "Blurring" and "Tarnishment"**

Dilution by blurring is an association arising from the similarity between the Defendant's mark and Plaintiff's famous trademark that impairs the distinctiveness of the famous trademark. In determining whether a trademark is likely to cause dilution by blurring, you may consider all relevant factors, including the following:

1. The degree of similarity between Defendant's mark and the famous trademark;

2. The degree of inherent or acquired distinctiveness of the famous trademark;

3. The extent to which the owner of the famous trademark is engaging in substantially exclusive use of the trademark;

4. The degree of consumer recognition of the famous mark;

5. Whether Defendant intended to create an association with the famous trademark; and

6. Any actual association between Defendant's mark and the famous trademark.

Dilution by tarnishment is an association arising from the similarity between a mark and famous mark that harms the reputation of the famous mark.

*Source and Authorities: See* 15 U.S.C. § 1125(c)(2) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15

U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"); *id.* (listing non-exhaustive factors for dilution by blurring); 15 U.S.C. § 1125(c)(2)(C) ("'dilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark"); Eleventh Circuit Pattern Jury Instructions No. 10.5; *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007). In 2006, Congress revised the statute to specifically exclude dilution protection for trademarks whose fame extends only to niche markets. The revisions restricted trademark dilution claims to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). It is axiomatic that in order to prevail on a claim for trademark dilution, the plaintiff must show that the mark at issue is a "household name." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004). This is a "rigorous standard" for plaintiffs. *ArcSoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. Dec. 28, 2015).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## Defendant's Proposed Instruction No. 17
### Trademark Dilution – Willful Dilution Required for Damages

To recover monetary relief for trademark dilution by blurring, Plaintiff bears the further burden of proving by a preponderance of the evidence that Defendant willfully intended to trade on the recognition of the famous trademark and thereby cause dilution of Plaintiff's trademark. Willfulness does not mean that Defendant merely took voluntarily and intentional actions to market its products in a certain way. Rather, willfulness requires that Defendant acted to purposefully cause confusion or deception in the marketplace by infringing Plaintiff's protected mark.

To recover monetary relief for trademark dilution by tarnishment, Plaintiff bears the burden of proving by a preponderance of the evidence that Defendant willfully intended to harm the reputation of the famous trademark and thereby cause dilution of Plaintiff's trademark.

Only if you find willful dilution should you award monetary relief to Plaintiff for its dilution claim.

*Source and Authorities:* 15 U.S.C. § 1125(c)(2) (The owner of a famous trademark "shall be entitled to the remedies set forth in sections 1117(a) and 1118 . . . subject to the discretion of the court and the principles of equity if . . . by reason of dilution by blurring, the [defendant] willfully intended to trade on the recognition of the famous mark . . . [or] by reason of dilution by tarnishment, the [defendant] willfully intended to harm the reputation of the famous mark."); *see also Romag Fasteners, Inc v Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020).

**Defendant's Proposed Instruction No. 18**

**Waiver**

Defendant claims that Plaintiff waived its rights to enforce the STONE trademark against Defendant.  Waiver is the intentional relinquishment of a known right with the knowledge and intent to relinquish it.  Waiver may be found when a party either expressly relinquishes the right or engages in conduct inconsistent with an intent to enforce that right.  This is called a waiver. A waiver may be oral or written or may arise from conduct that shows that Plaintiff gave up its right to enforce its trademark. If Defendant proves that Plaintiff gave up its right to enforce its trademark against Defendant, then Defendant was not required to stop using the trademark.  Plaintiff's waiver must have been manifested in an unequivocal manner.

It is Defendant's burden to prove, by a preponderance of the evidence, that Plaintiff waived its right to enforce the STONE trademark against Defendant.  If you find that Plaintiff waived its rights to enforce the STONE trademark against Defendant, your verdict must be for the Defendant.

*Source and Authorities: Marketquest Group, inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1294 (S.D. Cal. 2018) ("Waiver is a defense to trademark infringement, which 'emphasizes the mental state of the actor.'") *See Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 (9th Cir. 1957); *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F. Supp. 278, 291 (C.D. Cal. 1992). It is the "intentional relinquishment of a known right with knowledge and the intent to relinquish it." *United States v. King Features Entm't*, 843 F.2d 394 (9th Cir. 1988); *adidas–Am., Inc.*, 546 F. Supp. 2d 1029, 1074 (D. Or. 2008). Waiver may be found when a party either expressly relinquishes the right or engages in "conduct inconsistent with an intent to enforce that right." *Saverslak v. Davis–Cleaver Produce, Co.*, 606 F.2d 208, 213 (7th Cir. 1979).  To

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-55-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    apply in a given case, "waiver must be manifested in an unequivocal manner."

2    *Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or. 1997); see also *Groves v.*

3    *Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970)).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-56-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 19**

**Estoppel – Elements**

[*If equitable defenses are tried to the jury in an advisory capacity.*]

Defendant has asserted an affirmative defense called "estoppel" against Plaintiff's claims. The Court, not the jury, decides whether a party has proven this affirmative defense. Here, however, the Court seeks an advisory opinion from you, the jury, as to whether you belief Defendant's estoppel defense should apply.

To establish an estoppel defense to Plaintiff's trademark infringement claim, Defendant must prove by a preponderance of the evidence that:

1.      Plaintiff knew Defendant was potentially infringing the STONE trademark;

2.      Plaintiff's actions or failure to act led Defendant to reasonably believe that Plaintiff did not intend to enforce its trademark rights against Defendant;

3.      Defendant did not know that Plaintiff actually objected to its potential infringement of the marks; and

4.      Due to Defendant's reliance on Plaintiff's conduct, Defendant would be materially prejudiced if Plaintiff is permitted to assert trademark rights against Defendant.

*Source and Authorities*:  *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1295 (S.D. Cal. 2018) ("[E]stoppel is any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct." *Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 (9th Cir. 1957); *see also adidas–Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D. Or. 2008). To prevail

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-57-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

on a defense of estoppel, Defendants must show that: (1) [Plaintiff ] knew Defendants were potentially infringing the [asserted] marks; (2) [Plaintiff's] actions or failure to act led Defendants to reasonably believe that [Plaintiff] did not intend to enforce its trademark rights against Defendants; (3) Defendants did not know that [Plaintiff] actually objected to its potential infringement of the marks; and (4) due to their reliance on the [Plaintiff's] conduct, Defendants will be materially prejudiced if [Plaintiff] is allowed to proceed with its claims. *See Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998); *see also 3M Co. v. Rollit, LLC*, No. C 06-01225-JW, 2008 WL 8820473, at *5 (N.D. Cal. May 14, 2008). "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Am. Cas. Co. v. Baker*, 22 F.3d 880, 892 (9th Cir. 1994).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-58-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 20**

**Acquiescence**

[*If equitable defenses are tried to the jury in an advisory capacity.*]

Defendant claims that Plaintiff acquiesced to the wrongful conduct at issue in Plaintiff's claims against Defendant in this case. Acquiescence constitutes a defense where conduct on the Plaintiff's part amounted to an assurance to the Defendant, either express or implied, that the Plaintiff would not assert its rights against the Defendant. To establish the defense of acquiescence, Defendant has the burden of proving by a preponderance of the evidence that:

1.     Plaintiff, or its agent, represented by words or conduct that it would not assert any trademark rights against Defendant;

2.     The delay between Plaintiff's, or its agent's, representation that it would not assert any trademark rights against Defendant and the date of the complaint was not excusable; and

3.     The Defendant relied on Plaintiff's, or its agent's, words and/or conduct and caused Defendant undue prejudice.

For the first element, Plaintiff, or its agent, must have communicated active consent by conduct that amounts to an explicit or implicit assurance that Plaintiff, or its agent, with knowledge of Defendant's conduct, would not assert its trademark rights.

If you find that the affirmative defense of acquiescence has been established, your verdict must be in favor of Defendant.

*Source and Authorities:*  Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 988-990 (9th Cir. 2010); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1293-94 (S.D. Cal. 2018); 5 McCarthy on Trademarks and Unfair Competition, § 31:41; 3 Anne Gilson Lalande, Gilson

ON TRADEMARKS § 11.08[3][i][iii][A] (2010) ("When the plaintiff has in some way assured the defendant that it will not assert its rights in the mark and the defendant has relied to its detriment, the plaintiff should be estopped from bringing an action by its acquiescence regardless of the period of delay.").

**Defendant's Proposed Instruction No. 21**
**Statute of Limitations**

Defendant has raised the defense of statute of limitations. To ensure that claims are brought to the court reasonably promptly, the federal trademark laws contain a statute of limitations that requires that a trademark owner to file suit within four years of the date it knows or should have known of the infringement.

Defendant asserts that Plaintiff cannot recover damages incurred before February 12, 2014, which was four years before Plaintiff filed this lawsuit. Plaintiff, however, contends that it did not know of Defendant's infringement until more recently and could not have been expected to discover the infringement at an earlier time.

Defendant bears the burden of proving by a preponderance of the evidence that Plaintiff knew or should have known of Defendant's alleged infringement prior to February 12, 2014. If you find that Defendant has met its burden of proof, you may award damages, if any, to Plaintiff only for the time period between February 12, 2014 to February 12, 2018.

*Source and Authorities: See Pinkette Clothing Inc. v. Cosmetic Warriors Ltd.*, 2017 WL 6049370, at *1 (C.D. Cal. Feb. 16, 2017), *aff'd*, 894 F.3d 1015, 1025 (applying four-year statute to claim for trademark infringement under California law); Cal. Civ. Proc. Code § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."); Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-61-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

Alternate Jury Instruction for UCL only:

Defendant contends that Plaintiff's legal claim under California's Unfair Competition Law was not filed within the time set by law. To succeed on its statute of limitations defense, Defendant must prove that some of Plaintiff's claimed harm from unfair competition occurred on or before February 12, 2014.

*Source and Authorities:* CACI No. 4421 (modified) Affirmative Defense – Statute of Limitations; Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued.").

*Defendant's Comment:* Defendant asserts an affirmative defense that Plaintiff's claims for trademark infringement under California common law and violation of California Business & Procedure Code §§ 17200 *et seq.* are barred by the statute of limitations. The limitations period for both claims is four years. *See Pinkette Clothing Inc. v. Cosmetic Warriors Ltd.*, 2017 WL 6049370, at *1 (C.D. Cal. Feb. 16, 2017), *aff'd*, 894 F.3d 1015, 1025 (applying four-year statute to claim for trademark infringement under California law); Cal. Civ. Proc. Code § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."); Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."). Plaintiff's claims for common law trademark infringement and violation of § 17200 are based on the same facts as its Lanham Act claims. If Plaintiff knew or should have known of those claims before February 12, 2014, they are time-barred and serve to reduce Plaintiff's damages, if any.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-62-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 22**

**Actual or Statutory Notice**

In order for ~~plaintiff~~Plaintiff to recover damages, ~~the plaintiff~~Plaintiff has the burden of proving by a preponderance of the evidence that ~~defendant~~Defendant had [either statutory or] actual notice that ~~the plaintiff's the~~Plaintiff's trademark was registered.

[Defendant had statutory notice if:]

[1. ~~plaintiff~~ Plaintiff displayed the trademark with the words ~~"~~"Registered in U.S. Patent and Trademark Office~~"~~ [~~,~~" or]

[2. ~~plaintiff~~ Plaintiff displayed the trademark with the words ~~"~~"Reg. U.S. Pat. & Tm. Off.~~"~~ [~~,~~" or]

[3. ~~plaintiff~~ Plaintiff displayed the trademark with the letter R enclosed ~~within~~with a circle, ~~thus~~or ®.]

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.26 (modified) and comments thereto.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-63-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 23**

**Plaintiff's Actual Damages**

If you find for ~~the plaintiff on the plaintiff's [infringement] [unfair competition] claim [and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark]~~Plaintiff on Plaintiff's trademark infringement claims, you must determine ~~the plaintiff's~~Plaintiff's actual damages.

Damages means the amount of money which will reasonably and fairly compensate Plaintiff for any injury you find was actually caused by ~~the~~ Defendant's infringement of Plaintiff's registered trademark.

~~The plaintiff~~Plaintiff has the burden of proving actual damages by a preponderance of the evidence. ~~Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any [injury] [and] [or] [property damage] you find was caused by the defendant's infringement of the plaintiff's registered trademark.~~To prove actual damages, Plaintiff must prove that the damages were actually caused by Defendant's infringing use of the STONE trademark and that consumers were actually confused or deceived as a result of Defendant's conduct. In this case, Plaintiff seeks three types of actual damages:

[1.   The cost of Plaintiff's efforts to prevent, mitigate, or correct confusion amongst consumers;]

~~You should consider the following:~~

~~(1) [The [injury to] [loss of] the plaintiff's reputation][;]~~

~~(2) [The [injury to] [loss of] plaintiff's goodwill, including injury to the plaintiff's general business reputation][;]~~

~~(3)~~ [2.   The lost profits that ~~the plaintiff~~Plaintiff would have earned but for ~~the defendant's~~Defendant's infringement.  Profit is determined by deducting all expenses from gross revenue; or][~~;~~]

[3.   The reasonable royalties that Plaintiff would have made had Plaintiff

CROWELL
& MORING LLP
ATTORNEYS AT LAW

licensed the use of the STONE mark to Defendant.]

I will later instruct you further as to each of these forms of actual damages.

It is up to you to decide whether and to what extent Plaintiff has proven any damages.  In doing so you, you should consider whether any financial harm Plaintiff suffered was caused by Defendant's conduct as opposed to other factors such as changing market conditions, including any changes that occurred as a result of the COVID-19 pandemic, changing consumer preferences, Plaintiff's own business strategies, and the actions of Plaintiff's competitors.

Any damages you award may not be remote or speculative. While proof of damages to a certainty is not required, the burden is on Plaintiff to show any actual damage to a reasonable certainty, and there must be a reasonable basis for computation of actual damages.

~~(4) [The expense of preventing customers from being deceived][;]~~

~~(5) [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement][;] [and]~~

~~(6) [*Insert any other factors that bear on plaintiff's actual damages*].~~

~~When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.~~

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.27 (modified) and comments thereto; 15 U.S.C. § 1117(a); The plaintiff must prove both the fact and the amount of damages. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (emphasis added); *see also* ABA Model Rules 2.8.2 ("For plaintiff to recover her actual damages . . . plaintiff must prove . . . that her damages were caused by

defendant's infringing use of her mark; and . . . that consumers were actually confused or deceived as a result of defendant's conduct."). "The total amount awarded 'shall constitute *compensation* and not a penalty.'" *Contessa Food Prods. v. Lockpur Fish Processing Co.*, 2001 U.S. Dist. LEXIS 25995, at *15 (C.D. Cal. Nov. 26, 2001) (citing 15 U.S.C. § 1117(a)); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). "In order to recover damages, [the plaintiff] must offer some evidence of actual confusion or pecuniary loss." *Id.*; *see also Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir. 1989) (claim for damages under section 43(a) requires showing the defendant "actually deceived a significant portion of the consuming public."); *see also PBX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987) ("to establish entitlement to damages for violation of section 43(a): [Plaintiffs] must establish actual confusion or deception resulting from the violation."). Without evidence of any actual injury, Plaintiff is not entitled to "corrective advertising." *See Int'l Oddities v. Record*, 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013) (corrective advertising inappropriate without "evidence that [plaintiff] suffered an injury to its brand that would require corrective advertising . . . and plaintiff offers no evidence as to how its brand has been harmed"); *Quia Corp. v. Mattel, Inc.,* 2011 WL 2749576, at *5 (N.D.Cal. July 14, 2011) ("compensatory damages [including corrective advertising] are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way"). Damages must not be speculative, but rather, must be established with "reasonable certainty" and have "a reasonable basis for computation." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993)). Any actual damages instruction should conform with the law and should not merely recite the model instruction where it

encompasses theories of recovery that are inapplicable here. *See Adray*, 76 F.3d at 988.

*Defendant's Comment:*  Defendant objects to the inclusion of corrective advertising and lost profits in any actual damages jury instruction.  Defendant renews its request to bring a Daubert motion as to the claim for lost profits and the opinions of Plaintiff's experts disclosed for the first time in expert reports dated February 12, 2021.  Defendant objects to Plaintiff's experts' late-disclosure of damages opinions, including the late-disclosure of lost profits and purported reputational harm that were not provided in the experts' opening or rebuttal reports. The following should not be included in any proposed instruction, as they were not disclosed during expert discovery and are thus improperly proffered by Plaintiff's damages expert: (1) injury to the Plaintiff's reputation; (2) injury to Plaintiff's goodwill, including injury to Plaintiff's general business reputation; and (3) lost profits that Plaintiff would have earned but for Defendant's infringement. For example, during expert discovery, Plaintiff's expert was not able to calculate "a single lost sale" and did not address lost profits damages in her expert report, yet was able to calculate lost profits in her February 12, 2021 supplemental report long after Defendant had any opportunity to depose the expert about such new opinions. There was no basis for lost profits damages, and Plaintiff had apparently abandoned such a claim. Nor had Plaintiff pleaded or sought the "cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement." While Plaintiff claims that its interrogatory response included a reference to future expenses, it has produced no evidence to date regarding any such expenses. Neither has Plaintiff pleaded or timely sought reasonable royalty damages discussed in detail below. The jury should not be instructed on issues on which Plaintiff has produced no evidence to date, and which opinions were not the subject of expert

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-67-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1 | discovery nor should Plaintiff be allowed to introduce such evidence for the first
2 | time at trial.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-68-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 24**
**Corrective Advertising Damages**

When considering prospective costs such as the cost of future advertising or the expense of preventing customers from being deceived, if any, you must not overcompensate. You may also only consider those costs which Plaintiff must incur for advertising undertaken to restore the value Plaintiff's trademark has lost due to Defendant's infringement. You may not consider general business advertising or promotion merely because it took place after the alleged infringement. If you find that Defendant infringed Plaintiff's trademark rights, but that Plaintiff's business suffered no quantifiable harm, you may not award corrective advertising expenses as damages to Plaintiff.

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.27 (modified) and comments thereto; 15 U.S.C. § 1117(a); The plaintiff must prove both the fact and the amount of damages. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (emphasis added); *see also* ABA Model Rules 2.8.2 ("For plaintiff to recover her actual damages . . . plaintiff must prove . . . that her damages were caused by defendant's infringing use of her mark; and . . . that consumers were actually confused or deceived as a result of defendant's conduct."). "The total amount awarded 'shall constitute *compensation* and not a penalty.'" *Contessa Food Prods. v. Lockpur Fish Processing Co.*, 2001 U.S. Dist. LEXIS 25995, at *15 (C.D. Cal. Nov. 26, 2001) (citing 15 U.S.C. § 1117(a)); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). "In order to recover damages, [the plaintiff] must offer some evidence of actual confusion or pecuniary loss." *Id*.; *see also Harper House,*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-69-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

*Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir. 1989) (claim for damages under section 43(a) requires showing the defendant "actually deceived a significant portion of the consuming public."); *see also PBX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987) ("to establish entitlement to damages for violation of section 43(a): [Plaintiffs] must establish actual confusion or deception resulting from the violation."). Without evidence of any actual injury, Plaintiff is not entitled to "corrective advertising." *See Int'l Oddities v. Record*, 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013) (corrective advertising inappropriate without "evidence that [plaintiff] suffered an injury to its brand that would require corrective advertising . . . and plaintiff offers no evidence as to how its brand has been harmed"); *Quia Corp. v. Mattel, Inc.,* 2011 WL 2749576, at *5 (N.D.Cal. July 14, 2011) ("compensatory damages [including corrective advertising] are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way"). Damages must not be speculative, but rather, must be established with "reasonable certainty" and have "a reasonable basis for computation." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993)). Any actual damages instruction should conform with the law and should not merely recite the model instruction where it encompasses theories of recovery that are inapplicable here. *See Adray*, 76 F.3d at 988.

*Defendant's Comment:*  Defendant objects to the inclusion of corrective advertising and lost profits in any actual damages jury instruction.  Defendant renews its request to bring a Daubert motion as to the claim for lost profits and the opinions of Plaintiff's experts disclosed for the first time in expert reports dated February 12, 2021.  Defendant objects to Plaintiff's experts' late-disclosure of damages opinions,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-70-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

including the late-disclosure of lost profits and purported reputational harm that were not provided in the experts' opening or rebuttal reports. The following should not be included in any proposed instruction, as they were not disclosed during expert discovery and are thus improperly proffered by Plaintiff's damages expert: (1) injury to the Plaintiff's reputation; (2) injury to Plaintiff's goodwill, including injury to Plaintiff's general business reputation; and (3) lost profits that Plaintiff would have earned but for Defendant's infringement. For example, during expert discovery, Plaintiff's expert was not able to calculate "a single lost sale" and did not address lost profits damages in her expert report, yet was able to calculate lost profits in her February 12, 2021 supplemental report long after Defendant had any opportunity to depose the expert about such new opinions. There was no basis for lost profits damages, and Plaintiff had apparently abandoned such a claim. Nor had Plaintiff pleaded or sought the "cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement." While Plaintiff claims that its interrogatory response included a reference to future expenses, it has produced no evidence to date regarding any such expenses. Neither has Plaintiff pleaded or timely sought reasonable royalty damages discussed in detail below. The jury should not be instructed on issues on which Plaintiff has produced no evidence to date, and which opinions were not the subject of expert discovery nor should Plaintiff be allowed to introduce such evidence for the first time at trial.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-71-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 25**
**Lost Profit Damages**

Plaintiff is alternatively seeking its actual damages in the form of a reasonable royalty. In deciding whether Plaintiff has proven by a preponderance of the evidence that it is entitled to recover damages, you should consider any lost profits that Plaintiff would have earned but for Defendant's alleged infringement. Plaintiff must prove both the fact and the amount of damage.

Plaintiff has the burden of proving by a preponderance of the evidence that it lost sales of its Stone-branded beer products and that such lost sales were caused by Defendant's trademark infringement. In determining whether Plaintiff lost sales due to Defendants' conduct, you should consider whether there was any decrease in Plaintiff's sales of Stone-branded beer, and if so, whether any such decrease was caused by Defendant's alleged trademark infringement or was instead caused by other factors. If you find that any loss in sales shown by Plaintiff was caused by other market factors and not as a result of Defendant's alleged infringement, then you should not award any amount for lost profits, or you should reduce any such amount to account for the other market factors.

*Source and Authorities: See* 15 U.S.C. § 1117(a); The plaintiff must prove both the fact and the amount of damages. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (emphasis added); *see also* ABA Model Rules 2.8.2 ("For plaintiff to recover her actual damages . . . plaintiff must prove . . . that her damages were caused by defendant's infringing use of her mark; and . . . that consumers were actually confused or deceived as a result of defendant's conduct."). "The total amount awarded 'shall constitute *compensation* and not a penalty.'" *Contessa Food Prods. v. Lockpur Fish*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-72-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

*Processing Co.*, 2001 U.S. Dist. LEXIS 25995, at *15 (C.D. Cal. Nov. 26, 2001) (citing 15 U.S.C. § 1117(a)); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement."). "In order to recover damages, [the plaintiff] must offer some evidence of actual confusion or pecuniary loss." *Id.*; *see also Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir. 1989) (claim for damages under section 43(a) requires showing the defendant "actually deceived a significant portion of the consuming public."); *see also PBX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987) ("to establish entitlement to damages for violation of section 43(a): [Plaintiffs] must establish actual confusion or deception resulting from the violation."). Without evidence of any actual injury, Plaintiff is not entitled to recover actual damages. *See Quia Corp. v. Mattel, Inc.,* 2011 WL 2749576, at *5 (N.D.Cal. July 14, 2011) ("compensatory damages [including corrective advertising] are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way"). Damages must not be speculative, but rather, must be established with "reasonable certainty" and have "a reasonable basis for computation." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993)). Any actual damages instruction should conform with the law and should not merely recite the model instruction where it encompasses theories of recovery that are inapplicable here. *See Adray*, 76 F.3d at 988.

*Defendant's Comment:*  Defendant objects to the inclusion of corrective advertising and lost profits in any actual damages jury instruction.  Defendant renews its

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-73-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

request to bring a Daubert motion as to the claim for lost profits and the opinions of Plaintiff's experts disclosed for the first time in expert reports dated February 12, 2021.  Defendant objects to Plaintiff's experts' late-disclosure of damages opinions, including the late-disclosure of lost profits and purported reputational harm that were not provided in the experts' opening or rebuttal reports. The following should not be included in any proposed instruction, as they were not disclosed during expert discovery and are thus improperly proffered by Plaintiff's damages expert: (1) injury to the Plaintiff's reputation; (2) injury to Plaintiff's goodwill, including injury to Plaintiff's general business reputation; and (3) lost profits that Plaintiff would have earned but for Defendant's infringement. For example, during expert discovery, Plaintiff's expert was not able to calculate "a single lost sale" and did not address lost profits damages in her expert report, yet was able to calculate lost profits in her February 12, 2021 supplemental report long after Defendant had any opportunity to depose the expert about such new opinions. There was no basis for lost profits damages, and Plaintiff had apparently abandoned such a claim. Nor had Plaintiff pleaded or sought the "cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement." While Plaintiff claims that its interrogatory response included a reference to future expenses, it has produced no evidence to date regarding any such expenses. Neither has Plaintiff pleaded or timely sought reasonable royalty damages discussed in detail below. The jury should not be instructed on issues on which Plaintiff has produced no evidence to date, and which opinions were not the subject of expert discovery nor should Plaintiff be allowed to introduce such evidence for the first time at trial.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-74-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 26**

**Reasonable Royalty Damages**

Plaintiff is alternatively seeking its actual damages in the form of a reasonable royalty. A royalty is a payment made to the owner of a trademark by a non-owner in exchange for rights to use the trademark. A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the owner of the trademark and the alleged infringer taking place just before the trademark infringement or dilution began. Your role is to determine what the result of that negotiation would have been.  To prove entitlement to reasonable royalty damages, Plaintiff must prove by a preponderance of the evidence that the damages were caused by Defendant's infringing use of the STONE trademark and that consumers were actually confused or deceived as a result of Defendant's conduct.

In determining a reasonable royalty in this case, you should assume for the purposes of the hypothetical negotiation that both parties understood the STONE trademark to be valid. You should take into account what Plaintiff and Defendant would have agreed upon if they had negotiated in this manner, not just what either Plaintiff or Defendant would have preferred.

You may only award reasonable royalty damages if you find that Plaintiff has proven, by a preponderance of the evidence, that before the filing of this lawsuit, Plaintiff and Defendant had contemplated or would have entered into a license for the STONE trademark with Defendant, and Plaintiff's evidence is sufficiently reliable to allow you to determine the reasonable royalty Defendant would have paid to license the STONE trademark.

A royalty can be calculated in several different ways, and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-75-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

infringement began. Some of the factors you may consider in making your determination are:

1.      The value that the STONE trademark contributes to Defendant's beer products;

2.      The value that factors other than the STONE trademark contribute to Defendant's beer products;

3.      Comparable license agreements, such as those covering the use of the STONE trademark.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue that Defendant obtained from the base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

It is Plaintiff's burden to show by a preponderance of the evidence what value the STONE trademark added to the desirability of Defendant's beer products as a whole and to separate the value of the STONE trademark from the value of other aspects of Defendant's beer products that are not attributable to the STONE trademark.

In this case, Plaintiff has introduced evidence of a license. You may consider the royalty rate in that license if you determine that the license provides a sufficiently reliable basis on which to determine the royalty rate and it helps to establish the value that is attributable to the STONE trademark as distinct value of other features of Defendant's beer products. You should discount the royalty rate for other intellectual property or other rights licensed in the license agreement.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing use of the STONE trademark and no more.

*Source and Authorities:* Northern District of California Model Patent Jury Instructions (2017), 5.7 (modified). A reasonable royalty is "a measure of damages for past infringement, often used in patent cases and in the context of trade secrets, but its use in trademark has been atypical." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3d Cir. 1999). When a reasonable royalty is used in a trademark case, it is usually to address use of a mark after expiration of a mutually agreed upon license. 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:85 ("Usually, when the courts have awarded a reasonable royalty for past acts of infringement [in a trademark case], it was for a period of continued use of a mark after a license ended."); *see also A & H Sportswear*, 166 F.3d at 208-09 ("Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated." (citing cases)); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017) (similar). Where there is no "prior licensing agreement between the parties, courts will permit reasonable royalty damages *only if the evidence provides a sufficiently reliable basis to calculate such damages*." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018) (emphasis added); *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th

Cir. 2007) ("In the absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty here would be impermissibly speculative."). Absent evidence that the plaintiff would have licensed the trademark to the defendant, reasonable royalty damages are speculative and improper. *Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *18 (C.D. Cal. May 24, 2000) ("Lacking any evidence that plaintiffs in this case would have licensed the rights to the mark, the award of reasonable royalties has no basis in reality, much less any basis in fact. Thus, it cannot be said to have been made with 'reasonable certainty.'"); *Marketquest Grp.*, 316 F. Supp. 3d at 1300 ("'Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis is necessarily speculative,' and there is an insufficient basis on which to calculate reasonable royalty damages.") (quoting *Quia Corp.*, 2011 WL 2749576, at *6); *McClaran*, 97 F.3d at 361 (trademark damages must be established "with reasonable certainty" and there must exist "a reasonable basis for computation"). In the Ninth Circuit, "[t]he mere possibility of a future license cannot create an issue of fact as to the availability of lost royalties, any more than speculation about the possibility of lost sales can create an issue of fact as to lost profits." *Quia Corp.*, 2011 WL 2749576, at *7; *see also Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439, at *14-15 (C.D. Cal. July 28, 2009) ("An award of reasonable royalties must be supported by showing with reasonable certainty that royalties were lost and the amount of that loss. . . . Due to the absence of evidence that Tokidoki was willing to license the heart and crossbones image, Tokidoki could not show with reasonable certainty that royalties were lost. Therefore, no basis exists for an award of reasonable royalties."), *aff'd*, 473 F. App'x 522 (9th Cir. 2011). Agreements relied upon for a reasonable royalty calculation must be economically comparable. *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1024-25 (S.D. Cal. 2011) (reliance on agreements that are not "economically comparable" warranted exclusion of expert's testimony). To prove entitlement to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-78-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

actual damages, the plaintiff must prove causation and actual confusion. *See* ABA Model Rules 2.8.2 ("For plaintiff to recover her actual damages . . . plaintiff must prove . . . that her damages were caused by defendant's infringing use of her mark; and . . . that consumers were actually confused or deceived as a result of defendant's conduct."). "The total amount awarded 'shall constitute *compensation* and not a penalty.'" *Contessa Food Prods. v. Lockpur Fish Processing Co.*, 2001 U.S. Dist. LEXIS 25995, at *15 (C.D. Cal. Nov. 26, 2001) (citing 15 U.S.C. § 1117(a)); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). "In order to recover damages, [the plaintiff] must offer some evidence of actual confusion or pecuniary loss." *Id.*; *see also Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir. 1989) (claim for damages under section 43(a) requires showing the defendant "actually deceived a significant portion of the consuming public."); *see also PBX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987) ("to establish entitlement to damages for violation of section 43(a): [Plaintiffs] must establish actual confusion or deception resulting from the violation."). Damages must not be speculative, but rather, must be established with "reasonable certainty" and have "a reasonable basis for computation." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993)).

*Defendant's Comment:* As discussed in detail in Defendant's Motion to Exclude Expert Testimony of Carrie L. Distler on Reasonable Royalty and Corrective Advertising Damages, Plaintiff is not entitled to a reasonable royalty instruction because it failed to disclose this theory of recovery in its initial disclosures or in response to written discovery, even though specifically asked to do so, and it failed to produce the sole license on which its theory is premised until after the close of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-79-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1    fact discovery. Further, there is almost no legal support for such a theory under the

2    circumstances of this case.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-80-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 27**

**Reasonable Royalty Damages – Presence or Absence of Intent to License**

In order to show entitlement to reasonable royalty damages, Plaintiff must prove by a preponderance of the evidence that it would have licensed the rights to its trademark to Defendant. In other words, Plaintiff must show that it was willing to license its trademark to Defendant and that, as a result of Defendant's failure to obtain a license from Plaintiff, Plaintiff lost licensing fees. If Plaintiff fails to show an intent to license the STONE trademark to Defendant, then you cannot award Plaintiff reasonable royalty damages.

*Source and Authorities:* Absent evidence that the plaintiff would have licensed the trademark to the defendant, reasonable royalty damages are speculative and improper. *Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *18 (C.D. Cal. May 24, 2000) ("Lacking any evidence that plaintiffs in this case would have licensed the rights to the mark, the award of reasonable royalties has no basis in reality, much less any basis in fact. Thus, it cannot be said to have been made with 'reasonable certainty.'"); *Marketquest Grp.*, 316 F. Supp. 3d at 1300 ("'Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis is necessarily speculative,' and there is an insufficient basis on which to calculate reasonable royalty damages.") (quoting *Quia Corp.*, 2011 WL 2749576, at *6); *McClaran*, 97 F.3d at 361 (trademark damages must be established "with reasonable certainty" and there must exist "a reasonable basis for computation"). In the Ninth Circuit, "[t]he mere possibility of a future license cannot create an issue of fact as to the availability of lost royalties, any more than speculation about the possibility of lost sales can create an issue of fact as to lost profits." *Quia Corp.*, 2011 WL 2749576, at *7; *see also Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439, at *14-15 (C.D. Cal. July 28, 2009) ("An award of reasonable

royalties must be supported by showing with reasonable certainty that royalties were lost and the amount of that loss. . . . Due to the absence of evidence that Tokidoki was willing to license the heart and crossbones image, Tokidoki could not show with reasonable certainty that royalties were lost. Therefore, no basis exists for an award of reasonable royalties."), *aff'd*, 473 F. App'x 522 (9th Cir. 2011). Damages must not be speculative, but rather, must be established with "reasonable certainty" and have "a reasonable basis for computation." *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993)).

*Defendant's Comment:* As discussed in detail in Defendant's Motion to Exclude Expert Testimony of Carrie L. Distler on Reasonable Royalty and Corrective Advertising Damages, Plaintiff is not entitled to a reasonable royalty instruction because it failed to disclose this theory of recovery in its initial disclosures or in response to written discovery, even though specifically asked to do so, and it failed to produce the sole license on which its theory is premised until after the close of fact discovery, depriving Defendant of a meaningful opportunity to conduct discovery on Plaintiff's theory. Further, there is almost no legal support for such a theory under the circumstances of this case.

**Defendant's Proposed Instruction No. 28**

**Defendant's Profits**

[*If equitable claims or defenses are tried to the jury in an advisory capacity.*]

In addition to actual damages, ~~the plaintiff is entitled to any~~Plaintiff seeks an award of profits earned by ~~the defendant~~Defendant that are attributable to ~~the~~the trademark infringement or willful trademark dilution, which the plaintiff proves by a preponderance of the evidence. Plaintiff may only be awarded Defendant's profits for trademark dilution if you find that the Defendant's infringement was willful. You may not, however, include in any award of Defendant's profits any amount that you took into account in determining Plaintiff's actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of ~~defendant's~~Defendant's receipts from ~~using the~~sales of products that infringed or diluted Plaintiff's trademark ~~in the sale of a [product].~~ ~~The plaintiff~~. Plaintiff has the burden of proving ~~a defendant's~~Defendant's gross revenue by a preponderance of the evidence.

Expenses are all [operating] [, overhead], and production costs incurred in producing the gross revenue. ~~The defendant~~Defendant has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence.

~~Unless~~If you find that a~~a~~all or any portion of the profit from the sale of ~~the [*specify goods*]~~Defendant's products using the trademark is attributable to factors other than use of the trademark, ~~you should find that the total profit is attributable to the infringement.~~such as consumers' desire to purchase Defendant's products or the intrinsic value of Defendant's product itself, then you should apportion out the profit that is not attributable to use of the trademark and decrease the damages award accordingly.  In this case, Defendant asserts that consumers buy Defendant's Keystone beer for reasons other than the alleged infringement, and that the alleged

CROWELL
& MORING LLP
ATTORNEYS AT LAW

<u>infringement has no cash value in sales of Defendant's products.  If you find that to be the case, you may award only a portion or none of Defendant's profits to Plaintiff.</u>

*Source and Authorities: See* Ninth Circuit Model Civil Jury Instruction 15.29 (modified) and comments thereto. The remedy of an accounting of defendant's profits is available equally for both trademark infringement and dilution claims. 15 U.S.C. § 1117(a); 15 U.S.C. § 1125(c)(2).

*Defendant's Comment:*  Defendant contends no such instruction should be given. This issue is not appropriate for the jury. "A claim for disgorgement of profits under § 1117(a) is equitable, not legal." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 561 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: [a]n accounting for profits . . . is an equitable remedy subject to the principles of equity."). "[A]ny decision concerning the award of an accounting of profits remedy should remain within the discretion of the trial court." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982). Even if the Court seeks an advisory jury opinion on the issue of willfulness as a factor to consider in the award of disgorgement damages for trademark dilution, the amount and calculation of such damages, and expert testimony relating thereto, including complex expert testimony regarding revenues, costs, "direct assistance method," "attribution," and the like would be presented only to the Court. It is not a consideration for the jury. Defendant is also concerned about the significant risk of undue prejudice to Defendant caused by overemphasizing to the jury the fact that Defendant is a multi-billion dollar company and that Defendant's Keystone generates hundreds of millions of dollars in revenues each year, which Plaintiff

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-84-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

undoubtedly hopes the jury will improperly consider in deciding whether Plaintiff is entitled to actual damages. The risk of undue prejudice is too severe to allow the jury to hear evidence on this issue that the Court must ultimately decide. Finally, "[r]ecovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act." *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). Thus, to the extent the jury awards Plaintiff actual damages in the form of lost profits or otherwise, the Court's intervention would be necessary to ensure that the jury does not award Plaintiff double recovery by also improperly awarding disgorgement of Defendant's profits.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-85-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

**Defendant's Proposed Instruction No. 29**

**No Double Recovery of Damages**

An award of Plaintiff's actual damages is intended to compensate Plaintiff for the infringement and not to punish Defendant. Your award of actual damages, if you reach this issue, may only put Plaintiff in the same financial position that it would have been but for the infringement, and you may not award duplicative damages.

Should you decide Plaintiff has proven by a preponderance of the evidence that it is entitled to a remedy with respect to each sale of an infringing product, you may not award Plaintiff twice for the same sale of any infringing product. This means that if you award Plaintiff's lost profits for the sales it lost as a direct result of Defendant's alleged infringement, then you may not also award reasonable royalties for those same sales. Likewise, if you award Defendant corrective advertising, you may not also award Plaintiff future lost profits or reasonable royalties for future sales, and vice versa.

*Source and Authorities: State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990) ("the award may be split between lost profits as actual damages to the extent that they are proven and a reasonable royalty for the remainder."); *Minco Inc. v. Combustion Eng'g*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) ("The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation."); *Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006); *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 841 n.9 (9th Cir. 2014) (quoting *Nintendo* and remanding for a new trial on damages.); *see also* Restatement Third, Unfair Competition § 36, comment c (1995) ("In such cases, an

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-86-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

award of both profits and damages may thus be prohibited under the rule precluding double recovery for the same loss.").

*Defendant's Comment:*  Defendant objects to the inclusion of corrective advertising and lost profits in any actual damages jury instruction.  Defendant renews its request to bring a Daubert motion as to the claim for lost profits and the opinions of Plaintiff's experts disclosed for the first time in expert reports dated February 12, 2021.  Defendant objects to Plaintiff's experts' late-disclosure of damages opinions, including the late-disclosure of lost profits and purported reputational harm that were not provided in the experts' opening or rebuttal reports. The following should not be included in any proposed instruction, as they were not disclosed during expert discovery and are thus improperly proffered by Plaintiff's damages expert: (1) injury to the Plaintiff's reputation; (2) injury to Plaintiff's goodwill, including injury to Plaintiff's general business reputation; and (3) lost profits that Plaintiff would have earned but for Defendant's infringement. For example, during expert discovery, Plaintiff's expert was not able to calculate "a single lost sale" and did not address lost profits damages in her expert report, yet was able to calculate lost profits in her February 12, 2021 supplemental report long after Defendant had any opportunity to depose the expert about such new opinions. There was no basis for lost profits damages, and Plaintiff had apparently abandoned such a claim. Nor had Plaintiff pleaded or sought the "cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement." While Plaintiff claims that its interrogatory response included a reference to future expenses, it has produced no evidence to date regarding any such expenses. Neither has Plaintiff pleaded or timely sought reasonable royalty damages discussed in detail below. The jury should not be instructed on issues on which Plaintiff has produced no evidence to date, and which opinions were not the subject of expert

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-87-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL

1  discovery nor should Plaintiff be allowed to introduce such evidence for the first

2  time at trial.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-88-

DEFENDANT'S AMENDED
PROPOSED JURY INSTRUCTIONS;
CASE NO. 3:18-CV-00331-BEN-LL