J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
    rowe@braunhagey.com
Bram Schumer, Esq. (SBN: 317736)
    schumer@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>    v.<br><br>MILLERCOORS LLC,<br><br>    Defendant / Counterclaim Plaintiff. | Case No: 18-cv-0331-BEN-LL<br><br>**PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS**<br><br>Complaint filed: February 12, 2018<br>Trial Date: November 8, 2021 |

Plaintiff Stone Brewing Co., LLC ("Stone") respectfully proposes the following jury instructions in the above-captioned matter.  Stone reserves the right to amend, supplement, modify, withdraw, or otherwise revise these jury instructions including, but not limited to, based upon or in response to the parties' stipulations, the Court's ruling on any pending or pretrial motion, evidentiary dispute, or other issue, a final determination as to the manner in which these cases will be tried, proof at trial, Stone's or MillerCoors's pursuit or abandonment of their claims or defenses, or as otherwise reasonable and appropriate.  Stone also reserves the right to amend, supplement, modify, withdraw, or otherwise revise these jury instructions in response to any instruction submitted by Defendant MillerCoors ("MillerCoors"), any objection to these instructions by MillerCoors, in order to conform the evidence presented at trial, or for any other proper reason.  Stone also reserves the right to disclose additional instructions regarding MillerCoors's putative counterclaims and affirmative defenses as appropriate when those are disclosed in MillerCoors's revisions to the proposed pre-trial order.

Dated:  July 14, 2021                    BRAUNHAGEY & BORDEN LLP

                                         By:  *s/* J. Noah Hagey
                                              J. Noah Hagey
                                         *Attorneys for Stone Brewing Co., LLC*

# **TABLE OF CONTENTS**

| **Number** | **Title** | **Source(s)** | **Page No.** | **Party** |
|---|---|---|---|---|
| 1 | Claims and Defenses Summary | Ninth Circuit Manual of Model Jury Instructions: Civil 1.5 (2017) (modified as indicated) | 1 | Stone |
| 2 | Preliminary Instruction Trademark | Ninth Circuit Manual of Model Jury Instructions: Civil 15.1 (2017) (modified as indicated); See Authority | 3 | " |
| 3 | Trademark Definition | Ninth Circuit Manual of Model Jury Instructions: Civil 15.2 (2017) (modified as indicated); See Authority | 11 | " |
| 4 | Trademark Liability – Theories and Policies | Ninth Circuit Manual of Model Jury Instructions: Civil 15.5 (2017) (modified as indicated) | 12 | " |
| 5 | Elements and Burden of Proof – Trademark Infringement | Ninth Circuit Manual of Model Jury Instructions: Civil 15.6 (2017) (modified as indicated) | 14 | " |
| 6 | Presumed Validity and Ownership – Registered Trademark | Ninth Circuit Manual of Model Jury Instructions: Civil 15.8 (2017) (modified as indicated); See Authority | 16 | " |
| 7 | Trademark Infringement – Elements – Likelihood of Confusion – *Sleekcraft* | Ninth Circuit Manual of Model Jury Instructions: Civil 15.18 (2017) (modified as indicated) | 25 | " |
| 8 | Trademark Infringement – Likelihood of Confusion – Factor – Strength of Trademark (Strength as a Factor for Evaluating Likelihood of Confusion) | Ninth Circuit Manual of Model Jury Instructions: Civil 15.19 (2017) (modified as indicated) | 28 | " |

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

| 9 | False Designation of Origin – Elements | See Authority | 31 | " |
|---|---|---|---|---|
| 10 | Trademark Dilution – 15 U.S.C. 1125(c) – Elements | See Authority | 32 | " |
| 11 | California Dilution – Cal. Prof. Bus. Code 14247, *et seq.* – Elements | See Authority | 37 | " |
| 12 | Unfair Competition – California Law | Ninth Circuit Manual of Model Jury Instructions: Civil 15.6 (2017); See Authority | 39 | " |
| 13 | Willfulness | Seventh Circuit Pattern Jury Instruction 13.6.5; See Authority | 40 | " |
| 14 | Agency | Ninth Circuit Manual of Model Jury Instructions: Civil 4.2; 4.8; 4.10 (2017) | 42 | " |
| 15 | Damages – Actual or Statutory Notice | Ninth Circuit Manual of Model Jury Instructions: Civil 15.26 (2017) (modified as indicated) | 43 | " |
| 16 | Damages – Plaintiff's Actual Damages | Ninth Circuit Manual of Model Jury Instructions: Civil 15.27 (2017) (modified as indicated); See Authority | 44 | " |
| 17 | Damages – Diminution in Value and Loss of Goodwill and Reputation | See Authority | 48 | " |
| 18 | Damages – Reasonable Royalty | See Authority | 49 | " |
| 19 | Damages – Corrective Advertising | See Authority | 52 | " |
| 20 | Damages – Defendant's Profits | Ninth Circuit Manual of Model Jury Instructions: Civil 15.29 (2017) (modified as indicated) | 53 | " |
| 21 | Punitive Damages | CACI No. 3945 (modified as indicated); See Authority | 54 | " |

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

| 22 | Sanctions: Directed Finding of No Prior Use | See Authority | 57 | " |
|----|---------------------------------------------|---------------|----|----|
| 23 | Sanctions: Directed Finding of Competition | See Authority | 58 | " |
| 24 | Adverse Inference Regarding Prior Use | See Authority | 59 | " |
| 25 | Adverse Inference Regarding Competition | See Authority | 61 | " |

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 1**

**Claims and Defenses Summary**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is Stone Brewing Co., LLC, based in Escondido, California.  The Defendant is MillerCoors, LLC, based in Chicago.

~~The plaintiff~~ Plaintiff Stone asserts that it is the owner of the federally registered trademark for "STONE" and has used the mark as its brand name since 1996 to identify itself to beer consumers around the country and world.  Stone contends that its "STONE" mark is incontestable under federal law and protectable as a famous trademark.  Stone alleges that defendant MillerCoors was aware of and willfully infringed its trademark and associated goodwill in 2017 by rebranding and marketing Defendant's Keystone beer as "STONE."  Plaintiff asserts that Defendant's conduct has caused confusion amongst consumers, destroyed the value of the "STONE" mark, and inflicted substantial damages upon Plaintiff's goodwill and business.  Plaintiff seeks to recover these damages as well as to disgorge all of Defendant's unjust profits earned from the sale of infringing Keystone beer.

~~The defendant,~~ Defendant MillerCoors denies those claims [and also contends that ~~[defendant's counterclaims and/or affirmative defenses]~~] it did not "rebrand" its Keystone beer, but only refreshed the look of the can (which still uses the Keystone® trademark) and packaging in the normal course of business, and that it has been using "Stone" or "Stones" to market and advertise its Keystone beer since the early 1990s. [~~The defendant~~ Defendant MillerCoors has the burden of proof on ~~these~~ its [counterclaims and/or affirmative defenses.]]

[~~The plaintiff~~ Plaintiff Stone denies [defendant's MillerCoors's counterclaims and/or affirmative defenses].] Stone contends that, before 2017, MillerCoors never used "STONE" as a trademark for its beer and that its prior effort to register the term was rejected by the U.S. Patent and Trademark Office.

1

2          *Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 1.5 (2017)

3    (modified as indicated).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 2**

**Preliminary Instruction – Trademark**

The plaintiff, <u>Stone</u>[name of plaintiff], seeks damages against the defendant, <u>MillerCoors</u>[name of defendant], for [trademark infringement], <u>trademark dilution, false designation of origin, and</u> [unfair competition]. The defendant <u>MillerCoors</u> denies <u>these claims</u>[infringing the trademark] [unfairly competing] [and] [contends the trademark is invalid].  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  The [owner] [assignee] [licensee] of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace.  The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

[HOW A TRADEMARK IS OBTAINED]

[A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer.  Rights in a trademark are obtained only through <u>consistent and continuous</u> commercial use of the mark.  <u>"Use of the mark" means use as a trademark to designate the source of origin of the goods in a manner that is sufficient to create an association in consumers' minds between the goods and the mark.  Mere token use of the mark is not enough to establish trademark rights.  I will give you further instructions that explain what constitutes use as a trademark.</u>][1]

[TRADEMARK INTERESTS]

---
[1] See authority cited below.

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

1  [The owner of a trademark may transfer, give, or sell to another person the
2  owner's interest in the trademark. This type of [agreement] [gift] is called an
3  assignment, and the person who receives the owner's interest is called an assignee
4  and becomes the owner of the mark. An assignee has the right to exclude others from
5  using the trademark or a similar mark that is likely to cause confusion in the
6  marketplace. To be enforceable, the assignment must be in writing and signed. It
7  must also include the goodwill of the business connected with the trademark.]

8      [The owner of a trademark may [also] enter into an agreement that permits
9  another person to use the trademark.  This type of agreement is called a license, and
10  the person permitted to use the trademark is called a licensee.]

11     A trademark [owner] [assignee] [licensee] may enforce the right to exclude
12  others in an action for [infringement] [or] [insert applicable form of or unfair
13  competition from 15 U.S.C. § 1125(a)].

14                        [TRADEMARK REGISTRATION]

15     [After the owner of a trademark has obtained the right to exclude others from
16  using the trademark, the owner of a trademark may obtain a certificate of registration
17  issued by the United States Patent and Trademark Office, also called the "PTO".
18  Thereafter, when the owner brings an action for infringement, the owner may rely
19  solely on the registration certificate to prove that the owner has the right to exclude
20  others from using the trademark or a similar mark that is likely to cause confusion in
21  the marketplace in connection with the type of goods specified in the certificate.]

22     A mark becomes incontestable as a matter of law if the mark is used for five
23  continuous years in commerce in the United States following the registration date
24  and the trademark owner files an affidavit with the PTO.  Where a registered mark
25  has become incontestable, the registration is conclusive evidence of the validity of
26  the registered mark and of the registration of the mark, of the registrant's ownership
27  of the mark, and of the registrant's exclusive right to use the registered mark in

28

commerce.[2] ~~[These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.]~~

## ~~[LIKELIHOOD OF CONFUSION]~~

~~[~~To prove infringement, ~~[the plaintiff]~~ Stone must prove, by a preponderance of the evidence, that ~~[the defendant]~~ MillerCoors, without ~~[the plaintiff's]~~ Stone's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of ~~[the plaintiff's]~~ Stone's mark in connection with the distribution or advertisement of goods, such that ~~[the defendant's]~~ MillerCoors's use of the mark is likely to cause confusion as to the source of the goods.  It is not necessary that the mark used by ~~[the defendant]~~ MillerCoors be an exact copy of ~~[the plaintiff's]~~ Stone's mark.  Rather, ~~[the plaintiff]~~ Stone must demonstrate that, viewed or heard in its entirety, the mark used by ~~[the defendant]~~ MillerCoors is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.~~]~~

## THE PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, ~~[name of plaintiff]~~ Stone, contends that the defendant, ~~[name of defendant]~~ MillerCoors, has infringed its incontestable, federally registered STONE® trademark. ~~The plaintiff~~ Stone has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that ~~the defendant~~ MillerCoors infringed that trademark.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that ~~the defendant~~ MillerCoors infringed ~~the plaintiff's~~ Stone's STONE® trademark.

## ~~[THE DEFENDANT'S BURDEN OF PROOF]~~

~~[The defendant~~ MillerCoors contends that ~~[the [registered] trademark is invalid] [,] [the trademark has been abandoned] [or] [insert other affirmative defense]~~

---

[2] See authority cited below.

1    [any MillerCoors affirmative defenses that are tried to the jury]. ~~The defendant~~

2    MillerCoors has the burden of proving by a preponderance of the evidence that ~~[the~~

3    ~~[registered] trademark] is invalid] [,] [the trademark has been abandoned] [or] [insert~~

4    ~~other affirmative defense].~~ [any MillerCoors affirmative defenses that are tried to

5    the jury].  [Preponderance of the evidence means that you must be persuaded by the

6    evidence that it is more probably true than not true that ~~[[registered] trademark is~~

7    ~~invalid] [or] [insert other affirmative defense].~~ [any MillerCoors affirmative

8    defenses that are tried to the jury].

9            [~~_____ is a person as that term is used in these instructions.~~]

10

11    *Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.1 (2017)

12    (modified as indicated).

13

14    *Authority for the definition of use*:  1 McCarthy on Trademarks and Unfair

15    Competition § 3:4 (5th ed.) ("To create trademark or trade dress rights, a designation

16    must perform the job of identification: to identify one source and distinguish it from

17    other sources. If it does not do this, then it is not protectable as a trademark, service

18    mark, trade dress or any similar exclusive right."); 2 McCarthy § 16:1 n.8 (5th ed.)

19    ("To achieve priority, the use must be as a trademark – to identify and distinguish

20    source."); *Rearden v. Rearden Commerce*, 683 F.3d 1190, 1204 (9th Cir. 2012)

21    (mark "not meritorious of trademark protection until it is used in public in a manner

22    that creates an association among consumers between the mark and the mark's

23    owner"); *New West v. NYM Co. of Cal*., 595 F.2d 1194, 1200 (9th Cir. 1979) (use

24    must be of "such nature and extent as to create an association of the goods or

25    services and the mark with the user thereof"); *Casual Corner Assocs., Inc. v. Casual

26    Stores of Nev., Inc.,* 493 F.2d 709, 712 (9th Cir. 1974) (there is a strict "continuous

27    use" requirement to demonstrate common law priority; "To be a continuous use, the

28    use must be maintained without interruption."); *Hana Financial, Inc. v. Hana Bank*,

735 F. 3d 1158, 1163 (9th Cir. 2013) (requiring prior and current marks be considered "in their entirety to determine whether each conveys the same commercial impression such that they possess the same connotation in context" and approving tacking instruction requiring that "A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. This is called 'tacking.' The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked."); *Brookfield Communications v. West Coast Entertainment*, 174 F. 3d 1036, 1048 (9th Cir. 1999) ("The standard for tacking ... is exceedingly strict: The marks must create the *same, continuing commercial impression,* and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." (emphasis in original)); *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1160 (9th Cir.2009) (same); SJ Decision, Dkt. 360 at 28-29, 31 (use must be "continuous and not interrupted" and sufficient "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the holder of the mark"; "a party cannot rely on a few instances of use of the marks in the distant past that were casual or had little importance apparently attached to them"; "mere use of a word does not make it a trademark"; "where a claimant uses different designs, colors, fonts, font sizes, and the presentation of a word varies from item to item, the word is unlikely to be a trademark"); *Textron Inc. v. Cardinal Eng'g Corp.*, 164 U.S.P.Q. 397, 399, 1969 WL 8396 (T.T.A.B. 1969) ("Whether or not a particular designation used on a product along with a house mark possesses a separate trademark significance depends on the manner in which it is used and the commercial impression engendered as a result of such use. *See: In re Barry Wright Corp.*, 155 USPQ 671 (TT&A Bd., 1967), and cases cited therein; *and Johnston Foods, Inc. v. Carnation Company*, 159 USPQ 624

1  (TT&A Bd., 1968), and cases cited therein. That is, will the designation, as used, be

2  recognized in and of itself as an indication of origin for the particular product?"),

3  *quoted in Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 757–58 (9th Cir. 2006)

4  ("In determining whether a mark has independent trademark significance, we

5  consider whether the mark owner has engaged in 'a constant pattern or effort ... to

6  use ... [the product mark] in a manner separate and distinct from [the house mark].'"

7  (alterations in original)); Restatement (Third) of Unfair Competition § 18, comment

8  d (1995) ("A designation is used as a trademark, trade name, collective mark, or

9  certification mark under the rule stated in this Section only if the designation is

10  employed as a symbol of identification. Thus, the manner of use must be calculated

11  to cause prospective purchasers to associate the designation with the goods, services,

12  or business of the user. . . . The manner of use must project to prospective purchasers

13  the significance of the designation as an identifying symbol. Although there are no

14  technical requirements as to the size or prominence of the use, the designation must

15  create a separate commercial impression, distinct from that created by other

16  accompanying marks, that signifies the designation's function as a symbol of

17  identification. Use of the designation in a location or size that is not likely to attract

18  the attention of prospective purchasers, for example, or use in textual material in a

19  manner that does not create a distinct impression as an identifying symbol will not

20  suffice."); 15 U.S.C. § 1065 ("Except to the extent, if any, to which the use of a mark

21  registered on the principal register infringes a valid right acquired under the law of

22  any State or Territory by use of a mark or trade name continuing from a date prior to

23  the date of registration under this chapter of such registered mark, the right of the

24  owner to use such registered mark in commerce for the goods or services on or in

25  connection with which such registered mark has been in continuous use for five

26  consecutive years subsequent to the date of such registration and is still in use in

27  commerce, shall be incontestable."); 15 U.S.C. § 1115(b)(5) ("That the mark whose

28  use by a party is charged as an infringement was adopted without knowledge of the

registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title . . . Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved."); 15 U.S.C. § 1127 ("The term 'mark' includes any trademark . . . ."; "The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."; "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade."); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, § 2.3.1 ("The first person to use a trademark in the marketplace as a source of origin acquires the right to prevent others from using the same or a similar mark . . . ."); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, § 2.3.2 ("In determining whether the use in commerce is sufficient to create trademark rights . . . you should consider the totality of the circumstances.  Use is sufficient to establish trademark rights if the use is public enough so that it identifies or distinguishes the marked goods in an appropriate segment of the public as those of the person using the mark . . . and if the use is consistent and continuous . . . .  On the other hand, mere 'token use' of the mark is not enough to establish trademark rights.").

*Authority for the language regarding incontestability*:  15 U.S.C. § 1115(b) ("To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."); 3A O'Malley, Federal Jury Practice & Instructions Ch. 159 ("A mark registered in the Principal Register becomes incontestable as a matter of law if the mark is used for five continuous years in commerce in the United States

following the registration date and the registrant files what is called a 'Section 15 affidavit.' . . . 'Incontestability' means that, with certain exceptions, the registration is conclusive evidence of the registrant's ownership and exclusive right to use the mark and provides immunity from attack on the basis of prior use, and immunity from attack on the basis of descriptiveness."); SJ Decision, Dkt. 360 at 5-6 ("Under the Lanham Act, a mark may become incontestable if it is not challenged within five years of its registration. *See* 15 U.S.C. § 1065(3). To become incontestable, Section § 1065(3) requires that the registered mark be continuously used in commerce for "five consecutive years" subsequent to the date of registration and still be in use in commerce. *Id*. The registration of an incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115(b). . . . "If the mark at issue was federally registered and had become 'incontestable', pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citations omitted).").

**Instruction No. 3**

**Trademark Definition**

A trademark is any word, name, symbol, device, {or any combination thereof,} used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, {even if that source is generally unknown.}

{A person who uses the trademark of another may be liable for damages.}

A trademark can be registered with the U.S. Patent and Trademark Office or asserted based on continuous usage in commerce.  When a trademark is registered with the U.S. PTO, it acquires certain additional protections and is presumed to be valid and enforceable.  Registered trademarks are allowed to use the ® symbol to place others on notice of the owner's rights.  Unregistered trademarks cannot use the ® symbol but can be identified as an asserted trademark right by use of the ™ symbol.


*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.2 (2017) (modified as indicated); 15 U.S.C. § 1111 (a registrant of a mark registered in the Patent and Trademark Office, may . . . display[] with the mark the . . . letter R enclosed within a circle, thus ®"); TMEP § 906 ("The owner of a mark registered in the United States Patent and Trademark USPTO may give notice that the mark is registered by displaying with the mark the words . . . the letter R enclosed within a circle, ®.  . . . The federal registration symbol may not be used with marks that are not actually registered in the USPTO.  . . . A party may use terms such as "trademark," "trademark applied for," "TM" and "SM" regardless of whether a mark is registered.").

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 4**

**Trademark Liability – Theories and Policies**

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives varies from case to case, because they may often conflict.  Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if ~~the defendant~~ <u>MillerCoors</u> is liable to ~~the plaintiff~~ <u>Stone</u> for violating the trademark law.  These facts are relevant to whether ~~the defendant~~ <u>MillerCoors</u> is liable for:

[1.  infringing ~~plaintiff's~~ <u>Stone's</u> registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers]~~[;]~~

[2.  unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of ~~plaintiff's~~ <u>Stone's</u> goods]~~[;]~~

~~[3. unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

[4~~3~~.  infringing ~~plaintiff's~~ <u>Stone's</u> trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers]~~[;]~~ [and]

[5.~~4.~~  false advertising, by making a false statement that was material and that tended to deceive consumers, injuring ~~the plaintiff~~ <u>Stone</u> in the market].

5.  false designation of origin, by using a product designation that is likely to cause confusion regarding the origin of MillerCoors's goods or whether those goods and services are affiliated, connected, associated with, or endorsed by Stone.

6.  diluting Stone's registered trademark, by using a trademark in a manner likely to blur the distinctive quality of Stone's trademark or tarnish the reputation of Stone's trademark in the minds of consumers.

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.5 (2017) (modified as indicated).

**Instruction No. 5**

**Elements and Burden of Proof – Trademark Infringement**

On ~~the plaintiff's~~ Stone's claim for trademark infringement, ~~the plaintiff~~ Stone has the burden of proving each of the following elements by a preponderance of the evidence:

1. ~~[describe the plaintiff's symbol or term]~~ Stone's trademark, STONE®, is a valid, protectable trademark;

2. ~~the plaintiff~~ Stone owns ~~[describe the plaintiff's symbol or term]~~ STONE® as a trademark; and

3. ~~the defendant~~ MillerCoors used the word "STONE" ~~[describe symbol or term used by the defendant] [a mark similar to [describe the plaintiff's symbol or term ]]~~ without the consent of ~~the plaintiff~~ Stone in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which ~~the plaintiff~~ Stone has the burden of proof has been proved, your verdict on this claim should be for ~~the plaintiff~~ Stone.  If, on the other hand, ~~the plaintiff~~ Stone has failed to prove any of these elements, your verdict on this claim should be for ~~the defendant~~ MillerCoors.

In this case, I have found as a matter of law that the first two elements of a claim for federal trademark infringement are met.  Because the STONE® mark is federally registered and has obtained incontestable status, Stone has a valid and legally protectable mark.  Accordingly, you should consider that validity, legal protectability, and ownership are proved.


*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.6 (2017) (modified as indicated); SJ Decision, Dkt. 360 at 5-6 ("In this case, the first two elements of a claim for federal trademark infringement are met. First, Plaintiff holds a valid trademark in STONE® as it was registered *without objection* on July 23,

1   1998, under U.S. Reg. No. 2,168,093. (Doc. No. 175 at 4.) Second, in 2008

2   (*approximately ten years after registration*), the PTO accepted Plaintiff's Combined

3   Declaration of Use and Incontestability application, making STONE®

4   "incontestable" as a matter of law. *Id.* "If the mark at issue was federally registered

5   and had become 'incontestable', pursuant to 15 U.S.C. §§ 1058 and 1065, validity,

6   legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor*

7   *Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citations omitted). Here, the

8   "STONE®" mark is federally registered and has obtained incontestable status. 15

9   U.S.C. § 1065. Thus, Plaintiff has a valid and legally protectable mark.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 6**

**Presumed Validity and Ownership – Registered Trademark**

I gave you instruction number __ [insert number of instruction] regarding Trademark Elements and Burden of Proof[, e.g., 15.6] that requires ~~the plaintiff~~ Stone to prove by a preponderance of the evidence that STONE® [that the trademark is valid and protectable] [and] [that ~~the plaintiff~~ Stone owns the trademark]. [A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.]

One way for ~~the plaintiff~~ Stone to prove trademark validity and ownership is to show that the trademark is registered.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence [of the validity and protectability of the trademark] [and] [of the certificate holder's ownership of the trademark] covered by that certificate.

A mark becomes incontestable as a matter of law if the mark is used for five continuous years in commerce in the United States following the registration date and not challenged.  Where a registered mark has become incontestable, the registration is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.[3]

Exhibit __ is a certificate of registration from the United States Patent and Trademark Office.  [It was submitted by ~~the plaintiff~~ Stone as proof of the validity of the trademark [and] [that ~~the plaintiff~~ Stone owns the trademark].]

The facts recited in this certificate are:  Plaintiff holds a valid trademark in STONE® for use in the sale of beers and ales, as it was registered without objection

---

[3] See authority cited below.

on July 23, 1998, under United States Reg. Number. 2,168,093.  <u>Stone's application for the STONE® trademark with the U.S. Patent and Trademark Office was submitted on April 4, 1996 for use in the sale of beers and ales, published for opposition by the U.S. PTO on July 29, 1997, approved without opposition on June 23, 1998 for use in the sale of beers and ales, and registered on that date.</u>

<u>Stone submitted a Declaration of Use and Incontestability that it had used the STONE® mark for five consecutive years to the U.S. Patent and Trademark Office on May 11, 2004.  The U.S. Patent and Trademark Office accepted Stone's Combined Declaration of Use and Incontestability application, making STONE® "incontestable" as a matter of law.  The registration of an incontestable mark is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark.  Thus,</u> validity, legal protectability, and ownership are proved<u>, and Stone has a valid and legally protectable mark.</u>  ~~[summarize certificate entries as to validity and ownership of trademark, as well as limitations on the registration].~~

However, ~~the plaintiff~~ <u>MillerCoors</u> submitted evidence ~~to~~ <u>that it claims</u> disputes these recitals. ~~The defendant~~ <u>MillerCoors</u> alleges that the certificate cannot be considered proof of ~~[[validity] [and] [~~ownership~~]]~~ of the STONE® trademark because <u>MillerCoors claims to have adopted and used "STONE" as a trademark for its Keystone beer consistently and continuously from a date prior to Stone's application to register STONE®.  MillerCoors's rights are determined separately for each geographic area in which it claims to have used "STONE" as a trademark.</u>

<u>Mere use of a word does not make it a trademark, and MillerCoors</u> cannot rely on a few instances of use in the distant past that were casual or had little importance<u>. To overcome Stone's ownership rights as established by Stone's incontestable registration of the STONE® trademark with the U.S. Patent and Trademark Office,</u>

MillerCoors must show the following by a preponderance of the evidence for each geographic area in which it sells Keystone beer:

     1.    That MillerCoors adopted and continuously used "STONE" as a trademark to identify the source of origin of its Keystone beer from a date prior to Stone's application to register the STONE® mark without interruption to the present;

     2.    That MillerCoors's use was not token or incidental use but was consistent, continuous, and of a manner sufficient to create an association in the minds of consumers between the mark "STONE" and MillerCoors and/or its Keystone beer that existed prior to Stone's application to register the STONE® mark and has continued without interruption to the present;

     3.    That MillerCoors's use of "STONE" had independent trademark significance and created a separate commercial impression independent and apart from its use of its KEYSTONE® mark, such that "STONE" was recognized in and of itself as indicating the origin for Keystone beer from a date prior to Stone's application to register the STONE® mark continuously and without interruption to the present; and

     4.    That MillerCoors currently uses "STONE" in a manner that is indistinguishable from its prior use of "STONE", creates the same continuing commercial impression and connotation in context, and does not materially differ from or alter the character of the prior use.[4]

~~[Unless~~ ~~the defendant~~ MillerCoors proves by a preponderance of the evidence that it adopted and consistently and continuously used the "STONE" mark as a trademark to identify the source of origin of its Keystone beer from a date prior to Stone's application to register the STONE® mark in the manner described above, ~~[insert § 1115(b) defense[s] raised by defendant, e.g., that the trademark was abandoned]~~, you must consider the trademark to be conclusively proved as ~~[[valid]~~

---

[4] See authority cited below.

1  [and][owned by ~~the plaintiff~~ Stone]]. However, if ~~the defendant~~ MillerCoors shows

2  that it adopted and consistently and continuously used the STONE® mark as a

3  trademark to identify the source of origin of its Keystone beer from a date prior to

4  Stone's application to register the STONE® mark in the manner described above

5  [insert § 1115(b) defense[s] raised, e.g., the trademark was abandoned] by a

6  preponderance of the evidence, then the facts stated in the certificate that Stone owns

7  a trademark in the word "STONE" [summarize certificate entries disputed by

8  defendant's proof] are no longer conclusively presumed to be correct and Stone is

9  not entitled to enforce its STONE® trademark against MillerCoors.

10  [You should then consider whether all of the evidence admitted in this case, in

11  addition to this certificate of registration, shows by a preponderance of the evidence

12  that the trademark is [[valid] [and] [owned by Stone the plaintiff]], as I explained in

13  the Instruction [insert number of instruction regarding Trademark Elements and

14  Burden of Proof, e.g., 15.6].

15

16  *Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.8 (2017)

17  (modified as indicated).

18

19  *Authority for the language regarding incontestability*:  15 U.S.C. § 1115(b)

20  ("To the extent that the right to use the registered mark has become incontestable

21  under section 1065 of this title, the registration shall be conclusive evidence of the

22  validity of the registered mark and of the registration of the mark, of the registrant's

23  ownership of the mark, and of the registrant's exclusive right to use the registered

24  mark in commerce."); 3A O'Malley, Federal Jury Practice & Instructions Ch. 159

25  ("A mark registered in the Principal Register becomes incontestable as a matter of

26  law if the mark is used for five continuous years in commerce in the United States

27  following the registration date and the registrant files what is called a 'Section 15

28  affidavit.' . . . 'Incontestability' means that, with certain exceptions, the registration

is conclusive evidence of the registrant's ownership and exclusive right to use the mark and provides immunity from attack on the basis of prior use, and immunity from attack on the basis of descriptiveness."); SJ Decision, Dkt. 360 at 5-6 ("Under the Lanham Act, a mark may become incontestable if it is not challenged within five years of its registration. *See* 15 U.S.C. § 1065(3). To become incontestable, Section § 1065(3) requires that the registered mark be continuously used in commerce for "five consecutive years" subsequent to the date of registration and still be in use in commerce. *Id*. The registration of an incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115(b).  In this case, the first two elements of a claim for federal trademark infringement are met. First, Plaintiff holds a valid trademark in STONE® as it was registered *without objection* on July 23, 1998, under U.S. Reg. No. 2,168,093. (Doc. No. 175 at 4.) Second, in 2008 (*approximately ten years after registration*), the PTO accepted Plaintiff's Combined Declaration of Use and Incontestability application, making STONE® "incontestable" as a matter of law. *Id*. "If the mark at issue was federally registered and had become 'incontestable', pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citations omitted). Here, the "STONE®" mark is federally registered and has obtained incontestable status. 15 U.S.C. § 1065. Thus, Plaintiff has a valid and legally protectable mark.").

*Authority that it is MillerCoors's burden to show prior use*:  *Vuitton Et Fils S.A. v. J. Young Enters*., 644 F.2d 769, 775 (9th Cir. 1981) ("[U]nder the Lanham Act, registration and entry of a trademark on the Principal Register of the United States Patent and Trademark Office shifts the burden of proof from the plaintiff, who would have to establish his right to exclusive use in a common law infringement

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

action, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such protected use."); 5 McCarthy on Trademarks and Unfair Competition, § 25:53 ("A plaintiff with an incontestable registration need not prove priority as part of its case in chief: the elements of § 15 form a defense to be proven by the defendant."); 15 U.S.C. § 1057(b) ("Certificate as prima facie evidence: A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.").

*Authority for the description of MillerCoors's prior use defense*:  15 U.S.C. § 1065 ("Except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable."); 15 U.S.C. § 1115(b)(5) ("That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title . . . Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved."); 15 U.S.C. § 1127 ("The term 'mark' includes any trademark . . . ."; "The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . to

identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."; "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade."); 5 McCarthy on Trademarks and Unfair Competition § 26:53 (5th ed.) ("State Law Defines the Extent of the Senior User's Territory. Since § 15 refers to a right acquired "under the law of any state or Territory," state law, not federal common law, applies to define the extent of the common law rights of the senior user."); 5 McCarthy on Trademarks and Unfair Competition § 26:28 (5th ed.) ("For trademark purposes, separate trade areas may exist within the boundaries of a state"); *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 989 (9th Cir. 1995) ("The extent of market penetration depends upon the volume of sales, the positive and negative growth trends, the number of people who purchased the party's goods in relation to the number of potential customers, and the amount of advertising".); 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed.) ("To create trademark or trade dress rights, a designation must perform the job of identification: to identify one source and distinguish it from other sources. If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right."); 2 McCarthy § 16:1 n.8 (5th ed.) ("To achieve priority, the use must be as a trademark – to identify and distinguish source."); *Rearden v. Rearden Commerce*, 683 F.3d 1190, 1204 (9th Cir. 2012) (mark "not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner"); *New West v. NYM Co. of Cal*., 595 F.2d 1194, 1200 (9th Cir. 1979) (use must be of "such nature and extent as to create an association of the goods or services and the mark with the user thereof"); *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 712 (9th Cir. 1974) (there is a strict "continuous use" requirement to demonstrate common law priority; "To be a continuous use, the use must be maintained without interruption."); *Hana Financial, Inc. v. Hana Bank*, 735 F. 3d 1158, 1163 (9th Cir. 2013) (requiring prior and current marks be considered "in their entirety to determine

whether each conveys the same commercial impression such that they possess the same connotation in context" and approving tacking instruction requiring that "A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. This is called 'tacking.' The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked."); *Brookfield Communications v. West Coast Entertainment*, 174 F. 3d 1036, 1048 (9th Cir. 1999) ("The standard for tacking ... is exceedingly strict: The marks must create the *same, continuing commercial impression,* and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." (emphasis in original)); *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1160 (9th Cir.2009) (same); SJ Decision, Dkt. 360 at 28-29, 31 (use must be "continuous and not interrupted" and sufficient "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the holder of the mark"; "a party cannot rely on a few instances of use of the marks in the distant past that were casual or had little importance apparently attached to them"; "mere use of a word does not make it a trademark"; "where a claimant uses different designs, colors, fonts, font sizes, and the presentation of a word varies from item to item, the word is unlikely to be a trademark"); *Textron Inc. v. Cardinal Eng'g Corp.*, 164 U.S.P.Q. 397, 399, 1969 WL 8396 (T.T.A.B. 1969) ("Whether or not a particular designation used on a product along with a house mark possesses a separate trademark significance depends on the manner in which it is used and the commercial impression engendered as a result of such use. *See: In re Barry Wright Corp.*, 155 USPQ 671 (TT&A Bd., 1967), and cases cited therein; *and Johnston Foods, Inc. v. Carnation Company*, 159 USPQ 624 (TT&A Bd., 1968), and cases cited therein. That is, will the designation, as used, be recognized in and of itself as an indication of origin for

the particular product?"), *quoted in Quiksilver, Inc. v. Kymsta Corp*., 466 F.3d 749, 757–58 (9th Cir. 2006) ("In determining whether a mark has independent trademark significance, we consider whether the mark owner has engaged in 'a constant pattern or effort ... to use ... [the product mark] in a manner separate and distinct from [the house mark].'" (alterations in original)); Restatement (Third) of Unfair Competition § 18, comment d (1995) ("A designation is used as a trademark, trade name, collective mark, or certification mark under the rule stated in this Section only if the designation is employed as a symbol of identification. Thus, the manner of use must be calculated to cause prospective purchasers to associate the designation with the goods, services, or business of the user. . . . The manner of use must project to prospective purchasers the significance of the designation as an identifying symbol. Although there are no technical requirements as to the size or prominence of the use, the designation must create a separate commercial impression, distinct from that created by other accompanying marks, that signifies the designation's function as a symbol of identification. Use of the designation in a location or size that is not likely to attract the attention of prospective purchasers, for example, or use in textual material in a manner that does not create a distinct impression as an identifying symbol will not suffice."); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, § 2.3.1 ("The first person to use a trademark in the marketplace as a source of origin acquires the right to prevent others from using the same or a similar mark . . . ."); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, § 2.3.2 ("In determining whether the use in commerce is sufficient to create trademark rights . . . you should consider the totality of the circumstances.  Use is sufficient to establish trademark rights if the use is public enough so that it identifies or distinguishes the marked goods in an appropriate segment of the public as those of the person using the mark . . . and if the use is consistent and continuous . . . .  On the other hand, mere 'token use' of the mark is not enough to establish trademark rights.").

**Instruction No. 7**

**Trademark Infringement – Elements – Likelihood of Confusion – *Sleekcraft***

You must consider whether ~~the defendant's~~ MillerCoors's use of the trademark is likely to cause confusion about the source of ~~the plaintiff's~~ Stone's or ~~the defendant's~~ MillerCoors's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of ~~the Plaintiff's~~ Stone's Mark. The more the consuming public recognizes ~~the plaintiff's~~ Stone's trademark as an indication of origin of ~~the plaintiff's~~ Stone's goods, the more likely it is that consumers would be confused about the source of ~~the defendant's~~ MillerCoors's goods if ~~the defendant~~ MillerCoors uses a similar mark.

(2) ~~Defendant's~~ MillerCoors's Use of the Mark. If ~~the defendant~~ MillerCoors and ~~plaintiff~~ Stone use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of ~~Plaintiff's~~ Stone's and ~~Defendant's~~ MillerCoors's Marks. If the overall impression created by ~~the plaintiff's~~ Stone's trademark in the marketplace is similar to that created by ~~the defendant's~~ MillerCoors's trademark in {appearance,} {sound} {or} {meaning}, there is a greater chance {that consumers are likely to be confused by ~~defendant's~~ MillerCoors's use of a mark} {of likelihood of confusion}. {Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.}

(4) Actual Confusion. If use by ~~the defendant~~ MillerCoors of ~~the plaintiff's~~ Stone's trademark has led to instances of actual confusion, this strongly suggests a

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, ~~the defendant's~~ MillerCoors's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by ~~the defendant~~ MillerCoors creates for consumers a likelihood of confusion with ~~the plaintiff's~~ Stone's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) ~~Defendant's~~ MillerCoors's Intent. Knowing use by ~~defendant~~ MillerCoors of ~~the plaintiff's~~ Stone's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of ~~the plaintiff's~~ Stone's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that ~~the defendant~~ MillerCoors acted knowingly, the use of ~~plaintiff's~~ Stone's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If ~~the plaintiff's~~ Stone's and ~~defendant's~~ MillerCoors's ~~[goods]~~ ~~[services]~~ are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in ~~the plaintiff's~~ Stone's and ~~defendant's~~ MillerCoors's trademarks.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely ~~the plaintiff~~ Stone is to begin selling the products for which ~~the defendant~~ MillerCoors is using ~~the plaintiff's~~ Stone's trademark. If there is a strong

possibility of expanding into the other party's market, there is a greater likelihood of confusion.

~~[(9) Other Factors. Insert any other factors that bear on likelihood of confusion.]~~

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.18 (2017) (modified as indicated).

**Instruction No. 8**

**Trademark Infringement – Likelihood of Confusion – Factor – Strength of Trademark**

**(Strength as a Factor for Evaluating Likelihood of Confusion)**

How strongly ~~the plaintiff's~~ Stone's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by ~~the defendant~~ MillerCoors is likely to create confusion with ~~the plaintiff's~~ Stone's mark.

~~The plaintiff~~ Stone asserts that STONE® ~~[insert trademark]~~ is a federally registered and incontestable trademark for its ~~[goods or services]~~ STONE® brand beers and ales. ~~The plaintiff~~ Stone contends that ~~the defendant's use of [insert defendant's mark]~~ MillerCoors's rebranding of its "Keystone" beer to isolate and thereby emphasize the word "STONE" over the words "KEY" and "LIGHT" on Keystone's packaging and related marketing and advertising ~~in connection with the defendant's [insert defendant's produce or service]~~ infringes ~~plaintiff's~~ Stone's trademark because it is likely to cause confusion.

**The Strength of Marks**

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1.      Commercial Strength: This is the amount of marketplace recognition of the mark; and

2.      Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning." ~~[See Instruction 15.11 (Infringement - Elements - Validity - Distinctiveness - Secondary Meaning). If the plaintiff's mark is determined to be inherently distinctive, there will be no need to instruct the jury on acquiring a secondary meaning for the mark.]~~

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

**Coined** and **arbitrary** words are regarded as being relatively strong marks.

A **coined** word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers

or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks. Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.19 (2017) (modified as indicated).

**Instruction No. 9**

**False Designation of Origin – Elements**

Stone may prove its claim for false designation of origin in either of two ways.

First, Stone may succeed on its claim for False Designation of Origin if it shows by a preponderance of the evidence that MillerCoors has made commercial use of the word "STONE" in a manner that is likely to cause confusion as to one or more of the following:

1.   The origin of MillerCoors's goods or services;

2.   MillerCoors's affiliation, connection, or association with Stone; or

3.   Endorsement or approval of MillerCoors's "Keystone" beer by Stone.

Second, Stone may succeed on its claim for False Designation of Origin if it shows by a preponderance of the evidence that MillerCoors has made commercial use of the word "STONE" in a manner which misrepresents the nature, characteristics, qualities, or geographic origin of MillerCoors's "Keystone" beer.

If you find that each of the elements on which Stone has the burden of proof has been proved, your verdict on this claim should be for Stone. If, on the other hand, Stone has failed to prove any of these elements, your verdict on this claim should be for MillerCoors.

*Authority:* U.S. Code § 1125(a) – False designations of origin.

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 10**

**Trademark Dilution – 15 U.S.C. 1125(c) – Elements**

On Stone's claim for trademark dilution under the Lanham Act, Stone has the burden of proving each of the following elements by a preponderance of the evidence:

1.    The STONE® mark is famous and distinctive;

2.    MillerCoors is making use of "STONE" in commerce or making use of an identical or nearly identical trademark or trade name;

3.    MillerCoors's use began after the STONE® mark became famous; and

4.    MillerCoors's use of "STONE" is likely to cause dilution by blurring or tarnishment of Stone's mark.

I describe each of these elements below.

First, I will suggest some factors you should consider in deciding whether Stone's trademark is "famous" and "distinctive."  The presence or absence of any particular factor that I suggest should not necessarily resolve whether Stone's trademark is "famous" and "distinctive" because you must consider all relevant evidence in determining this.  As you consider whether Stone's trademark is "famous" and "distinctive," you should examine the following:

    a.    The degree of inherent or acquired distinctiveness of the trademark;

    b.    The duration and extent of use of the trademark in connection with the sale of beer and ale;

    c.    The duration and extent of advertising and publicity of the trademark;

    d.    The geographical extent of the area in which the trademark is used;

    e.    The channels of trade for the goods in which the trademark is used;

    f.    The degree of recognition of the trademark in the trading areas and channels of trade used by Stone and MillerCoors;

g.      The nature and extent of use of the same or similar trademark by third parties; and

h.      Whether the trademark was registered.

For the second element, "identical or nearly identical" does not mean that MillerCoors's use of "STONE" must be exactly the same as Stone's usage. The two are considered "identical or nearly identical" if a significant segment of the consuming public would see the two as essentially the same.

For the third element, in determining when MillerCoors's use of "STONE" began, you should consider only consistent and continuous use of "STONE" as a trademark to identify the source of origin of Keystone beer.  Only such uses that have continued uninterrupted from the time of first use to the present day without material difference or altered character, that have had the same continuing commercial impression and connotation, and that have created a continuing and ongoing association in the minds of consumers between MillerCoors, its Keystone beer, and the STONE® mark are relevant for purposes of determining when MillerCoors's use began.

Finally, for the fourth element, MillerCoors's use of "STONE" can constitute dilution in two ways: **blurring** or **tarnishment**.

**Blurring** occurs when the association arising from the similarity between a plaintiff's famous trademark and the defendant's use of a mark impairs the distinctiveness of the famous trademark.  I will suggest some factors you should consider in deciding whether dilution by blurring has occurred.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether dilution by blurring has occurred, because you must consider all relevant evidence in determining this.  As you consider whether dilution by blurring has occurred, you should examine the following:

a.      The degree of similarity between MillerCoors's use of the word "STONE" and Stone's trademark STONE®;

b.  The degree of inherent or acquired distinctiveness of Stone's trademark;

c.  The extent to which Stone is engaged in substantially exclusive use of the trademark;

d.  The degree of recognition of Stone's trademark;

e.  Whether MillerCoors intended to create an association with Stone's trademark; and

f.  Any actual association between the usage by MillerCoors of "STONE" and Stone's trademark.

**Tarnishment** is the use by MillerCoors of a trademark that is identical or nearly identical to a famous trademark of Stone in such a way that it harms the reputation of Stone's trademark.

If Stone proves dilution *either* by blurring *or* by tarnishment, then you should find for Stone. Stone is not required to prove dilution both by blurring and by tarnishment.

To prevail on its dilution claims, Stone is not required to prove likelihood of confusion.

If you find that each of the elements on which Stone has the burden of proof has been proved, your verdict on this claim should be for Stone.  If, on the other hand, Stone has failed to prove any of these elements, your verdict on this claim should be for MillerCoors.

*Authority:* 15 U.S.C. § 1125(c); 15 U.S.C. § 1127; *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003); *Adidas America, Inc. v. Payless Shoesource, Inc.*, No. 01-1655-KI (D. Or. 2008); *see generally* cases upholding tarnishment claims under FTDA: *Kraft Foods Holdings, Inc. v. Helm*, 205 F.Supp.2d 942, 949 (N.D. Ill. 2002); *Toys "R" Us v. Akkaoui*, 1996 U.S. Dist. LEXIS 17090, *7 (N.D. Cal. Oct. 29, 1996); *Rearden v. Rearden Commerce*, 683 F.3d 1190, 1204 (9th

Cir. 2012) (mark "not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner."); *New West v. NYM Co. of Cal*., 595 F.2d 1194, 1200 (9th Cir. 1979) (use must be of "such nature and extent as to create an association of the goods or services and the mark with the user thereof"); *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 712 (9th Cir. 1974) (there is a strict "continuous use" requirement to demonstrate common law priority; "To be a continuous use, the use must be maintained without interruption."); 15 U.S.C § 1115(b)(5) ("That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title . . . ."); 15 U.S.C. § 1127 ("The term 'mark' includes any trademark . . . ."; "The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."; "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade."); *Hana Financial, Inc. v. Hana Bank*, 735 F. 3d 1158, 1163 (9th Cir. 2013) (requiring prior and current marks be considered "in their entirety to determine whether each conveys the same commercial impression such that they possess the same connotation in context" and approving tacking instruction requiring that "A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. This is called 'tacking.' The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked."); *Brookfield Communications v. West Coast Entertainment*, 174 F. 3d 1036, 1048 (9th Cir. 1999) ("The standard for tacking ... is

exceedingly strict: The marks must create the *same, continuing commercial impression,* and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." (emphasis in original)); *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1160 (9th Cir.2009) (same).

**Instruction No. 11**

**California Dilution – Cal. Prof. Bus. Code 14247, *et seq.* – Elements**

On Stone's claim for dilution under the California Professions and Business Code, Stone has the burden of proving the same elements it must prove on its Lanham Act dilution claim under federal law, except that you should consider whether the STONE® trademark is famous and distinctive within California only.

For purposes of California law, a mark is famous if it is widely recognized by the general consuming public of California, or in any geographic area of California, as a designation of source of Stone's beer.

I will suggest some factors you should consider in deciding whether Stone's trademark is "famous" in California.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether Stone's trademark is "famous," because you must consider all relevant evidence in determining this.  As you consider whether Stone's trademark is "famous," you should examine the following:

1.      The duration, extent, and geographic reach of advertising and publicity of the STONE® trademark in this state, whether advertised or publicized by the owner or third parties.

2.      The amount, volume, and geographic extent of sales in this state of goods or services offered under the mark.

3.      The extent of actual recognition of the mark in this state or in any geographic area of this state.

4.      Whether the mark is the subject of a state registration in this state, or federally registered on the U.S. Patent and Trademark Office's Principal Register as described in Instruction ___ above.

The other elements of Stone's California trademark dilution claim are:

1.      MillerCoors is making use of "STONE" in commerce or making use of an identical or nearly identical trademark or trade name;

2.      MillerCoors's use in California began after the STONE® mark became famous in California; and

3.      MillerCoors's use of "STONE" is likely to cause dilution by blurring or tarnishment of Stone's mark.

"Use," "blurring," and "tarnishment" are defined in Instruction __.

If you find that each of the elements on which Stone has the burden of proof has been proved, your verdict on this claim should be for Stone.  If, on the other hand, Stone has failed to prove any of these elements, your verdict on this claim should be for MillerCoors.

*Authority:* Cal. Prof. and Bus. Code 14202, 14247 *et seq.*

**Instruction No. 12**

**Unfair Competition – California Law**

On Stone's claim for Unfair Competition under California law, Stone has the burden of proving each of the following elements by a preponderance of the evidence:

1. Stone's trademark, STONE®, is a valid, protectable trademark;

2. Stone owns STONE® as a trademark; and

3. MillerCoors used the word "STONE" without the consent of Stone in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which Stone has the burden of proof has been proved, your verdict on this claim should be for Stone.  If, on the other hand, Stone has failed to prove any of these elements, your verdict on this claim should be for MillerCoors.

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.6 (2017); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); 3 McCarthy on Trademarks and Unfair Competition § 22:1.50 (5th ed.) (California's common law trademark standards are the same as, or very similar to, federal trademark law); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902, n.2 (9th Cir. 2002), cert. denied, 537 U.S. 1171 (2003) ("The likelihood-of-confusion test also governs Mattel's state law claims of unfair competition. . . ."); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis.")

## Instruction No. 13

## Willfulness

If you find that MillerCoors has infringed or diluted Stone's trademark, you must also determine whether Stone has proven by a preponderance of the evidence that MillerCoors's conduct was "willful." MillerCoors acted willfully if it knowingly adopted a mark identical or similar to Stone's mark or if it acted with indifference to or reckless disregard for Stone's trademark rights.

Accordingly, you may find that MillerCoors's conduct was willful if you find one or more of the following:

1.  MillerCoors chose a designation for its Keystone beer with the knowledge that it was similar or identical to Stone's trademark;

2.  MillerCoors willfully blinded itself to facts that would put it on notice that it was infringing or diluting Stone's trademark, having cause to suspect it; or

3.  MillerCoors acted with indifference to or reckless disregard for Stone's trademark rights.

*Authority*: *Hokto Kinoko Co. v. Concord Farms*, 738 F.3d 1085, 1096 (9th Cir. 2013) ("When an alleged infringer knowingly adopts a mark identical or similar to another's mark, courts will presume an intent to deceive the public."); *Stone Creek v. Omnia Italian Design*, 875 F.3d 426, 434 (9th Cir. 2017) ("[C]hoosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive."); *Fifty-Six Hope Road Music v. Avela*, 778 F. 3d 1059, 1074 (9th Cir. 2015) (finding willfulness based on defendant's "awareness of its competitors and its actions at those competitors' expense"; noting that "Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement."); *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1498 (2020) (Sotomayor, J., concurring) ("Courts . . . [have] defined 'willfulness' to

encompass a range of culpable mental states—including the equivalent of recklessness, but excluding 'good faith' or negligence"); *Romag Fasteners, Inc v. Fossil, Inc.*,. Oral Argument Tr. at 38:18-25, 44:8-18 (U.S. 2020) (questioning by Ginsburg, J., and Kavanaugh, J.) (same); 5 McCarthy on Trademarks and Unfair Competition § 30:62 (5th ed. 2019) ("willfulness . . . range[s] from fraudulent and knowing to reckless and indifferent" behavior); *SAS v. Sawabeh Info. Servs. Co.*, No. CV1104147MMMMANX, 2015 WL 12763541, at *7 (C.D. Cal. June 22, 2015); *Philip Morris USA, Inc. v. Liu*, 489 F.Supp.2d 1119, 1123 (C.D. Cal. 2007); *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011) ("Under the Copyright and Lanham Acts, willfulness may be found where the defendant's infringing actions are undertaken either with knowledge that the conduct constitutes infringement or with reckless disregard for the copyright or trademark owner's rights.") (citing *In re Barboza*, 545 F.3d 702, 707–08 (9th Cir. 2008))); Seventh Circuit Pattern Jury Instruction 13.6.5 ("If you find that Defendant infringed Plaintiff's trademark . . . , you must also determine whether Plaintiff has proven that, at the time Defendant used the trademark . . . Defendant acted willfully. Defendant acted willfully if it knew that it was infringing Plaintiff's . . . trademark . . . or if it acted with indifference to Plaintiff's trademark rights . . . .").

**Instruction No. 14**

**Agency**

A corporation can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

The following entities acted as agents of MillerCoors regarding the branding and marketing of MillerCoors's allegedly infringing "Keystone" beer products: Mekanism, Epic Signal, Soulsight, Positive, PRS IN VIVO, Connect, C&R, and ARC.  Any act or omission of Mekanism, Epic Signal, Soulsight, Positive, PRS IN VIVO, Connect, C&R, or ARC is considered the act or omission of MillerCoors.

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 4.2; 4.8; 4.10 (2017).

**Instruction No. 15**

**Damages – Actual or Statutory Notice**

In order for ~~plaintiff~~ Stone to recover damages, ~~the plaintiff~~ Stone has the burden of proving by a preponderance of the evidence that ~~defendant~~ MillerCoors had ~~[either statutory or]~~ actual notice that ~~the plaintiff's~~ Stone's trademark was registered.

~~[Defendant~~ MillerCoors had statutory notice if:~~]~~

~~[~~1. ~~plaintiff~~ Stone displayed the trademark with the words "Registered in U.S. Patent and Trademark Office"~~][or]~~

~~[~~2. ~~plaintiff~~ Stone displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off."~~][or]~~

~~[~~3. ~~plaintiff~~ Stone displayed the trademark with the letter R enclosed within a circle, thus ®.~~]~~

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.26 (2017) (modified as indicated).

**Instruction No. 16**

**Damages – Plaintiff's Actual Damages**

If you find for ~~the plaintiff~~ Stone on ~~the plaintiff's~~ Stone's claims for [infringement], false designation of origin, dilution under federal or California law, and/or [unfair competition], [and find that ~~the defendant~~ MillerCoors had statutory notice or actual notice of ~~the plaintiff's~~ Stone's registered trademark], you must determine ~~the plaintiff's~~ Stone's actual damages.

If Stone prevails only on its claims for dilution under federal or California law and not on any of its other claims, you must find that MillerCoors's conduct was willful in order to award damages.  If Stone prevails on any of its other claims, willfulness is not required to award damages.

~~The plaintiff~~ Stone has the burden of proving actual damages by a preponderance of the evidence.  Damages means the amount of money which will reasonably and fairly compensate ~~the plaintiff~~ Stone for any [injury] [and] [or] [property damage] you find was caused by ~~the defendant's~~ MillerCoors's infringement of ~~the plaintiff's~~ Stone's registered trademark.

Damages must be established with reasonable certainty. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. Rather, there must be a reasonable basis for computation. The burden of any uncertainty in the amount of damages should be borne by the Defendant.[5]

In assessing damages, you should consider the following:

(1) [The [injury to] [ and/or loss of] ~~the plaintiff's~~ Stone's reputation][;]

(2) [The [injury to] [and/or loss of] ~~the plaintiff's~~ Stone's goodwill, including injury to ~~the plaintiff's~~ Stone's general business reputation][;]

(3) [The lost profits that ~~the plaintiff~~ Stone would have earned but for ~~the defendant's~~ MillerCoors's infringement, including any reasonable royalty that Stone

---

[5] See authority cited below.

would have earned had MillerCoors negotiated to license the STONE® mark. Profit is determined by deducting all expenses from gross revenue[;]

(4) [The expense of preventing customers from being deceived][;]

(5) [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement][;] [and]

(6) The diminution in value of Stone's business caused by the infringement.[6] [Insert any other factors that bear on plaintiff's actual damages]

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.27 (2017) (modified as indicated)

*Authority for paragraph regarding calculation of damages with reasonable certainty*: *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ("As a general rule, damages which result from a tort must be established with reasonable certainty. The Supreme Court has held that '[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist.") (citations omitted; alteration in original)); *Adray v. Adry-Mart, Inc.*, 76 F. 3d 984, 989 (9th Cir. 1995) ("The burden of any uncertainty in the amount of damages should be borne by the wrongdoer.").

*Authority for diminution of business value*:  *Skydive Arizona, Inc. v. Quattrocchi*, 673 F. 3d 1105, 1112 (9th Cir. 2012) ("In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts."; "we accept 'crude'

---

[6] See authority cited below.

measures of damages based upon reasonable inferences"; "there need only be substantial evidence to permit the jury to draw reasonable inferences and make a fair and reasonable assessment"; assessing "expenditures it made to build up the goodwill and reputation of its mark over a significant period of time"; "evidence of the costs of building its reputation, of the widespread harm to its goodwill, and of the need for corrective advertising"); *Chow v. Chak Yam Chau*, 555 F. App'x 842, 848 (11th Cir. 2014) ( "a reasonable jury [could] conclude that these acts were at least partially responsible for Mr. Chow's drop in sales and the reduction in the value of the restaurant").

*Authority for reasonable royalty*: *Playboy Enterprises v. Baccarat Clothing Co., Inc.*, 692 F. 2d 1272, 1274 (9th Cir. 1982) (affirming reasonable royalty damages in trademark case); *Marketquest Grp. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018) ("Reasonable royalties are a calculation of the hypothetical licensing royalties that an infringer would have paid to the senior owner of a mark and can be recovered as a measure of damages in trademark infringement cases."); *Bauer Bros. v. Nike*, 159 F. Supp. 3d 1202, 1213-14 (S.D. Cal. 2016) (courts "have awarded reasonable royalty damages absent prior licensing agreements if the evidence provides a sufficiently reliable basis from which to calculate them"); *Oracle Corp. v. SAP AG*, 765 F. 3d 1081, 1087-88 (9th Cir. 2014) (holding that "hypothetical-license damages also constitute an acceptable form of 'actual damages' recoverable under" the analogous "actual damages" provision of the Copyright Act even where the plaintiff "never would have granted a license"; "Hypothetical-license damages assume rather than require the existence of a willing seller and buyer."; "To calculate the 'market value' of the injury to the plaintiff based on a hypothetical-license theory, we look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'"); *Wall Data v. Los Angeles County*

1  *Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006) (holding that under "actual

2  damages" provision of the Copyright Act that "it is not improper for a jury to

3  consider either a hypothetical lost license fee . . . to determine actual damages").

**Instruction No. 17**

**Damages – Diminution in Value and Loss of Goodwill and Reputation**

As actual damages in this case, Stone is entitled to recover any diminution in the value of its business, including the loss of sales and profits, loss of goodwill, and damage to reputation caused by MillerCoors's infringement of the STONE® mark. In measuring this injury, you may consider Stone's costs and expenditures in building its reputation and goodwill, evidence of widespread harm to Stone's goodwill, and evidence of the reduction in value of Stone's business attributable to MillerCoors's infringement. Stone is not required to provide an exact calculation of these amounts.  You should measure these damages by making a fair and reasonable assessment based on upon reasonable inferences from the evidence presented.

*Authority*:  *Skydive Arizona, Inc. v. Quattrocchi*, 673 F. 3d 1105, 1112 (9th Cir. 2012) ("In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts."; "we accept 'crude' measures of damages based upon reasonable inferences"; "there need only be substantial evidence to permit the jury to draw reasonable inferences and make a fair and reasonable assessment"; assessing "expenditures it made to build up the goodwill and reputation of its mark over a significant period of time"; "evidence of the costs of building its reputation, of the widespread harm to its goodwill, and of the need for corrective advertising"); *Chow v. Chak Yam Chau*, 555 F. App'x 842, 848 (11th Cir. 2014) ("a reasonable jury [could] conclude that these acts were at least partially responsible for Mr. Chow's drop in sales and the reduction in the value of the restaurant").

**Instruction No. 18**

**Damages – Reasonable Royalty**

A royalty is a license payment made to the owner of a trademark by someone else so that he can use the trademark.  As actual damages in this case, Stone is entitled to recover the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by MillerCoors of Stone's STONE® trademark.  Stone is entitled to recover this reasonable royalty amount even if you conclude that Stone never would have granted a license to MillerCoors.  In calculating reasonable royalty damages, you should assume rather than require the existence of a willing seller and buyer.

In calculating a reasonable royalty, you should take into account what Stone's and MillerCoors's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations.  You should assume that both Stone and MillerCoors would have believed that Stone's trademark was legally enforceable and that they would have known the level of sales and profits that MillerCoors and its related corporate entities would make from the use of the trademark.  You should also assume that MillerCoors would have been willing to pay, and Stone would have been willing to accept, the reasonable royalty they negotiated.  Your role is to determine what Stone and MillerCoors would have agreed upon if they had negotiated in this manner, not just what either Stone or MillerCoors would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence.  These factors, however, are neither exclusive nor necessarily pertinent to every reasonable royalty analysis:

1.    Royalties that others paid to Stone for use of the trademark;

2.    Royalties that MillerCoors paid to others for use of comparable trademarks;

3.    Whether Stone had a policy of licensing or not licensing the trademark;

4.      Whether Stone and MillerCoors are competitors;

5.      Whether use of the trademark helps to make sales of other products or services;

6.      Whether the product made using the trademark is commercially successful, as well as its profitability;

7.      The advantages of using the trademark over products that do not include the trademark;

8.      The extent of use by MillerCoors or its related corporate entities' use of the trademark and the value of that use to MillerCoors;

9.      Any royalty amounts that are customary for similar or comparable trademarks;

10.     The portion of the profit on sales that is due to the trademark, as opposed to other factors, such as elements, features, or improvements developed by MillerCoors; and

11.     Expert opinions regarding what would be a reasonable royalty.

*Authority*: *Playboy Enterprises v. Baccarat Clothing Co., Inc.*, 692 F. 2d 1272, 1274 (9th Cir. 1982) (affirming reasonable royalty damages in trademark case); *Marketquest Grp. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018) ("Reasonable royalties are a calculation of the hypothetical licensing royalties that an infringer would have paid to the senior owner of a mark and can be recovered as a measure of damages in trademark infringement cases."); *Bauer Bros. v. Nike*, 159 F. Supp. 3d 1202, 1213-14 (S.D. Cal. 2016) (courts "have awarded reasonable royalty damages absent prior licensing agreements if the evidence provides a sufficiently reliable basis from which to calculate them."); *Oracle Corp. v. SAP AG*, 765 F. 3d 1081, 1087-88 (9th Cir. 2014) (holding that "hypothetical-license damages also constitute an acceptable form of 'actual damages' recoverable under" the analogous "actual damages" provision of the Copyright Act even where the plaintiff "never

would have granted a license"; "Hypothetical-license damages assume rather than require the existence of a willing seller and buyer."; "To calculate the 'market value' of the injury to the plaintiff based on a hypothetical-license theory, we look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'"); *Wall Data v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006) (holding that under "actual damages" provision of the Copyright Act that "it is not improper for a jury to consider either a hypothetical lost license fee . . . to determine actual damages"); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1040 (9th Cir. 2015) (noting that *Georgia-Pacific* framework has "been widely adopted" but that not every factor is relevant to every case); *Atlantic Inertial Sys. Inc. v. Condor Pac. Indus. of Cal., Inc.*, 2015 WL 3825318, at *10-12 (C.D. Cal. June 18, 2015); Seventh Circuit Manual of Model Jury Instructions: Civil 11.4.4 (2015); Northern District of California Model Patent Jury Instructions 5.7 (2015).

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 19**

**Damages – Corrective Advertising**

Stone is entitled to recover the cost of any future corrective advertising reasonably required to restore the value its STONE® trademark has lost due to MillerCoors's infringement.  This includes the amounts Stone would be required to spend in the future to dispel the confusion caused by MillerCoors's infringement. You should award corrective advertising damages only to the extent that the amount of money needed for corrective advertising does not exceed the damage to the value of Stone's STONE® mark.

*Authority*: *Adray v. Adry-Mart, Inc*., 76 F. 3d 984, 988-89 (9th Cir. 1995) ("An award of the cost of corrective advertising . . . allow[s] the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement," including "the amount he would be required to spend in the future to dispel the confusion caused by defendant's infringement. . . . The instruction should direct the jury to award such damages only to the extent that the amount of money needed for corrective advertising does not exceed the damage to the value of Lou Adray's mark.").

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 20**

**Damages – Defendant's Profits**

In addition to actual damages, ~~the plaintiff~~ <u>Stone</u> is entitled to any profits earned by ~~the defendant~~ <u>MillerCoors</u> that are attributable to the infringement, which ~~the plaintiff~~ <u>Stone</u> proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you ~~took into account in determining~~ <u>awarded as part of Stone's</u> actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of ~~defendant's~~ <u>MillerCoors's</u> receipts from using the trademark in the sale of ~~a~~ <u>Keystone beer</u> ~~[product]~~. ~~The plaintiff~~ <u>Stone</u> has the burden of proving ~~a defendant's~~ <u>MillerCoors's</u> gross revenue by a preponderance of the evidence.

Expenses are all [operating] [overhead] and production costs incurred in producing the gross revenue. ~~The defendant~~ <u>MillerCoors</u> has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of <u>Keystone beer</u> ~~the [specify goods]~~ using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

*Authority:* Ninth Circuit Manual of Model Jury Instructions: Civil 15.29 (2017) (modified as indicated).

**Instruction No. 21**

**Punitive Damages**

If you <u>find for Stone on its claims for dilution or unfair competition under California law and</u> you decide that [name of defendant] <u>MillerCoors</u>'s conduct caused [name of plaintiff] <u>Stone</u> harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against [name of defendant] <u>MillerCoors</u> only if <u>Stone</u> [name of plaintiff] proves that [name of defendant] <u>MillerCoors</u> engaged in that conduct with malice, oppression, or fraud.  To do this, [name of plaintiff] <u>Stone</u> must prove [one of] the following by clear and convincing evidence:

1.      [That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of [name of defendant] <u>MillerCoors</u>, who acted on behalf of [name of defendant] <u>MillerCoors</u>; [or]]

2.      [That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of [name of defendant] <u>MillerCoors</u>; [or]]

3.      [That one or more officers, directors, or managing agents of [name of defendant] <u>MillerCoors</u> knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.]

"Malice" means that [name of defendant] <u>MillerCoors</u> acted with intent to cause injury or that [name of defendant] <u>MillerCoors</u>'s conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that [name of defendant] MillerCoors's conduct was despicable and subjected [name of plaintiff] Stone to cruel and unjust hardship in knowing disregard of [his/her] its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that [name of defendant] MillerCoors intentionally misrepresented or concealed a material fact and did so intending to harm [name of plaintiff].

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was [name of defendant] MillerCoors's conduct? In deciding how reprehensible [name of defendant] MillerCoors's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether [name of defendant] MillerCoors disregarded the health or safety of others;

3. Whether [name of plaintiff] Stone was financially weak or vulnerable and [name of defendant] MillerCoors knew [name of plaintiff] Stone was financially weak or vulnerable and took advantage of [him/her/it];

4. Whether [name of defendant] MillerCoors's conduct involved a pattern or practice; and

5. Whether [name of defendant] MillerCoors acted with trickery or deceit.

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

1    (b) Is there a reasonable relationship between the amount of punitive damages

2    and ~~[name of plaintiff]~~ Stone's harm [or between the amount of punitive damages

3    and potential harm to ~~[name of plaintiff]~~ Stone that ~~[name of defendant]~~ MillerCoors

4    knew was likely to occur because of ~~[his/her/~~ its~~]~~ conduct]?

5    (c) In view of ~~[name of defendant]~~ MillerCoors's financial condition, what

6    amount is necessary to punish ~~[him/her/it]~~ and discourage future wrongful conduct?

7    You may not increase the punitive award above an amount that is otherwise

8    appropriate merely because ~~[name of defendant]~~ MillerCoors has substantial

9    financial resources.  [Any award you impose may not exceed ~~[name of defendant]~~

10   MillerCoors's ability to pay.]

11   [Punitive damages may not be used to punish ~~[name of defendant]~~ MillerCoors

12   for the impact of ~~[his/her/~~its] alleged misconduct on persons other than ~~[name of~~

13   ~~plaintiff]~~ Stone.]

14

15   *Authority*:  CACI No. 3945 (modified as indicated); Cal. Prof. and Bus. Code

16   14247 & 14250(4) (punitive damages available on California dilution claims);

17   *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) ("As an initial matter,

18   punitive damages are in fact available under state law. Cal. Civ. Code § 3294(a). . . .

19   We are aware of no authority which suggests that this provision may not be applied

20   to common law unfair competition claims."); *Binder v. Disability Grp., Inc*., 772 F.

21   Supp. 2d 1172, 1178 (C.D. Cal. 2011) ("punitive damages are available under the

22   common law claim for unfair competition");

23

24

25

26

27

28

**Instruction No. 22**

**Sanctions: Directed Finding of No Prior Use**

As I have instructed you, it is MillerCoors's burden to show that it adopted and used "STONE" as a trademark to indicate the source of origin of its Keystone beer consistently and continuously from a date prior to Stone's application to register STONE®.

MillerCoors intentionally and selectively withheld documents, items, and other evidence that bear on the issue of the extent and character of MillerCoors's alleged historical use of "STONE" in connection with the sale of Keystone beer. The withholding was in violation of this Court's Orders and the rules governing discovery in cases such as this one.

The Court therefore sanctioned MillerCoors by preventing it from introducing any evidence regarding its alleged prior use of "STONE" and ruling that it may not assert any defense or counterclaim based on its alleged prior and/or historical use.

You are to accept the following facts as true and established for purposes of this case:

1.     Stone began to use the term "STONE" as a trademark for its beer before MillerCoors began to use that or any similar term.

*Authority*:  *Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, No. 15-CV-2288, 2017 WL 3381814 (S.D. Cal. Aug. 7, 2017), *adopted in part and rejected in part*, 2017 WL 5029613 (S.D. Cal. Nov. 3, 2017); *CrossFit v. Nat'l Strength & Conditioning Ass'n*, No. 14CV1191, 2017 WL 2298473, at *7 (S.D. Cal. May 26, 2017); *Loops LLC v. Phoenix Trading*, No. C08-1064, 2010 WL 11442905, at *4 (W.D. Wash. Mar. 3, 2010) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)); *Laukus v. Rio Brands*, 292 F.R.D. 485, 510 (N.D. Ohio 2013); *Ford v. American Broadcasting*, 101 F.R.D. 664, 666 (S.D.N.Y. 1983); *Kokot v. Maxim Healthcare Serv.*, No. 18-cv-689, 2019 WL 5095727, *3, 7 (D. Colo. Aug. 15, 2019).

**Instruction No. 23**

**Sanctions: Directed Finding of Competition**

MillerCoors intentionally and selectively withheld evidence regarding MillerCoors's business strategy for economy beer, including evidence regarding the consumer overlap between economy and craft beers.  The withholding was in violation of this Court's Orders and the rules governing discovery in cases such as this one.

The Court therefore sanctioned MillerCoors by preventing it from introducing evidence that economy and craft beer do not compete.

You are to accept the following facts as true and established for purposes of this case:

1.      Keystone beer competes with craft beer, including Stone.

*Authority*:  *Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, No. 15-CV-2288, 2017 WL 3381814 (S.D. Cal. Aug. 7, 2017), *adopted in part and rejected in part*, 2017 WL 5029613 (S.D. Cal. Nov. 3, 2017); *CrossFit v. Nat'l Strength & Conditioning Ass'n*, No. 14CV1191, 2017 WL 2298473, at *7 (S.D. Cal. May 26, 2017); *Loops LLC v. Phoenix Trading*, No. C08-1064, 2010 WL 11442905, at *4 (W.D. Wash. Mar. 3, 2010) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)); *Laukus v. Rio Brands*, 292 F.R.D. 485, 510 (N.D. Ohio 2013); *Ford v. American Broadcasting*, 101 F.R.D. 664, 666 (S.D.N.Y. 1983); *Kokot v. Maxim Healthcare Serv.*, No. 18-cv-689, 2019 WL 5095727, *3, 7 (D. Colo. Aug. 15, 2019).

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 24**

**Adverse Inference Regarding Prior Use**

As I have instructed you, it is MillerCoors's burden to show that it adopted and used "STONE" as a trademark to indicate the source of origin of its Keystone beer consistently and continuously from a date prior to Stone's application to register STONE®.

MillerCoors intentionally and selectively withheld documents, items, and other evidence that bear on the issue of the extent and character of MillerCoors's alleged historical use of "STONE" in connection with the sale of Keystone beer. The withholding was in violation of this Court's Orders and the rules governing discovery in cases such as this one.

The documents MillerCoors withheld include historical Keystone materials in which no reference was made to "STONE" and historical Coors Brewing Company catalogs reflecting that only historical Keystone materials in which no reference was made to "STONE" were released into commerce.

You should assume that evidence regarding the alleged historical use of "STONE" would have been unfavorable to MillerCoors.

You may also assume that MillerCoors knew and believed that the documents were highly damaging to its case and chose to withhold them for that reason and that MillerCoors's decision to withhold the documents reflects its assessment of the merits of its position in this litigation and a knowledge and belief that it is infringing Stone's trademark.

You may also assume that MillerCoors has withheld other material that contradicts the positions it is taking in this case and that should have been produced in discovery.

*Authority*: *Estakhrian v. Obenstine*, No. CV 11-3480, 2016 WL 6275599 at *4 (C.D. Cal. May 17, 2016); *Compass Bank v. Morris Cerullo World Evangelism*, 104

F. Supp. 3d 1040, 1060 (S.D. Cal. 2015); *Frank Brunckhorst Co., LLC v. Ihm*, No. 11CV1883, 2013 WL 12094827, at *3 (S.D. Cal. Dec. 16, 2013); *Loops LLC v. Phoenix Trading*, No. C08-1064, 2010 WL 11442905, at *4 (W.D. Wash. Mar. 3, 2010) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS

**Instruction No. 25**

**Adverse Inference Regarding Competition**

MillerCoors intentionally and selectively withheld evidence regarding MillerCoors's business strategy for economy beer, including evidence regarding the consumer overlap between economy and craft beers.  The withholding was in violation of this Court's Orders and the rules governing discovery in cases such as this one.

The documents MillerCoors withheld include economy strategy documents reflecting that there is substantial competition between craft and economy beer.

You should assume that evidence the extent of overlap between the economy and craft beer segments would have been unfavorable to MillerCoors.

You may also assume that MillerCoors knew and believed that the documents were highly damaging to its case and chose to withhold them for that reason and that MillerCoors's decision to withhold the documents reflects its assessment of the merits of its position in this litigation and a knowledge and belief that it is infringing Stone's trademark.

You may also assume that MillerCoors has withheld other material that contradicts the positions it is taking in this case and that should have been produced in discovery.

*Authority*: *Estakhrian v. Obenstine*, No. CV 11-3480, 2016 WL 6275599 at *4 (C.D. Cal. May 17, 2016); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1060 (S.D. Cal. 2015); *Frank Brunckhorst Co., LLC v. Ihm*, No. 11CV1883, 2013 WL 12094827, at *3 (S.D. Cal. Dec. 16, 2013); *Loops LLC v. Phoenix Trading*, No. C08-1064, 2010 WL 11442905, at *4 (W.D. Wash. Mar. 3, 2010) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

PLAINTIFF STONE BREWING CO., LLC'S PROPOSED JURY INSTRUCTIONS