J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
  theodore@braunhagey.com
Forrest Arthur Hainline III, Esq. (SBN: 64166)
  hainline@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Douglas Curran, Esq. (*pro hac vice*)
  curran@braunhagey.com
BRAUNHAGEY & BORDEN LLP
7 Times Square, Twenty-Seventh Floor
New York, NY 10036
Telephone:  (646) 829-9403
Facsimile:  (646) 829-9403

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff / Counterclaim<br>    Defendant,<br><br>    v.<br><br>MILLERCOORS LLC,<br><br>    Defendant / Counterclaim<br>    Plaintiff. | Case No: 18-cv-0331-BEN-MDD<br><br>**PLAINTIFF STONE BREWING CO., LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY AND FOR ADVERSE INFERENCE INSTRUCTION AT TRIAL**<br><br>District Judge: Hon. Roger T. Benitez<br>Magistrate Judge: Hon. Mitchell D. Dembin<br><br>**Date:**  February 14, 2022<br>**Time:**  10:30 AM<br>**Judge:**  Hon. Roger T. Benitez<br>**Ctrm:**  5A<br><br>Complaint filed: February 12, 2018 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on February 14, 2022 at 10:30 am, in Courtroom 5A of the U.S. District Court, Southern District of California, located at 221 West Broadway, 5th Floor, Suite 5135, San Diego, CA 92101, Plaintiff Stone Brewing Co., LLC ("Plaintiff" or "Stone"), will and hereby does move the Court to exclude the testimony of Scott Whitley and for an adverse inference instruction at trial.

The motion is based upon the accompanying Memorandum of Points and Authorities, Declaration of Jeffrey M. Theodore ("Theodore Decl."), [Proposed] Order, the files and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.


Dated:  January 14, 2022                    Respectfully Submitted,

                                            BRAUNHAGEY & BORDEN LLP

                                            By:  *s/ J. Noah Hagey*
                                                  J. Noah Hagey

                                            *Attorneys for Plaintiff*
                                            *Stone Brewing Co., LLC*

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................ 1

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 3

    A.    Defendant's Sales Team Generates Documents Regarding Keystone that Were Not Produced ........................................................................................ 3

    B.    Whitley Rose to Be Part of Defendant's Senior Leadership Team and Discussed this Lawsuit with Defendant's Executives ........................................ 4

    C.    Defendant Chose Not to Disclose its Sales Team or Whitley ........................ 6

    D.    Three Weeks Before Trial, Defendant Sought to Disclose Mr. Whitley as a Witness .................................................................................................... 7

    E.    Stone Takes Whitley's Deposition ............................................................ 8

ARGUMENT ............................................................................................................ 8

I.    THE COURT SHOULD EXCLUDE WHITLEY AS A WITNESS................................ 8

    A.    Exclusion of Undisclosed Witnesses is Automatic Under Rules 26 and 37 .......... 9

    B.    Defendant's Failure to Disclose Whitley Was Not Substantially Justified .......... 10

        1.    Defendant Was Aware of Whitley and Chose Not to Disclose Him ........ 10

        2.    Defendant Knew Historical Use Would be an Essential Issue and Chose Not to Disclose Whitley or its Sales Team .................................... 13

        3.    Defendant Chose Not to Disclose Witnesses or Documents from its Sales Department .................................................................................. 14

    C.    Defendant's Failure to Disclose Whitley Was Not Harmless .............................. 15

        1.    Defendant's Failure to Disclose Whitley and Related Witnesses and Documents is Highly Prejudicial ............................................................ 15

        2.    The Prejudice Cannot Be Cured Before Trial........................................... 19

    D.    Whitley's Vague and Speculative Testimony Is Not Helpful to the Jury............. 21

II.    THE COURT SHOULD IMPOSE AN ADVERSE INFERENCE SANCTION FOR DEFENDANT'S WITHHOLDING OF EVIDENCE ...................................................... 23

CONCLUSION........................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES</u>

*Carmen v. San Francisco Unified Sch. Dist.*,
  237 F.3d 1026 (9th Cir. 2001).................................................................. 22

*Chambers v. NACSO*,
  501 U.S. 32 (1991) .................................................................................. 24

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ................................................... 25

*Cyntegra, Inc. v. IDEXX Laboratories, Inc.*,
  322 Fed.Appx. 569 (9th Cir. 2009) ......................................................... 25

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
  2007 WL 5193736 (C.D. Cal. 2007) ....................................................... 25

*Estakhrian v. Obenstine*,
  No. CV 11-3480, 2016 WL 6275599 (C.D. Cal. May 17, 2016) ........... 25

*Frank Brunckhorst Co., LLC v. Ihm*,
  No. 11CV1883, 2013 WL 12094827 (S.D. Cal. Dec. 16, 2013) ............ 25

*Guzman v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 594 (S.D. Cal. 2015)....................................................... 13, 18

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ................................................................... 24

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010)............................................................ 10

*Lewis v. Ryan*,
  261 F.R.D. 513 (S.D. Cal. 2009) ............................................................ 24

*Lopez v. Lopez*,
  No. CV 18-6473-MWF-M, AA, 2020 WL 2043996 (C.D. Cal. Jan. 23, 2020)..... 13

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014)............................................................passim

*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010)............................................ 10, 14

*Shenwick v. Twitter, Inc.*,
  2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) .................................. 10, 20

*Taylor v. Burlington N. R.R.*,
  787 F.2d 1309 (9th Cir. 1986) ................................................................. 22

*United States v. Williams*,
  850 Fed.Appx. 566 (9th Cir. 2021) ......................................................... 22

*Valley Engineers v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998)................................................................. 24

*Wong v. Regents of Univ. of California*,
  410 F.3d 1052 (9th Cir. 2005) ........................................................................ 10, 14

**RULES**

Fed. R. Civ. P. 26 ........................................................................................... 9, 10
Fed. R. Civ. P. 37 ........................................................................................... 9, 24
FRE 403 ...................................................................................................... 21, 22, 23
FRE 602 .......................................................................................................... 21, 22

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY

Plaintiff Stone Brewing Co., LLC ("Stone") respectfully submits this notice of motion and motion to exclude the testimony of Scott Whitley and for an adverse inference instruction at trial.

## INTRODUCTION

During discovery in this case, Defendant MillerCoors did not disclose witnesses from or search for documents generated by its sales teams responsible for selling and promoting Keystone beer. When challenged, Defendant told the Court that it has "consistently stated that it did not believe the sales team was relevant to this dispute." Dkt. No. 435 at 5. Stone's motions for discovery into Defendant's sales personnel and documents were denied. Dkt. Nos. 440, 482.

Less than three weeks before trial was set to begin in this case, however, Defendant amended its witness list to add Scott Whitley, a previously undisclosed member of its sales team. Whitley plans to testify regarding the historical marketing materials he purports to have encountered while selling Keystone beer in the early 1990s. Whitley was a lifelong MillerCoors employee, culminating as CEO of its Tenth & Blake craft beer division, a position in which he reported to Defendant's CEO, had extensive interaction with Defendant's Chief Legal Officer, and from which he retired less than five months before the Complaint in this case was filed.

Defendant claimed at the November Pre-Trial Conference that Whitley was "a guy that used to work at Coors Brewing Company" who had "been gone from the company for four years" and that Defendant had only "found him" in October 2021. (11/3/21 PTC Tr. at 30:18-31:7.) Defendant also represented to the Court that the late disclosure was harmless because Defendant had "no documents" related to the subjects of Whitley's testimony. (*Id*. at 41:7-15.) To test these claims, the Court granted Stone the right to take Whitley's deposition and reserved the issue of whether Whitley should be excluded at trial.

Mr. Whitley's testimony at deposition, however, revealed that Defendant's claims at the Pre-Trial Conference were not true. Whitley was one of the highest-

ranking executives at MillerCoors for many years and has been well-known to Defendant throughout this litigation, including through repeated communications with Defendant's senior leadership and witnesses concerning the lawsuit itself. Defendant knew about Whitley but chose not to disclose him in its Rule 26 disclosures or produce his documents – just as it chose not to disclose or produce documents from its entire sales department.  Whitley's deposition also revealed that he lacks any specific or verifiable personal knowledge regarding the historical materials about which Defendant intends to have him testify.  And the deposition revealed that there are a host of historical Keystone documents maintained by Defendant's sales department that were never produced by Defendant despite numerous court orders compelling production and sanctioning Defendant for withholding historical materials.

Under Rule 37, it is Defendant's burden to establish that its failure to disclose Whitley until two years after the close of discovery was substantially justified or harmless.  Defendant cannot meet this burden here.  Defendant has long been familiar with Whitley, and Whitley has repeatedly discussed this case with Defendant's leadership and other witnesses to the litigation.  Moreover, Whitley's testimony is purportedly based on his experience as a member of Defendant's sales team, but Defendant withheld sales team witnesses and documents from discovery and represented to the Court that they were irrelevant.  It would be prejudicial and unfair to allow Defendant to introduce a newly-disclosed and carefully selected witness two years after the close of discovery when it chose not to produce the other witnesses and documents necessary to impeach and rebut his testimony.

By failing to disclose documents and witnesses as required by Rule 26, Defendant has shut down Stone's ability to obtain evidence from the Coors sales team that supports Stone's case.  There are hundreds of other sales personnel from the relevant time period whom Coors has chosen not to disclose, likely because they have different recollections than Mr. Whitley.  It would turn Rules 26 and 37 on their

head to reward Defendant's non-disclosure by allowing Defendant to introduce a selective set of favorable evidence on the eve of trial after Stone has had no opportunity to obtain documents or rebuttal testimony from other sales team members – whose identities still have not been disclosed.

In addition to excluding Whitley, the Court should grant an adverse inference sanction based on Defendant's withholding of historical documents regarding Keystone and documentary materials from its sales team.  Whitley's deposition confirmed that entire repositories of these materials were never produced despite Stone's discovery requests.  After Defendant was previously sanctioned for withholding historical Keystone materials, the Court reserved the right to impose an adverse inference instruction at trial.  The record is even clearer now.  The Court should impose a sanction instructing the jury that Defendant withheld materials in discovery and that the jury may infer that the materials contradict Defendant's claims of its historical use of STONE.

## BACKGROUND

### A.    Defendant's Sales Team Generates Documents Regarding Keystone that Were Not Produced

The Whitley deposition revealed information about Defendant's sales team never before disclosed in this case.  By 1988-1991, the sales team for Coors Brewing Company, MillerCoors's predecessor, already comprised more than 100 employees, who were responsible for selling and promoting Keystone in the marketplace. (Declaration of Jeffrey M. Theodore ("Theodore Decl."), Ex. 1, Whitley Tr. at 57:10-58:15; 60:13-19; 68:10-71:3.)  The sales department spanned four regions, one dozen divisions, and 50 areas.  (*Id.*)  The sales team also included members of Coors's distributor development team, who organized Coors's "wholesale network strategy," and others tasked with interfacing with distributors and retailers. (*Id.* at 48:22-49:6; 68:2-9.)  Members of the sales team reported to a head of sales, who today would be known as the chief sales officer. (*Id.* at 60:20-24.)

Whitley testified that Defendant's sales personnel have relevant information regarding how Keystone is advertised and promoted in the marketplace.  (*Id*. at 32:3-33:4; 34:7-19; 206:13-207:14; 208:15-211:20; 218:11-220:20; 263:7-264:16.)  This includes specific information regarding which Keystone promotions and point-of-sale materials appeared in various states and marketing plans and budgets that were shared with the sales team and Keystone distributors at annual business planning meetings.  (*Id*. at 208:15-209:9; 218:11-220:20.)  Defendant's sales team generated voluminous documents regarding the promotion and marketing of Keystone, including brochures and catalogs showing product offerings for each year (*id*. at 32:3-33:4; 218:11-220:20; 263:7-264:16), budgets identifying which items each sales area elected to buy and deliver to its distributors (*id*. at 206:13-207:14), calendars and marketing plans shared with distributors at annual business planning meetings (*id*. at 208:15-209:9), and business plans containing sales areas' final decisions as to which Keystone marketing and point-of-sale materials to buy and how to allocate their budgets (*id*. at 210:12-211:20).

Many of these records were digital.  When asked how many emails he sent per day as a member of the Coors sales apparatus in the mid-1990s, Whitley responded "too many."  (*Id*. at 217:10-20.)  Coors even maintained a computerized "Coors Link" system during this period to keep records and communicate with distributors regarding placement of Keystone point of sale materials.  (*Id*. at 218:11-220:20.)

None of this material has been produced.

**B.     Whitley Rose to Be Part of Defendant's Senior Leadership Team and Discussed this Lawsuit with Defendant's Executives**

Whitley started his career as a young coordinator of college campus rep activity for Coors and quickly moved into Coors's sales team as an assistant area manager.  (*Id*. at 43:10-45:5.)  Whitley later supervised and interacted with the sales teams as he rose through the ranks to senior leadership positions at MillerCoors, including as head of Coors Distributing Company.  (*Id*. at 45:9-47:18; 48:9-53:4;

53:21-57:7; 76:14-80:11.)  He claimed that his roles on Defendant's sales team gave him knowledge regarding the sales and marketing of Keystone beer, *and that other sales personnel would have similar information*.  (*Id.*; *see also id.* at 326:5-13.)

Most recently, Whitley served as the Chief Executive Officer of Tenth and Blake, Defendant's craft beer division.  (*Id.* at 79:18-80:11.)  In that role, Whitley was a member of Defendant's Senior Leadership Team, the highest executive level below Defendant's CEO.  In that role, Whitley communicated and met regularly with Defendant's CEO, Chief Legal Officer, and other senior officers.  (*Id.* at 22:2-23:10.) He personally reported to Defendant's CEO, Gavin Hattersley, an important witness in this case, and had monthly "one-on-one" meetings with Hattersley.  (*Id.* at 82:14-17; 85:3-23.)  Whitley was involved in approving the 2017 Keystone Rebrand given his role on the Senior Leadership Team.  (*Id.* at 307:24-308:5; 308:16-20; 309:2-310:15.)

Whitley regularly met with Defendant's legal team and discussed major litigation involving MillerCoors at Senior Leadership Team meetings.  (*Id.* at 23:20-23.)  Those meetings were attended by Kelly Grebe, Defendant's Chief Legal Officer, who attended Mr. Hattersley's deposition in this case and had conversations with Stone's General Counsel.  Whitley testified that he "would see and talk to her a lot just in the normal course of dealings."  (*Id.* at 22:9-12.)

After leaving MillerCoors in October 2017 (*id.* at 79:18-80:8), Whitley continued his close relationship with Defendant's senior leadership.  Whitley exchanged text messages and communications on Twitter with Defendant's CEO Hattersley.  (*Id.* at 86:13-24; 112:11-16.)  He communicated regularly with other senior employees, including Defendant's Rule 30(b)(6) witness Mike Sikorski, Defendant's President of Emerging Growth Pete Marino, and Paul Verdu, the current leader of Defendant's Tenth and Blake craft beer division.  (*Id.* at 97:16-20; 98:10-100:7; 100:24-104:15; 111:15-21; 117:19-24.)  Whitley even had exchanges about this lawsuit with his successor Verdu and personnel from MillerCoors's marketing

team, national affairs/communications team, Tenth & Blake team, and Leinenkugel Brewery team as well as the head of one of Defendant's largest distributors.  (*Id.* at 118:13-25; 122:5-24; 126:5-127:24; 132:18-133:25.)

### C.   Defendant Chose Not to Disclose its Sales Team or Whitley

Despite being aware that its sales team had knowledge regarding the marketing of Keystone, Defendant chose not to disclose Whitley or a single witness or custodian from its sales team during discovery.  Defendant's Rule 26 disclosures did not identify Whitley or any other witness from Defendant's sales team. (Theodore Decl., Ex. 2 at 2-4.)

Defendant also did not search for or produce any documents from its sales team during discovery.  On January 24, 2019, MillerCoors listed seven custodians "for whom ESI will be produced," in response to the Court's ESI Order.  (*Id.*, Ex. 3 (referencing Dkt. No. 74 at ¶ 4).)  Stone raised concerns that MillerCoors's list contained no one from the economy brand team nor any sales department personnel. (*Id.*, Ex. 4 at 6.)  In response, MillerCoors denied that these individuals "were directly involved" or that they had "significant involvement" with the Keystone rebrand but agreed to investigate adding the custodians identified by Stone.  (*Id.* at 5.)  Weeks later, MillerCoors identified five additional custodians, none of whom worked for the sales department. (*Id.* at 2.)

At no point did Defendant update its Rule 26 disclosures to include members of its sales organization or search for their documents during discovery.  When Stone sought relief from the Court on the grounds that Defendant had failed to identify appropriate custodians, Defendant took the position that it had "consistently stated that it did not believe the sales team was relevant to this dispute." Dkt. No. 435 at 5. The Court denied relief to Stone after Defendant made these representations.  Dkt. Nos. 440, 482.

Meanwhile, Defendant selectively withheld historical materials regarding its past marketing and sales of Keystone.  Defendant did not disclose the Coors Archive

housing its purported historical marketing materials until the very end of discovery. Defendant's production selectively omitted unfavorable materials, and Defendant was sanctioned by the Court for producing a "cherry pick[ed]" selection of materials from the Coors Archive without "any articulable explanation" for its selective withholding.  Dkt. No. 250 at 10-11.  As a result of Defendant's late disclosure, Stone still has not had the opportunity to inspect the physical materials that Defendant selectively withheld in discovery or Defendant's Archive itself.

### D.   Three Weeks Before Trial, Defendant Sought to Disclose Mr. Whitley as a Witness

On October 20, 2021, three weeks before trial was scheduled to begin, Defendant sought to amend its trial witness list to include Whitley. (Theodore Decl., Ex. 5.)  Whitley was not previously listed on Defendant's initial nor supplemental Rule 26 disclosures during discovery, nor was he otherwise disclosed to Stone by Defendant.  Defendant had never disclosed Mr. Whitley as a potential witness on any of its previous trial witness lists.  And Defendant neither searched for nor produced Mr. Whitley's documents or the documents of other MillerCoors sales team members during discovery.

Defendant offered a broad description of Mr. Whitley's testimony, ranging from "the role Keystone plays in the company's portfolio of products" to "the goals and objectives of the Keystone Refresh."  (*Id.*)  Nonetheless, counsel for Defendant represented to the Court that Mr. Whitley's testimony is "going to be short" with "no documents involved," namely "that he saw certain of these historical [Keystone] materials in the market."  (11/3/21 PTC Tr. at 41:17-21.)

Counsel for Defendant also told the Court that Defendant has "been working our butts off to locate someone . . . who could testify about seeing" the alleged historical marketing materials.  (*Id.* at 30:24-31:3.)  Defendant has not disclosed, however, any of the other historical employees, such as those who could *not*

1  remember seeing those materials in market and on whom Stone might rely to

2  contradict Mr. Whitley's claims.

3        **E.    Stone Takes Whitley's Deposition**

4        Stone took Whitley's deposition on November 19, 2021.  At his deposition,

5  Whitley could not recall any specific instances in which MillerCoors used STONE in

6  connection with Keystone, but instead offered only vague, general recollections

7  supposed use of this marketing.  (Theodore Decl., Ex. 1, Whitley Tr. at 191:3-8,

8  191:23-25; 235:23-236:7.)  Whitley repeatedly testified that he could not identify

9  specific dates or locations for the purported historical materials.  (*Id.* at 151:15-20;

10  150:6-11; 153:1-20; 164:19-168:20; 169:16-170:13.)

11        Whitley also acknowledged that there are entire repositories of documents

12  related to his roles in Defendant's sales department and senior leadership that were

13  never produced in this litigation. (*Id.* at 32:3-33:4; 34:7-19; 206:13-207:14; 208:15-

14  211:20; 218:11-220:20; 263:7-264:16.)

15        Whitley's deposition also revealed that the intended scope of his testimony is

16  not limited to the early days of Keystone marketing, notwithstanding Whitley's

17  representations to the Court.  MillerCoors has prepared him to address numerous

18  subjects unrelated to Keystone's early marketing materials, including by showing

19  him "presentations made to the SLT [Senior Leadership Team]," documents relating

20  to Defendant's acquisition of Saint Archer, the extent of overlap in the market

21  between Stone and Keystone, and the likelihood of confusion.  (*Id.* at 28:8-29:20,

22  159:3-160:8, 324:10-22.)

23                    **ARGUMENT**

24  **I.    THE COURT SHOULD EXCLUDE WHITLEY AS A WITNESS**

25        The Court should exclude Whitley as a witness because Defendant failed to

26  disclose him or produce his documents during discovery.  Defendant was aware of

27  Whitley and his colleagues in its sales department but made a strategic decision to

28  withhold their identities and their documents.  When Stone complained about

Defendant's withholding of sales department witnesses and information, Defendant represented to the Court that sales personnel had no relevance to this litigation.

That requires exclusion under Rule 37. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (excluding witnesses disclosed ten months before trial). It would be prejudicial and unjust to allow Defendant to present new testimony from Whitley when Defendant chose to withhold his identity and that of its other sales team members, represented that its sales personnel had no discoverable information, and prevented Stone from taking discovery of other historical sales personnel who might contradict Mr. Whitley's account.

**A.    Exclusion of Undisclosed Witnesses is Automatic Under Rules 26 and 37**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), a party must provide to the other party "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." A party must also "supplement or correct its disclosure or response" to a discovery request "in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial." Fed. R. Civ. P. 37(c)(1).

Under Rule 37(c)(1), "[a] party that does not timely identify a witness under Rule 26 may not use that witness to supply evidence at a trial unless the failure was substantially justified or is harmless." *Ollier*, 768 F.3d at 861. This rule "is intended to put teeth into the mandatory ... disclosure requirements" of Rule 26(a) and (e) by forbidding parties from using witnesses and evidence not properly disclosed during discovery. *Id*. at 861. "Among the factors that may properly guide a district court in

determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *1 (N.D. Cal. Mar. 31, 2021) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).

### B. Defendant's Failure to Disclose Whitley Was Not Substantially Justified

Defendant's failure to disclose Whitley during discovery was not substantially justified because Defendant was well aware of Whitley and his colleagues in Defendant's sales department but chose not to disclose them or produce any of their documents. Courts in this Circuit have held that, where a party knows or should reasonably anticipate the need for a witness but fails to disclose them, the failure is not substantially justified. *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1056 (9th Cir. 2005) (late disclosure was not substantially justified because "the need for those witnesses could reasonably have been anticipated prior to the supplemental identification"); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1064 (C.D. Cal. 2010) ("Failure to disclose testimony is not substantially justified where, as here, the need for such testimony could reasonably have been anticipated"). Having made a strategic choice not to disclose its sales department, Defendant cannot carry its burden of proving substantial justification here.

### 1. Defendant Was Aware of Whitley and Chose Not to Disclose Him

First, Defendant's failure to disclose Whitley in discovery is not substantially justified because it is beyond dispute that Defendant has been aware of Whitley and his history at Coors Brewing Company and MillerCoors throughout this litigation.

Whitley is not some obscure former employee Defendant only happened to discover on the eve of trial. At the time he retired in 2017, Whitley was one of the highest-ranking and longest-tenured executives in the entire company. Whitley

1   began work at Coors Brewing Company in 1983 as a young coordinator of college

2   campus rep activity and quickly moved into Coors's sales team as an assistant area

3   manager.  (Theodore Decl., Ex. 1, Whitley Tr. at 43:10-45:5.)  Over the next 30

4   years, he rose to senior leadership positions.  Whitley served as CEO of Defendant's

5   craft beer division, Tenth and Blake Beer Co., from October 2014 to October 2017.

6   (*Id.* at 80:6-11.)  He was a member of MillerCoors's Senior Leadership Team, a

7   small group of Defendant's top-ranking executives including its CEO Gavin

8   Hattersley, Chief Sales Officer Kevin Doyle, Chief Marketing Officer David Kroll,

9   and Chief Legal Officer Kelly Grebe.  (*Id.* at 22:2-23:10.)  Whitley testified that he

10  regularly discussed litigation at these SLT meetings.  (*Id.* at 23:20-23.)  Whitley

11  reported directly to Defendant's CEO Hattersley and had regular "one-on-one"

12  meetings with him.  (*Id.* at 82:14-17; 85:3-23.)  Even after leaving MillerCoors,

13  Whitley continued to exchange text messages and communications on Twitter with

14  Hattersley.  (*Id.* at 86:13-24; 112:11-16.)

15      As a result, Whitley was well known to Defendant's senior leadership and

16  legal counsel, including fact witnesses in this litigation.  Whitley personally reviewed

17  and oversaw aspects of the Keystone Rebrand at issue in this litigation when it was

18  being planned in 2016.  (*Id.* at 307:24-308:5; 308:16-20; 309:2-310:15.)  Whitley's

19  direct supervisor, CEO Hattersley, is a witness in this case, as are other members of

20  the senior leadership team.  (*Id.*, Ex. 5.)  Mr. Whitley also was Ashley Selman's

21  supervisor and had direct and extensive interaction with her. (*Id.*, Ex. 1, Whitley Tr.

22  at 80:21-81:4; 81:19-82:1.)  Ms. Selman was MillerCoors's preliminary injunction

23  declarant in this case and the person in charge of the Keystone rebrand.  *See* Dkt. No.

24  46.

25      Even after retiring, Whitley has been in regular contact with Defendant's

26  witnesses and repeatedly discussed this litigation with Defendant's personnel.  At his

27  deposition, Whitley initially denied that he had been in contact with Defendant since

28  his retirement.  (*Id.*, Ex. 1, Whitley Tr. at 89:12-90:21 (Q. "Since departing from

MillerCoors, . . . what MillerCoors employees or personnel do you continue to have communications or contact with?" A. "[T]here really isn't anybody I've kept in – in touch with, to be honest with you.").)  That was proved false.  When confronted with *publicly available* documents, Whitley admitted that he communicates with several of Defendant's personnel via social media multiple times a month.  This includes communications with Defendant's Rule 30(b)(6) witness Mike Sikorski, Defendant's President of Emerging Growth and current SLT member Pete Marino, and Paul Verdu, Mr. Whitley's successor as the head of Defendant's Tenth and Blake craft beer division.  (*Id.* at 97:16-20; 98:10-100:7; 100:24-104:15; 111:15-21; 117:12-24.)  Whitley also admitted he exchanges text messages and communications on Twitter with CEO Hattersley.  (*Id.* at 86:13-24; 112:11-16.)  Discovery would undoubtedly reveal more extensive contacts.

At his deposition, Mr. Whitley also initially denied ever discussing this lawsuit prior to October 2021.  (*Id.* at 96:13-21.)  This too was false.  Many of Whitley's communications with Defendant have expressly referenced this lawsuit, including messages by Whitley in 2018 through 2019, during the time period of discovery.  (*Id.* at 118:13-25; 122:5-24; 126:5-127:24; 129:7-131:21; 132:18-133:25; 136:5-11; 136:12-137:5; 146:11-25.)

Given Whitley's role as a senior executive of Defendant and his extensive communications with Defendant's personnel and witnesses involved in this lawsuit, Defendant's insistence that it only "found him" in October 2021 – more than two years after the close of discovery – makes no sense.  (*See* 11/3/21 PTC Tr. at 30:18-20.)  There is no possible reason that Defendant could have identified Whitley only in October 2021 and not during discovery in this case.  Whitley was known to Defendant throughout this litigation, but Defendant chose not to disclose him just as it chose not disclose the remainder of its sales team.

Under these circumstances, Defendant cannot possibly carry its burden of proving that its non-disclosure was not substantially justified.  *Ollier*, 768 F.3d at

863 (non-disclosure was not substantially justified where Defendant delayed disclosing identities of witnesses until eight months prior to trial); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 606 (S.D. Cal. 2015) (non-disclosure was not substantially justified where party "hid [the witness's] identity from [the opposing party] until the deadline for […] discovery passed").

### 2. Defendant Knew Historical Use Would be an Essential Issue and Chose Not to Disclose Whitley or its Sales Team

Second, Defendant's failure to disclose Whitley is not substantially justified because the topic on which Defendant seeks to present testimony from Whitley – Defendant's alleged historical marketing of Keystone – has been in dispute from the very beginning of this litigation. "Courts have routinely held that a belated disclosure is not 'substantially justified' when it concerns an 'essential issue' to the case which is not newly raised by the opposing party's actions." *Lopez v. Lopez*, No. CV 18-6473-MWF-MAA, 2020 WL 2043996, at *5 (C.D. Cal. Jan. 23, 2020).

Here, Defendant's Answer and Counterclaims – filed on April 10, 2018 – are replete with allegations about Defendant's purported historical marketing of Keystone. (Dkt. No. 19 at 12-15; 24-28.) But Defendant chose not to disclose any percipient witnesses regarding these purported historical materials, including any members of its sales team. Instead, Defendant chose to rely solely on the testimony of its corporate archivist Heidi Harris, whom it only disclosed on May 31, 2019 – the last day of discovery. (Theodore Decl., Ex. 6.) Defendant even filed a motion for summary judgment based on its alleged prior use, relying on Harris's testimony and declaration. (Dkt. No. 170-1 at 3-6, 14-15, 25; *see also* Dkt. No. 170-2.) It was only in October 2021 – three years after Defendant filed its Answer and Counterclaims and two years after discovery closed – that it chose to seek to designate Whitley as a witness regarding historical Keystone materials.

Defendant has long anticipated that it would need to present evidence regarding historical use, and its failure to disclose Whitley until years after discovery

1   closed cannot be justified.  *Wong*, 410 F.3d at 1056 (late disclosure was not

2   substantially justified because "the need for those witnesses could reasonably have

3   been anticipated prior to the supplemental identification"); *Plumley*, 836 F. Supp. 2d

4   at 1064 ("Failure to disclose testimony is not substantially justified where, as here,

5   the need for such testimony could reasonably have been anticipated").

### 3. Defendant Chose Not to Disclose Witnesses or Documents from its Sales Department

6
7       Third, Defendant's belated disclosure of Whitley is not substantially justified

8   because Whitley's purported knowledge of historical Keystone marketing materials

9   comes from his experience as a member of Defendant's sales organization, but

10  Defendant made the strategic decision not to disclose witnesses or documents from

11  its sales organization throughout this litigation.  During discovery, Defendant took

12  the position that its sales team was completely irrelevant to this case.  When Stone

13  complained that Defendant's list of custodians contained no one from the economy

14  team nor any sales department personnel, Defendant denied that such personnel

15  "were directly involved" or that they had "significant involvement" with the

16  Keystone rebrand.  (Theodore Decl., Ex. 4 at 2, 5-6.)  Defendant did not identify a

17  single witness from the sales department or produce sales documents during

18  discovery.  When Stone sought relief from the Court on the ground that Defendant

19  had failed to identify or collect documents from its sales team, Defendant represented

20  that it "consistently stated that it did not believe the sales team was relevant to this

21  dispute." Dkt. No. 435 at 5.  The Court denied relief to Stone after Defendant made

22  these representations.  Dkt. Nos. 440, 482.

23      Now, despite having represented to Stone and the Court that its sales team had

24  no relevance to this dispute, Defendant seeks to present testimony from Whitley

25  *based specifically on his experience with Defendant's sales team*.  There is no

26  justification for this abrupt reversal two years after the close of discovery.  If

27  Defendant wished to present testimony from its sales personnel, it had every

28

opportunity to disclose them during discovery.  Defendant chose not to do so and instead, in its own words, "consistently stated that it did not believe the sales team was relevant to this dispute." Dkt. No. 435 at 5.

In sum, Defendant knew that Whitley was a potential witness, knew that it would need to present testimony regarding its alleged historical Keystone materials, and knew that its sales team might have knowledge regarding its use of Keystone materials.  Yet Defendant refused to identify witnesses or produce documents from its sales team, including Whitley.  Under these circumstances, there is no justification for waiting to disclose Whitley as a witness until two years after the close of discovery and on the eve of trial.  Because Defendant cannot carry its burden of establishing that the belated disclosure was substantially justified, the Court should preclude Whitley from testifying.

## C.    Defendant's Failure to Disclose Whitley Was Not Harmless

Defendant's failure to disclose Whitley until years after the close of discovery was not harmless and, indeed, is incredibly prejudicial to Stone.  Having shut down Stone's ability to obtain evidence from the historical Coors sales team, Defendant cannot now introduce a selective set of favorable evidence on the eve of trial.  Such a result would turn Rule 37's exclusion requirement on its head.

### 1.    Defendant's Failure to Disclose Whitley and Related Witnesses and Documents is Highly Prejudicial

Defendant's failure to disclose Whitley or any other witness from its sales team during discovery is prejudicial because it prevented Stone from conducting discovery that would have allowed Stone to assess the credibility of Whitley's claims and present contradictory evidence or impeach him at trial.

First, Defendant did not disclose during discovery and still has not disclosed any of the other members of its historical sales team who *do not* recall seeing Defendant's alleged STONE-centric promotional materials in market during the relevant time period.  According to Whitley, there were more than a hundred sales

team members at any given time during the early 1990s, yet Defendant chose to exclude its entire sales team from discovery in this case and beat back Stone's motions on that score.  Having done so and in light of Defendant's established history of "cherry-picking" historical Keystone marketing evidence to disclose, Dkt. No. 250 at 10, it would be extraordinarily unfair for Defendant to be permitted to introduce testimony from a single, hand-selected lifetime employee – while at the same time preventing the jury from knowing how difficult it was for Defendant to find someone who claims to remember its STONE-centric historical marketing material at all.  Stone has had no opportunity to take discovery to obtain contrary testimony from other former Coors sales personnel – all of whom remain undisclosed.

Second, MillerCoors failed to search for or produce Mr. Whitley's documents or the documents of other MillerCoors sales team members during discovery, thereby depriving Stone of documents for impeachment and cross-examination.  At his deposition, Whitley identified repositories containing a host of materials that MillerCoors never disclosed in discovery.[1]  The withheld repositories revealed at the deposition directly concern Defendant's alleged historical marketing of Keystone, including:

1. Internal "brochures" and "proposals" prepared yearly for Defendant's sales staff regarding all of the Keystone promotional materials that would be available in the upcoming year.  (Theodore Decl., Ex. 1, Whitley Tr. at 32:3-33:4; 206:13-207:14.)

2. Individual documents related to unique point of sale materials for Keystone.  (*Id.* at 34:7-19.)

3. Business plans and presentations for individual distributors including details regarding the Keystone point of sale materials to be used.  (*Id.* at 208:1-211:20.)

---

[1] Whitley's testimony that there are numerous unproduced documents contradicts Defendant's representations to the Court at the Pre-Trial Conference that "there[ are] no documents involved" with Mr. Whitley's testimony. (11/3/21 PTC Tr. at 41:20-22.)

4. Budgets for Keystone point of sales materials.  (*Id.* at 208:1-211:20.)

5. Orders for Keystone point of sale materials and related communications with Integer, the agency that produced those materials.  (*Id.* at 208:1-211:20.)

6. Communications with individual distributors regarding preferred Keystone point of sale materials.  (*Id.* at 213:1-13.)

7. Documents from Defendant's computerized "Coors Link" system that was used during the relevant time period to keep records and communicate with distributors regarding Keystone point of sale materials.  (*Id.* at 218:11-220:20.)

Defendant also failed to collect documents from Whitley's corporate email accounts, including accounts for his historical roles in Coors's distributing and sales organizations.  Whitley had a long-term email address at Coors Distributing Company, Scott.Whitley@cdccoors.com that was never queried in this litigation. (*Id.* at 213:24-217:20.) Whitley also had email accounts at tenthandblake.com and millercoors.com that were never queried.  (*Id.*)  Whitley's unsearched emails likely amounted to hundreds of thousands of documents, as he testified that he sent "too many" emails on a daily basis beginning in the mid-1990s and continuing until 2017. (*Id.*)  Because Stone never had the opportunity to conduct discovery into these materials, it has no way of knowing whether Whitley is accurately characterizing his experience at MillerCoors.  Stone will not have a meaningful opportunity to impeach Mr. Whitley or obtain rebuttal testimony from any of the hundreds of other Coors sales representatives from the relevant time period who may have no recollection of the alleged marketing materials at issue and whom Defendant has chosen not to disclose.

Defendant's conduct thus thwarts the entire purpose of the discovery process, which requires disclosure of witnesses at the outset of the litigation so that parties may conduct further discovery regarding those witnesses' anticipated testimony. "The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush."  *Ollier*, 768 F.3d at 862.  "After disclosures of witnesses are made, a party can conduct discovery

of what those witnesses would say on relevant issues, which in turn informs the party's judgment about which witnesses it may want to call at trial, either to controvert testimony or to put it in context." *Id.* Late disclosure of witnesses is inherently prejudicial "because '[p]arties, aware of the "self-executing" and "automatic" nature of Rule 37(c)(1) sanctions, have a right to expect that only disclosed witnesses will be used to support the disclosing party's claims and defenses.'" *Guzman,* 305 F.R.D. at 604 (citations omitted).

Impeachment is especially critical here because Mr. Whitley demonstrated a willingness to make false statements under oath at his deposition, including about this lawsuit. Asked whether he remained in contact with Defendant since his retirement, Whitley initially said "there really isn't anybody I've kept in touch with," other than the current head of Coors Distributing Company. (Theodore Decl., Ex. 1, Whitley Tr. at 90:2-15.) That was proved false. Confronted with documents, Whitley admitted that he regularly communicates with Defendant's personnel on social media, including Defendant's senior leaders and witnesses in this litigation. (*Id*. at 97:2-20; 98:1-100:7 & *id.*, Ex. 7 (communications with MillerCoors executive Paul Verdu); *id.*, Ex. 1 at 100:24-103:5 & *id.*, Exs. 8, 9 (communications with MillerCoors employee and witness Mike Sikorski); *id.*, Ex. 1 at 103:6-104:15 & *id.*, Exs. 10, 11 (communications with MillerCoors executive Pete Marino); *id.*, Ex. 1 at 111:15-21 (communications with Ed Novak); *id.* at 117:19-25 (communications with MillerCoors employee Dick Leinenkugel).) Whitley also admitted he exchanges text messages with Defendant's CEO Gavin Hattersley. (*Id*. at 86:13-87:10.)

When asked whether he ever discussed this lawsuit, Whitley similarly denied the existence of such communications. (*Id.* at 96:13-21.) Presented with evidence, he later admitted that this too was false. (*Id.* at 127:11-24.) In fact, Whitley has posted on social media and communicated with Defendant's executives and other employees regarding this lawsuit beginning the day it was filed in 2018. (*Id.* at 118:13-124:1 & Ex. 12 (February 12, 2018 social media communications about

lawsuit with MillerCoors personnel Lance Hastings, Peter Frost, Paul Verdu, Cara Lauritzen, CJ Leinenkugel, and others); *id.*, Ex. 1 at 124:2-127:16 & *id.*, Ex. 13 (February 13, 2018 social media communications about lawsuit with MillerCoors employee Ted Lindblom); *id.*, Ex. 1 at 129:7-132:16 & *id.*, Ex. 14 (March 4, 2018 social media communication about lawsuit with MillerCoors employee Marty Maloney); *id.*, Ex. 1 at 132:18-136:16 & *id.*, Ex. 15 (February 21, 2018 social media communications about lawsuit with MillerCoors personnel, including John Cochran and Brian Nale).)

Given Whitley's lack of candor at his deposition, his testimony cannot be taken at face value without detailed cross-examination based on a full documentary record and rebuttal testimony by other former employees with different recollections. By failing to disclose any member of the sales team or produce their documents, however, Defendant has prevented Stone from obtaining the necessary material. It would be grossly unfair to permit Defendant to present testimony from a demonstrably unreliable witness while withholding discovery of the very witnesses and documents that would have allowed Stone to rebut his claims.

## 2.    The Prejudice Cannot Be Cured Before Trial

The prejudice caused by Defendant's failure to disclose Whitley cannot be cured before trial. Discovery closed more than two years ago, and trial was set to begin on November 8, 2021, before being continued to March 7, 2022. The prejudice to Stone is fundamental and stems from Defendant's failure to disclose Whitley, its failure to produce Whitley's documents, its failure to produce documents in the categories that Whitley identified at his deposition, and its wholesale refusal to identify witnesses in its sales department or produce their documents. All of these result from strategic choices that Defendant made years ago during discovery. Curing the prejudice would require re-opening discovery into all of these areas from scratch, re-opening document discovery regarding the repositories of information

withheld by Defendant, and deposing witnesses not previously disclosed by Defendant to see if other sales team members support Whitley's account.

The incalculable expense and delay imposed by reopening discovery would itself be highly prejudicial to Stone, which has been preparing this case for trial for more than two years in reliance on Defendant's discovery responses and disclosures. As the Ninth Circuit has explained:

> Orderly procedure requires timely disclosure so that trial efforts are enhanced and efficient, and the trial process is improved. The late disclosure of witnesses throws a wrench into the machinery of trial. A party might be able to scramble to make up for the delay, but last-minute discovery may disrupt other plans. And if the discovery cutoff has passed, the party cannot conduct discovery without a court order permitting extension. This in turn threatens whether a scheduled trial date is viable. And it impairs the ability of every trial court to manage its docket.

*Ollier*, 768 F.3d at 862–63.  For this reason, courts routinely deny leave to add late-disclosed witnesses when doing so would require reopening discovery before trial. *See, e.g., Ollier*, 768 F.3d at 862–63 (disclosure of witnesses eight months before trial was not harmless); *Shenwick*, 2021 WL 1232451, at *2 (late disclosure was not harmless because "[t]rial would actually now be underway – or completed – were it not for the COVID-19 pandemic. To reopen discovery now would unreasonably burden Plaintiffs and potentially disrupt the parties' and the Court's schedule."). Here, too, the expense and delay entailed by re-opening discovery would only amplify the prejudice.  The Court should exclude Whitley because Defendant cannot show that its decision to disclose him two years after the discovery cutoff was harmless.

If the Court does not exclude Whitley, fairness would require (1) disclosure of all witnesses from Defendant's sales, distributor development, and other departments with information regarding the promotion and sale of Keystone, (2) additional document production, interrogatories, and depositions, and (3) an order that Stone's fees and costs attributable to such discovery will be borne by Defendant.

### D.   Whitley's Vague and Speculative Testimony Is Not Helpful to the Jury

Whitley's deposition also revealed that he lacks personal knowledge of any specific use of Keystone historical materials, and his vague recollections were inconsistent with Defendant's own sworn interrogatory responses.  This not only heightens the prejudice created by Defendant's failure to disclose him until the eve of trial but renders his testimony of no probative value and inadmissible.

Under FRE 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Additionally, under FRE 403, the Court may exclude evidence "if its probative value is substantially outweighed by a danger of […] unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Whitley's vague and speculative testimony cannot satisfy either Rule 602 or Rule 403.

Whitley's deposition revealed that he lacks adequate personal knowledge regarding the issue on which he purports to testify – *i.e.*, whether, where, and when the mock-ups of historical Keystone marketing materials reached the marketplace. At his deposition, Whitley was unable to provide specific dates or locations for any of the historical Keystone materials at issue and could not name a single specific date and location where he saw historical Keystone materials in the market. (Theodore Decl., Ex. 1, Whitley Tr. at 191:3-8 ("So as far as specific stores, specific tag lines of specific dates, no, I can't give you that recollection"); *see also id.* at 191:23-25; 235:23-236:7.)  All that he could say was that he generally remembered seeing certain historical Keystone materials in the market. (*Id.*)

Whitley was similarly unable to recall details of Keystone's marketing. He failed to accurately identify the names, slogans or dates of Keystone's various marketing campaigns (*id.* at 151:15-20; 150:6-11; 153:1-20; 164:19-168:20; 169:16-170:13).  And Whitley was unable to recall key details regarding the launch of

1  Keystone, the year of the launch of the 30-pack (*id.* at 181:22-182:11; 296:15-23), or
2  the name of Keystone's brand manager (*id.* at 154:16-22).

3  Where a deposition shows that a witness lacks personal knowledge regarding
4  the subjects on which he or she will testify, the witness's testimony is properly
5  excluded.  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th
6  Cir. 2001) (affirming ruling that testimony was inadmissible under Rule 602 because
7  witness "failed to show personal knowledge" and "there was no evidence in the
8  deposition […] of any basis in personal knowledge").  Here, Whitley's deposition
9  answers show that he lacks knowledge regarding the issues for which Defendant
10 seeks to have him testify.  Vague and unsupported generalizations about historical
11 Keystone marketing materials do not satisfy Rule 602's personal knowledge
12 requirement.

13 Whitley's testimony also should be excluded under FRE 403 because his
14 vague and speculative testimony is both unhelpful to the jury and unfairly prejudicial
15 and confusing.  Where a witness can only offer vague and speculative assertions
16 regarding the facts in dispute, the trial court has broad discretion to exclude that
17 witness's testimony to avoid prejudice, confusion, and delay.  *Taylor v. Burlington
18 N. R.R.*, 787 F.2d 1309, 1315 (9th Cir. 1986) (affirming exclusion of testimony
19 because it was too "speculative and unduly prejudicial under Rule 403 of the Federal
20 Rules of Evidence"); *United States v. Williams* 850 Fed. App'x. 566, 568 (9th Cir.
21 2021) (affirming exclusion of "vague testimony" because it "would not have aided
22 the jury in determining […] the central issue at trial" and "the district court correctly
23 determined that the probative value of this testimony was substantially outweighed
24 by the danger of undue prejudice, wasting the time of the jury, and confusing the
25 issues under Federal Rule of Evidence 403").

26 The prejudicial impact of Whitley's testimony is heightened here because
27 Whitley's testimony contradicts Defendant's discovery responses in this case. For
28 example, Whitley claimed that Keystone started using 'Stone and 'Stones in the

1   marketplace almost immediately, within the 1989-91 time period. (*Id.* at 151:23-

2   152:25.)  According to MillerCoors's interrogatory responses, however,

3   MillerCoors's first use of 'Stone and 'Stones started in 1992, three years after the

4   Keystone brand was launched. (*Id.*, Ex. 16 at 16; *see also id.* at 40-41.)  It is unfair to

5   have Defendant present a new witness, two years after discovery and on the eve of

6   trial, whose lack of relevant knowledge leads him to contradict Defendant's sworn

7   discovery responses from earlier in this litigation about the central issue on which he

8   is to testify.  His testimony should be excluded.

9   **II.    THE COURT SHOULD IMPOSE AN ADVERSE INFERENCE SANCTION FOR DEFENDANT'S WITHHOLDING OF EVIDENCE**

10           Whitley's deposition testimony revealed that Defendant failed to produce

11   entire repositories of relevant materials directly responsive to Stone's discovery

12   requests.  As detailed above, this evidence included reports, brochures, plans,

13   correspondence, and other communications within Defendant's sales and distribution

14   organizations regarding historical Keystone merchandise.  Meanwhile, Defendant's

15   selective disclosure of Whitley but not any other historical Coors sales personnel is

16   yet another example of Defendant's effort to create an incomplete and misleading

17   record of its historical Keystone marketing.

18           Defendant has already been sanctioned by the Court for selectively

19   withholding historical materials related to Keystone.  (Dkt. No. 250 at 10-11.)  And

20   the Court has reserved the right to give an adverse inference instruction at trial based

21   on this misconduct.  (10/21/20 PTC Tr. at 19:10-15.)  The Whitley deposition further

22   confirms that an adverse inference instruction is necessary because Defendant's

23   withholding of historical evidence was even more far-reaching and prejudicial than

24   previously known.  In addition to excluding Whitley, the Court should grant an

25   adverse inference sanction instructing the jury that Defendant withheld evidence in

26   discovery and that the jury may infer that the withheld evidence was adverse to

27   Defendant's position.

28

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY

The Court's authority to sanction a party for discovery failures stems from its inherent power to impose sanctions in response to litigation misconduct, *see Chambers v. NACSO*, 501 U.S. 32, 45-46 (1991), and from Federal Rule of Civil Procedure 37, under which sanctions are available against a party "who fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A), (C); *Lewis v. Ryan*, 261 F.R.D. 513, 518 (S.D. Cal. 2009). An adverse inference is appropriate where discovery misconduct prevents access to relevant evidence. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386–87 (9th Cir. 2010). Courts consider several factors in evaluating sanctions, including: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) risk of prejudice to the [party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Engineers v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

Here, Defendant has withheld Keystone historical materials despite multiple Court orders compelling production and tens of thousands of dollars in monetary sanctions for improperly "cherry picking" documents. As detailed above, the Whitley deposition revealed that there are even more responsive materials than previously known that were withheld from discovery. This includes entire repositories of information in the possession of Defendant's sales organization, belying Defendant's representations to the Court and to Stone that its sales team was "not relevant to the dispute." Dkt. No. 435 at 5.

Defendant's repeated withholding of responsive materials regarding Keystone violated its discovery obligations and is highly prejudicial to Stone. If Defendant had timely disclosed Whitley and the witnesses and documents from its sales department identified at Whitley's deposition, Stone could have used that information to conduct discovery into Defendant's claims regarding its past marketing of Keystone. Instead, Defendant did not disclose the existence of these materials until the eve of trial.

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY

An adverse inference instruction is necessary to cure the prejudice caused by Defendant's failure to disclose witnesses and documents and to allow the jury to draw the proper conclusions from Defendant's repeated efforts to create a selective record of its historical Keystone marketing materials. Courts in similar circumstances have concluded that the intentional withholding of documents requires an adverse inference instruction. *Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 Fed. App'x. 569, 571 (9th Cir. 2009) (affirming instruction that jury may infer the destroyed evidence was unfavorable to the spoliator, because it was "at least negligent in not taking any affirmative actions to preserve the documents"); *Cyntegra, Inc. v. Idexx Labs., Inc.*, 2007 WL 5193736, at *7 (C.D. Cal. 2007). "Just as the intentional or grossly negligent destruction of evidence in bad faith can support an inference that the destroyed evidence was harmful to the destroying party, so, too, can intentional or grossly negligent acts that hinder discovery support such an inference, even if those acts are not ultimately responsible for the unavailability of the evidence." *Estakhrian v. Obenstine*, No. CV 11-3480, 2016 WL 6275599 (C.D. Cal. May 17, 2016), at *4; *Frank Brunckhorst Co., LLC v. Ihm*, No. 11CV1883, 2013 WL 12094827, at *3 (S.D. Cal. Dec. 16, 2013) (overruling Report and Recommendation and imposing evidentiary sanctions and adverse inference instruction because "the Court is left with the definite and firm conviction that it would be a mistake not to enter … evidentiary sanctions for Defendants' discovery abuses"); *Compass Bank*, 104 F. Supp. 3d at 1060 (imposing adverse inference for spoliation).

The Court should instruct the jury that Defendant withheld evidence in discovery and that the jury may infer that the withheld evidence was adverse to Defendant's position.

## CONCLUSION

For the foregoing reasons, the Court should preclude Whitley from testifying at trial and issue adverse inference sanctions against Defendant.

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY

1

2   Dated:  January 14, 2022                    Respectfully Submitted,

3                                               BRAUNHAGEY & BORDEN LLP

4                                               By:  s/ J. Noah Hagey
                                                     J. Noah Hagey
5
                                                *Attorneys for Plaintiff*
6                                               *Stone Brewing Co., LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF SCOTT WHITLEY