J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
  theodore@braunhagey.com
Forrest Arthur Hainline III, Esq. (SBN: 64166)
  hainline@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Douglas S. Curran, Esq. (*pro hac vice*)
  curran@braunhagey.com
BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Telephone:  (646) 829-9403
Facsimile:  (646) 829-9403

ATTORNEYS FOR PLAINTIFF
STONE BREWING CO., LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>    v.<br><br>MILLERCOORS LLC,<br><br>    Defendant / Counterclaim Plaintiff. | Case No: 18-cv-0331-BEN-MDD<br><br>**PLAINTIFF STONE BREWING'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE**<br><br>District Judge: Hon. Roger T. Benitez<br><br>**Date:** February 8, 2022<br>**Time:** 10:00 AM<br>**Judge:** Hon. Roger T. Benitez<br>**Ctrm:** 5A<br><br>Complaint filed: February 12, 2018 |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .........................................................................................................4

I.   Defendant Has Failed to Establish Good Cause for a Continuance ...............4

II.  Defendant Misled the Court and Stone About Its Intentions to Seek a Continuance and Substute New Counsel ........................................................8

III. Any Further Delay Will Cause Manifest and Substantial Prejudice to Stone ..............................................................................................................10

IV.  If this Court Does Grant a Continuance, It Must Impose Conditions and Appropriate Remedies ...................................................................................11

CONCLUSION.........................................................................................................13

## PRELIMINARY STATEMENT

Plaintiff Stone respectfully opposes Defendant MillerCoors's untimely motion to continue the already thrice-rescheduled jury trial in this matter. (ECF 513). The motion attempts to capitalize on Defendant's long history of frustration and delay so that it can substitute new "lead" trial lawyers from yet another law firm, while continuing to imperil Stone's business by misappropriating Stone's incontestable federal mark. Defendant neglected even to apprise Stone of the motion or its grounds before contacting the Court and filing its application after business hours on Thursday night—and withheld all of that information when Defendant signed and submitted the parties' final Joint Pretrial Conference Statement less than 48 hours earlier.

Defendant's failure to apprise the Court and Stone of its plans as required in the Joint Pretrial Order is, itself, grounds for denying any continuance. (*See* Local Rule 16.1(f)(6)(a) ("Opposing counsel must communicate promptly with plaintiff's attorney concerning <u>any objections to form or content</u> of the pretrial order, and both parties should attempt promptly to resolve their differences, if any, concerning the order." (emphasis added))). But Defendant's unclean hands runs even deeper. Since the Court's prior continuance in November 2021, Defendant has embarked on a months-long strategy to ignore, delay, and frustrate the Court's pretrial process. It has failed to provide basic information regarding witnesses and other trial logistics, has refused to schedule Court-ordered depositions in a reasonable way, has bickered with Stone over costs and fees, and has even flatly ignored Stone's emails seeking to coordinate procedures and schedules for resolving the still-outstanding disputes.[1] Further, when Stone inquired about the timing of engagement and involvement of

---

[1] Stone has done everything it can (even on a unilateral basis) to address outstanding disputes—the majority of which are a product of Defendant's flat refusal to agree to any compromise in order to streamline this matter for trial. Stone will submit a lengthy declaration detailing the ways Defendant has executed its strategy of delay if doing so would assist the Court in disposing of Defendant's motion.

Defendant's new lead counsel, Defendant refused to provide any information—tacitly admitting that its plan has been in the works for some time.  (*See* Decl. of J. N. Hagey, "Hagey Decl.," attached hereto, Ex. 4).

Your Honor, the Special Master, and Stone now finally know *why* Defendant has engaged in these tactics: it has been buying time to introduce new lawyers and submit its undisclosed continuance request that is now before the Court.  In service of that plan, Defendant has resisted progress, ignored meet-and-confer requests, rejected compromises, and attempted to build a record that, in its view, would convince Your Honor that the remaining disputes cannot possibly be resolved in advance of March 7.  *It takes two to tango and Stone has not had a dance partner.*

Meanwhile, Stone's business continues to suffer.  Before Defendant's adoption of "STONE" as its new brand in 2017, Stone had experienced **over twenty straight years of historical annual growth**:



Since then, the decline in Stone's business has been precipitous:



Defendant's continued infringement is not theoretical or overstated. For instance, Defendant posted the below images to its official Keystone Light Facebook page in just the last two weeks, showing its intention to continue selling its beer using Stone's protected name. The first was posted on January 24:



And the second was posted on February 4—the <u>day after</u> Defendant requested a continuance:

(www.facebook.com/keystonelight).

In event the Court does entertain Defendant's motion—notwithstanding the manifest and unfair prejudice to Stone—it should condition such relief on: (1) an order to enjoin (or order to show cause regarding) Defendant's ongoing misuse of Stone's trademark in light of the obvious and mounting evidence of lasting irreparable harm to Stone's business and goodwill; (2) an order that Defendant reimburse all of the pretrial fees and expenses that Stone needlessly incurred in connection with preparing for the current trial date; (3) an order that Defendant provide targeted information regarding the timing and involvement of its (previously undisclosed) new lead counsel and that counsel's involvement in the pretrial delay; and (4) an order that Defendant be appropriately limited in its use of trial subpoenas.

## ARGUMENT

### I. DEFENDANT HAS FAILED TO ESTABLISH GOOD CAUSE FOR A CONTINUANCE

Defendant's motion should be denied principally because a continuance is not necessary to resolve the parties' outstanding disputes and complete the necessary pretrial tasks in advance of March 7.

In the Ninth Circuit, "[f]our factors are deemed salient in considering whether a continuance should be granted": (1) "the diligence of the party requesting the

continuance"; (2) "whether the purpose of the continuance will be achieved"; (3) "inconvenience to the court, opposing parties, and witnesses"; and (4) "prejudice to the requesting party caused by the denial of the continuance." *Kassab v. San Diego Police Dep't*, 2015 WL 5604386, at *8 (S.D. Cal. Sept. 22, 2015), *aff'd*, 733 F. App'x 877 (9th Cir. 2018). "A district court's decision regarding a continuance is given great deference[.]" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 960–61 (9th Cir. 2001). Federal courts routinely deny last-minute, surprise requests for continuances when the moving party has not been diligent in advising the court and the opposing party about its intentions to postpone trial. *E.g.*, *Danjaq*, 263 F.3d at 960–61 (holding district court properly denied continuance based on "[the moving party's] lack of diligence in advising the court of his circumstances […] the inconvenience to the court and the opposing party occasioned by [the moving party's] repeated delays," and the lack of prejudice to the moving party); *Mattel, Inc. v. MGA Ent., Inc.*, 408 F. App'x 45, 47 (9th Cir. 2011) (affirming "the court's denial of a continuance on the eve of trial"). Here, the Motion must be denied both because Defendant has not been diligent in requesting it (and is not otherwise entitled to it), and, in any event, it is not necessary to resolve the parties' outstanding disputes.

Following the November 3, 2021 postponement of the trial date, the Court referred several disputes to Judge Guilford as Special Master on January 5, 2022. (ECF No. 499). Stone submitted a letter to the Special Master on January 11 requesting an initial conference (ECF No. 503), and that conference took place on January 31. At the conference, Judge Guilford noted the limited time before trial and directed the parties to work together closely to make substantial progress on the outstanding disputes. That same day, Judge Guilford issued an order by email directing the parties to take specific steps in advance of a February 14 in-person conference. (*See* Jan. 31, 2022, Email from Hon. Guilford, ECF No. 513-1). Judge Guilford also stated that he would do what is necessary to prioritize this case and

make it trial ready by March 7, including by "instruct[ing] Judicate West not to take on any new cases for [him] into the future" until this case is prepared for trial. (*Id.*).

Stone immediately took steps to begin narrowing the parties' disputes, including by submitting to the Special Master a list of actions that it would take unilaterally, and encouraging Defendant to do the same. (*See* Ex. 1 attached hereto). Among other things, Stone (i) committed to reducing its exhibit list to 1,000 documents (or fewer), (ii) withdrew from its witness list 17 certain individuals to which Defendant had objected, (iii) withdrew objections to a number of Defendant's exhibits, and (iv) committed to providing trial availability for Stone-related witnesses (which it has now done). (*Id.*).

Stone then assembled a proposed protocol and schedule for information exchange, which would permit the parties to make substantial progress on their outstanding disputes in advance of the scheduled February 14 in-person conference with Judge Guilford. (Ex. 2). That proposal contained the following suggested schedule for information exchange:

| Date | Event |
| --- | --- |
| Thursday, February 3<br>12:00 PM PT | Defendant provides Stone a list of witness availability for current and former Defendant-related witnesses |
| Friday, February 4<br>12:00 PM PT | Mutual identification of which opposing-party-related witnesses each party will call at trial |
| Friday, February 4<br>6:00 PM PT | Stone provides Defendant an omnibus document containing both parties' proposed jury instructions and objections |
| Saturday, February 5<br>12:00 PM PT | Mutual exchange of culled exhibit lists and exhibits |
| Monday, February 7<br>6:00 PM PT | Mutual identification of witnesses for which each party will introduce video deposition testimony at trial |
| Monday, February 7<br>6:00 PM PT | Mutual identification of all witnesses each party intends to call at trial |
| Monday, February 7<br>6:00 PM PT | Defendant provides Stone its revisions (if any) to the omnibus document containing both parties' proposed jury instructions and objections |
| Tuesday, February 8<br>9:00 AM PT | Pretrial Conference with Judge Benitez |
| Wednesday, February 9<br>12:00 PM PT | Meet and confer teleconference (2 hours) |
| Thursday, February 10<br>6:00 PM PT | Parties jointly submit remaining disputes and proposals to Judge Guilford |

| Date | Event |
|---|---|
| Monday, February 14 9:00 AM PT | Conference with Judge Guilford |

Stone sent its proposal to Defendant on February 2, asking for a prompt response so the parties could "make rapid progress." (*Id.*). Defendant did not respond. The next day, Stone again followed up, stating in part, "It is imperative that we agree to a schedule for exchanging information and conferring in advance of the February 14 in-person conference with Judge Guilford." (*Id.*). Defendant again did not respond. Instead, 6 hours later, Defendant filed its present motion for a continuance, and 60 minutes after that it sent Judge Guilford an email stating that it was "concern[ed] that there is not adequate time prior to the March 7, 2022 trial date to address the many issues that have been referred to [the Special Master]." (Ex. 3).

In other words, rather than actually engaging in the dispute-resolution process that Your Honor and Judge Guilford directed, Defendant devoted its efforts entirely to creating yet more friction—and then seeking an extension on the basis of the very friction it had created.

The schedule Stone has proposed—with some minor tweaking to account for the loss of an additional few days—provides a readily workable procedure for exchanging information, negotiating agreements where possible, and resolving any outstanding disputes sufficiently in advance of the March 7 trial date. Stone therefore requests that Your Honor direct the parties to use that schedule as a basis to immediately devise a revised schedule, and to submit that agreed schedule to Judge Guilford following the February 8 Pretrial Conference.

Moreover, Defendant's arguments regarding the twenty-day period that Your Honor has allotted for any objections to Judge Guilford's recommendations should be disregarded. (*See* Motion at 3–4). As Judge Guilford noted during the January 31 conference (and reiterated in his email order that same day), the parties can readily agree to substantially limit that period. (ECF No. 513-1 ("The parties might choose to shorten the 20 day review period, or at their discretion alone and not involving the

Special Master at all, might stipulate to further limit review.")). In its effort to convince Your Honor of the need for a continuance, Defendant did not mention this easy solution to the limited time remaining before March 7.

To resolve the remaining disputes, Stone therefore requests that Your Honor order the following schedule:

1. **February 9 at 6:00 PM PT**: The parties jointly submit an agreed protocol, based on Stone's February 2 proposal, to Judge Guilford for (i) the exchange of information, and (ii) meeting and conferring in advance of the February 14 in-person conference;

2. **February 14 at 9:00 AM PT** (and continuing thereafter as necessary): The parties confer with Judge Guilford regarding the outstanding disputes, after which, within a reasonable time, Judge Guilford will issue recommendations to Your Honor;

3. **February 28 at 6:00 PM PT**: The parties jointly submit, by means of a single filing stating each side's position on each issue, any objections to Judge Guilford's recommendations to Your Honor (regardless of when Judge Guilford issues those recommendations);

4. **March 6**: Your Honor issues final rulings on any disputes raised in the parties' joint submission.

This schedule will permit the parties nearly three weeks to work through the Special Master process, and will reserve one week for Your Honor to consider any objections prior to the start of trial.

There is no reason this case cannot proceed to trial on March 7. To the extent Defendant feels pressured for time, that is a direct result of its own decisions over the last several months—it has no bearing on whether a continuance is proper.

## II. DEFENDANT MISLED THE COURT AND STONE ABOUT ITS INTENTIONS TO SEEK A CONTINUANCE AND SUBSTUTE NEW COUNSEL

Defendant has violated Local Rule 16.1 and has not been straightforward with either the Court or Stone about the brand-new relief it now requests—indeed, it filed its motion less than 48 hours after having chosen not to disclose in the parties' Joint

Proposed Pretrial Order that it had already formulated plans to substitute new lead counsel and seek a further postponement of the trial date.

Local Rule 16.1 requires parties to meet and confer in connection with the submission of a joint Proposed Pretrial Order. Among other things, that rule states that "[a]ll counsel . . . must proceed with diligence to take all steps necessary to bring an action to readiness for trial," (L.R. 16.1(b)), and it calls for the exchange of a variety of trial-related information. Subsection 16.1(f)(6) states that, after receiving a draft of the joint pretrial order from plaintiff's counsel (which Stone provided as required), defense counsel "must communicate promptly with plaintiff's attorney concerning ***any objections*** to form or content of the pretrial order." (*Id.* (emphasis added)).

During the meet and confer process, Defendant provided information about and its position on a number of pretrial disputes, including those relating to witnesses, exhibits, jury instructions, elements of the claims, and deposition designations, among many others. It did not, however, so much as mention that it planned to ask this Court just 48 hours later to move the trial date itself—perhaps the most critical piece of pretrial information there is. This failure alone is grounds to rule that not only was Defendant not diligent in requesting the postponement, but that it affirmatively chose to obscure its plan.

After Stone received the surprise Motion, Stone sent an email to Defendant's counsel asking to meet and confer, seeking information regarding the timing and purpose of the substitution of counsel, and explaining that the requested information is "directly relevant to [Stone's] opposition to that motion and the Special Master process." (Hagey Decl. Ex. 4). Twenty-four hours later, one of Defendant's new trial attorneys (who has not yet appeared in this case) responded, did not agree to confer, and declined to provide any of the requested information, stating, "[Y]our questions are an improper attempt to invade the attorney-client relationship." (*Id.*). Thus, after the substitution had been made, Defendant chose to keep Stone in the

dark—and in doing so tacitly acknowledged the longstanding nature of the plan. This misdirection provides further grounds to deny Defendant's Motion.

### III. ANY FURTHER DELAY WILL CAUSE MANIFEST AND SUBSTANTIAL PREJUDICE TO STONE

Even setting aside the manner in which Defendant has made this request, the Motion also must be denied for the sole reason that Stone will face substantial prejudice—above and beyond the damage it has already incurred—if the trial date is further delayed. Stone has expended an immense portion of its limited resources to prepare for trial both in the lead up to the November 8, 2021 trial date and again in the last few months in advance of March 7. It would be manifestly unjust to grant Defendant's continuance and force Stone to intensively prepare a *third* time merely because Defendant, for its own purposes, would prefer a continuance of "perhaps" "six to ten weeks" to permit its new lawyers to get up to speed. (*See* Motion at 6).

Moreover, moving the trial again at this late stage would pose significant logistical problems. For instance, at Defendant's direct request,[2] Stone has secured the availability of certain Stone-related witnesses that Defendant may call for the week of March 14 (which is when Defendant will put on its case). These individuals include current and former Stone employees, third parties, and expert witnesses that Stone's counsel represents. Many of these witnesses, including expert witnesses who have other trial commitments in April and May, have already informed Stone that it will be extraordinarily difficult, if not impossible, to earmark another full week of availability at any point in the next few months. As a result, Defendant's suggestion that trial could easily be reset in April or May is not realistic.[3]

Moreover, in the meantime, Defendant continues to unlawfully sell its Keystone Light beer branded as "Stone," cause substantial brand damage to Stone's

---

[2] Defendant sought certain information about witness availability at trial as recently as the February 1, 2022 Joint Pretrial Order (PTO at 26–27).

[3] This is all to say nothing of the fact that Defendant has been insisting that these Stone-related witnesses make themselves available for a March trial that it knew it was going to ask to postpone.

hard-earned reputation in the industry, and cause a very real decline in Stone's business. As the charts on pages 2–3 above show, Stone's damages increase by the day. Indeed, because of Defendant's years of infringement, Stone is on the precipice of economic disaster—it simply cannot afford for trial to be pushed out even further.

At bottom, granting Defendant's motion would prioritize the convenience of Defendant's newly hired trial lawyers over the continued existence of Stone itself. It is difficult to imagine a more prejudicial result.

## IV. IF THIS COURT DOES GRANT A CONTINUANCE, IT MUST IMPOSE CONDITIONS AND APPROPRIATE REMEDIES

Finally, if—despite the substantial prejudice that would unfairly be visited on Stone—this Court nevertheless decides to postpone the trial date beyond March 7, Stone respectfully requests that Your Honor do so upon Defendant's agreement to the following conditions so as to mitigate the prejudice to Stone from further delay:

**First**, the Court should order that (or set a prompt hearing for an order to show cause regarding whether) Defendant must immediately stop delivering new shipments of Keystone Light to any distributors, wholesalers, or retailers in the marketplace pending the outcome of the jury trial in this matter (whenever that trial is set), so as to deny Defendant the unfair economic benefit of its strategy of delay. As set forth above, any continuance of the trial will necessarily extend the period in which Defendant is permitted to sell its infringing products. Each day that infringement period extends unfairly benefits Defendant to Stone's detriment.

**Second**, the Court should order Defendant to promptly reimburse Stone for the costs and attorneys' fees it has incurred in (i) meeting and conferring with Defendant's attorneys—in what was, in retrospect, a vain attempt to resolve disputes—since November 3, 2021; and (ii) responding to Defendant's submissions to this Court and the Special Master since January 31, 2022—as Defendant knew by then it intended to request a continuance.

**Third**, the Court should order Defendant to promptly disclose, via sworn declaration, the following information regarding its retention of Quinn Emanuel as lead trial counsel. This information directly bears on evaluating Defendant's litigation conduct in the preceding three months[4]:

    a.    The dates on which Defendant (i) first contacted, (ii) requested a conflicts check from, and (iii) formally engaged Quinn Emanuel in connection with this matter;

    b.    Whether Quinn Emanuel played any role in reviewing, advising on, and/or drafting any communication to Stone or the Special Master prior to February 3, 2022;

    c.    Whether Quinn Emanuel played any role in reviewing, advising on, and/or drafting any submission to the Court prior to February 3, 2022, including but not limited to the February 1 Joint Pretrial Order;

    d.    Whether Quinn Emanuel has been involved in any capacity in the Special Master process, including in deciding whether and/or how to respond to emails from Stone's counsel relating thereto;

    e.    Details regarding Defendant's contacting of Your Honor's chambers *ex parte* on February 3, including (i) what time that contact occurred, (ii) the duration of the phone call, (iii) the identity of the individuals on that phone call, (iv) whether Defendant disclosed to the Court at that time that it would be substituting trial counsel, and (v) any additional information Defendant disclosed to the Court; and

    f.    Details regarding Defendant's decision to not disclose any information about its change in trial counsel to the Court, the Special Master, or Stone during the course of either the January 31 conference with the Special Master or the drafting and submission of the February 1 Joint Pretrial Order, including (i) who was involved in that decision and (ii) the basis of that decision.

**Last**, the Court should order that Defendant is prohibited from issuing any trial subpoena to any Stone-related witness who is available during the week of March 14 but who *is not* available whenever the trial is rescheduled. Defendant

---

[4] As noted in Part III above, Stone requested this information from Defendant directly to no avail. (*See* Hagey Decl. Ex. 4).

should not get the benefit of the Court's subpoena power over these witnesses, who have each rearranged their personal schedules and commitments to appear at trial in March, when Defendant originally requested.

Stone reserves its right to seek additional appropriate remedies on the basis of the information Defendant should be ordered to provide.

## CONCLUSION

For the foregoing reasons, Stone respectfully asks this Court to deny Defendant's Motion to continue the trial date. In the alternative, if this Court does grant that motion, Stone respectfully requests that, in the interests of justice and fairness, it also issue the relief set forth in Part IV above.

Dated: February 7, 2022

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: s/ J. Noah Hagey
J. Noah Hagey

*Attorneys for Plaintiff Stone Brewing Co., LLC*