QUINN EMANUEL URQUHART & SULLIVAN, LLP
Jonathan C. Bunge (IL Bar No. 6202603)
jonathanbunge@quinnemanuel.com
Daniel R. Lombard (IL Bar No. 6290071)
daniellombard@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

CROWELL & MORING LLP
Kent B. Goss (SBN 131499)
KGoss@crowell.com
Valerie M. Goo (SBN 187334)
VGoo@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
MILLERCOORS, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

STONE BREWING CO., LLC,

Plaintiff / Counterclaim Defendant,

v.

MILLERCOORS LLC,

Defendant / Counterclaim Plaintiff.

Case No: 18-cv-0331-BEN-MDD

**DEFENDANT'S AMENDED MOTION FOR JUDGMENT AS A MATTER OF LAW**

As Plaintiff Stone Brewing Co., LLC ("SBC") has rested, Defendant MillerCoors LLC ("MillerCoors") respectfully moves for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50(a) and 52(c). As explained below, no reasonable jury could find that: (I) any trademark infringement was willful; (II) Keystone packaging and advertising created any likelihood of consumer confusion; (III) SBC was damaged by MillerCoors' actions; or (IV) SBC registered its STONE mark (or applied to register that mark) before MillerCoors used the term "Stone(s)" or its variants as its own mark. Additionally, based on the current record, the Court should find against SBC on (V) MillerCoors' affirmative defenses. MillerCoors is thus entitled to judgment as a matter of law ("JMOL") on all claims and on its counterclaims for declaratory judgment.

**LEGAL STANDARD**

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[,]" the court may resolve the issue against that party and grant JMOL in favor of the moving party. Fed. R. Civ. P. 50(a). "JMOL is warranted when the evidence presented at trial permits only one reasonable conclusion." *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (quotation omitted). The standard for granting JMOL mirrors the standard for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the existence of a "mere scintilla" of evidence will not prevent entry of judgment as a matter of law. *Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 853 n.2 (9th Cir. 1977).

Under Fed. R. Civ. P. 52(c), "the court may enter judgment as a matter of law . . . with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). Under Rule 52(c), a district court is not required to view evidence in the light most favorable to the non-moving party or draw any special inferences; rather, the court may make findings in accordance with its own

view of the evidence. *Ritchie*, 451 F.3d at 1023.

## ARGUMENT

### I. No Reasonable Jury Could Find That MillerCoors Acted Willfully

To establish that a trademark violation was willful, SBC must show that the allegedly infringing acts were caused by some form of intent equivalent to bad faith. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 441 (9th Cir. 2017) (finding "plaintiff must show that the defendant's infringing acts were accompanied by some form of intent"); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993). A mere "knowing use in the belief that there is no confusion" does not equate to a willful or bad faith infringement. *Lindy Pen*, 982 F.2d at 1406 (citing *Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752, 755 (6th Cir. 1986)).

Here, MillerCoors has presented undisputed testimony from MillerCoors employees and documentation indicating that MillerCoors had no intention of infringing on any trademarks held by SBC; rather, Keystone Light's refreshed primary and secondary packaging was designed to stand out against products with similar appearances in the economy beer segment and better compete with its primary competitors, Anheuser Busch products Natural Light and Busch Light, by using Keystone's historic nickname. *E.g.*, 3/9/22 PM Tr. 101:1-102:18 (Hattersley) (discussing beer market segments, noting SBC and Keystone were not competitors); *id.* at 108:5-109:23 (Hattersley) (indicating that MillerCoors did not believe that Keystone packaging was confusing to consumers and wanted consumers "to understand this is made by the Coors Brewing Company"); *id.* at 124:17-125:16 (Hattersley) (explaining that Keystone's competitors were other economy beers, not SBC brands); 3/10/22 AM Tr. 26:22-25 (Hattersley) (noting it would make "no sense at all" for MillerCoors to try to confuse consumers into thinking SBC made Keystone); 3/11/22 PM Tr. 57:19-58:6 (Wexelbaum) (indicating MillerCoors had no concerns that Keystone packaging and advertising would cause confusion with SBC products); 3/17/22 PM Tr. at 71:11-21 (Roberson) (noting that Natural Light, Busch,

and Busch Light were key competitors, not craft beers like SBC); *id.* at 83:19-84:10 (Robberson) (explaining motivation behind refresh as "geographic stabilization" rather than anything connected with SBC); *id.* at 113:19-24 (Robberson) (stating that it "would not have made any sense" to try to associate Keystone with SBC). That primary and secondary packaging continued to be prominently labelled with "Keystone" and "Coors Brewing Company." 3/11/22 AM Tr. 38:17-21 (Wexelbaum); *id.* at 39:20-24 (Wexelbaum). SBC has not presented any evidence otherwise and instead presented only speculation as to what it believes MillerCoors's intentions may have been. Indeed, SBC has failed to assert why MillerCoors would seek to target a company that is just 1% of the overall craft beer market, when craft beer itself is only around a small portion of the overall beer market. 3/17/22 AM Tr. at 83:4-6 (Stipp). Plaintiff's mere speculation does not create a factual issue that would allow a reasonable jury to find for SBC on the issue of willfulness. *See, e.g.*, *Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 853 n.2 (9th Cir. 1977) (mere scintilla of evidence is insufficient to prevent entry of JMOL). Accordingly, the Court should enter JMOL under Rule 50(a) in favor of MillerCoors on all claims and on its counterclaims for declaratory judgment.

## II. No Reasonable Jury Could Find A Likelihood Of Consumer Confusion

To demonstrate likely consumer confusion, SBC can point to little more than the legally irrelevant "split" in the Keystone mark and a few isolated and anecdotal social media comments by putatively "confused" consumers. DX9241 & DX9243 (United States Patent and Trademark Office Notice of Acceptance and Renewal Under Sections 8 & 9 of KEYSTONE trademark with specimen showing refreshed Keystone Light can); *see also, e.g.*, *Paris Glove of Can., Ltd. v. SBC/Sporto Corp.*, 84 U.S.P.Q.2d 1856, 1862 (T.T.A.B. 2007) (finding "AQUASTOP" depicted on one line in semicircular form not to be a material alteration of "AQUA STOP" depicted on two lines in rectangular form because "the commercial impression of the mark is

dependent upon the literal terms AQUA STOP and not on the rectangular, semicircular or linear forms of display"); *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1370 (Fed. Cir. 2015) (holding that minor stylistic changes in the font and image of a word and design mark did not change the commercial impression and did not result in an abandonment of the earlier registered trademark). But they have not explained how these isolated instances represent a real likelihood of confusion, when Keystone's packaging still prominently shows the Coors Brewing Company seal and is still labelled as "Keystone." *E.g.*, 3/11/22 AM Tr. 38:17-21 (Wexelbaum); *id.* at 39:20-24 (Wexelbaum); 3/17/22 PM Tr. 55:22-56:10 (Robberson) (noting presence of Keystone Light italic label, Coors seal, and "30 Stones" motto on refreshed Keystone packaging). A "mere scintilla" of evidence is insufficient to prevent entry of JMOL, and no reasonable jury could find any likelihood of consumer confusion on this record. Indeed, MillerCoors has demonstrated through documentary evidence and witness testimony the numerous differences in style, appearance, and target audience that make it wholly implausible that an ordinary consumer would find any confusing similarity between a can of Keystone and an SBC product simply because the letters "S-T-O-N-E" are on the can. *E.g.*, 3/9/22 PM Tr. 101:1-102:18 (Hattersley) (discussing beer market segments, noting SBC and Keystone were not competitors); *id.* at 108:5-109:23 (Hattersley) (indicating that MillerCoors did not believe that Keystone packaging was confusing to consumers and wanted consumers "to understand this is made by the Coors Brewing Company"); *id.* at 124:17-125:16 (Hattersley) (explaining that Keystone's competitors were other economy beers, not SBC brands); 3/10/22 AM Tr. 26:22-25 (Hattersley) (noting it would make "no sense at all" for MillerCoors to try to confuse consumers into thinking SBC made Keystone); 3/11/22 PM Tr. 57:19-58:6 (Wexelbaum) (indicating MillerCoors had no concerns that Keystone packaging and advertising would cause confusion with SBC

products); 3/15/22 PM Tr. 81:15-19, 82:12-17 (Koch) (indicating that he did not believe someone would look at an SBC can and confuse it with a Keystone beer).

Likewise, SBC's own experts admit that there is no actionable likelihood of confusion, as defined by the Lanham Act, in this case. Carrie Distler, Stone Brewing's damages expert, explicitly testified that the purported damage to Stone's brand is being caused by dilution of the brand, **not** by a likelihood of confusion with Keystone products. Ms. Distler testified that "the harm that is occurring to Stone is that its brand is being—is being impacted by a negative association. So there may not necessarily be substitution between the two products, but the brand is harmed and generating less sales as a result of that association." 3/21/22 PM Tr. 107:4-9. Ms. Distler testified that the damage to Stone Brewing's brand is explicitly not being caused by confusion between the products ("there may not necessarily be substitution between the two products"). Rather, Ms. Distler claims that the Stone brand is being purportedly impacted by a "negative association." This is a dilution claim, and SBC has withdrawn its dilution causes of action. *See* 15 U.S.C. § 1125(c)(2)(B)-(C).

Likewise, Robert Palmatier's, SBC's marketing expert, testimony was replete with references to trademark dilution, often under the guise of loss of brand equity or brand value.[1] For example, Dr. Palmatier testified that the purported damage caused to the Stone brand was based on the "linkages" between the "way down here" Keystone brand with "really bad attributes" and the "way up here" Stone Brewing brand, such that Keystone's "bad attributes are mapped on to Stone." 3/18/22 PM Tr. 111:22-112:5. In fact, Dr. Palmatier specifically testifies that the purported damage to the Stone brand is **not** due to confusion. 3/18/22 PM Tr. 117:23-25 ("So most of

---

[1] Notably, numerous slides from Mr. Palmatier's demonstratives are based on his opinions from his February 12, 2021 Second Supplemental Expert Report, which was submitted months before Stone Brewing withdrew its dilution claims, and which was intended to support Stone Brewing's dilution claims, among others.

the effect we're talking about isn't being done because someone goes into the store to buy a Keystone and they just grab a Stone."). Rather, the damage is allegedly because of a "well-known effect" called "Halo," where when "one brand goes up, the other goes down." 3/18/22 PM Tr. 118:5-8. SBC's theory of purported brand damage is summed up in the following exchange between Dr. Palmatier and SBC's counsel:

> Q. To his honor's point, why would that be a problem or cause harm to Stone and Stone IPA?
>
> A. Well, there's multiple ways to show harm, but the biggest way to show harm is when people link these two beers together. It's going to take the attributes of Keystone -- watery, light, I don't like it -- and it's going to associate those attributes with Stone beer. And this is going to happen subconsciously. So in the past we'd say, oh, this is a good beer -- so I heard some testimony that, it used to be we could charge this for Stone IPA and now we can't charge this anymore. Well, that's very common when the brand starts getting associated with some of these negative attributes. You say, oh, maybe it's not worth as much. You've probably all seen brands yourself with the same thing. It's not as cool. And when it's not as cool, people don't want to pay as much.

3/18/22 PM Tr. 78:25-79:14.

Stone Brewing's theory as to damages is entirely grounded in dilution, either dilution by tarnishment, as cited above, or dilution by blurring, which is the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). These are not theories of harm based on a likelihood of confusion, under the Lanham Act or under California law. To be clear, Dr. Palmatier used the terms "confusion" and "confused" numerous times throughout his testimony, but his use of those terms was not grounded in any cause of action under the Lanham Act, including 15 U.S.C. § 1125, which requires a likelihood of confusion "as to the affiliation, connection, or

association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[2] Dr. Palmatier did not testify as to actionable Lanham Act confusion.

Accordingly, the Court should enter JMOL under Rule 50(a) in favor of MillerCoors on all claims and on its counterclaims for declaratory judgment.

**III. No Reasonable Jury Could Find That SBC Was Damaged By MillerCoors's Actions**

In order to recover under any of its claims, SBC must show damages. While SBC has attempted to assert numerous theories of damages, it has not presented any evidence that would create more than a "mere scintilla" of a factual issue. Specifically, as discussed above, no reasonable jury could find actual consumer confusion based solely on the anecdotal evidence presented by SBC. 5 McCarthy on Trademarks and Unfair Competition § 30:74 (noting that actual confusion may be shown based on buyer testimony and/or consumer survey evidence). Indeed, SBC lacked even anecdotal evidence of confusion until after it filed the lawsuit, published its allegations broadly in the media, and asked their supporters to send in evidence. And SBC has conceded that its sales actually were higher in 2017 than 2016, and higher in 2018 than 2017—despite the refresh of Keystone packaging occurring in *April 2017*. 3/18/2022 PM Tr. at 21:18-26:17 (Wagner). Similarly, SBC has presented no evidence from which a reasonable jury could find that the parties would have entered into a license for use of the trademark in question, meaning that no

---

[2] Dr. Palmatier's examples of survey respondents purportedly being "confused" consisted of individuals who read the word "Stone" on more than one item. *See, e.g.,* "So in that case, she saw both packages. She noticed that they both had the word "Stone" and her response was, "they're both Stones." That is probably hard to get much closer to that's confusion in the name because she doesn't know, and those are going to be linked in her mind." 3/18/22 PM Tr. at 89:8-12. This is not confusion under the Lanham Act.

reasonable jury could impose a royalty award. *E.g.*, *Marketquest Group, Inc. v. BIC Corporation*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018) ("Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis is necessarily speculative, and there is an insufficient basis on which to calculate reasonable royalty damages.") (quotations omitted).

Similarly, SBC seeks damages for loss of goodwill, but it has never disclosed any evidence or expert testimony on any purported loss of goodwill, and Ms. Distler, SBC's damages expert, has never opined on loss of goodwill. Distler Depo. at 106:9-107:3 (noting an "inability to calculate that aspect of a diminution in goodwill."). During trial, SBC represented to the Court that evidence pertaining to any asserted loss would be introduced through the testimony of Maria Stipp, but Ms. Stipp did not testify to the value of the purported loss of goodwill, or the valuation of SBC's brand or trademark. 3/16/22 AM Tr. 26:22-25 (counsel for SBC claiming that Ms. Stipp "is going to be talking about the loss in goodwill"); *see generally* 3/16/22 AM Tr. 56:1-110:5 (Stipp) (failing to address loss of goodwill); 3/16/22 PM Tr. 4:25-139:20 (Stipp) (failing to address loss of goodwill); 3/17/22 AM Tr. 4:19-102:14 (Stipp) (failing to address loss of goodwill). Without expert testimony or evidence on this point, SBC may not be awarded damages for lost goodwill. *E.g.*, *Lindsey v. SLT Los Angeles LLC*, 2014 WL 12730512, at *6 (C.D. Cal. Mar. 4, 2014) (plaintiff presented no expert testimony at all on loss of goodwill and therefore the jury's award of $30,000 in loss of goodwill was unsustainable); *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 2014 WL 9901, at *21 (D. Az. Jan 10, 2014) (where damages expert "did not expressly opine" on loss of goodwill, plaintiff was barred from seeking damages for goodwill). For these reasons, the Court should enter JMOL under Rule 50(a) in favor of MillerCoors on all claims and on its counterclaims for declaratory judgment. At the very least, the Court should rule that Stone Brewing is not permitted to recover for any purported loss of "goodwill," given the absence of proof on that point.

## IV. No Reasonable Jury Could Find That SBC Was The First To Use The STONE Mark

While SBC has pressed unfounded claims that it had exclusive use of the term "Stone" in marketing beer until MillerCoors changed the packaging of its Keystone® beer in 2017, MillerCoors has presented evidence in the form of witness testimony and documentation clearly showing that it has been using "Stone" or "Stones" to market and advertise its Keystone beer since the early 1990s. *See, e.g.*, 3/9/22 PM Tr. 72:13-73:3 (Hattersley) (discussing historic use of "stone" to refer to Keystone beers); 3/10/22 AM Tr. 55:22-25 (Hattersley) (discussing use of term "stones" on Keystone 30 packs); *id.* at 81:22-82:15 (Hattersley) (discussing use of "stones" as nickname for Keystone); *id.* at 85:2-17 (Hattersley) (discussing historic use of "stones" on Keystone packaging); 3/11/22 AM Tr. 73:10-16 (Wexelbaum) (personal knowledge of use of "stones" on Keystone packaging and advertising since 1994). SBC has not disputed that it has known of MillerCoors's use of "Stone" since at least 2010, yet chose to file no action until 2018. *See, e.g.*, 3/11/22 AM Tr. 120:8-125:8 (Wexelbaum) (noting SBC 2010 letter re: use of "Stones" by MillerCoors and MillerCoors' response declining to change advertising). SBC has not elicited testimony that a reasonable juror would find controverts the facts attested to by MillerCoors's witnesses on these points.

Here, SBC has failed to create any factual issue as to MillerCoors' use of "Stone" in marketing since the 1990s or SBC's contemporaneous awareness of that use. Without a contested issue of fact on these points, no reasonable jury could find that SBC was the first to use the "Stone" mark. The Court thus should enter JMOL under Rule 50(a) in favor of MillerCoors on all claims and on its counterclaims for declaratory judgment.

## V. The Court Should Find In Favor Of MillerCoors On All Of Its Affirmative Defenses

SBC has acknowledged that it was aware of MillerCoors's use of the word

"Stone" or "Stones" in marketing Keystone beer as early as 2010 and engaged with MillerCoors about that use, yet took no action to prevent MillerCoors' use until filing this lawsuit roughly 8 years later. DX6300 (May 10, 2010 letter stating "MillerCoors will not make any changes in its promotion of Keystone Light beer"); 3/11/22 AM Tr. 120:8-125:8 (Wexelbaum) (noting SBC 2010 letter regarding the use of "Stones" by MillerCoors and MillerCoors' response declining to change advertising); 3/15/22 PM Tr. 10:3–14:17 (Koch) (acknowledging 2010 letter from SBC to MillerCoors on use of "stones," stating that there was no monitoring of Keystone packaging); 3/18/22 PM Tr. 19:14-20:4 (Wagner) (stating that he took no steps to monitor Keystone packaging after 2010 letter). Instead, MillerCoors continued to use the term "Stones" in Keystone advertising, packaging, and national campaigns such as the "Keith Stone" television advertisements. *E.g.*, 3/11/22 AM Tr. 125:14-23 (Wexelbaum) (discussing "Keith Stone" advertising campaign from 2010-2013); *id.* at 136:8-137-11 (discussing use of "stones" by Keystone in 2007-2021 and "30 stones" advertising from 2012-2017); 3/11/22 PM Tr. 12:3-13:7 (Wexelbaum) (discussing use of "stones" in Keystone promotional campaigns in 2013); *id.* at 18:4-19:4 (discussing use of "stone" in Keystone promotional campaigns in 2015). And SBC has conceded that they are not seeking damages for MillerCoors' use of "stone" and "stone" pre-2017, though MillerCoors' use of the term has not changed. *E.g.*, 3/18/22 Tr. 21:6-9 (Wagner). While SBC asserted pretrial that MillerCoors would not be able to show prior use or waiver by SBC and that it would be able to pick holes in MillerCoors' timeline, it has failed to show any flaw in MillerCoors' presentation or present any contradictory evidence.

Based on this showing, the Court should find for MillerCoors on its affirmative defenses of waiver, acquiescence, and estoppel and enter judgment on all claims and counterclaims accordingly pursuant to Rule 52(c).

**CONCLUSION**

For all the reasons set forth herein, the Court should grant Judgment as a Matter of Law to MillerCoors under Rules 50(a) and 52(c) on SBC's claims and MillerCoors's counterclaims.

Dated: March 23, 2022

*/s/ Daniel R. Lombard*

QUINN EMANUEL URQUHART & SULLIVAN LLP
Daniel R. Lombard (IL Bar No. 6290071)
daniellombard@quinnemanuel.com
Jonathan C. Bunge (IL Bar No. 6202603)
jonathanbunge@quinnemanuel.com
191 N Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Tel: (312) 705-7402

CROWELL & MORING LLP
Kent B. Goss (SBN 131499)
kgoss@crowell.com
Valerie M. Goo (SBN 187334)
vgoo@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750

*Attorneys for Defendant*
*MILLERCOORS, LLC*