QUINN EMANUEL URQUHART & SULLIVAN, LLP
Jonathan C. Bunge (admitted *pro hac vice*)
jonathanbunge@quinnemanuel.com
Daniel R. Lombard (admitted *pro hac vice*)
daniellombard@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

CROWELL & MORING LLP
Kent B. Goss (SBN 131499)
KGoss@crowell.com
Valerie M. Goo (SBN 187334)
VGoo@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant/Counterclaim Plaintiff
MILLERCOORS, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

STONE BREWING CO., LLC,

Plaintiff / Counterclaim Defendant,

v.

MILLERCOORS LLC,

Defendant / Counterclaim Plaintiff.

Case No: 18-cv-0331-BEN-MDD

**DEFENDANT MILLERCOORS LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF STONE BREWING COMPANY'S MOTION FOR ATTORNEYS' FEES (ON THE ISSUE OF ENTITLEMENT)**

District Judge: Hon. Roger T. Benitez

**TABLE OF CONTENTS**

**Page**

LEGAL STANDARD AND PROCEDURAL HISTORY .......................................... 1

ARGUMENT .......................................................................................................... 3

I. Any Purported Infringement Was Not Willful Or Knowing. ............................ 3

A. Knowing Infringement Is Insufficient In The Ninth Circuit To Establish A Case As "Exceptional." ........................................................ 3

B. The Facts Show That Any Claimed Infringement Was Not Done "Knowingly." .............................................................................. 4

II. MillerCoors Presented A Strong Case And Prevailed On Key Issues. ............. 8

III. MillerCoors Litigated Reasonably And In Good Faith. .................................. 11

IV. Fee Shifting Is Not Necessary To Compensate SBC Or Deter MillerCoors .......................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AANP v. Am. Ass'n of Naturopathic Physicians*,
37 F. App'x 893 (9th Cir. 2002) .......... 4

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*,
2018 WL 5840042 (S.D. Cal. Nov. 7, 2018) .......... 14

*Cosmetic Warriors Ltd. v. Nailush LLC*,
2017 WL 5157390 (D.N.J. Nov. 6, 2017) .......... 6

*Dropbox, Inc. v. Thru Inc.*,
2017 WL 914273 (N.D. Cal. Mar. 8, 2017) .......... 13

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) .......... 4

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) .......... 3

*Globefill Inc. v. Elements Spirits, Inc.*,
640 F. App'x 682 (9th Cir. 2016) .......... 9

*Gracie v. Gracie*,
217 F.3d 1060 (9th Cir. 2000) .......... 3

*H.I.S.C, Inc. v. Rajanayagam*,
2021 WL 5632505 (9th Cir. Dec. 1, 2021) .......... 13

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
2020 WL 6263649 (S.D. Cal. Oct. 22, 2020) .......... 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 2

*San Diego Comic Convention v. Dan Farr Prods.*,
2019 WL 1599188 (S.D. Cal. Apr. 15, 2019) .......... 6

*San Diego Comic Convention v. Dan Farr Prods.*,
807 F. App'x 674 (9th Cir. 2020) .......... 13

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
875 F.3d 426 (9th Cir. 2017) .......... 10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) .......... passim

*World Triathlon Corp. v. Hapai*,
320 F. App’x 778 (9th Cir. 2009) .......... 3

**Statutes**

15 U.S.C. § 1117(a) .......... 1

Ninth Circuit law confirms what is apparent from the jury's divided verdict: This is not an "exceptional" case under the Lanham Act that merits shifting attorneys' fees. Nonetheless, Stone Brewing Company ("SBC") moves for an award of fees by rehashing trial arguments and misrepresenting MillerCoors' state of mind and conduct during the litigation. The Court should deny SBC's Motion for several reasons. *First*, the jury found that MillerCoors did not engage in willful infringement and the evidence shows that any infringement was not done knowingly either. *Second*, MillerCoors presented compelling evidence at trial on issues of liability and damages, which resulted in its verdict on willfulness and a damages finding of only a quarter of the damages sought by SBC. *Third*, this case involved complex and genuinely disputed questions of fact and law, and MillerCoors litigated the matter reasonably and in good faith. *Finally*, it is undisputed that an award of attorneys' fees is not necessary to either compensate SBC or deter MillerCoors.[1]

For these and other reasons, this is not an "exceptional" case under Ninth Circuit precedent and the Court should deny SBC's request for an award of attorneys' fees.

**LEGAL STANDARD AND PROCEDURAL HISTORY**

The Lanham Act permits an award of attorneys' fees to a prevailing party only where the case is deemed "exceptional" under controlling law. 15 U.S.C. § 1117(a). Courts look to the "totality of the circumstances" in determining if a case is "exceptional" and ask if the matter is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

---

[1] In addition, SBC's motion is premature because there is no final judgment. (Dkt. 668 (order vacating Clerk's judgment).) In fact, if MillerCoors prevails on its motion for JMOL and/or its affirmative defenses (Dkts. 620 & 666), as it should, SBC will have no claim to attorneys' fees because it will not be a "prevailing party." 15 U.S.C. § 1117(a).

was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In the analysis, courts consider a "nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1181 (quoting *Octane Fitness*, 572 U.S. at 554 n.6 (quotation marks removed)). The party seeking fees bears the burden of proof and must show that the case is exceptional by a preponderance of the evidence. *Id.*

SBC filed its Motion for Attorneys' Fees on April 13, 2022, addressing both whether it is entitled to an award of attorneys' fees under Ninth Circuit law and, assuming its entitlement, what a reasonable amount of attorneys' fees would be. (Dkt. 643.) Thereafter, MillerCoors filed a Motion to Bifurcate the issues of entitlement and reasonable amount based on the fact that it is "doubtful" that SBC is entitled to a fee shifting award and, thus, resolving the entitlement issue first could save the parties and the Court considerable time and resources. (Dkt. 656.) The Court granted MillerCoors' Motion to Bifurcate, explaining that "[s]hould the Court find that Plaintiff is entitled to attorneys' fees, a separate briefing schedule for Defendant's opposition and Plaintiff's reply will follow." (Dkt. 663.) Accordingly, in this response, MillerCoors addresses only SBC's claim that it is entitled to an attorneys' fees award—a claim that was rendered premature by the Court's vacating of the Clerk's judgment and pending decisions on MillerCoors' motion for JMOL and affirmative defenses.[2]

[2] MillerCoors expressly reserves its right to file an additional brief addressing SBC's Motion on the issue of a reasonable amount of attorneys' fees in the unlikely event the Court rules for SBC on the issue of entitlement.

## ARGUMENT

In its Motion for Attorneys' Fees, SBC does not carry its burden to show that this is an "exceptional" case under Ninth Circuit law. Where, as here, the defendant did not infringe willfully or knowingly, presented a strong case that prevailed on several important issues, litigated the dispute reasonably and in good faith, and fee shifting is not necessary for compensation or deterrence purposes, Ninth Circuit law supports a finding that the case is not "exceptional" and that an award of attorneys' fees should not issue.

### I. Any Purported Infringement Was Not Willful Or Knowing.

In its verdict, the jury expressly found that MillerCoors did not engage in willful infringement. (Dkt. 625.) That finding all but sinks SBC's quest for attorneys' fees. As SBC acknowledges (Dkt. 643 at 7), courts in the Ninth Circuit often rely on a finding of willful infringement in deciding that a case is "exceptional" and awarding fees. *E.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1066 (9th Cir. 2015) (affirming fee award because "Defendants' conduct was willful"); *World Triathlon Corp. v. Hapai*, 320 F. App'x 778, 780 (9th Cir. 2009) (affirming fee award where the defendant's infringement was "willful and deliberate"); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (finding that the district court's fee award flowed from "the jury's finding of willful infringement").

Drowning in adverse precedent, SBC tries to keep its Motion afloat by claiming that, in the Ninth Circuit, "knowing infringement is regularly found to be exceptional" and arguing that, on the facts here, MillerCoors knowingly infringed. (Dkt. 643 at 7.) SBC is wrong on both counts.

#### A. Knowing Infringement Is Insufficient In The Ninth Circuit To Establish A Case As "Exceptional."

SBC does not cite a single Ninth Circuit case in which "knowing infringement" was found to support a finding of exceptionality. Indeed, the two cases SBC cites

***undermine*** the suggestion that "knowing infringement" suffices for attorneys' fees. In *Earthquake Sound Corporation v. Bumper Industries*, the Ninth Circuit relied on "the *willful and deliberate* nature of Bumper's infringement" in affirming an award of attorneys' fees. 352 F.3d 1210, 1217 (9th Cir. 2003) (emphasis added). Likewise, in *AANP v. American Association of Naturopathic Physicians*, the Ninth Circuit agreed with the district court's view that "the defendant acted *deliberately* [] and *intended to harm* the plaintiff by using its mark" in affirming a fee award. 37 F. App'x 893, 894 (9th Cir. 2002) (emphasis in original). Neither case says anything about whether a bare finding of knowing infringement can render a matter "exceptional." Rather, the court in both cases affirmed an award of fees only after noting that the defendant's conduct constituted "willful" and "deliberate" infringement, which the jury found ***was not*** the case here. Accordingly, the Court need not accept SBC's invitation to resolve post-trial the novel question of whether any infringement on MillerCoors' part was done "knowingly."

### B. The Facts Show That Any Claimed Infringement Was Not Done "Knowingly."

Even if Ninth Circuit law supported the proposition that "knowing infringement" were enough (it does not) and the Court elects to answer the question for the first time here (it should not), the preponderance of the evidence does not show that MillerCoors knowingly infringed SBC's "STONE" trademark. In fact, all of the evidence the jury relied on in finding that MillerCoors did not infringe willfully supports a finding that MillerCoors did not engage in any infringement knowingly either.[3]

---

[3] While MillerCoors strongly disagrees with the jury's verdict on liability, the Court need not second-guess that verdict here in order to find that MillerCoors did not knowingly infringe (and such a finding is consistent with the jury's finding that MillerCoors did not willfully infringe). All MillerCoors needed to form a genuine belief that its use of "STONE" did not infringe SBC's trademark rights was an

In response to SBC's cease-and-desist letter in 2010, MillerCoors considered SBC's claims and responded through legal counsel with several reasons why its use of "STONE" to market Keystone did not infringe SBC's trademark rights. DX6300.0001. For example, MillerCoors explained that its use of "STONE" had "a different theme and connotation" than SBC's use and therefore avoided causing confusion, particularly in light of the fact that several other companies also used the word "STONE" to market their beer brands. *Id.* The evidence presented at trial supports MillerCoors' 2010 position. In particular, consumer shifting reports prepared by Nielsen demonstrate that since the Keystone refresh was launched in 2017, SBC has not lost customers to Keystone—which one would expect if consumers were confused about the source of the products causing harm to SBC. *See* 3/10/22 AM Tr. 50:17-51:24 (Hattersley) (post-refresh report showed that only 2% of Keystone business was coming from consumers of entire craft beer segment); 3/21/22 PM Tr. 95:22-96:8 (Distler) (SBC damages expert conceding that SBC shifting report, which "give[s] you very pointed, real-world data in terms of …. who Stone is losing to" did not even list Keystone). SBC offered no substantive challenge to this data. To the contrary, multiple SBC witnesses conceded that they could not identify any sales lost to Keystone. *See* 3/18/22 PM Tr. 47:14-21 (Wagner) (SBC cofounder not aware of any data showing SBC lost business as a result of Keystone refresh); 3/21/22 AM Tr. 85:4-20 (Stewart deposition clip) (SBC's expert not aware of any evidence that anyone purchased wrong product as a result of confusion).

As another example, MillerCoors explained in the same 2010 letter that it (and its predecessor Coors Brewing Company) had used "STONE" to market Keystone for "many years," including prior to SBC's founding in 1996. DX6300.0001.

---

objectively reasonable basis to conclude that such use did not create a likelihood of confusion and/or was permissible in light of its prior use. *Cf. SunEarth, Inc.*, 839 F.3d at 1181 (party's objective reasonableness supports denying attorneys' fees).

MillerCoors' witnesses likewise explained at trial that they believed MillerCoors' prior use of "STONE" and "STONES" gave the company common law trademark rights that were superior to SBC's rights as a federal-registrant. 3/11/2022 PM Tr. 40:14-41:15 (Wexelbaum). These facts foreclose SBC's reliance on *San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188, at *8 (S.D. Cal. Apr. 15, 2019) (Dkt. 643 at 9-10), where the court found that the defendant's failure to "consult[] an attorney" or even "try[] to reach out to [plaintiff's] legal team" after receiving a cease-and-desist letter was grounds for awarding attorneys' fees.[4]

Without support from courts in this District, SBC claims that this case "is on all fours" with an unpublished district court decision from New Jersey called *Cosmetic Warriors Ltd. v. Nailush LLC*, 2017 WL 5157390, at *1 (D.N.J. Nov. 6, 2017) (unpublished). No it is not. In *Cosmetic Warriors*, the court found that the defendant acted unreasonably where it failed to respond to four cease-and-desist letters and then failed to answer the plaintiff's complaint or respond to its motions during litigation, prompting the court to enter a default judgment. *Id.* at *1-2. The court relied on the defendant's unexplained failure to respond or put forward a defense in awarding attorneys' fees. *Id.* at *7. Here, in stark contrast, MillerCoors provided SBC with a reasoned response to its 2010 cease-and-desist letter, attaching pictures of packaging artwork demonstrating its prior use, highlighting its long-standing "Stones" nickname, pointing out key differences in the companies' use of "STONE" to market their products, and listing several other beer companies that include the word "STONE" in their names. DX6300.001. This response, and MillerCoors'

---

[4] The fact that MillerCoors had not completely scrubbed all of its marketing channels of disputed Keystone images within 19 days of the jury's verdict does not show a "continuing disregard" of SBC's trademark rights, as SBC claims. (Dkt. 643 at 7-8.) Notwithstanding its disagreement with the jury's finding on liability, MillerCoors has taken significant steps to address the jury's verdict by removing 2017 refresh imagery its Keystone marketing, and is scrubbing historical posts containing such imagery from its social media pages. (*See* Dkts. 653 at 5; 653-1 (explaining steps MillerCoors has taken).)

diligent defense throughout this case, easily distinguishes *Cosmetic Warriors*.

Presumably because MillerCoors' prior use evidence is fatal to SBC's argument that it knowingly infringed, SBC is compelled to argue that MillerCoors "invented" its prior-use defense in bad faith as a "false" and "groundless" basis to avoid liability. (Dkt. 643 at 12-14.) That hyperbole is impossible to square with the contemporaneous record. Again, MillerCoors explained its prior use to SBC in a ***2010*** letter. DX6300.0001. MillerCoors referenced Keystone packaging artwork finalized in March 1996 that included the word "STONES." *Id.* SBC did not reject MillerCoors' position and file a lawsuit shortly thereafter, despite MillerCoors stating that it "[would] not make any changes in its promotion of Keystone Light beer." DX6300.0002. MillerCoors continued to use "STONE" and "STONES" to market Keystone in the years that followed reasonably believing that the matter had been resolved. And SBC did not say another word about it (or even track Keystone packaging internally)—that is, until SBC launched a media blitz promoting the filing of its lawsuit eight years later in 2018. (3/15/22 PM Tr. 13:2-16 (Koch); 3/18/22 PM Tr. 16:11-20:4 (Wagner) (acknowledging SBC did not monitor Keystone's use of "STONE" between 2010 and 2018).)

After SBC initiated this suit, MillerCoors produced ample evidence supporting its 2010 position, introducing at trial over 100 physical items and other exhibits found in MillerCoors' historical archive or purchased on E-Bay showing that Coors Brewing Company (and, subsequently, MillerCoors) marketed Keystone using "STONE" or "STONES" between 1991 and 2017. (Dkt. 661-1, App'x 1 (summary of MillerCoors' evidence of prior use).) Tellingly, all SBC can muster in response to this evidence is a rehash of its trial arguments as to why the Court should ignore it. (Dkt. 643 at 12-14.) But the Court should not ignore it. Far more than giving MillerCoors an "objectively reasonable" basis to argue prior use (which is all that is required for the Court to deny SBC's request for attorneys' fees, *see SunEarth, Inc.*, 839 F.3d at 1181),

this evidence—authenticated and explained by Ms. Harris and Mr. Whitley at trial—demonstrates that MillerCoors consistently used "STONE" and "STONES" to identify and market Keystone since before SBC was founded.

In particular, Ms. Harris testified that "30 STONES" was printed on Coors' inaugural packaging for the 30-pack released in 1995 and was used consistently thereafter. (3/22/22 AM Tr. 31:18-32:12 (Harris).) Ms. Harris explained that notwithstanding that certain exhibits of "30 STONES" packaging did not contain certain signatures that might otherwise confirm use, the compelling fact establishing use starting in 1995 is that Keystone did not have enough money in its budget to prototype packaging designs that it might then elect not to use. (*Id.* at 86:18-87:24.) In other words, if the packaging was made the packaging was used. Moreover, Ms. Harris explained that the absence of approval signatures in the mid-1990s is not surprising given that the company responsible for obtaining signatures was inconsistent and did not collect signatures for other brands at that time. (*Id.* at 88:1-89:18.). This testimony is supported by the deposition testimony of SBC's former-CEO, Mr. Engels, who explained his understanding "that this idea of '30 'Stones' was always used in – as a tagline or supporting message promotionally for Keystone." (3/18/22 PM Tr. 18:18-19:1 (Engel deposition clip).)

For these reasons, MillerCoors' awareness of SBC's federally-registered trademark for "STONE" is perfectly consistent with the evidence presented at trial that MillerCoors did not "knowingly infringe" SBC's rights and, instead, reasonably believed that (i) its use of "STONE" to market Keystone did not create any confusion with SBC and (ii) it held superior rights to market Keystone using "STONE" as it consistently had since before SBC filed its application to register "STONE" with the USPTO.

## II. MillerCoors Presented A Strong Case And Prevailed On Key Issues.

Ninth Circuit law provides that courts may award attorneys' fees where a

party's case was frivolous, ill-motivated, or objectively unreasonable. *SunEarth, Inc.*, 839 F.3d at 1181. That is not the case here. Notwithstanding the jury's verdict, MillerCoors made a strong showing at trial that SBC failed to show likelihood of confusion, "present[ing] compelling evidence relevant to many of the *Sleekcraft* factors." *Globefill Inc. v. Elements Spirits, Inc.*, 640 F. App'x 682, 684 (9th Cir. 2016). For example, as explained above, Nielsen reports introduced at trial establish that consumers did not shift between purchasing SBC beer and Keystone after 2017, precluding a finding of actual confusion as to the source of the products (a point that was confirmed by SBC's witnesses' inability to identify any evidence of actual confusion). *See supra* at 3-4. Aware of this gaping hole in its case, SBC offered a series of social media posts at trial in an attempt to manufacture an aura of confusion. But after SBC's co-founder, Greg Koch, attempted to sponsor the credibility of the posts, MillerCoors elicited a string of admissions on cross-examination rendering them wholly unreliable by, for example, revealing the poster to be feigning or joking about any purported confusion. (3/15/22 PM Tr. 37:3-88:7 (Koch).)

As another example, MillerCoors showed through expert witness testimony that the surveys performed by SBC's original survey expert, Dr. Stewart, were either intentionally manipulated to increase the number of respondents reporting source confusion or were not designed to assess source confusion at all. (*See* Dkt. 661 at 2-4 (explaining deficiencies in SBC's surveys).) Indeed, on cross-examination, SBC's replacement survey expert, Professor Palmatier, was compelled to acknowledge that the results of an undisclosed *Squirt* survey performed by Dr. Stewart supported a finding of ***no*** likelihood of confusion.[5] (3/21/22 AM Tr. 31:19-40:14 (Palmatier).)

SBC's argument on likelihood of confusion—*i.e.*, that its case was purportedly "open and shut" because "the marks were the same—STONE and STONE—and the

---

[5] Based on this and other evidence, MillerCoors is seeking to correct the jury's erroneous finding of liability in post-trial briefing.

products are identical—beer and beer"—is meritless. SBC relies on the Ninth Circuit's decision in *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017). (Dkt. 643 at 11-12.) But, in *Stone Creek*, the defendant's mark was "an exact replica" of the plaintiff's logo it had "copied from materials given to [it]" when the parties did business together. 875 F.3d at 432. MillerCoors did not copy anything from SBC and the evidence showed that SBC's uniquely-named products (such as Stone Tangerine Express Hazy IPA and Stone Fear.Movie.Lions Double IPA) are sold in packages that look nothing like Keystone Light. Mr. Koch admitted as much on cross-examination. (3/15/22 PM Tr. 81:15-19, 82:12-17 (Koch) (indicating that he did not believe someone would look at an SBC can and confuse it with a Keystone beer).) Further, each time SBC tried to show the jury an "example" of MillerCoors' use of "STONE" at trial, MillerCoors followed up—by turning the can, showing the entire advertisement, or otherwise giving the jury full context—to reveal its use of the word "KEYSTONE." And, with respect to every can or packaging of refreshed Keystone ever produced, MillerCoors was able to show the logo for "Coors Brewing Company" emblazoned in bright gold lettering. DX9453 (Keystone can); DX9451 (Keystone box). Indeed, while SBC repeatedly pointed to the refreshed Keystone can as the primary example of MillerCoors' allegedly infringing use of "STONE," the USPTO disagreed, approving a picture of the refreshed Keystone can as a specimen demonstrating its continued use of "KEYSTONE." PX2862 (USPTO acceptance refreshed Keystone can specimen.)

Moreover, SBC's made-for-litigation argument that SBC beer and Keystone Light are "identical" products rings hollow where the evidence showed that they are largely sold to different consumer groups, at different prices, through different channels, and in different parts of the country—to say nothing of the fact that SBC built its business and reputation by emphasizing the vast differences in taste between its craft IPAs and "fizzy, yellow" beverages like Keystone. (Dkt. 661 at 6; 3/15/22

PM Tr. 124:3-126:11 (Koch).)

In addition to mounting a strong case on likelihood of confusion, as explained above, MillerCoors introduced substantial evidence supporting its prior use defense, including more than 100 exhibits and testimony from two witnesses demonstrating its continuous use of "STONE" and "STONES" on advertisements, point-of-sale displays, and secondary packaging between 1991 and 2017. *See supra* at 6. And, on damages, MillerCoors successfully eliminated SBC's punitive damages claim pre-trial (Dkt. 533) and presented extensive evidence during trial that SBC's damages claim was wildly inflated. (*See* Dkt. 661 at 12-20.) Through this and other evidence, MillerCoors persuaded the jury to find in its favor on the issue of willfulness and to award SBC only a quarter of the damages it sought through its damages expert. (Dkt. 625.)

**III. MillerCoors Litigated Reasonably And In Good Faith.**

In a last ditch effort to try to convince the Court that this case is "exceptional" within the meaning of the Lanham Act, SBC claims that MillerCoors engaged in "discovery misconduct" that purportedly justifies ordering MillerCoors to pay SBC's attorneys' fees. (Dkt. 643 at 14.) SBC is wrong. While MillerCoors was diligent and steadfast in its defense of SBC's claims (understandably so given SBC's original claim to over ***one billion*** in damages), MillerCoors has exercised its right to defend itself reasonably and in good faith throughout the litigation.

SBC offers the Court cherry-picked examples of MillerCoors' alleged "discovery misconduct" that presumably represent the most significant instances SBC can find. (Dkt. 643 at 14-17.) But these examples are either baseless or prove only the unremarkable fact that the parties disputed issues in discovery and some disputes were resolved against MillerCoors. For example, MillerCoors did not "ambush" SBC "on the eve of trial" by adding Scott Whitley to its witness list. (*Id.* at 16.) Mr. Whitley was disclosed in October 2021 immediately after counsel for MillerCoors identified

him as a witness with relevant first-hand knowledge—a process that took significant time and effort given that the historical artifacts at issue are between 25-30 years old. (Dkt. 509-2 at 1-2 (Decl. of Kent Goss explaining the process of identifying Mr. Whitley).) SBC was able to depose Mr. Whitley and had five months to prepare for his cross-examination at trial.[6]

Further, SBC's scorched earth tactic of filing motions to compel and motions for sanctions at every conceivable opportunity is not evidence of discovery misconduct. In fact, while SBC touts filing "at least ten" motions to compel during discovery (Dkt. 643 at 14), MillerCoors counts six on the docket (*see* Dkts. 81, 88, 115, 124, 218, and 338) and Magistrate Judge Lopez denied all of them either in full or in part (Dkts. 89, 110, 122, 126, 218, and 346).[7]

SBC's one example where Magistrate Judge Lopez recommended a limited order of sanctions against MillerCoors does not merit a finding that MillerCoors litigated the entire case unreasonably and should bear the balance of SBC's attorneys' fees. SBC's motion for sanctions was denied almost entirely, with Magistrate Judge Lopez rejecting SBC's requests (i) to strike MillerCoors' prior-use defense and lack of competition argument (ii) for an adverse jury instruction, (iii) for an order requiring MillerCoors to make a certification of its search efforts, and (iv) for additional discovery. (Dkt. 284 at 2.) While Magistrate Judge Lopez found that MillerCoors did not fully comply with its obligation to produce certain historical Keystone materials, she "address[ed] the prejudice" to SBC by recommending that MillerCoors be ordered

---

[6] SBC's attempt to support its Motion by claiming to have been "ambushed" pre-trial with Mr. Whitley's disclosure is particularly tone-deaf given that, as the Court found, SBC ambushed MillerCoors ***at*** trial with evidence of an offer to purchase SBC that was never disclosed. (3/21/22 AM Tr. 5:9-16 (The Court) (rebuking SBC's counsel's "practice" of "provid[ing]…information at the last possible minute" including the purchase offer "that was never disclosed to the defense until the day of trial.").

[7] For its part, SBC was also ordered by Magistrate Judge Lopez to produce withheld discovery. *See* Dkt. 111 (ordering SBC to produce "external communications for objections it made to another's use of a term Stone Brewing alleged infringed its trademark").

to pay SBC's legal fees incurred to draft its motion for sanctions. *Id.* at 10. That should be the end of it.

The two district court cases SBC cites show further why an award of attorneys' fees would be inappropriate here. In *Dropbox, Inc. v. Thru Inc.*, the court found that "overwhelming evidence" showed that the defendant engaged in a deliberate, bad faith scheme to delay bringing a lawsuit to leverage the timing of its suit with the plaintiff's filing of an IPO and then obfuscated in discovery to try to cover up that fact. 2017 WL 914273, at *2-3 (N.D. Cal. Mar. 8, 2017), *aff'd,* 728 F. App'x 717 (9th Cir. 2018). MillerCoors engaged in no such scheme and there is no evidence that MillerCoors manufactured discovery responses to hide any illicit motivations in defending itself in the suit. Similarly, in *San Diego Comic Convention v. Dan Farr Prods.*, the court found that the defendant had shown "indifference to [the] Court's rulings and the Local Rules" and sought repeatedly to reargue issues that had already been decided by the court. 2019 WL 1599188, at *6 (S.D. Cal. Apr. 15, 2019), *aff'd in part, vacated in part, remanded*, 807 F. App'x 674 (9th Cir. 2020). MillerCoors did nothing of the sort and SBC does not even contend otherwise.[8] Accordingly, the Court should deny SBC's Motion. *See H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, 2020 WL 6263649, at *3 (S.D. Cal. Oct. 22, 2020), *aff'd sub nom. H.I.S.C, Inc. v. Rajanayagam*, 2021 WL 5632505 (9th Cir. Dec. 1, 2021) (Benitez, J.).

**IV. Fee Shifting Is Not Necessary To Compensate SBC Or Deter MillerCoors**

Although courts may award attorneys' fees in "particular circumstances" where doing so is necessary "to advance considerations of compensation and deterrence," *SunEarth, Inc.*, 839 F.3d at 1181, SBC rightly does not argue that such circumstances

---

[8] If either party, it was SBC—not MillerCoors—that ignored the Court's instructions and pressed specious arguments at trial. The Court will recall its repeated admonitions to SBC's counsel to manage its time and present its case in an efficient manner. Nonetheless, SBC moved the Court toward the end of trial for more time, making arguments that the Court "couldn't disagree more with" and found "incredible" were even raised. (3/21/22 AM Tr. 4:9-6:20 (The Court).)

are present here. As an initial matter, MillerCoors has already taken significant steps to address the jury's verdict notwithstanding its disagreement with the jury's finding on liability. MillerCoors has (i) confirmed that no radio or television commercials in use include 2017 refresh imagery or references to "stones"; (ii) changed its website to replace 2017 refresh imagery; (iii) stopped new social media advertising using 2017 refresh imagery including the stand-alone word "STONE" on a can; and (iv) instructed third-party partners to take down or replace billboards using 2017 refresh imagery including the stand-alone word "STONE" on a can. (Dkts. 653 at 5; 653-1.)

There is no need to compensate SBC beyond the jury's $56 million verdict, which already far exceeds the evidence of harm SBC presented at trial. (*See* Dkt. 661 at 12-20 (explaining why the evidence does not support the jury's damages award).) Further, in light of the jury's finding that MillerCoors did not willfully infringe and the substantial evidence supporting MillerCoors' case and good faith conduct, there is nothing to deter with an attorneys' fees award. *See Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 2018 WL 5840042, at *4 (S.D. Cal. Nov. 7, 2018) (Benitez, J.) (finding a need to deter where the plaintiff exhibited "brazen litigation tactics" and "utter disregard" for the Court's orders).

For these reasons, MillerCoors respectfully requests that the Court decline to exercise its equitable discretion to find this case "exceptional" under Ninth Circuit law and deny SBC's Motion for Attorneys' Fees.

Dated: May 2, 2022 Quinn Emanuel Urquhart & Sullivan LLP


*/s/ Daniel R. Lombard*
Quinn Emanuel Urquhart & Sullivan LLP
Daniel R. Lombard (IL Bar No. 6290071
daniellombard@quinnemanuel.com
Jonathan C. Bunge (IL Bar No. 6202603)
jonathanbunge@quinnemanuel.com
191 N Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Tel:(312) 705-7402

CROWELL & MORING LLP
Kent B. Goss (SBN 131499)
kgoss@crowell.com
Valerie M. Goo (SBN 187334)
vgoo@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Tel: 213-622-4750

*Attorneys for Defendant*
*MILLERCOORS, LLC*