UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE BREWING CO., LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MILLERCOORS LLC,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:18-cv-00331-BEN-MDD<br><br>**ORDER ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, AFFIRMATIVE DEFENSES, AND DECLARATORY JUDGMENT**<br><br>[ECF Nos. 620, 666] |

**I.      INTRODUCTION**

On March 25, 2022, a jury returned a verdict in favor of Plaintiff Stone Brewing Co. LLC ("Stone") on its claim of trademark infringement. Before the jury's verdict, Defendant MillerCoors LLC ("MillerCoors") filed a renewed motion for judgment as a matter of law. ECF No. 620. Following the jury's verdict, MillerCoors filed a motion for entry of judgment on affirmative defenses. ECF No. 666. The Court heard arguments from the parties on these motions at a post-trial hearing held on June 17, 2022. ECF No. 695. The Court has considered the parties' briefs, oral arguments, and has reviewed the record of trial and concludes that judgment as a matter of law is not warranted and MillerCoors failed to prove its affirmative defenses. Accordingly, MillerCoors' motions

for judgment as a matter of law and judgment on affirmative defenses are denied.[1]

## II. JUDGMENT AS A MATTER OF LAW UNDER FED.R.CIV.P. 50

Defendant filed its motion for judgment as a matter of law before the jury's verdict under Fed.R.Civ.P. 50(a). Under Fed.R.Civ.P. 50(b), "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."

### A. Legal Standard

Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000). The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56. *Id.* Thus, the court must review all of the evidence in the record, *cf., e.g., Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, *e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990). The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010).

---

[1] The parties' familiarity with the facts in this case obviates any need for a recitation in this brief. Facts are only discussed to the extent needed to resolve the motions.

1  "[T]he court should give credence to the evidence favoring the nonmovant as well
2  as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at
3  least to the extent that that evidence comes from disinterested witnesses." *Reeves* at 151.
4  Although taking a motion under submission and ruling on it after the jury returns a
5  verdict is proper practice, *see* Fed.R.Civ.P. 50(b) advisory committee's note, the court
6  "may not substitute its view of the evidence for that of the jury." *Winarto v. Toshiba Am.*
7  *Elecs. Components, Inc.,* 274 F.3d 1276, 1283 (9th Cir. 2001) (quoting *Johnson v.*
8  *Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir. 2001)).

**B. Discussion**

MillerCoors focuses its motion on four key aspects: (1) there is no evidence MillerCoors acted willfully; (2) no reasonable jury could find a likelihood of consumer confusion; (3) no reasonable jury could find Stone was damaged by MillerCoors's actions; and (4) no reasonable jury could find that Stone was the first to use the STONE mark. The jury found in favor of MillerCoors on the first point regarding willfulness, so it need not be addressed. The three remaining matters are addressed below.

1. Likelihood of Consumer Confusion

To prove trademark infringement under the Lanham Act, a plaintiff must demonstrate that: (1) it has a valid, legally protectable trademark and (2) the defendant's use of the mark to identify the goods or services causes a likelihood of confusion. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Here, the parties dispute whether Stone has met its burden of proving that MillerCoors's use of the Plaintiff's mark caused a likelihood of confusion.

"The likelihood of confusion is the central element of trademark infringement." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting *Official Airline Guides v. Goss,* 6 F.3d 1385, 1391 (9th Cir. 1993)). The Ninth Circuit's likelihood of confusion analysis focuses on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC,* 683 F.3d at 1214 (quoting *Entrepreneur Media, Inc. v.*

*Smith,* 279 F.3d 1135, 1140 (9th Cir. 2002)). Courts in the Ninth Circuit typically apply the eight factors set out in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979) to determine whether a defendant's use of a mark or name creates a likelihood of confusion. *See Rearden LLC,* 683 F.3d at 1199; *Lahoti v. Vericheck, Inc.,* 636 F.3d 501, 507 (9th Cir. 2011); *GoTo.com,* 202 F.3d at 1205. Those factors are: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. *Id.*; *Sleekcraft,* 599 F.2d at 348.

  MillerCoors's argument for lack of confusion focuses on the *Sleekcraft* factors and, after analyzing each, posits a reasonable jury could not have concluded that a reasonably prudent consumer would be confused by refreshed Keystone Light packaging. This Court agrees, and had it been in the position of fact-finder in this case, would have found as such. But, that is not the standard binding this Court in a Rule 50 analysis. That this Court disagrees with a jury's verdict is not enough to grant a Rule 50 motion, but rather it is the "reasonable jury" standard. Looking at the evidence presented, a reasonable jury could have reached the conclusion it did.

  Stone presented evidence of the strength of the STONE mark in the form of brand recognition and awards received by the brewery. 3/14 AM Tr. at 82:14-95:16; 3/14 PM Tr. at 1:1-28:8. Regarding the proximity of the goods, both products are beer. While MillerCoors rightly points out the beers make up very different segments of the beer industry, the jury was entitled to conclude the goods were related by participating the same general industry. The marks STONE and 'STONE are nearly identical. Regarding evidence of actual confusion, the jury was entitled to rely on the evidence offered by Stone to conclude there was actual confusion. This came in the form of social media posts by Stone customers (PX 2468, 2473, 3001, 3015, 3492, and 5033), survey evidence (PX 00071), and "brand association," "tagline," "spoken word," and "visual confusion" studies (3/18 PM Tr. at 76:12-78:9; 79:15-80:6; 80:7-82:12; 91:2-93:1). Stone also

1  presented video evidence of potential consumers being asked to pick out "Stone Beer" on
2  a shelf with various beers, including Stone IPA and Keystone Light and the resulting
3  confusions therefrom. *Id.* at 83:4-85:19; 89:7-91:1. Stone's expert also testified
4  regarding why those surveys were more reliable than those conducted by MillerCoors.
5  *Id.* at 82:3-12; 83:4-9; 97:19-100:11.

6   The above-mentioned evidence combined with the visual presentation of the
7  Keystone Light can to focus on the use of the word "STONE" in its marketing materials
8  could lead a reasonable jury to find a likelihood of confusion, and thus, trademark
9  infringement. The Court recognizes that Defendant presented strong evidence,
10 particularly testimony that showed the structural flaws with Plaintiff's survey evidence.
11 DX 10131-D; 10131-F; 10132-H. The Court was similarly unconvinced by the evidence
12 proffered from Stone's surveys, but that goes to the weight of the evidence. Presumably,
13 the jury found Stone's survey evidence convincing enough to find a likelihood of
14 confusion. The Court will not second guess this determination.

15   2. Proof of Damages

16   MillerCoors argues that there is no proof of actual damages suffered in this case
17 because there is no evidence of actual confusion. MillerCoors points out that Stone's
18 evidence is limited to anecdotal social media posts submitted after the lawsuit. Further,
19 MillerCoors focuses on Nielsen survey data in what were identified as "shifting reports."
20 These reports indicate that any customers Keystone Light gained after its packaging
21 refresh did not come from Stone, and that any customers Stone Brewing lost after 2017
22 were not transitioning to Keystone. DX6534; 6537; 6575; 8491. MillerCoors further
23 argues the only evidence offered is evidence of trademark dilution, not trademark
24 infringement, and that since dilution was not a theory tried to the jury, Stone should not
25 be able to recover damages under that theory.

26   The Court finds Stone presented evidence to the jury that would allow them to
27 reasonably find that Stone suffered damages as a result trademark infringement. Stone
28 presented evidence that following MillerCoors's refresh of the Keystone Light brand,

Stone Brewing suffered losses in the form of a 40% drop in revenue and a loss of approximately 10,000 points of distribution. PX 5024; 3/16 AM Tr. at 92:2-13; 3/16 PM Tr. at 47:25-49:14; 50:8-51:16; 66:17-67:1. Stone's expert witness also presented a "linkages" theory to the jury in which consumers' view of Stone would be negatively impacted by its association with Keystone Light. 3/18 PM Tr. at 65:14-67:5. Stone put on evidence that Stone's performance compared with the rest of the craft beer industry indicated that any fall off in sales Stone may have suffered cannot be explained by changes in the craft beer market alone and that Keystone must have been a factor in the decline of Stone's sales. PX5020.

While surely of little consolation to MillerCoors, this Court again agrees with their argument that this evidence fails to convince that the Keystone Light refresh was responsible for Stone's decline in sales. However, a reasonable jury was entitled to look at the charts showing a decline in sales, weigh the conflicting expert opinions presented by the parties, and come to the determination that the timing of the refresh and the subsequent decline in Stone's fortunes are related and that MillerCoors bears responsibility. While it certainly seems more likely that Stone's drop in sales has much more to do with increased competition and oversaturation of the craft beer market, the evidence presented allowed the jury to reach a different conclusion and the Court finds this conclusion to be reasonable.

3. Prior Use

Prior use is a defense to a claim of trademark infringement. A non-registrant of a mark can rebut a presumption of trademark ownership by showing the registrant, in this case Stone, had not established valid ownership rights in the mark at the time of registration – in other words, if the non-registrant can show they used the mark in commerce first, then the registration must be invalidated. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220 (9th Cir.), *as modified,* 97 F.3d 1460 (9th Cir. 1996). Here, MillerCoors argues that the evidence showed that MillerCoors used "STONE(S)" as a trademark on displays as early as 1992 and on packaging as early as 1995, both of

which would predate Stone Brewing's application or approval for the STONE trademark. In support of this, MillerCoors presented myriad marketing materials and packaging. Stone argues that MillerCoors failed to meet its burden in three ways: (1) MillerCoors failed to present evidence of consistent and continuous use dating back prior to Stone's federal trademark application; (2) MillerCoors's prior use of "STONE" was not as a trademark; and (3) MillerCoors's current use of STONE (after the package refresh) is radically different and cannot satisfy the standard for tacking common law trademark rights.

Regarding the packaging art using the word "Stones" from 1995, the evidence presented to the jury indicated that there were missing signatures that would have been expected for the product to have actually gone to market. 3/8 AM Tr. at 106:8-113:21. The jury was entitled to conclude that this packaging never made it to market. The jury also had evidence that MillerCoors's own packaging agency could not confirm the use of a "30 STONES" package being used in the marketplace before 1996. PX 3592; 3593. Most harmful to MillerCoors's prior use case is the lack of evidence presented to the jury that MillerCoors used the word "Stone" or "Stones" in its marketing any time between 1997 and 2010. Based on this lack of evidence, the jury could have reasonably concluded that MillerCoors's use of "STONE" or "STONES," to the extent they used it at all, was not continuous.

### C. Conclusion on Judgment as a Matter of Law

This Court's disagreement with the jury's ultimate conclusion cannot give rise to a judgment as a matter of law against Stone. Here, because the jury's verdict is supported by evidence on the record, the Court finds it to be reasonable. Accordingly, MillerCoors's motion for judgment as a matter of law under Fed.R.Civ.P. 50 is denied.

### III. MILLERCOORS'S MOTION FOR ENTRY OF JUDGMENT ON AFFIRMATIVE DEFENSES UNDER FED.R.CIV.P. 52

MillerCoors argues the affirmative defenses of waiver and estoppel apply and warrant entry of judgment for the Defendant. Each affirmative defense is addressed in

turn.

### A. Waiver

Legal Standard

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.,* 843 F.2d 394, 399 (9th Cir. 1988). "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved." *United States v. Amwest Surety Ins. Co.,* 54 F.3d 601, 602–03 (9th Cir. 1995) (quoting *Groves v. Prickett,* 420 F.2d 1119, 1125 (9th Cir.1970); *see also Duncan v. Office Depot,* 973 F.Supp. 1171, 1177 (D. Or. 1997) ("Although mere silence can be a basis for a claim of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal manner."). "[F]ailure to act, without more, is insufficient evidence of a trademark owner's intent to waive its right to claim infringement." *Novell, Inc. v. Weird Stuff, Inc.*, 1993 WL 13767335, at *13 (N.D. Cal. Aug. 2, 1993).

Discussion

MillerCoors's briefing provides ample evidence that Stone was aware of MillerCoors's use of Stone and Keystone in its product, but fails to offer any evidence that Stone made an intentional relinquishment of a known right. MillerCoors focuses on communications between Stone and MillerCoors counsel in and around 2010 regarding the latter's use of the mark "STONES" and the "HOLD MY STONES" campaign. DX6300. Particularly, MillerCoors relies on a November 9, 2010 letter to Stone indicating MillerCoors would not be changing its marketing approach and would continue to use the words STONE and STONES in its Keystone Light marketing. DX6314. MillerCoors argues that following that correspondence, Stone Brewing took no action until the lawsuit filed in this case in 2018. Assuming *arguendo* this is true, it does not change the fact that there is zero evidence in the record that Stone Brewing made a knowing and intentional relinquishment of its right to enforce its trademark. MillerCoors's argument sounds in laches, which this Court has already rejected. ECF

No. 360.  Because there is no proof of intentional relinquishment of rights, the Court rejects MillerCoors's waiver defense.

### B. Estoppel

Legal Standard

A defendant in a trademark infringement lawsuit claiming estoppel must show: (1) that the plaintiff "knew [the defendant] was selling potentially infringing" products; (2) the plaintiff's "actions or failure to act led [the defendant] to reasonably believe that [the plaintiff] did not intend to enforce its trademark right" against defendant; (3) that defendant did not know the plaintiff "actually objected to the sale of its potentially infringing [product]"; and (4) due to its reliance on the plaintiff's actions, defendant "will be materially prejudiced" if the plaintiff "is allowed to proceed with its claim." *adidas–Am.,* 546 F.Supp.2d at 1075 (citing *Lehman v. United States,* 154 F.3d 1010, 1016 (9th Cir.1998)).  "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Am. Casualty Co. v. Baker,* 22 F.3d 880, 892 (9th Cir. 1994) (internal quotation marks omitted).

Discussion

MillerCoors again focuses on the 2010 communications between the parties and argues that: (1) it shows knowledge of potential infringement, (2) that Stone's inaction between 2010 and filing suit in 2018 led MillerCoors to believe that Stone did not intend to enforce its trademark, (3) that MillerCoors did not believe Stone actively objected to its use of STONE and STONES, and (4) that it made marketing decisions based on the supposed acquiescence.  However, the Court need not analyze the actions or inactions taken by Stone between 2010 and the Keystone Light rebrand in 2017.  From the face of Stone's Complaint in this case, it is clear that the suit is in response to the Keystone Light refresh and MillerCoors's "Own the Stone" campaign.  The refresh occurred in 2017; this suit commenced in 2018.  This Court previously found that Stone's suit was in response to infringement that began in 2017.  ECF No. 360 at 27.  MillerCoors fails to present any evidence that tends to show otherwise.

### C. Conclusion on Affirmative Defenses

MillerCoors fails to show that Stone made a knowing and intentional relinquishment of its right to enforce its trademark. Moreover, the Court finds that Stone's suit is based on the 2017 Keystone Light refresh. Accordingly, filing suit to enforce its trademark rights in 2018 cannot be grounds for a finding of estoppel. MillerCoors's motions for entry of judgment based on the affirmative defenses of waiver and estoppel is denied.

## IV. DECLARATORY JUDGMENT

In addition to the matters submitted to the jury, there are outstanding declaratory judgment claims raised by each party. Stone sought declaratory judgment that further use by MillerCoors of the STONE mark in connection with the sale, marketing, or distribution of beer would infringe Stone's rights of the STONE mark. MillerCoors seeks declaratory judgment in all four of its counterclaims: (1) the right to use STONE and STONES to advertise Keystone Beer, (2) unenforceability of the STONE mark against MillerCoors due to laches, (3) declaration of non-infringement based on MillerCoors' right to the STONE mark, and (4) declaration of MillerCoors's exclusive right to use the STONE mark in the United States. The Court previously found against MillerCoors on the laches claim. The Court declines to enter judgment on the remaining claims.

Declaratory relief is an equitable remedy. However, this does not prevent a jury verdict from removing any justiciable controversy sought to be decided by an action for declaratory judgment. Indeed, when the right at issue in a declaratory judgment action is completely determined by a jury's verdict on another issue, the declaratory judgment action becomes moot. *See Vectren Commc'ns Servs. v. City of Alameda*, C 08-3137 SI, 2010 WL 1610017, at *1–2 (N.D. Cal. Apr. 20, 2010), *rev'd in part on other grounds sub nom. Vectren Commc'ns Servs., Inc. v. City of Alameda ex rel. Alameda Power & Telecom*, 536 Fed.Appx. 681 (9th Cir. 2013). In *Vectren*, for instance, the court denied a party's declaratory judgment claim requesting interpretation of the parties' contract rights because those rights had been adequately determined by the special jury verdict on the

opposing party's breach of contract claim. *Id.* Finding that "the special verdict form sufficiently resolved any outstanding disputes regarding the parties' contractual rights, and that no declaration with respect to the prohibition on sale is needed," the court determined that "there remain[ed] no actual controversy following the jury's verdict," rendering the declaratory judgment claim moot. *Id.*

The Court finds all the pending declaratory judgment issues to have been resolved by the jury's verdict in this case. The jury's verdict necessarily means Stone is entitled to use the STONE mark, that MillerCoors's use of STONE and STONES leads to a likelihood of confusion, and that MillerCoors does not have an exclusive right to use STONE in the United States for the marketing of its beers. There remains no actual controversy requiring a declaration of rights by this Court.

**IT IS SO ORDERED.**

DATED: July 26, 2022

_____
**Hon. Roger T. Benitez**
United States District Court